**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROGER LIS,<br><br>               Plaintiff,<br><br>          v.<br><br>COMCAST OF CHICAGO, INC., et al.,<br><br>               Defendants. | FILED: JULY 14, 2008<br>08CV3984<br>JUDGE ZAGEL<br>MAGISTRATE JUDGE COX<br>YM    No. _____ |

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

Defendants Comcast of Chicago, Inc., Comcast of Illinois I, Inc., Comcast of Illinois III, Inc., Comcast of Illinois IV, Inc., Comcast of Illinois/Texas, Inc., Comcast MO Express of Illinois, Inc., Comcast of Northern Illinois, Inc., Comcast Sound Communications, Inc., and Comcast of South Chicago, Inc. (collectively, "Comcast"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 8(b), and without waiving the right to compel Plaintiff Roger Lis ("Plaintiff") to arbitrate his claims, answer Plaintiff's Complaint as follows. Any allegations that are not specifically admitted herein are denied.

### INTRODUCTORY STATEMENT

Plaintiff's claims attempt to challenge the manner in which Comcast Corporation, through its national operating entities, managed peer-to-peer traffic on its broadband high-speed Internet ("HSI") network and how they marketed and advertised the HSI service.  In a transparent bid to keep this action out of federal court, however, Plaintiff deliberately chose not to name as Defendants Comcast Corporation's operating entities and instead named only a handful of local subsidiaries of Comcast Corporation – entities that did not create the HSI

product. Such entities have no control over, no involvement with, and no responsibility for the product, its network management or the nationwide marketing or advertising associated with it. Those functions are performed exclusively by three Comcast Corporation national operating entities, specifically Comcast Cable Communications, LLC, Comcast Cable Communications Holdings, Inc. and Comcast Cable Management, LLC (the "National Operating Entities"), any one of which would give rise to minimal diversity if it had been named.

While Plaintiff's jurisdictional gaming was intended to keep this action in state court, it had another effect: the overwhelming majority of Plaintiff's allegations are directed solely at local franchising entities that did not create the HSI product and play no role in its network management or national marketing and advertising. Plaintiff's Complaint defines these local franchising entities as "Comcast," without reference to Comcast Corporation or the National Operating Entities. Accordingly, Defendants' Answer is limited to specifically responding to allegations against "Comcast" as defined by Plaintiff.

## CLASS ACTION COMPLAINT

1.    Speed and access are key features of high-speed Internet service. Defendant entities (collectively, "Comcast" or "Defendant"), providers of Internet service to citizens of Illinois, advertise, market, and sell their high-speed Internet service as providing "the fastest Internet connection" and "unfettered access to all the content, services, and applications that the Internet has to offer." Comcast specifically represents that it provides the fastest possible access to "web applications" that are the most "data intensive" and that it "does not block access to any web sites or online applications, including peer-to-peer services." These and other similar statements by Comcast are patently false.

**ANSWER:**    Admitted only that "speed" and "access" might be  features of certain HSI service. The remaining allegations of this paragraph are denied.

2.    Comcast intentionally blocks its customers from using peer-to-peer ("P2P") file-sharing and other Internet applications, or otherwise impedes those applications, and it does so in a deceptive manner – by impersonating the computers of users attempting to share files.

Comcast forges what are known as "reset packets," making it appear as if they are coming from one of the computers attempting to file-share. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises her or her voice as one of the callers, says "talk to you later," and abruptly disconnects the call.

**ANSWER:**     Denied.

3.     Comcast's clandestine techniques are similar to those used by totalitarian governments to censor the use of the Internet. No doubt Comcast would characterize the behavior as illegal and malicious hacking if perpetrated by others on Comcast and its customers. Indeed, Comcast's customers would be justified in assuming that Comcast was protecting them from that sort of conduct, rather than subjecting them to it.

**ANSWER:**     Denied.

4.     Comcast's customers were not told that Comcast would block or otherwise impede P2P file-sharing or any other Internet applications. On the contrary, they were assured by Comcast that they would receive "unfettered access" to the Internet and its applications using the "fastest Internet connection." They never authorized Comcast to engage in practices contrary to these promises.

**ANSWER:**     Denied.

5.     As a result of Comcast's actions, Plaintiff and the other members of the Class paid for a promised service that they did not receive. Comcast's actions constitute deceptive trade practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("Illinois Consumer Fraud Act"), including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2 of the Illinois Deceptive Trade Practices Act, in the conduct of any trade or commerce, all of which actions by statute are deemed unlawful whether any person has in fact been misled, deceived, or damaged thereby. *See* 815 ILCS 505/2. The Illinois Deceptive Trade Practices Act provides, among other things, that a person engages in a deceptive trade practice when that person represents that the goods or services are of a particular standard, quality, or grade or that goods are a particular style or model if they are of another or advertises goods or services with intent not to sell them as advertised. *See* 815 ILCS 510/2 (a)(7) and (9), respectively. As defined in the Illinois Consumer Fraud Act, trade or commerce includes services such as Internet service. *See* 815 ILCS 505/1. Accordingly, Plaintiff, on behalf of himself, and those similarly situated, seeks all relief to which he is entitled, including equitable relief, actual damages, punitive damages, reasonable attorneys fees, filing fees and reasonable costs of suit. *See* 815 ILCS 505/10a(c).

**ANSWER:**     Denied.

## PARTIES

6.     Plaintiff, who is a resident of Cook County, Illinois and is a "consumer" within the meaning of 815 ILCS 505/1(e), brings this action on behalf of himself and all those similarly situated.     Plaintiff subscribed to Comcast's high-speed Internet service for a period of approximately eight (8) years beginning in 1999.

**ANSWER:**     Admitted in part, denied in part.  Admitted upon information and belief

that Plaintiff is an Illinois resident and subscribed to HSI service.  After reasonable investigation,

Comcast lacks knowledge or information sufficient to form a belief as to the truth or accuracy of

the remaining allegations of this paragraph, which are therefore denied.  By way of further

response, Comcast requested that Plaintiff's counsel confirm Plaintiff's account number, billing

address, and/or any other personally identifying information.  Plaintiff refused.

7.     Comcast of Chicago, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Admitted in part, denied in part.  Admitted that Comcast of Chicago, Inc.

is an Illinois corporation with a registered agent in Illinois.  The remaining allegations of this

paragraph contain conclusions of law to which no response is required.  To the extent a response

is required, the remaining allegations of this paragraph are denied.

8.     Comcast of Illinois I, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Admitted in part, denied in part.  Admitted that Comcast of Illinois I, Inc. is an Illinois corporation with a registered agent in Illinois.  The remaining allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, the remaining allegations of this paragraph are denied.

9.     Comcast of Illinois III, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Admitted in part, denied in part.  Admitted that Comcast of Illinois III, Inc. is an Illinois corporation with a registered agent in Illinois.  The remaining allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, the remaining allegations of this paragraph are denied.

10.     Comcast of Illinois IV, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Admitted in part, denied in part.  Admitted that Comcast of Illinois IV, Inc. is an Illinois corporation with a registered agent in Illinois.  The remaining allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, the remaining allegations of this paragraph are denied.

11.     Comcast of Illinois/Texas, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Denied.

12.     Comcast MO Express of Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Denied.


13.     Comcast of Northern Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Admitted in part, denied in part.   Admitted that Comcast of Northern Illinois, Inc. is an Illinois corporation with a registered agent in Illinois.   The remaining allegations of this paragraph contain conclusions of law to which no response is required.   To the extent a response is required, the remaining allegations of this paragraph are denied.


14.     Comcast Sound Communications, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Denied.


15.     Comcast of South Chicago, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**     Admitted in part, denied in part.   Admitted that Comcast of South Chicago, Inc. is an Illinois corporation with a registered agent in Illinois.   The remaining

allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, the remaining allegations of this paragraph are denied.

16.    Comcastic, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

**ANSWER:**    Denied.

17.    Defendants DOES 1 – 150 are persons or entities whose true names and affiliations are currently unknown to Plaintiff, and who therefore are sued under fictitious names. Plaintiff alleges that each of the fictitiously named Defendants is a domestic Illinois corporation. Plaintiff further alleges that each of the fictitiously named Defendants perpetrated some or all of the wrongful acts alleged herein.  Plaintiff will amend this Complaint to state the true names and affiliations of Defendants DOES 1 – 150 as soon as such information is ascertained.

**ANSWER:**    Denied as stated.    By way of further response, Comcast Cable Communications Holdings, Inc., Comcast Cable Communications, LLC, and Comcast Cable Communications Management, LLC, the national operating entities that created the HSI product, exclusively manage the HSI network, and nationally advertise the product, are organized under Delaware law and have offices in Pennsylvania.  These entities are required parties within the meaning of Federal Rule of Civil Procedure 19.

18.    The terms "Comcast" and "Defendants" as used herein, are defined to mean the Defendants named in Paragraphs 7 through 17 above.

**ANSWER:**    This paragraph contains no allegations of fact to which a response is required.   To the extent a response is required, any allegations in this paragraph are denied.

19.    The causes of action alleged herein arise out of Comcast's high-speed Internet service, trade practices, and advertising strategies originating and employed in Illinois.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

## JURISDICTION AND VENUE

20.    Jurisdiction over Comcast is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), Section 2-209((a)(7) (making or performance of any contract or promise substantially connected with this State), Section 2-209(6)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).  735 ILCS 5/2-209(a)(1), (a)(7), (b)(4), and (c).

**ANSWER:**    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of this paragraph are denied.

21.    The Court has subject matter jurisdiction over the action pursuant to 815 ILCS 505/2 because, as explained more fully herein, Comcast's actions violate the Illinois Consumer Fraud Act.

**ANSWER:**    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of this paragraph are denied.

22.    Venue is proper within the County pursuant to 735 ILCS 5/2-101 because the transaction or some part thereof out of which the cause of action arose occurred within this County.

**ANSWER:**    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of this paragraph are denied.

## FACTUAL ALLEGATIONS

23.    Comcast provides high-speed Internet services to the citizens of Illinois.

**ANSWER:**     Denied.  As set forth in the Introductory Statement, the National Operating

Entities created the HSI product, have exclusive control over and manage the HSI network, and

have exclusive control over the nationwide marketing or advertising associated with it.

24.     Fast download and upload speeds and unfettered access are key features of Internet service.  These features are especially important to consumers who download or upload large files.

**ANSWER:**     Admitted in part, denied in part.  Admitted only that "speed" and "access"

might be features of certain HSI service.   After reasonable investigation, Comcast lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining

allegations of this paragraph,  which are therefore denied.

25.     Comcast advertises, markets, and sells its high-speed Internet service on the express basis that it provides exceptionally fast and unfettered access to the Internet.

**ANSWER:**     Denied.  As set forth in the Introductory Statement, the National Operating

Entities created the HSI product, have exclusive control over and manage the HSI network, and

have exclusive control over the nationwide marketing or advertising associated with it.

26.     Regarding the speed of its Internet access, Comcast represents, among other things, the following: "[W]hen it comes to getting the fastest Internet connection, a lot of different services claim to be the fastest, but Comcast actually delivers."; "The speed that the digital cable Internet connection can provide blows away the speeds that most competing technologies can attain."; "Comcast's high speed Internet service provides anywhere from four to six times the speed that DSL based Internet access can provide!"; That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing," "Scorching," "Lightning-Fast," and "Way Faster Than DSL."

**ANSWER:**     Denied. As set forth in the Introductory Statement, the National Operating

Entities created the HSI product, have exclusive control over and manage the HSI network, and

have exclusive control over the nationwide marketing or advertising associated with it.

27.    Comcast represents that it provides the fastest speeds precisely for the applications that need it most — those that require large amounts of data to be uploaded and downloaded: "[Comcast] makes it possible for you to download even large files in just a few moments and to get onto sites such as gaming sites or virtual worlds."; "Comcast's high speed Internet also has the advantage of always being on and ready for use."; "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. The will be even more true as the Internet becomes an ever growing part of our lives.  The need for speed comes from the fact that many of the best Web applications are also the most data intensive.  That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web."; "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!"

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

28.    Comcast further represents that it does not block or slow any Internet applications, but rather provides "unfettered access to all the . . . applications the Internet has to offer." Comcast states that its service "can be used to open up the Internet, and all the potential that it holds, for your enjoyment.  With all of these features from Comcast, you have unbound access to all of the best aspects of the World Wide Web!"

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

29.    Contrary to its representations, Comcast blocks, delays, slows, or otherwise impedes Internet access for certain data-intensive Internet applications, such as P2P file sharing using BitTorrent, Gnutella, Lotus Notes, and possibly other applications.

**ANSWER:**    Denied.    As set forth in the Introductory Statement, the National Operating entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

30.    In early 2007, public interest organizations and consumers alleged that Comcast Corporation and its affiliates throughout the country (collectively, the "Comcast Entities") were engaging in these practices.  The Comcast Entities denied the allegations and stuck to their original representations by claiming that they did not block or otherwise impede access to the Internet for any applications.

**ANSWER:**    Admitted in part, denied in part.  Admitted only that, in 2007, certain third parties alleged that Comcast Corporation and the National Operating Entities were managing peer-to-peer traffic on its HSI network and Comcast Corporation and the National Operating Entities noted publicly that they sometimes used "reset packets" in order to do so.  The remaining allegations of this paragraph are denied as stated.

31.    Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether users' access to high-speed Internet service was being blocked by the Comcast Entities for certain applications.

**ANSWER:**    After reasonable investigation, Comcast lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations of this paragraph, which are therefore denied.

32.    The testing led to shocking results.  The Comcast Entities were blocking, delaying, slowing, or otherwise impeding Internet access for certain P2P applications, and were doing so in an outrageously deceptive manner, by impersonating the computers of users involved in file-sharing.  The Comcast Entities were forging what are known as "reset packets," making it appear as if they were coming from one of the computers attempting to file-share.  The reset packet instructed the recipient computer to stop transmitting data, thus causing the computers involved to stop uploading and downloading the shared files.

**ANSWER:**    Admitted in part, denied in part.  Admitted only that Comcast Corporation's National Operating Entities have noted publicly that they have used "reset packets" in order to manage certain peer-to-peer upload traffic on the HSI network.  The remaining allegations of this paragraph are denied as stated.

33.     Even after these results were made public, the Comcast Entities continued to deny their actions by stating on the company's website that "[o]ur customers enjoy unfettered access to all the content, services, and applications that the Internet has to offer."  The Comcast Entities further state that they do not: "[B]lock access to any Web site or applications, including BitTorrent.  Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOID applications like Vonage, and thousands of other applications online."

**ANSWER:**    Denied as stated.  The allegations of this paragraph appear to concern alleged statements that speak for themselves.  Any characterizations of them or their legal significance are specifically denied.

34.     Then, in public comments submitted to the Federal Communications Commission ("FCC") on February 12, 2008, the Comcast Entities finally admitted to "delaying" Internet access for certain P2P applications by generating forged reset packets that interrupted the connection between two computers attempting to share files.  According to the Comcast Entities, their efforts to delay certain file-sharing applications were actually an attempt to prevent service degradation resulting from what they characterized as excessive bandwidth congestion created by these file-sharing applications.  The Comcast Entities admitted that they had established pre-determined "congestion thresholds" that applied to the use of bandwidth in particular neighborhoods.  When a Comcast subscriber in a particular neighborhood attempted to share a file in an area in which he or she had exceeded the "congestion threshold," the Comcast Entities would send a forged reset packet that would terminate the connection between that subscriber and the computer with whom he or she was attempting to share files.

**ANSWER:**    Admitted in part, denied in part.  Admitted the Comcast Corporation's National Operating Entities have noted publicly that they have used "reset packets" in order to manage certain peer-to-peer upload traffic on its network.  By way of further response, those entities have noted publicly that if peer-to-peer protocols that have a history of congesting the network reach a preset level in an area, Comcast Corporation's National Operating Entities would issue instructions called "reset packets" in order to temporarily limit the number of new unidirectional uploads (i.e., uploads that occur when the subscriber is not also downloading) that those peer-to-peer protocols can initiate in that area until the congestion abates.  Comcast Corporation's National Operating Entities have noted publicly that they do not manage

downloads, do not manage bidirectional uploads (i.e., uploads that occur when the subscriber is also downloading), do not manage uploads that are already underway, and do not "block" even the peer-to-peer uploads that they do temporarily manage. The remaining allegations of this paragraph appear to concern alleged statements that speak for themselves. Any characterizations of them or their legal significance are specifically denied.

35.     Notwithstanding that the Comcast Entities admitted these facts in their comments to the FCC, they never disclosed to their subscribers or potential subscribers that they blocked, delayed, slowed, or otherwise impeded Internet access. On the contrary, the Comcast Entities continued to state that they provided unfettered access to the Internet using the fastest possible Internet connection.

**ANSWER:**    Denied.

36.     During all relevant times, Comcast has engaged and continues to engage in Illinois in the very same practices described in paragraphs 23 through 35 above.

**ANSWER:**    Denied. As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

37.     Plaintiff has lived in Illinois for his entire life (57 years). Plaintiff previously subscribed to Comcast's high-speed Internet service for a period of approximately eight (8) years beginning in 1999. He used his Internet connection for a wide range of uses.

**ANSWER:**    Admitted in part, denied in part. Admitted upon information and belief that Plaintiff is an Illinois resident and subscribed to HSI service. After reasonable investigation, Comcast lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations of this paragraph, which are therefore denied. By way of further response, Comcast requested that Plaintiff's counsel confirm Plaintiff's account number, billing address, and/or any other personally identifying information. Plaintiff refused.

38.    Plaintiff has experienced severe speed and content limitations with regard to various protocols and applications that involve the transfer of large amounts of data.

**ANSWER:**    After reasonable investigation, Comcast lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations of this paragraph, which are therefore denied.

39.    Plaintiff and the other Class members were part of the target audience to which Comcast directed the advertisements generally described in Paragraphs 25 through 28 above. Plaintiff and the other Class members viewed these and other advertisements in various media (television, print, radio, Internet, etc.) and relied on the representations contained therein to purchase monthly subscriptions to Comcast's high-speed Internet service.

**ANSWER:**    After reasonable investigation, Comcast lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations relating to what advertisements Plaintiff and other putative class members viewed, which allegations are therefore denied.  The remaining allegations of this paragraph are also denied.

40.    Plaintiff and the other Class members all subscribed to Comcast's high-speed Internet service at some point between June 5, 2005 and the present, and have paid all necessary subscription fees.  Comcast never notified Plaintiff or the other Class members that it would block, delay, slow, or otherwise impede the P2P file-sharing or other Internet applications.  On the contrary, both before and after they subscribed, Plaintiff and the other Class members were assured by Comcast that they would receive the fastest possible unfettered access to the Internet. Indeed, Plaintiff and the other Class members were inundated by Comcast with repeated representations that Comcast's high-speed Internet service provided fast and unfettered access to the Internet.  Plaintiff and the other Class members never authorized Defendant to block, delay, slow, or otherwise impede their access to the Internet for any applications.

**ANSWER:**    Denied.

41.    Plaintiff and the other Class members have suffered damage as a result of Comcast's conduct as described above.

**ANSWER:**    Denied.

## CLASS ACTION ALLEGATIONS

42.     The action is brought as a class action pursuant to 735 ILCS 5/2-801, *et seq*. and is properly maintainable as a class action as set forth below.

**ANSWER:**     Admitted in part, denied in part.  Admitted that Plaintiff has styled this action as a putative class action.  The remaining allegations of this paragraph are denied.

43.     The "Class" is defined as follows:  All citizens of Illinois who purchased or maintained high-speed Internet service from Comcast at any time between June 5, 2005 and the date that the Court certifies the class.  Specifically excluded from the Class are Comcast and all of its subsidiaries, parents, and other affiliates, all officers, directors, and employees of these entities, and all legal representatives, heirs, and assigns of these entities.  Also excluded are any judicial officers who preside over the action and any juror that participates in the lawsuit.

**ANSWER:**     This paragraph contains a mere description of a putative class and therefore no response is required.  To the extent a response is required, any allegations in this paragraph are denied.

44.     The Class is composed of thousands of citizens of Illinois who purchased Comcast's high-speed Internet service.  Accordingly, under 735 ILCS 5/2-801(1), joinder of all Class members would be impracticable.  The disposition of Plaintiff's and the other Class members' claims in a class action will provide substantial benefits to the parties and the Court. The Class is ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon Comcast's uniform conduct as described below.

**ANSWER:**     Denied.

45.     Defendant has acted in ways that affect all members of the proposed Class similarly.  Questions of fact and law are common to each member of the Class pursuant to 735 ILCS 5/2-801(2).  These common questions of law or fact include, but are not limited to, the following: whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute deception, fraud, false pretense, false promise or misrepresentation in connection with the sale of merchandise under the Illinois Consumer Fraud Act; whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a concealment of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act; whether Comcast's failure to inform its subscribers that it would not actually provide fast,

unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute an omission of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act; and whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a representation that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not or whether the foregoing statements made and disseminated by Comcast also constitute an advertisement of goods or services with intent not to sell them as advertised under the Illinois Consumer Fraud Act.

    **ANSWER:**   Denied.

    46.   Questions of law and fact that are common the Plaintiff and the Class predominate over question affecting only individual members pursuant to 735 ILCS 5/2-801(2). This action predominately concerns Defendants' actions, namely, Defendants' dissemination of advertisements that promised that their high-speed Internet services would be fast and unfettered, and Defendants' acts that undermined those promises.  Defendants' conduct towards Plaintiff and the Class was the same in this regard.  Further, the impact of Defendants' conduct on Plaintiff and the Class was also standard, that is, all Class members paid for services that they did not receive.

    **ANSWER:**   Denied.

    47.   Plaintiff is capable of fairly and adequately protecting the interests of the Class under 735 ILCS 5/2-801(3) because his claims are common to the Class and proof of those claims will prove the claims of absent Class members.  Plaintiff's interests are in harmony with the interests of other members of the Class, and none of Plaintiff's interests are adverse to those of other Class members.  Plaintiff intends to pursue this litigation vigorously, and he selected counsel experienced in complex litigation and class actions.

    **ANSWER:**   Denied.

    48.   This class action is an appropriate method for the fair and efficient adjudication of this action pursuant to 735 ILCS 5/2-801(4).  Adjudication of this action on a class-wide basis would secure economies of time, effort, and expense.  Defendants' actions towards Plaintiff and the Class members were similar, therefore, adjudication of the claims of each member of the Class would result in thousands of needlessly repetitive trials.  Further, the actual damages of each member of the Class is so small as to make adjudication of each claim on an individual basis inefficient.

    **ANSWER:**   Denied.

## COUNT I – MISREPRESENTATION OF MERCHANDISE

49.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 48 as though fully restated herein.

**ANSWER:**    Comcast incorporates the preceding paragraphs of this Answer as if set forth herein at length.

50.    Under Section 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an unlawful trade practice to use "deception, fraud, false pretense, false promise, or misrepresentation . . ." in connection with any sale of "merchandise" in Illinois.  Under Section 815 ILCS 505/1 of the Illinois Consumer Fraud Act, "merchandise" includes services such as Comcast's high-speed Internet service.

**ANSWER:**    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of this paragraph are denied.

51.    As set forth in paragraphs 1 through 48, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides the fastest and unfettered access to the Internet.  Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

52.    The foregoing representations, made and disseminated by Comcast, constitute deception, fraud, false pretense, false promise, and misrepresentation.  Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

53.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service.  Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements.  Plaintiff and the other Class members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

**ANSWER:**    Denied.

54.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

**ANSWER:**    Denied.

55.    As a direct and proximate result of the aforesaid misrepresentation of merchandise, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

**ANSWER:**    Denied.

56.    Accordingly, Comcast's actions are an unlawful trade practice under Section 56:8-2 of the Illinois Consumer Fraud Act, and Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

**ANSWER:**    Denied.

### COUNT II – CONCEALMENT OF A MATERIAL FACT

57.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 56 as though fully restated herein.

**ANSWER:**    Comcast incorporates the preceding paragraphs of this Answer as if set forth herein at length.

58.    Under 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an unlawful trade practice to conceal a material fact in connection with a sale of merchandise, including services, in Illinois.

**ANSWER:**    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of this paragraph are denied.

59.    As set forth in paragraphs 1 through 56, Comcast repeatedly represented in advertisements and other communications to Plaintiff and the other Class members that its high-speed Internet subscribers would receive fast access to the Internet, and that the access would be unfettered.  Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.  Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

60.    The foregoing conduct constitutes concealment of material facts by Comcast.  Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.  Comcast did not disclose these facts to Plaintiffs or the Class members.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

61.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its concealment of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service.  Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct.  Plaintiff and the other Class members have been damaged as a result of Comcast's conduct.

**ANSWER:**    Denied.


62.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

**ANSWER:**    Denied.


63.     As a direct and proximate result of the aforesaid concealment of a material fact, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

**ANSWER:**    Denied.


64.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

**ANSWER:**    Denied.


## COUNT III – OMISSION OF A MATERIAL FACT

65.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 64 as though fully restated herein.

**ANSWER:**    Comcast incorporates the preceding paragraphs of this Answer as if set forth herein at length.


66.     Section 815 ILCS 505/2 of the Illinois Consumer Fraud Act prohibits the omission of any material fact in connection with a sale of merchandise, including services, in Illinois.

**ANSWER:**    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of this paragraph are denied.

67.    As set forth in paragraphs 1 through 64 above, Comcast repeatedly represented in advertisements to Plaintiff and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet.  Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.  Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

68.    The foregoing conduct constitutes omission of material facts by Comcast. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.  Comcast did not disclose these facts to Plaintiffs or the Class members.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

69.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its omission of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service.  Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct.  Plaintiff and the other Class members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

**ANSWER:**    Denied.

70.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

**ANSWER:**    Denied.

71.     Plaintiff and the other Class members were injured when Comcast omitted these material facts, when in fact Comcast blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

**ANSWER:**    Denied.

72.     As a direct and proximate result of the aforesaid omissions of material facts, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

**ANSWER:**    Denied.

73.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

**ANSWER:**    Denied.

## COUNT IV – DECEPTIVE ADVERTISING

74.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 73 as though fully restated herein.

**ANSWER:**    Comcast incorporates the preceding paragraphs of this Answer as if set forth herein at length.

75.     The Illinois Consumer Fraud Act prohibits the use or employment of any practice described in Section 2 of the Illinois Deceptive Trade Practices Act.  *See* 815 ILCS 505/2.  The Illinois Deceptive Trade Practices Act provides, among other things, that a person engages in a deceptive trade practice when that person represents that the goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another or advertises goods or services with intent not to sell them as advertised.  *See* 815 ILCS 510/2 (a)(7) and (9), respectively.

**ANSWER:**    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of this paragraph are denied.

76.    As set forth in paragraphs 1 through 73, Comcast repeatedly represented in advertisements to Plaintiff and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet.  Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

77.    The foregoing statements, made and disseminated by Comcast, constitute representations that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not.  The foregoing statements made and disseminated by Comcast also constitute advertisements of goods or services with intent not to sell them as advertised.  Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

**ANSWER:**    Denied.  As set forth in the Introductory Statement, the National Operating Entities created the HSI product, have exclusive control over and manage the HSI network, and have exclusive control over the nationwide marketing or advertising associated with it.

78.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service.  Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements.  Accordingly, Plaintiff and the other Class members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

**ANSWER:**     Denied.

79.     This conduct constitutes deceptive advertising because speed and unfettered access to the Internet are the principal selling points of high-speed Internet service. Virtually all of Comcast's advertising addresses these two qualities.

**ANSWER:**     Denied.

80.     Plaintiff and the other Class Members were injured when Comcast, contrary to its advertisements, blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

**ANSWER:**     Denied.

81.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

**ANSWER:**     Denied.

82.     As a direct and proximate result of the aforesaid deceptive advertising, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

**ANSWER:**     Denied.

83.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

**ANSWER:**     Denied.

## COUNT V – CIVIL CONSPIRACY

84.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 83 as though fully restated herein.

**ANSWER:**    Comcast incorporates the preceding paragraphs of this Answer as if set forth herein at length.

85.    Defendants, each of them, conspired or agreed, as agents, each to the other, to engage in a conscious course of conduct to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling and in doing so, chose to commit unlawful acts in violation of the Illinois Consumer Fraud Act, as set forth herein.

**ANSWER:**    Denied.

86.    Defendants did, in fact, commit such unlawful acts pursuant to the conspiracy and knowingly conspired to continue conduct to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling in violation of the Illinois Consumer Fraud Act, as set forth herein.  Defendants acting as agents, each to the other, engaged in a course of deceitful advertising and promotion so as to continue to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling, while advertising and causing members of the consuming public, including Plaintiff and members of the Class herein, to be lured into a false sense of security believing that they were, among other things, receiving unfettered access to the Internet, when Defendants knew or should have known that they were not.  Defendants engaged in a common plan and scheme to conceal this knowledge from the public and to conceal the nature of the product they were selling.  Defendants, together with all other co-defendants herein, were engaged in a joint venture, enterprise or agency for the aforesaid purpose of deceit and by reason of their capacity as joint venturers, each in furtherance of the conspiracy as aforesaid, the heretofore mentioned acts, deeds, knowledge and omissions of said Defendants are imputable to all of the other Defendant joint tortfeasors, both jointly and severally.

**ANSWER:**    Denied.

87.    As a direct and proximate result of the aforesaid conspiracy, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

**ANSWER:**    Denied.

88.    Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

**ANSWER:**    Denied.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without assuming any burden of proof or persuasion that would not otherwise rest on it, Comcast asserts the following affirmative defenses.

1.    Plaintiff has failed to state a claim upon which relief may be granted.

2.    Plaintiff's claims are barred because he is a party to a valid and binding arbitration agreement.

3.    Plaintiff's claims are barred to the extent they are asserted against parties that are not proper parties to this action.  Comcast reserves the right to seek the dismissal of the claims against any such parties at a later stage in this proceeding, to seek the joinder of any necessary parties that the Plaintiff failed to join, and/or to seek the dismissal of this action in its entirety in the event any such necessary parties cannot be joined.

4.    Plaintiff's claims should be stayed pursuant to the primary jurisdiction doctrine during the pendency of the FCC's proceeding concerning the management of peer-to-peer traffic.

5.    Plaintiff's claims are barred under the doctrine of federal preemption, including but not limited to the doctrines of complete preemption, implied preemption, express preemption, field preemption and/or conflict preemption.

6.    Plaintiff's claims are barred for failure of consideration.

7.    Plaintiff's claims are barred for failure to mitigate his alleged damages.

8.    Plaintiff's claims are barred by the applicable statute of limitations and/or contractual limitations set forth in his Agreement for Residential Service.

9.    Plaintiff's claims are barred by the applicable statute of repose.

10.    Plaintiff's claims are barred under the doctrine of release.

11.    Plaintiff's claims are barred under the doctrine of laches.

12.    Plaintiff's claims are barred under the doctrine of unclean hands.

13.     Plaintiff's claims are barred under the doctrine of estoppel.

14.     Plaintiff's claims are barred under the doctrine of waiver.

15.     Plaintiff's claims are barred under the doctrine of accord and satisfaction.

16.     Plaintiff's claims are barred under the doctrine of voluntary payment.

17.     Plaintiff's claims are barred under the doctrine of mootness.

18.     Plaintiff's claims are barred under the doctrines of res judicata, merger and/or bar.

19.     Plaintiff's claims are barred under the doctrines of setoff and/or recoupment.

20.     Plaintiff's claims are barred because Plaintiff lacks standing to assert them.

21.     Plaintiff's claims are barred under the sophisticated user doctrine.


**WHEREFORE,** Comcast respectfully requests that the Court enter judgment in favor of Comcast and against Plaintiff on all claims and grant Comcast such other and further relief as the Court deems just and proper.


Respectfully Submitted,

Dated:  July 14, 2008

**/s/  Bradley J. Andreozzi**
Bradley J. Andreozzi (ARDC No. 6257334)
Justin O. Kay (ARDC No. 6286557)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
(312) 569-1173 (tel.)
(312) 569-3173 (fax)
Bradley.Andreozzi@dbr.com
Justin.Kay@dbr.com

*Counsel for Defendants*

Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets

Philadelphia, Pennsylvania 19103-6996
(215) 988-2700 (tel.)
(215) 988-2757 (fax)
Seamus.Duffy@dbr.com
Michael.McTigue@dbr.com
Michael.Daly@dbr.com

*Of counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Justin O. Kay, hereby certify that, on the date set forth below, I caused true and correct copies of the foregoing Answer to be served via first-class mail, postage prepaid, upon the following:

Kenneth J. Brennan                    August J. Matteis, Jr.
John A. Bruegger                      Brian Wienthal
SIMMONSCOOPER LLC                     GILBERT RANDOLPH LLP
707 Berkshire Blvd.                   1100 New York Avenue, NW
P.O. Box 521                          Suite 700
East Alton, IL 62024                  Washington, DC 20005

*Counsel for Plaintiff Roger Lis*     *Counsel for Plaintiff Roger Lis*

Dated: July 14, 2008                  **/s/ Justin O. Kay**
                                      Justin O. Kay