**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROGER LIS,<br><br>                    Plaintiff,<br><br>         v.<br><br>COMCAST OF CHICAGO, INC., *et al.*,<br><br>                    Defendants. | No. 1:08-CV-3984<br>Judge Zagel<br>Magistrate Judge Cox |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY PROCEEDINGS PENDING RULING ON TRANSFER AND
CONSOLIDATION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

## I.  INTRODUCTION

This action is one of at least seven putative class actions against Comcast Corporation, its national operating subsidiaries, specifically Comcast Cable Communications, LLC, Comcast Cable Communications Holdings, Inc. and Comcast Cable Management, LLC, and/or a number of its local franchise-holding subsidiaries (collectively, "Comcast") that challenge certain Comcast High-Speed Internet Service ("HSIS") network management practices.  Because these cases all involve the same predicate factual allegations and overlapping claims for relief brought on behalf of overlapping or identically defined putative classes, Comcast has petitioned the Judicial Panel on Multidistrict Litigation (the "Panel") to coordinate six federal actions for pretrial proceedings pursuant to 28 U.S.C. § 1407(a).  That motion was filed on August 14, 2008, and will be heard at the next meeting of the Panel, which will take place in late September, *i.e.*, less than two months from today.  *See* Motion to Transfer (attached hereto as Exhibit A).

Defendants respectfully request a brief stay of this action while the Panel considers the merits of that petition. Permitting further proceedings here, before a transfer by the Panel to another court, would needlessly waste this Court's and the parties' time and resources, and could result in a morass of inconsistent rulings. To promote judicial economy and avoid prejudice to the parties, Defendants respectfully request a brief stay pending the Panel's decision.[1]

## II.  BACKGROUND

This case, like the five others that are being presented to the Panel for coordination,[2] challenges certain Comcast HSIS network management practices. The gravamen of each of the actions is that Comcast allegedly slowed, delayed or otherwise impeded subscribers' peer-to-peer ("P2P") file sharing transmissions and allegedly failed to disclose that practice.[3] Many of the specific allegations, including allegations relating to class treatment, are similar if not the same.[4] Indeed, four of the six federal actions were commenced by the same firm, Gilbert Randolph LLP, and the complaints therein are nearly identical.[5]

---

[1]    By bringing the instant motion, Defendants do not waive their right to compel the Plaintiff or any other member of the putative class to submit these claims to separate arbitration proceedings as set forth in Defendants' pending Motion to Compel Arbitration (Doc. No. 8).

[2]    Those actions are: *Hart v. Comcast of Alameda, Inc. et al.,* No. C-07-06350 (N.D. Cal.)*, Leigh, et al. v. Comcast of California II, Inc., et al.,* No. 2:08-cv-04601 (C.D. Cal.), *Libonati v. Comcast Cablevision of Jersey City, Inc., et al.,* No. 1:08-cv-03518 (D.N.J.), *Tan v. Comcast Corp.,* No. 2:08-cv-02735 (E.D. Pa.) and *Topolski v. Comcast Corp., et al.,* No. 3:08-cv-00852 (D. Or.). Another action, *Sidner, et al. v. Comcast of the District, LLC,* No. 2008 CA 001180 B (D.C. Sup. Ct.), is currently pending in state court and is not the subject of Defendants' petition. The operative Complaints in all seven of these actions are attached hereto as part of Exhibit B.

[3]    *See Hart* Compl., ¶¶ 1, 2, 3, 4; *Leigh* First Am. Compl., ¶¶ 1, 2, 4, 5; *Libonati* Compl., ¶¶ 1, 2, 4, 5; *Lis* Compl., ¶¶ 1, 2, 4, 5; *Tan* Compl., ¶¶ 2, 3, 13, 14, 19, 21; *Topolski* Compl., ¶¶ 1, 2, 4, 5; *see also Sidner* First Am. Compl., ¶¶ 1, 2, 4, 5.

[4]    *See generally Hart* Compl.; *Leigh* First Am. Compl.; *Libonati* Compl.; *Lis* Compl.; *Tan* Compl.; *Topolski* Compl.; *see also Sidner* First Am. Compl.

[5]    *See generally Leigh* First Am. Compl., *Libonati* Compl., *Lis* Compl., *Topolski* Compl.; *see also Sidner* First Am. Compl.

Not surprisingly, these complaints advance analogous theories of liability, such as alleged violations of consumer protections statutes,[6] seek substantially similar relief,[7] and request the certification of overlapping single-state or nationwide classes of subscribers who received Comcast's HSIS service.[8]  These cases are all in their infancy; no class has been certified or considered for certification and no merits or class certification discovery has been conducted. Indeed, with the exception of the issuance of a temporary stay of proceedings pursuant to the primary jurisdiction doctrine, no court has taken any substantive action in any of these cases. And in this case in particular, the only currently pending motion is one filed by **Defendants**,[9] specifically a Motion to Compel Arbitration and Stay Litigation (Doc. No. 8).[10]

---

[6]     *See Hart* Compl., Counts 3-7; *Leigh* First Am. Compl., Counts 1-11; *Libonati* Compl., Counts 1-4, *Lis* Compl., Counts 1-4; *Topolski* Compl., Counts 1, 3, 5, 6; *see also Sidner* First Am. Compl., Counts 1-5.  One action, *Tan*, asserts a claim for common law fraud instead.  *See* Tan Compl., Count 4.

[7]     *See Hart* Compl., Prayer for Relief (seeking injunctive relief; restitution; disgorgement; actual, statutory, punitive and exemplary damages; attorney's fees; costs); *Leigh* First Am. Compl., Prayer for Relief (seeking injunctive relief; restitution; attorney's fees; costs; and reserving the right to seek actual and punitive damages); *Libonati* Compl., Prayer for Relief (seeking injunctive relief; restitution; compensatory, treble and punitive damages; attorney's fees; interest; costs); *Lis* Compl., Prayer for Relief (seeking injunctive relief; compensatory and punitive damages; attorney's fees; interest; costs); *Tan* Compl., Prayer for Relief (seeking declaratory and injunctive relief; restitution; disgorgement; attorney's fees; costs); *Topolski* Compl., Prayer for Relief (seeking injunctive relief; restitution; compensatory, statutory, actual punitive and treble damages; attorney's fees; interest; costs); *see also Sidner* First Am. Compl., Prayer for Relief (seeking injunctive relief; compensatory, statutory, punitive and treble damages; attorney's fees, interest; costs).

[8]     Two of the Complaints seek certification of national classes, *see Tan* Compl., ¶ 23; *Topolski* Compl., ¶ 37; and two seek certification of classes of California residents, *Hart* Compl., ¶ 30; *Leigh* First Am. Compl., ¶ 45.  The others three Complaints seek certification of single state classes in Illinois, *Lis* ¶ 43, New Jersey, *Libonati* Compl. ¶ 39, and the District of Columbia, *Sidner* First Am. Compl. ¶ 32.

[9]     Defendants promptly filed that motion in order to avoid any possible argument that they had waived their right to do so due to the passage of time.  Defendants believe, however, that briefing and resolution of that motion (like any subsequently filed motions) should wait until after these actions are transferred and consolidated.

[10]     Counsel for Plaintiff has indicated that they intend to file a motion to remand in this case and possibly others.  There is, however, no deadline for moving to remand based on a perceived lack of jurisdiction.  And, as noted below, courts routinely stay litigation pending a decision by the JPML even when, unlike this case, a remand motion is already pending.  *See infra.*

Because litigating these cases separately would require the parties to engage in overlapping nationwide discovery and would require several courts to consider duplicative pretrial motions, Comcast has petitioned the Panel to transfer of all of these actions to a single court for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See In re Comcast Network Management Litigation*, Motion for Transfer dated August 14, 2008 (Ex. A).

If the Panel transfers this case to another court for coordinated pretrial proceedings, the transferee court will be responsible for resolving pretrial motions and presiding over discovery, and thus will address all the same issues that this Court would address if the case were to go forward here. To prevent such duplication of efforts and the possibility of conflicting rulings, and to promote judicial economy and avoid prejudice to the parties, Defendants have filed this motion for a temporary stay.

### III.  ARGUMENT

#### A.    This Court Has The Authority To Stay This Action Pending The Panel's Ruling

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). *Accord Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003); *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983); *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005); 7B C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1792, at 10 (3d ed. 2005) ("When similar actions, either class or individual, are proceeding before several courts, one or more of the tribunals may stay the proceeding before it pending the outcome of the other action."); Federal Judicial Center, MANUAL FOR COMPLEX

---

Moreover, allowing one court to make one coordinated decision on jurisdictional issues makes sense, as the alleged jurisdictional defects to be raised will be similar if not identical.

LITIGATION § 20.14, at 228 (4th ed. 2006) ("In appropriate cases, a judge may order an action stayed pending resolution of a related case in a federal court."). Accordingly, this Court has the inherent authority to stay this case pending the Panel's decision.

**B.      A Temporary Stay Of This Action Is Appropriate Pending The Panel's Ruling**

"Courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998). A stay is particularly appropriate in this situation because the very "purpose of such [MDL] transfers is to further judicial economy and to eliminate the potential for conflicting pretrial rulings." *Id.* at 809; *see also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("[c]onsistency as well as economy is thus served" by resolution of common issues by one transferee court); *In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51-52 (2d Cir. 1978); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997); *In re Columbia Univ. Patent Litig.,* 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004) (finding the benefit of an MDL is to place all related actions before one judge who can structure pretrial proceedings to consider all parties' needs while ensuring that duplicate activity does not occur).

Indeed, "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers*, 980 F. Supp. at 1362.[11]

---

[11]      *See also Hertz Corp. v. The Gator Corp.*, 250 F. Supp. 421 (D.N.J. 2003); *Moore v. Wyeth-Ayerst Labs.*, 236 F. Supp. 2d 509, 511 (D. Md. 2002); *Gonzalez v. Am. Home Prods. Corp.*, 223 F. Supp. 2d 803 (S.D. Tex. 2002); *Smith v. Mail Boxes, Etc., Inc.*, 191 F. Supp. 2d 1155 (E.D. Cal. 2002); *Bd. of Trs. of the Teachers' Ret. Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 900 (N.D. Ill. 2002); *Medical Soc'y v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582 (D. Md. 2001); *Weinke v. Microsoft Corp.*, 84 F. Supp. 2d 989 (E.D. Wis. 2000); *Kohl v. Am. Home Prods. Corp.*, 78 F. Supp. 2d 885 (W.D. Ark. 1999); *Brault v. Merck & Co., Inc.*, No. 06-2039, 2006 WL 3924223 (S.D. Cal. Nov. 7, 2006); *Nekritz v. Canary Capital Partners, LLC*, No. 03-5081,

At least one court has ordered a stay under these circumstances *sua sponte*. *See Correa-Rodriguez v. Bridgestone/Firestone, Inc.*, No. 00-3805, slip op. (S.D. Fla., Oct. 19, 2000) (attached hereto as Exhibit C).

Factors relevant to whether a stay should be ordered include: (1) the judicial resources saved by avoiding duplicative litigation; (2) potential prejudice to the non-moving party; and (3) hardship to the moving party if a stay is not granted. *See, e.g., Rivers,* 980 F. Supp. at 1360. Here, those factors weigh heavily in favor of issuing a temporary stay pending transfer.

### 1.    A Stay Will Conserve Judicial Resources

Given the common issues of fact and law presented, these cases, are well-suited for transfer and coordination. Coordinated proceedings would avoid the unnecessary expenditure of judicial resources to address issues common to multiple actions and would prevent inconsistent rulings on common issues in different cases. *See* Motion for Transfer (Ex. A). The Panel therefore is likely to transfer this action; indeed, the Panel has previously ordered the coordination of multiple actions when plaintiffs in different jurisdictions challenge a company's advertising and sales practices. *See In re Webloyalty.com, Inc.,* 474 F. Supp. 2d 1353 (J.P.M.L. 2007) (consolidating four putative class actions challenging Webloyalty.com's practices and allegedly unauthorized credit card charges); *In re M3Power Razor Sys. Mktg. & Sales Practices Litig.,* 398 F. Supp. 2d 1363 (J.P.M.L. 2005) (consolidating three putative class actions challenging Gillette's representations regarding its M3Power Razor System); *In re Sears,*

---

2004 WL 1462035, at *2 (D.N.J. Jan. 12, 2004) ("An immediate stay will permit the most efficient possible use of the courts' and the parties' resources."); *Mailblocks, Inc. v. Spam Arrest, LLC*, No. 03-0077, 2003 WL 23325432 (W.D. Wash. June 9, 2003); *Republic of Venezuela ex rel. Garrido v. Philip Morris Cos.*, No. 99-0586, 1999 WL 33911677 (S.D. Fla. Apr. 28, 1999); *Am. Seafood, Inc. v. Magnolia Processing, Inc.*, Nos. 92-1030, 92-1086, 1992 WL 102762 (E.D. Pa. May 7, 1992); *Arthur-Magna, Inc. v. Del-Val Fin. Corp.*, No. 90-4378, 1991 WL 13725 (D.N.J. Feb. 1, 1991).

*Roebuck & Co.*, 381 F. Supp. 2d 1383 (J.P.M.L. 2005) (consolidating six actions challenging Sears' marketing and sales practices). If a transfer of this case takes place *after* substantial pretrial proceedings have gone forward here, "this Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers*, 980 F. Supp. at 1360. Duplicative effort by the transferee judge also will result, for "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Id.* at 1360-61.

Conflicting rulings among the cases also might result absent a stay. These cases may present a number of motions, potentially including motions to compel arbitration or to dismiss by the defendants, motions to remand or for class certification by the plaintiff, and summary judgment motions just to name a few. Some of these motions will raise complex issues of federal jurisdiction, preemption and primary jurisdiction with which the transferee court can more efficiently familiarize itself, and then apply the same rules consistently in all of the actions, avoiding conflicting decisions. *See, e.g., In re Bridgestone/Firestone, Inc.*, No. 1373, 2000 WL 33416573, at *2 (J.P.M.L. Oct. 24, 2000) ("jurisdictional and remand motions can be presented to and decided by the transferee judge"); *Bd. of Trs. of the Teachers' Ret. Sys.,* 244 F. Supp. 2d at 902 ("[A] court may stay proceedings even where subject matter jurisdiction is uncertain."); *Hertz Corp.*, 250 F. Supp. 2d at 427 (noting that denying a stay would potentially result in "conflicting decisions by this Court and the transferee court . . . thereby decreasing a primary benefit of consolidation, namely consistent rulings on important pretrial legal issues."); *Hardin v. Merck & Co., Inc.*, No. 07-0070, 2007 WL 1056790, at *2 (N.D. Cal. Apr. 5, 2007) ("[D]eference to the MDL court for resolution of a motion to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system.").

Indeed, this Court has done just that in another case, staying litigation pending a decision by the Panel despite the pendency of a motion to remand. *See Johnson v. AMR Corp.*, No. 95-7659, 1996 WL 164415, at *3 (N.D. Ill. Apr. 3, 1996) (Zagel, J.). Your Honor reasoned in that case that the best course to follow was to refrain from further action in view of the obvious benefits and rewards that would be realized upon consolidation:

> But is the MDL's authority to transfer these cases not impeded by the jurisdictional objections currently pending before me? No.... Sending these cases to the MDL is not mandatory. But the benefits of transferring them to the MDL—the body established by Congress specifically to ameliorate the duplicative litigation and the valuable waste of judicial resources—are obvious: "Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course." The rewards of this approach are consistency and economy.... Since the MDL will soon be looking at the forest as well as the trees, the best course is to postpone ruling on the present motions.... If the cases are transferred, it is far better for Judge Erwin to resolve the jurisdictional question.

*Id.* at **3-4 (citing *In re Ivy*, 901 F.2d at 9 (additional citations omitted)).

Moreover, rulings in the courts in which the actions now are pending, including this Court, may be vacated after a transfer. "[T]ransferee judges have been known to vacate or modify previous rulings of the transferor judge." *Rivers*, 980 F. Supp. at 1361 (citing cases). "[T]he time and energy that this Court would devote to any rulings it might make . . . could be for naught if this action is transferred to another court and that court modifies or vacates any of this Court's orders." *Id.* Judicial economy thus counsels strongly against a substantial investment of this Court's time in pretrial proceedings before the Panel decides whether to transfer this action to another court.

### 2.    A Stay Will Prevent Prejudice To All Parties

Duplicative litigation wastes the parties' resources as well.  Absent a temporary stay, the parties will litigate complex issues before this Court, and perhaps in the courts where the other actions are pending, even though the cases in all likelihood will be transferred.  The same issues may then be re-litigated in the transferee court.  A temporary stay can alleviate such a waste of effort and resources.  *See, e.g.*, *Am. Seafood,* 1992 WL 102762, at *2 ("[D]uplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of the stay.").

The same is true of discovery.  Given that the allegations in all of these complaints are notably similar, discovery in this action would overlap substantially with discovery in the others.  If discovery proceeds here, concurrently with discovery in those cases, the parties will duplicate significant efforts.  *Rivers*, 980 F. Supp. at 1362.  By contrast, a stay followed by multidistrict coordination would enable the parties to propound and respond to coordinated sets of comprehensive discovery requests (should the Plaintiffs be allowed to litigate at all, rather than abide by their agreements to arbitrate).  Thus, the Court should stay these proceedings pending receipt of the Panel's decision on the motion for transfer and consolidation.

Should this case go forward while the Panel is considering the motion, either or both sides may be prejudiced by inconsistent rulings on significant issues common to all of the cases, several of which are listed above.  To avoid such prejudice, courts often stay proceedings in anticipation of the possibility that those issues will be addressed by the transferee court selected by the Panel.  *See In re Bridgestone/Firestone, Inc.,* 2000 WL 33416573, at *2; *see also In re Ivy*, 901 F.2d at 9; *Weinke*, 84 F. Supp. 2d at 989-90 (staying action pending MDL ruling despite remand motion); *Calder v. A.O. Smith Corp.*, No. 04-1481, 2004 WL 1469370 (D.

- 9 -

Minn. June 1, 2004) (staying defendant's motion to dismiss pending Panel's decision); *Falgoust v. Microsoft Corp.,* No. 00-0779, 2000 WL 462919, at *2 (E.D. La. Apr. 19, 2000*) (staying action in deference to pending coordination motion, notwithstanding the filing of a motion to remand to state court); MANUAL FOR COMPLEX LITIGATION, *supra,* § 20.14, at 228.

### 3.    A Stay Will Not Prejudice Plaintiff

"[P]laintiffs will not be substantially prejudiced by staying this action pending the decision of the JPML. The stay which the Court orders will only be in effect until the JPML issues its decision. Therefore, there will be no extended delay in the commencement of discovery." *Am. Seafood,* 1992 WL 102762, at *1; *see also Aikins v. Microsoft Corp.*, No. 00-0242, 2000 WL 310391, at *1 (E.D. La. Mar. 24, 2000) ("Plaintiffs have failed to show any significant prejudice they would suffer, beyond the slight delay pending the JPML decision"); *Republic of Venezuela*, 1999 WL 33911677, at *1 ("[U]pon consideration of what effect a brief stay may have on [plaintiff], the Court finds that Plaintiff will not be prejudiced by the granting of a stay pending the JPML's decision.").

A brief stay will not impose any substantial hardship upon the plaintiff. The Complaint seeks only economic and injunctive relief; no personal injury is involved. The gravamen of these actions is that each subscriber in the putative classes paid for a service that was not as advertised. Whatever their merits, those claims present no emergency requiring expedited discovery or trial. There is no indication any evidence or witnesses would be lost during a brief stay. In short, nothing in the complaints would suggest significant prejudice – indeed, any prejudice – from a brief stay of this action. Indeed, transfer and coordination in a single court is likely to result, in the long run, in a faster resolution, and quicker and more efficient discovery, should the cases proceed to discovery.

And assuming for the sake of argument that plaintiff could identify some actual prejudice that might result from a brief stay, any such minimal prejudice would clearly be offset by the obvious benefits of coordinated proceedings.  *See, e.g.*, *Rivers*, 980 F. Supp. at 1362, n.5 ("[E]ven if a temporary stay could be characterized as a delay that would be prejudicial . . . there are still considerations of judicial economy that outweigh any prejudice."); *Am. Seafood,* 1992 WL 102762, at *2 ("[A]ny prejudice to the plaintiffs is clearly outweighed by the considerations of judicial economy and possible prejudice to the defendants."); *Arthur-Magna,* 1991 WL 13725, at *1 ("[E]ven if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay").

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request a temporary stay of this action until the Panel determines whether this action should be transferred to another court and coordinated there with other substantially identical actions for pretrial purposes.

Respectfully submitted,

Dated:  August 15, 2008

**/s/ Bradley J. Andreozzi**
Bradley J. Andreozzi (ARDC No. 6257334)
Justin O. Kay (ARDC No. 6286557)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
(312) 569-1173 (tel.)
(312) 569-3173 (fax)
Bradley.Andreozzi@dbr.com
Justin.Kay@dbr.com

*Counsel for Defendants*

Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
(215) 988-2700 (tel.)
(215) 988-2757 (fax)
Seamus.Duffy@dbr.com
Michael.McTigue@dbr.com
Michael.Daly@dbr.com

*Of Counsel for Defendants*

# EXHIBIT A

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re Comcast Network Management Litig.** | **MDL Docket No._____** |

**MOTION FOR TRANSFER, COORDINATION AND CONSOLIDATION**

Defendants Comcast Corporation, its national operating subsidiaries,[1] and a number of its

local franchise-holding subsidiaries,[2] all collectively referred to herein as "Defendants,"[3]

---

[1]    Comcast Cable Communications, LLC, Comcast Cable Communications Holdings, Inc. and Comcast Cable Management, LLC.

[2]    Comcast of California II, Inc.; Comcast of California III, Inc.; Comcast of California V, Inc.; Comcast of California VI, Inc.; Comcast of California IX, Inc.; Comcast of California X, Inc.; Comcast of California XII, Inc.; Comcast of Alameda, Inc.; Comcast of California XIII, Inc.; Comcast of Fresno, Inc.; Comcast of Marin I, Inc.; Comcast of Marin II, Inc.; Comcast of Northern California I, Inc.; Comcast of Northern California II, Inc.; Comcast of Sacramento I, LLC; Comcast of Sacramento II, LLC; Comcast of San Leandro, Inc.; Comcast of Sierra Valleys, Inc.; Comcast Cablevision of Jersey City, Inc.; Comcast Cablevision of Meadowlands, Inc.; Comcast of Hopewell Valley, Inc.; Comcast of New Jersey, LLC; Comcast of Chicago, Inc.; Comcast of Illinois I, Inc.; Comcast of Illinois III, Inc.; Comcast of Illinois IV, Inc.; Comcast of Illinois/Texas, Inc.; Comcast MO Express of Illinois, Inc.; Comcast Sound Communications, Inc.; and Comcast of South Chicago, Inc.  Before being named as defendants: (i) Comcast of Jersey City, Inc. was re-domiciled as Comcast of Jersey City, LLC; (ii) Comcast Cablevision of Meadowlands, Inc. was re-domiciled as Comcast Cablevision of Meadowlands, LLC; (iii) Comcast of Illinois/Texas, Inc. was re-domiciled and then merged into Comcast Indiana/Michigan/Texas LP; (iv) Comcast MO Express of Illinois, Inc. merged into Comcast MO Telecommunications Corp.; and (v) Comcast Sound Communications, Inc. merged into Comcast Programming Holdings, Inc.

[3]    "Comcastic, Inc." and American Cellular Network Corporation were also named in the *Lis* and *Libonati* actions, respectively.  Comcastic, Inc. is not, however, an affiliate or subsidiary

(continued…)

respectfully move this Panel pursuant to 28 U.S.C. § 1407 for an Order transferring, coordinating and consolidating the actions listed on the attached Schedule of Actions for all pretrial proceedings.  In support of this Motion, Defendants state the following:

1.      To date, Defendants have been named in seven putative class actions challenging the propriety of Comcast's network management practices, six of which are currently pending in federal court (the "Actions").[4]

2.      The first-filed of the Actions, *Hart v. Comcast of Alameda, Inc. et al.*, No. 07-6350 (N.D. Cal.) (assigned to the Honorable Judge Phyllis J. Hamilton), was filed on November 15, 2007 by the Lexington Law Group, LLP on behalf of a putative class of Comcast's California subscribers.  It was filed in California state court and was subsequently removed to federal court. A copy of the *Hart* Complaint is attached hereto as Exhibit A.  A substantially similar action, *Tan v. Comcast Corp.*, No. 2:08-cv-02735 (E.D. Pa.) (assigned to the Honorable Legrome D. Davis), was filed on June 12, 2008 by a different firm, Reese Richman LLP, against Comcast Corporation in the United States District Court for the Eastern District of Pennsylvania on behalf of an overlapping putative class of Comcast subscribers nationwide.   A copy of the *Tan* Complaint is attached hereto as Exhibit B.

3.      To date, five other actions have been filed in state and federal courts, four of which currently pending in federal court: *Lis v. Comcast of Chicago Corp. et al*, No. 08-3984 (N.D. Ill.) (filed June 5, 2008) (assigned to the Honorable James B. Zagel); *Libonati v. Comcast*

---

(..continued)

of Comcast Corporation.  Comcast Cellular Corporation was but no longer is, as it merged into American Cellular Network Corporation.  Neither entity is represented by undersigned counsel.

[4]      A seventh action currently pending in state court, *Sidner v. Comcast of the District LLC,* No. 2008 CA-0001180-B (D.C. Super. Ct.), was also brought by the same firm that brought the *Lis*, *Libonati*, *Leigh* and *Topolski* actions.

*Cablevision of Jersey City, Inc., et al.*, No. 08-3518 (D.N.J.) (filed June 5, 2008) (assigned to the Honorable Joseph E. Irenas); *Leigh v. Comcast of California II, Inc.*, *et al.*, No. 08-4601 (C.D. Cal.) (filed June 5, 2008) (assigned to the Honorable S. James Otero); *Topolski v. Comcast Corp. et al.*, No. 08-852 (D. Or.) (filed July 18, 2008) (assigned to the Honorable Magistrate Judge Paul J. Papak); *see also Sidner v. Comcast of the District LLC,* No. 2008 CA-001180-B (D.C. Super. Ct.) (assigned to the Honorable Jennifer Anderson).  These actions were filed by the same firm, specifically Gilbert Randolph LLP.  The *Topolski* action was filed in federal court on behalf of an overlapping putative class of Comcast subscribers nationwide.  The *Lis*, *Libonati* and *Leigh* actions were filed in state court in Illinois, New Jersey and California, respectively, on behalf of putative classes of Comcast subscribers in those states.  Those three actions were subsequently removed to federal court.  The *Sidner* action is, for the time being, still pending in state court.  Copies of the operative pleadings in *Lis*, *Libonati*, *Leigh*, and *Topolski* are attached hereto as Exhibits C, D, E and F, respectively.

4.    The gravamen of each of the Actions is that Comcast allegedly slowed, delayed, or otherwise impeded peer-to-peer ("P2P") transmissions sent using its broadband high-speed Internet service ("HSIS") and allegedly failed to disclose that alleged practice to its subscribers. *See* Hart Compl. ¶¶ 1, 2, 3, 4; (Ex. A); Tan Compl. ¶¶ 2, 3 13, 14, 19, 21 (Ex. B); *Lis* Compl. ¶¶ 1, 2, 4, 5 (Ex. C); *Libonati* Compl. ¶¶ 1, 2, 4, 5 (Ex. D); *Leigh* Am. Compl. ¶¶ 1, 2, 4, 5 (Ex. E); *Topolski* Compl. ¶¶ 1, 2, 4, 5 (Ex. F).

5.    The operative complaints in the Actions contain many allegations that are similar, *see generally Hart* Compl.; *Tan* Compl., and in many instances are identical, *see generally Lis*

Compl., *Libonati* Compl.; *Leigh* Am. Compl.; *Topolski* Compl., all of which arise from the same set of alleged predicate facts.[5]

6.      In addition, the putative classes that the Actions purport to represent include overlapping nationwide classes, *see Tan* Compl. ¶ 23; *Topolski* Compl. ¶ 37, overlapping California classes, *see Hart* Compl. ¶ 30; *Leigh* Am. Compl. ¶ 45, and single state classes in Illinois and New Jersey that are subsumed within the nationwide classes in *Tan* and *Topolski*, *see Lis* Compl. ¶ 43; *Libonati* Compl. ¶ 39.

7.      Not surprisingly, the Actions all assert similar claims for relief, including claims for violation of consumer protection statutes, *see Hart* Compl., Counts 3-7; *Lis* Compl., Counts 1-4; *Libonati* Compl., Counts 1-4; *Leigh* Am. Compl., Counts 1-11; *Topolski* Compl., Counts 1, 3, 5, 6, contractual and quasi-contractual claims, *see* Hart Compl., Counts 1, 2; Tan Compl., Counts 2, 3, 5; and violation of the federal Computer Fraud and Abuse Act, *see* Hart Compl., Count 6; Tan Compl., Count 1.

8.      The Actions also contain substantially similar if not identical prayers for relief, including prayers for injunctive relief, *see Hart* Compl. at 19; *Tan* Compl. at 13; *Lis* Compl. at 23; *Libonati* Compl. at 21; *Leigh* Am. Compl. at 28; *Topolski* Compl. at 24, prayers for compensatory damages, *see Hart* Compl. at 20; *Tan* Compl. at 23; *Lis* Compl. at 23; *Libonati* Compl. at 21; *Topolski* Compl. at 24, prayers for restitution, *see Hart* Compl. at 20; *Tan* Compl. at 13; *Leigh* Am. Compl. at 28, prayers for disgorgement, *see Hart* Compl. at 20; *Tan* Compl. at 12; *Libonati* Compl. at 22; *Topolski* Compl. at 25, and prayers for punitive damages, *see Hart* Compl. at 20; *Tan* Compl. at 13; *Lis* Compl. at 23; *Libonati* Compl. at 21; *Topolski* Compl. at 24.

---

[5]      Defendants do ***not*** concede that individual subscribers' experiences were in fact similar. On the contrary, subscribers' experiences and expectations would have varied dramatically.
(continued…)

9.    With the possible exception of the California-only actions brought by California subscribers,[6] all of the Actions implicate the enforceability of the arbitration agreement contained in the Comcast Agreement for Residential services, pursuant to which subscribers who have not validly opted out of the agreement must resolve their claims through individual arbitrations.  That agreement effects not only the ability of certain putative class representatives to file suit in court, but also whether the Actions are amenable to class treatment and, if they are, the size and scope of the putative class to be certified.

10.    In short, the Actions allege the same operative facts, advance similar claims, and request the same relief, all on behalf of parallel or overlapping putative classes of subscribers, therefore satisfying Section 1407's requirements for transfer, coordination and consolidation.

11.    Any similarly-pleaded "tag-along" actions would satisfy Section 1407's requirements for transfer, coordination and consolidation as well.

12.    Transfer, coordination and consolidation for pretrial purposes of all the federal court actions would preserve the parties' and the courts' resources and would prevent the prejudice that would result from conflicting judicial decisions.  All of the Actions are in their infancy; no class has been certified, no class has been considered for certification, no merits discovery has been conducted, no class certification discovery has been conducted, and no other substantial pretrial proceedings have taken place in the Actions.  Indeed, the only pending motions are ones filed by the Defendants, specifically a motion for judgment on the pleadings (in *Hart*), two motions to compel arbitration (in *Lis* and *Libonati*), and a motion to join required

---

(..continued)
Defendants simply note that the ***pleadings***, many of which were drafted by the same attorneys, or were apparently cut and pasted from complaints in earlier-filed actions, ***allege*** similar facts.

[6]    Comcast's arbitration agreement provides at present that it will not be enforced against its California subscribers.

parties (in *Leigh*).  And in *Tan* and *Topolski*, the Defendants have yet to even respond to the Plaintiffs' Complaints.

13.　　Defendants respectfully suggest that these actions are appropriate for transfer to, and coordination and consolidation in, the United States District Court for the Northern District of Illinois, which is geographically convenient for all parties.  The Northern District of Illinois is centrally located among the Actions, the witnesses, the evidence, the parties and their counsel, which are currently dispersed in multiple jurisdictions in multiple time zones.

14.　　Defendants further respectfully suggest that these Actions be assigned to the Honorable Judge James B. Zagel of the United States District Court for the Northern District of Illinois.  Judge Zagel is currently presiding over *Lis*, one of the Actions that is the subject of this Motion, and has experience presiding over complex consumer-oriented multidistrict litigations. *See, e.g.*, *In re Mortgage Escrow Deposit Litigation*, MDL No. 899 (transferring, coordinating and consolidating 75 distinct consumer class actions and assigning them to Judge Zagel).

15.　　In addition, Judge Zagel is one of only two judges (the other being the Honorable Judge Joseph E. Irenas in the United States District Court for the District of New Jersey) who currently has a Motion to Compel Arbitration pending in his or her Action.  Although those motions are presently directed at the named Plaintiffs in the *Lis* and *Libonati* actions, the presence of an arbitration agreement in the parties' contract will have a profound effect not only on the ability of certain named plaintiffs to bring their claims in court, but also the propriety of class certification and the size and scope of any class that could be certified, especially in the two putative nationwide classes sought in *Tan* and *Topolski*.  Thus, Judge Zagel is one of only two judges who already has before him all of the relevant claims ***and defenses*** in this dispute.

Wherefore, Defendants respectfully request that the Panel enter an Order transferring the federal Actions listed in paragraphs two through four of this Motion, and on the attached Schedule of Actions, to a single court for coordinated and consolidated pretrial proceedings. Defendants respectfully request oral argument on this Motion.

Dated: August 14, 2008

/s/  **Seamus C. Duffy**
Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
Telephone: 215-988-2700
Facsimile: 215-988-2757

*Counsel for Defendants*
*Comcast Corporation,*
*Comcast Cable Comms., LLC,*
*Comcast Cable Comms. Holdings, Inc.,*
*Comcast Cable Management, LLC,*
*Comcast of California II, Inc.,*
*Comcast of California III, Inc.,*
*Comcast of California V, Inc.,*
*Comcast of California VI, Inc.,*
*Comcast of California IX, Inc.,*
*Comcast of California X, Inc.,*
*Comcast of California XII, Inc.,*
*Comcast of Alameda, Inc.,*
*Comcast of California XIII, Inc.,*
*Comcast of Fresno, Inc.,*
*Comcast of Marin I, Inc.,*
*Comcast of Marin IO, Inc.,*
*Comcast of Northern California I, Inc.,*
*Comcast of Northern California II, Inc.,*
*Comcast of Sacramento I, LLC,*
*Comcast of Sacramento Ii, LLC,*
*Comcast of San Leandro, Inc.,*
*Comcast of Sierra Valleys, Inc.,*
*Comcast Cablevision of Jersey City, LLC,*
*Comcast Cablevision of Meadowlands, LLC,*
*Comcast of Hopewell Valley, Inc.,*
*Comcast of New Jersey, LLC,*
*Comcast of Chicago, Inc.,*
*Comcast of Illinois I, Inc.,*
*Comcast of Illinois III, Inc.,*
*Comcast of Illinois IV, Inc.,*
*Comcast of Illinois/Texas, LP,*

*Comcast Mo Telecommunications Corp.,*
*Comcast Programming Holdings, Inc.,*
*Comcast of South Chicago, Inc.*

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re Comcast Network Management Litig. | MDL Docket No._____ |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR TRANSFER, COORDINATION AND CONSOLIDATION**

## I.   INTRODUCTION

Defendants Comcast Corporation, its national operating subsidiaries,[1] and a number of its

local franchise-holding subsidiaries,[2] which are collectively referred to herein as "Defendants,"[3]

---

[1]     Comcast Cable Communications, LLC, Comcast Cable Communications Holdings, Inc. and Comcast Cable Management, LLC.

[2]     Comcast of California II, Inc.; Comcast of California III, Inc.; Comcast of California V, Inc.; Comcast of California VI, Inc.; Comcast of California IX, Inc.; Comcast of California X, Inc.; Comcast of California XII, Inc.; Comcast of Alameda, Inc.; Comcast of California XIII, Inc.; Comcast of Fresno, Inc.; Comcast of Marin I, Inc.; Comcast of Marin II, Inc.; Comcast of Northern California I, Inc.; Comcast of Northern California II, Inc.; Comcast of Sacramento I, LLC; Comcast of Sacramento II, LLC; Comcast of San Leandro, Inc.; Comcast of Sierra Valleys, Inc.; Comcast Cablevision of Jersey City, Inc.; Comcast Cablevision of Meadowlands, Inc.; Comcast of Hopewell Valley, Inc.; Comcast of New Jersey, LLC; Comcast of Chicago, Inc.; Comcast of Illinois I, Inc.; Comcast of Illinois III, Inc.; Comcast of Illinois IV, Inc.; Comcast of Illinois/Texas, Inc.; Comcast MO Express of Illinois, Inc.; Comcast Sound Communications, Inc.; and Comcast of South Chicago, Inc.  Before being named as defendants: (i) Comcast of Jersey City, Inc. was re-domiciled as Comcast of Jersey City, LLC; (ii) Comcast Cablevision of Meadowlands, Inc. was re-domiciled as Comcast Cablevision of Meadowlands, LLC; (iii) Comcast of Illinois/Texas, Inc. was re-domiciled and then merged into Comcast Indiana/Michigan/Texas LP; (iv) Comcast MO Express of Illinois, Inc. merged into Comcast

(continued…)

have been named in at least six putative class actions now pending in federal district courts across the country (the "Actions").  All of them essentially challenge the propriety of Comcast's network management practices.  The gravamen of all of the Actions is that Comcast allegedly slowed, delayed, or otherwise impeded peer-to-peer ("P2P") file sharing transmissions sent using its broadband high-speed Internet service ("HSIS") and allegedly failed to disclose that practice.

The operative pleadings, many of which were drafted by the same attorneys, or appear to be cut-and-pasted from complaints in earlier-filed actions, contain allegations that are similar, and in many instances are identical, and all of which arise from the same set of alleged predicate facts.  They seek to represent overlapping putative nationwide and statewide classes, assert similar claims, and contain similar, if not identical, prayers for compensatory and equitable relief.  In short, the Actions allege the same facts, advance similar claims, and request the same relief, all on behalf of parallel or overlapping putative classes of Comcast HSIS subscribers.

In order to further "the convenience of the parties and witnesses" and to "promote the just and efficient conduct" of the Actions, Defendants respectfully request that the Actions be transferred, coordinated and consolidated for pretrial purposes pursuant to  28 U.S.C. § 1407.

## II.  <u>BACKGROUND</u>

The Actions challenge Comcast's management of its HSIS network and related HSIS advertisements under state consumer protection laws, state common laws and federal law.

---

(..continued)
MO Telecommunications Corp.; and (v) Comcast Sound Communications, Inc. merged into Comcast Programming Holdings, Inc.

[3]      "Comcastic, Inc." and American Cellular Network Corporation were also named in the *Lis* and *Libonati* actions, respectively.  Comcastic, Inc. is not, however, an affiliate or subsidiary of Comcast Corporation.  Comcast Cellular Corporation was but no longer is, as it merged into American Cellular Network Corporation.  Neither entity is represented by undersigned counsel.

Because Comcast (like any other Internet service provider) has only limited bandwidth, it must manage subscribers' use of its network. Comcast therefore maintains that its conduct was at all times reasonable, entirely proper and adequately disclosed to its subscribers.

Nevertheless, not long after the Federal Communications Commission began reviewing Comcast's network management practices in response to petitions filed by Free Press, Public Knowledge, Vuze, Inc. and others, seven putative class actions were filed, six of which are currently pending in federal court (the "Actions"). The first-filed of those Actions, *Hart v. Comcast of Alameda, Inc. et al.*, No. 07-6350 (N.D. Cal.) (assigned to the Honorable Judge Phyllis J. Hamilton) (Ex. A), was filed on November 15, 2007 by the Lexington Law Group, LLP on behalf of a putative class of Comcast's California subscribers. It was filed in California state court and was subsequently removed to federal court. A nearly identical action, *Tan v. Comcast Corp.*, No. 2:08-cv-02735 (E.D. Pa.) (assigned to the Honorable Legrome D. Davis) (Ex. B), was filed on June 12, 2008 by a different firm, Reese Richman LLP, against Comcast Corporation in the United States District Court for the Eastern District of Pennsylvania on behalf of an overlapping putative class of Comcast subscribers nationwide.

Five other actions have been filed in state and federal courts, four of which are currently pending in federal court. *See Lis v. Comcast of Chicago Corp. et al*, No. 08-3984 (N.D. Ill.) (filed June 5, 2008) (assigned to the Honorable James B. Zagel) (Ex. C); *Libonati v. Comcast Cablevision of Jersey City, Inc., et al.*, No. 08-3518 (D.N.J.) (filed June 5, 2008) (assigned to the Honorable Joseph E. Irenas) (Ex. D); *Leigh v. Comcast of California II, Inc*., No. 08-4601 (C.D. Cal.) (filed June 5, 2008) (assigned to the Honorable S. James Otero) (Ex. E); *Topolski v. Comcast Corp. et al.*, No. 08-852 (D. Or.) (filed July 18, 2008) (assigned to the Honorable

Magistrate Judge Paul J. Papak) (Ex. F).[4]  These four federal court actions were all filed by the same firm, specifically Gilbert Randolph LLP.  The *Topolski* action was filed in federal court on behalf of an overlapping putative class of Comcast subscribers nationwide.  The *Lis*, *Libonati* and *Leigh* actions were filed in state court in Illinois, New Jersey and California, respectively, on behalf of putative classes of Comcast subscribers in those states.  Those three actions were subsequently removed to federal court.

One need only compare the first few paragraphs of the *Hart* and *Tan* Complaints to see that the later-filed *Tan* Complaint was, at a minimum, inspired by the first-filed *Hart* Complaint.  *Compare Hart* Compl. ¶ 1 ("Defendants further promise their customers and prospective customers that they will have 'unfettered access to all the internet has to offer.'  Nevertheless, Defendants intentionally and severely impede the use of certain internet applications by their customers, slowing such applications to a mere crawl or stopping them altogether.") *with Tan* Compl. ¶ 2 ("Defendant promises its subscribers 'unfettered access to all the content, services and applications that the Internet has to offer.'  Defendant, nevertheless, does not provide 'unfettered access.'  Instead, Defendant intentionally interferes with its subscribers' connections to the Internet by delaying and/or blocking altogether certain communications.").  And, not surprisingly, the Complaints drafted by Gilbert Randolph LLP are carbon copies of one another.  Take, for example, paragraph 1 of those four Complaints:

- "Speed and access are key features of high-speed Internet service.  Defendant entities . . ., providers of Internet service to citizens of Illinois, advertise, market, and sell their high-speed Internet service as providing 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.'  Comcast specifically represents that it provides the

---

[4]     *See also Sidner v. Comcast of the District LLC,* No. 2008 CA-0001180-B (D.C. Super. Ct.) (assigned to the Honorable Jennifer Anderson).  This action is currently pending in state court.

fastest possible access to 'web applications' that are the most 'data intensive' and that it 'does not block access to any web sites or online applications, including peer-to-peer services.'  These and other similar statements by Comcast are patently false." *Lis* Compl. ¶ 1.

- "Speed and access are key features of high-speed Internet service.  Defendant entities . . ., providers of Internet service to citizens of **New Jersey**, advertise, market, and sell their high-speed Internet service as providing 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.'  Comcast specifically represents that it provides the fastest possible access to 'web applications' that are the most 'data intensive' and that it 'does not block access to any web sites or online applications, including peer-to-peer services.'  These and other similar statements by Comcast are patently false." *Libonati* Compl. ¶ 1 (emphasis added).

- "Speed and access are key features of high-speed Internet service.  Defendant entities . . ., providers of Internet service to citizens of **California**, advertise, market, and sell their high-speed Internet service as providing **both** 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.'  Comcast specifically represents that it provides the fastest possible access to "web applications" that are the most 'data intensive' and that it 'does not block access to any web sites or online applications, including peer-to-peer services.'  These and other similar statements by Comcast are patently false." *Leigh* Am. Compl. ¶ 1 (emphasis added).

- "Speed and access are key features of high-speed Internet service. . . .  **Comcast** advertise**d**, market**ed**, and s**old its** high-speed Internet service as providing 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.'  Comcast specifically represent**ed** that it provides the fastest possible access to 'web applications' that are the most 'data intensive.'  **Comcast further represented** that it 'does not block access to any web sites or online applications, including peer-to-peer services.'  These and other similar statements by Comcast are patently false." *Topolski* Compl. ¶ 1 (emphasis added).[5]

Paragraph 2 of those Complaints is equally revealing:

- "Comcast intentionally blocks its customers from using [P2P] file-sharing and other Internet applications, or otherwise impedes those applications, and it does so in a deceptive manner – by  impersonating the computers of users attempting to share files. Comcast forges what are known as 'reset packets,' making it appear as if they are coming from one of the computers attempting to file-share. The forged

---

[5]    Although not relevant to the instant motion, the subtle differences in the recent *Topolski* Complaint are a tacit admission that any allegedly deceptive advertising is no longer ongoing.

reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises her or her [sic] voice as one of the callers, says 'talk to you later,' and abruptly disconnects the call." *Lis* Compl. ¶ 2.

- "Comcast intentionally blocks its customers from using [P2P] file-sharing and other Internet applications, or otherwise impedes those applications, and it does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges what are known as 'reset packets,' making it appear as if they are coming from one of the computers attempting to ***share a file***. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises ***his*** or her voice as one of the callers, says 'talk to you later,' and abruptly disconnects the call." *Libonati* Compl. ¶ 2 (emphasis added).

- "Comcast intentionally blocks, ***slows, and delays*** its customers from using [P2P] file-sharing applications, or otherwise impedes those applications, and does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges ***electronic signals*** known as 'reset packets,' making it appear as if ***these reset packets*** are coming from one of the computers attempting to share a ***particular*** file. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises his or her voice as one of the callers, says 'talk to you later,' and abruptly disconnects the call." *Leigh* Am. Compl. ¶ 2 (emphasis added).

- "Comcast intentionally blocks, slows, delays, ***or otherwise impedes*** its customers from using [P2P] file-sharing applications ***and protocols***. . . . And it does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges electronic signals known as 'reset packets,' making it appear as if these ***electronic signals*** are coming from one of the computers attempting to share a file. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises his or her voice as one of the callers, says '***we have a bad connection***,' and abruptly disconnects the call." *Topolski* Compl. ¶ 2 (emphasis added).[6]

In short, nearly identical pleadings have been filed on behalf of several different plaintiffs in several different jurisdictions. They all assert similar claims for relief, including claims for

---

[6]    Although not relevant to the instant motion, the subtle differences in the *Topolski* Complaint are a tacit admission that any allegedly deceptive advertising is no longer ongoing.

violation of state consumer protection statutes,[7] violations of federal law,[8] and contractual and quasi-contractual claims.[9]  They all contain substantially similar, if not identical, prayers for relief, including prayers for injunctive relief,[10] compensatory damages,[11] restitution,[12] disgorgement,[13] and punitive damages.[14]  And they all purport to represent putative classes that are either identical or overlapping, including two competing nationwide classes,[15] two competing California classes,[16] and two single state classes in Illinois and New Jersey that are subsumed within the two overlapping competing nationwide classes.[17]

As of the filing of this Motion, the Actions are still in their infancy; no class has been certified, no class has been considered for certification, no merits discovery has been conducted, no class certification discovery has been conducted, and no other substantial pretrial proceedings have taken place in the Actions.  Indeed, the only pending motions are ones filed by the Defendants—a motion for judgment on the pleadings based on failure to state a claim (in *Hart*), motions to compel arbitration pursuant to the parties' written arbitration agreement (in *Lis* and *Libonati*), and a motion to join required parties that were omitted from the Complaint in order to

---

[7]    *See Hart* Compl., Counts 3-7; *Lis* Compl., Counts 1-4; *Libonati* Compl., Counts 1-4; *Leigh* Am. Compl., Counts 1-11; *Topolski* Compl., Counts 1, 3, 5, 6.

[8]    *See Hart* Compl., Count 6; Tan Compl., Count 1.

[9]    *See Hart* Compl., Counts 1, 2; Tan Compl., Counts 2, 3, 5.

[10]    *See Hart* Compl. at 19; *Tan* Compl. at 13; *Lis* Compl. at 23; *Libonati* Compl. at 21; *Leigh* Am. Compl. at 28; *Topolski* Compl. at 24.

[11]    *See Hart* Compl. at 20; *Tan* Compl. at 13; *Lis* Compl. at 23; *Libonati* Compl. at 21; *Topolski* Compl. at 24.

[12]    *See Hart* Compl. at 20; *Tan* Compl. at 13; *Leigh* Am. Compl. at 28.

[13]    *See Hart* Compl. at 20; *Tan* Compl. at 12; *Libonati* Compl. at 22; *Topolski* Compl. at 25.

[14]     *See Hart* Compl. at 20; *Tan* Compl. at 13; *Lis* Compl. at 23; *Libonati* Compl. at 22; *Topolski* Compl. at 25.

[15]    *See Tan* Compl. ¶ 23; *Topolski* Compl. ¶ 37.

[16]    *See Hart* Compl. ¶ 30; *Leigh* Am. Compl. ¶ 45.

avoid federal diversity jurisdiction (in *Leigh*).   And in the *Tan* and *Topolski* cases, the Defendants have yet to even respond to the Plaintiffs' Complaints.

### III.   ARGUMENT

**A.   These Actions Should Be Coordinated For Pretrial Purposes**

**1.   These Actions Involve "One or More Common Questions of Fact"**

These actions should be transferred and coordinated because they involve one or more "common questions of fact."  28 U.S.C. § 1407.  Actions that involve "large numbers of litigants who reside in numerous different judicial districts, but who share the common event or injury that gave rise to the litigation," have long been recognized as appropriate for transfer, coordination, and consolidation.  17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL § 112.04[1][e], & n.41, p.44 (citing *In re Westinghouse Electric Corp. Uranium Contracts Litig.*, 405 F. Supp. 316 (J.P.M.L. 1975)).

Such is the case at bar.  Comcast provides HSIS to 14 million subscribers in 37 states and the District of Columbia.  *See* Press Release, *Comcast Reports First Quarter 2008 Results* at 9 (May 1, 2008), available at http://library.corporate-ir.net/library/11/118/118591/items/291108/1Q08PR.pdf.  The Actions seek to represent those subscribers nationwide based on alleged practices that span multiple jurisdictions, as evidenced by the Actions, which were filed in jurisdictions throughout the country (on behalf of putative nationwide classes in two of them). Each of the Actions focuses its allegations on Comcast's HSIS, its alleged network management, and its alleged disclosures and advertisements relevant thereto.  Thus, the allegations in support of class treatment are similar, and in some cases identical, from complaint to complaint,

---

[17] (continued)
    *See Lis* Compl. ¶ 43; *Libonati* Compl. ¶ 39.

presenting the same fact issues relevant to class treatment.[18] All of these common allegations are echoed in parallel legal theories and nearly identical prayers for relief.

Simply put, these Actions present similar claims, challenging the same conduct on the same legal bases, on behalf of identically defined (if sometimes geographically separate) classes, who seek the same or similar relief. They therefore are well suited for transfer, coordination and consolidation in a single court for pretrial purposes pursuant to 28 U.S.C. § 1407.

**2.    Transfer, Coordination and Consolidation Would Avoid Duplicative and Burdensome Discovery and Other Pretrial Proceedings, and Thus Would Serve "the Convenience of the Parties and Witnesses"**

If discovery goes forward in the Actions separately, without transfer or coordination in a single court, Comcast will be subject to duplicative and conflicting discovery demands. Plaintiffs also will have to duplicate efforts that could be coordinated among them in a single proceeding. Transfer, coordination, and consolidation are appropriate to avoid this unnecessary burden on the litigants and courts and to enable a single judge to manage discovery to minimize inconvenience and expense. *See*, *e.g.*, *In re Cooper Tire & Rubber Co. Tires Prods. Liab. Litig.*, No. 1393, 2001 U.S. Dist. LEXIS 2099, at *1 (J.P.M.L., Feb. 23, 2001); *In re St. Jude Med., Inc.*, No. 1396, 2001 U.S. Dist. LEXIS 5226, at *3 (J.P.M.L., Apr. 18, 2001); *In re Am. Online, Inc. Version 5.0 Software Litig.*, No. 1341, 2000 U.S. Dist. LEXIS 13262, at **3-4 (J.P.M.L. June 2, 2000); *In re GMC Type III Door Latch Prods. Liab. Litig.*, No. 1266, 1999 U.S. Dist. LEXIS 5075, at *2 (J.P.M.L. Apr. 14, 1999); *Sanneman v. Chrysler Corp.* (*In re Chrysler Corp. Vehicle*

---

[18]    That the complaints *allege* similar facts for purposes of 28 U.S.C. § 1407 does not, of course, mean that individual subscribers, *in fact*, had similar experiences for purposes Rule 23. Coordination and certification involve distinct inquiries. Although Defendants expect to show that dramatic differences in subscribers' experiences and expectations render these Actions inappropriate for class treatment, what matters for purposes of the present motion is whether one judge or six (or potentially thirty-eight) judges should make that determination.

*Paint Litig.*), No. 1239, 1998 U.S. Dist. LEXIS 15675, at *2 (J.P.M.L. Oct. 2, 1998); *In re Cross-Florida Barge Canal Litig.*, 329 F. Supp. 543, 544 (J.P.M.L. 1971); *In re Multi-Piece Rim Products Liab. Litig.*, 464 F. Supp. 969, 974 (J.P.M.L. 1979); *In re First Nat'l Bank, Heavner, etc.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978); *In re A. H. Robins Co. "Dalkon Shield" IUD Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975); *In re Swine Flu Immunization Prods. Liab. Litig.*, 446 F. Supp. 244, 247 (J.P.M.L. 1978).

By transferring the Actions now, before any class certification or merits discovery has occurred, the Panel can ensure at the outset that overlapping discovery proceeds efficiently and without unnecessary duplication. *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981); 17 MOORE'S FEDERAL PRACTICE - CIVIL § 112.04[1][d], at p. 112-43 (3rd ed. 2008) (transfer and coordination is appropriate when discovery has yet to commence or is not "already well along"). The result will be "a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities." *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. at 655.

Relief is especially appropriate in this case because the Actions and the parties to them are scattered across the country. *See, e.g.*, *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 646 (N.D. Ill. 2002). The federal Actions are pending in California, Oregon, Illinois, Pennsylvania, and New Jersey. Comcast Corporation's national operating subsidiaries are Delaware entities, having principal places of business in Pennsylvania, and Comcast's local franchise-holding subsidiaries are organized in jurisdictions throughout the country, including California, Illinois, Delaware, and New Jersey, with Pennsylvania corporate addresses. Consolidation and coordination would ease the obvious burden of responding to duplicative discovery and attending a multiplicity of pretrial proceedings in locations around the country.

After transfer to a single court, and coordination and consolidation of pretrial proceedings there, a single judge can administer a global pretrial schedule for the convenience of both parties and witnesses, and conduct pretrial proceedings in a single location.  *See In re Cuisinart*, 506 F. Supp. at 655 (transfer would result in "significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").[19]

### 3.    Coordination and Consolidation Promotes the Just and Efficient Conduct of These Actions By Avoiding Duplicative and Potentially Inconsistent Adjudication of Complex Issues Common to All Cases

These Actions present a number of complex legal issues, making transfer, coordination and consolidation particularly appropriate here.  *See, e.g.*, 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3863, at p. 430 (3rd ed. 1998) ("[i]n particularly large and complex multidistrict class actions, it has been argued that it is especially important to order pretrial consolidation" because that mechanism "may be the only form in which the litigation can be handled by the judicial system").

Both the FCC and the FTC have demonstrated interest in regulating matters involving broadband Internet services.  *See, e.g., FCC Public Notice, Comment Sought on Petition for Declaratory Ruling Regarding Internet Management Policies*, 23 F.C.C.R. 340 (2008); *FCC Public Notice, Comment Sought on Petition for Rulemaking to Establish Rules Governing Network Management Practices by Broadband Network Operators*, 23 F.C.C.R. 343 (2008); *Federal Trade Commission, Broadband Connectivity Competition Policy Staff Report* (June

---

[19]     Even if some parties or witnesses are inconvenienced to a limited degree by transfer, that cannot outweigh the overall benefits to the parties and courts involved.  *See, e.g., In re Dow Co. "Sarabond" Prods. Liab. Litig.*, 664 F. Supp. 1403, 1404 (D. Colo. 1987); *In re Vernitron Sec. Litig.*, 462 F. Supp. 391, 393-94 (J.P.M.L. 1978); *In re Swine Flu Immunization Prods. Liab. Litig.*, 453 F. Supp. 648, 649-50 (J.P.M.L. 1978); *In re Holiday Magic Sec. & Antitrust Litig.*, 372 F. Supp. 1167-68 (J.P.M.L. 1974).

2007).  These Actions seek the involvement of yet another branch of government in determining what practices and policies are both proper and reasonable in providing broadband Internet services to subscribers across the country.  Thus, these Actions involve a complex web of judicial, regulatory, and legislative decision-making.  Defendants maintain that regulation (through administrative or judicial proceedings) is wholly inappropriate, as Congress decided to preempt such regulation so that market forces can (as they always have) resolve such issues.  *See, e.g.*, 47 U.S.C. § 230(b) (declaring that declaring that "the policy of the United States" is "to promote the continued development of the Internet" and "to preserve the vibrant and competitive free market that presently exists for the Internet" by ensuring that it remains "unfettered by Federal or State regulation").[20]  Whether regulation of Internet Service Providers' network management is permissible or advisable is an issue that is well beyond the scope of this Motion. What *is* germane to this Motion, however, is that having six (or potentially thirty-eight) different courts reach their own conflicting decisions on that issue is a step in the wrong direction. Certainly it is not a step that Congress could have anticipated being taken.

---

[20]     *See also In re Vonage Holdings Corp.*, 19 F.C.C.R. 22404, ¶ 35 (2004) ("[I]n interpreting section 230 . . . we cannot permit more than 50 different jurisdictions to impose traditional common carrier economic regulations . . . and still meet our responsibility to realize Congress's objective."); *In re Amendment of Parts 1, 21, 73, 74 and 101 of the Commission's Rules to Facilitate the Provision of Fixed and Mobile Broadband Access, Educ. and Other Advanced Servs. in the 2150-2162 and 2500-2690 MHz Bands*, 18 F.C.C.R. 6722, ¶ 34 (2003) ("Broadband services should exist in an environment that eliminates regulations that deter investment and innovation. . . ."); *In re Appropriate Framework for Broadband Access to the Internet Over Wireline Facilities, Universal Service Obligations of Broadband Providers*, 17 F.C.C.R. 3019, ¶ 5 (2002) ("broadband services should exist in a minimal regulatory environment that promotes investment and innovation. . . ."); *In re Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities*, 17 F.C.C.R. 4798, ¶ 73 (2002) ("we are mindful of the need to minimize both regulation of broadband services and regulatory uncertainty. . . ."); *id.* ¶ 97 ("We would be concerned if a patchwork of State and local regulations beyond matters of purely local concern resulted in inconsistent requirements affecting cable modem service, the technical design of the cable modem service facilities, or business arrangements that discouraged cable modem service deployment across political boundaries.  We also would be concerned if State and local regulations limited the Commission's ability to achieve its national broadband policy goals. . .").

Even when Congress has not rejected the idea of haphazard regulation through litigation, which Comcast submits Congress has done in this case, it is still well-settled that having a multiplicity of judges master and resolve complicated legal and factual issues is an inefficient and inadvisable way to conduct complex litigation such as this. *See, e.g.*, *In re Transocean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976). Not only does it waste judicial resources, but it also creates the risk of inconsistent rulings concerning discovery, class certification, and the underlying merits—and avoiding inconsistent rulings is one of the very purposes of coordinated pretrial proceedings. *See supra*; *see also Internet Integration, Inc. v. Micron Tech., Inc.* (*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*), 228 F. Supp. 2d 1379 (J.P.M.L. 2002); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 20.131 & n.653, p. 221 (4th ed. 2004) ("the pendency of motions raising questions common to related actions . . . can itself be an additional justification for transfer") (citing *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); 17 MOORE'S FEDERAL PRACTICE – CIVIL § 112.04[1][b], at p. 112-39 ("the Panel in complex cases has justified transfer on the basis of important or dispositive questions of law") (citing *In re Mut. Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 640 (J.P.M.L. 1973)); *See In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (noting coordinated proceedings are appropriate where multiple, putative actions seek certification); 15 FEDERAL PRACTICE AND PROCEDURE § 3863 & n.60, at p. 439-40 ("the Multidistrict Litigation Panel has concluded in several cases that matters related to class action certification should be included as part of the coordinated proceedings . . . in order to prevent inconsistent rulings and to promote efficiency"). Indeed, this Panel has "consistently held" that consolidation is appropriate, if not necessary, where conflicting, inconsistent class determinations are possible:

> [T]ransfer of actions under Section 1407 is appropriate, if not necessary, where the possibility for conflicting, inconsistent class

> determinations by courts of coordinate jurisdiction exists. . . . The transferee judge, with all claims and all parties before him, will have a clear picture of the scope and complexity of the litigation, essential to making the class determinations.

*In re Equity Funding Corp. of Am. Sec. Litig.*, 375 F. Supp. 1378, 1385-86 (J.P.M.L. 1974).[21]

Defendants expect to contest the assertion that these Actions qualify for class treatment. What is relevant here, however, is not whether class treatment is proper, but whether the same issues relating to class treatment are presented in all of the cases. Because the class *allegations* are virtually identical, and the *proposed* classes are substantially the same but for geographic distinctions, the arguments for and against certification will be the same in all of the Actions. There should be a consistent outcome in all, achieved without the duplicative effort of multiple judges, presiding over multiple hearings and arguments, after reading multiple briefs that are based on discovery that is the product of multiple rulings and multiple reviews and productions.

---

[21]    *Accord In re Am. Online,* No. 1341, 2000 U.S. Dist. LEXIS 13262, at **3-4 ("[c]entralization under Section 1407 is thus necessary in order to . . . prevent inconsistent pretrial rulings, especially with respect to overlapping class certification issues"); *In re Bridgestone/Firestone, Inc., ATX, ATX II, and Wilderness Tires Prods. Liab. Litig.*, No. 1373, 2000 U.S. Dist. LEXIS 15926, at *6 (J.P.M.L., Oct. 24, 2000); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is especially important to ensure consistent treatment of the class action issues"); *In re Mut. Fund Sales Antitrust Litig.*, 361 F. Supp. at 639-40; *In re Auto. Refinishing Paint Antitrust Litig.*, 177 F. Supp. 2d 1378, 1379 (J.P.M.L. 2001); *In re Resource Exploration, Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980) ("[i]t is desirable to have a single judge oversee the class action issues in these actions to avoid duplicative efforts and inconsistent rulings in this area"); *In re E. Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764 (J.P.M.L. 1975) ("the need to insure uniform disposition of the competing requests for class designations" presented a "compelling reason for supervision of these actions in a single district"); *In re Roadway Express, Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (transfer necessary to avoid "pretrial chaos in conflicting class action determinations").

**4.    Transfer, Coordination and Consolidation in a Single Court Will Provide a Ready Forum for Tag-Along Actions**

The Panel has often recognized that "transfer under Section 1407 will have the salutary effect of assigning the present actions and any future tag-along actions to a single judge." *SmithKline Beecham Corp. v. Copley Pharm.* (*In re Nabumetone Patent Litig.*), No. 1238, 1998 U.S. Dist. LEXIS 13735, at *3 (J.P.M.L. Sept. 2, 1998); *see also In re Gas Meter Antitrust Litig.*, 464 F. Supp. 391, 393 (J.P.M.L. 1979).  Any new tag-along actions should be coordinated and consolidated with the Actions covered herein.  The need to create a ready forum for them weighs heavily in favor of the relief sought here.

**B.    These Actions Should Be Transferred To The United States District Court For The Northern District Of Illinois And Assigned To The Honorable James B. Zagel Because He Is Assigned To One Of These Actions And Because Illinois Is A Central <u>Location For The Actions, The Parties, The Witnesses, And The Evidence</u>**

Defendants respectfully suggest that these actions are appropriate for transfer to, and coordination and consolidation in, the United States District Court for the Northern District of Illinois, and are appropriate for assignment to the Honorable James B. Zagel.

When determining an appropriate transferee forum, the Panel considers the locations of documents and witnesses, *In re Air Crash Disaster Near Coolidge, Arizona on May 6, 1971*, 362 F. Supp. 572, 573 (J.P.M.L. 1973), the parties' principal places of business, *In re "Factor VIII or IX Concentrate Blood Products" Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993), and whether a forum is centrally located among the parties and sources of evidence, *In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L. 1973).  Related actions often are transferred to a district in which at least one of the cases to be coordinated is pending, to a judge who is familiar with the issues presented in them.  *See In re A. H. Robins Co. "Dalkon Shield" Liab. Litig.*, 406 F. Supp. at 542; *In re Swine Flu Immunization Prods. Liab. Litig.*, 446

F. Supp. at 247; *In re Plywood Antitrust Litig.*, 376 F. Supp. 1405, 1407 (J.P.M.L. 1974); *In re IBM*, 302 F. Supp. 796, 800 (J.P.M.L. 1969); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1101 (J.P.M.L. 1992).

Here, although the first-filed action was filed in the Northern District of California, it is not the most convenient forum for these Actions, or even *a* convenient forum for these Actions, as Comcast Corporation, its national operating entities and its likely witnesses are all based in Pennsylvania and New Jersey. Moreover, the Plaintiffs and their counsel are dispersed across multiple jurisdictions in multiple time zones, including not only California, but also New York, New Jersey, the District of Columbia, Illinois and Oregon. In short, litigating in the Northern District of California would be inefficient and inconvenient for many if not most of the parties, their witnesses, and their counsel.

By contrast, the Northern District of Illinois is centrally located among the courts in which one of the Actions is pending—in fact, it is the only jurisdiction that is even arguably centrally located, as all of the other Actions are currently pending on the West and East coasts. It is also centrally located among the franchise-holding entities that were named as local defendants and potential witnesses and sources of evidence. Finally, transferring these Actions to the Northern District of Illinois will honor one of the fora chosen by one of the Plaintiffs (specifically the Plaintiff in *Lis*, who filed suit in Cook County, Illinois), and will not result in any undue delay, as none of the Actions has progressed beyond the pleading stage. Indeed, the most any court has done in these Actions is to issue a temporary stay pursuant to the primary jurisdiction doctrine during the pendency of the Federal Communication Commission's review of Comcast's network management practices.

Furthermore, Judge Zagel is an appropriate candidate for consolidation because he is already presiding over the *Lis* action, and because he has experience presiding over complex consumer-oriented multidistrict litigations. *See, e.g.*, *In re Mortgage Escrow Deposit Litigation*, No. 899, 1995 WL 59238 (N.D. Ill. Feb. 9, 1995). Judge Zagel is also one of only two Judges currently assigned to these Actions (the other being the Honorable Joseph E. Irenas in the United States District Court for the District of New Jersey) who currently has a Motion to Compel Arbitration pending in his or her Action. Although those motions are presently directed at the named Plaintiffs in the *Lis* and *Libonati* actions, the presence of an arbitration agreement in the parties' contract will have a profound effect not only on the ability of certain named plaintiffs to bring their claims in court, but also the propriety of class certification and the size and scope of any class that could be certified, especially in the two putative nationwide classes sought in *Tan* and *Topolski*.[22] Accordingly, Judge Zagel is one of only two Judges (the other being the Honorable Judge Joseph E. Irenas in the United States District Court for the District of New Jersey) who already has before him all of the relevant claims ***and defenses*** in these cases.

## IV.  CONCLUSION

For the reasons stated in the motion and this memorandum, these Actions should be transferred to a single court for coordinated and consolidated pretrial proceedings. Defendants respectfully request that this Panel enter an order transferring the Actions and any subsequently filed "tag-along" actions to the United States District Court for the Northern District of Illinois, and assigning them to the Honorable James B. Zagel for all pretrial purposes.

---

[22]  The *Topolski* action, in which Comcast may also file a threshold motion to compel arbitration, is not yet assigned to an Article III judge that could preside over an MDL, and indeed may not be for some time pursuant to the District of Oregon's local procedures.

Respectfully submitted,

Dated:  August 14, 2008

/s/  **Seamus C. Duffy**
Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
Telephone: 215-988-2700
Facsimile: 215-988-2757

*Counsel for Defendants*
*Comcast Corporation,*
*Comcast Cable Comms. LLC,*
*Comcast Cable Comms. Holdings, Inc.,*
*Comcast Cable Management, LLC,*
*Comcast of California II, Inc.,*
*Comcast of California III, Inc.,*
*Comcast of California V, Inc.,*
*Comcast of California VI, Inc.,*
*Comcast of California IX, Inc.,*
*Comcast of California X, Inc.,*
*Comcast of California XII, Inc.,*
*Comcast of Alameda, Inc.,*
*Comcast of California XIII, Inc.,*
*Comcast of Fresno, Inc.,*
*Comcast of Marin I, Inc.,*
*Comcast of Marin IO, Inc.,*
*Comcast of Northern California I, Inc.,*
*Comcast of Northern California II, Inc.,*
*Comcast of Sacramento I, LLC,*
*Comcast of Sacramento Ii, LLC,*
*Comcast of San Leandro, Inc.,*
*Comcast of Sierra Valleys, Inc.,*
*Comcast Cablevision of Jersey City, LLC,*
*Comcast Cablevision of Meadowlands, LLC,*
*Comcast of Hopewell Valley, Inc.,*
*Comcast of New Jersey, LLC,*
*Comcast of Chicago, Inc.,*
*Comcast of Illinois I, Inc.,*
*Comcast of Illinois III, Inc.,*
*Comcast of Illinois IV, Inc.,*
*Comcast of Illinois/Texas, LP,*
*Comcast Mo Telecommunications Corp.,*
*Comcast Programming Holdings, Inc.,*
*Comcast of South Chicago, Inc.*

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re Comcast Network Management Litig.** | **MDL Docket No._____** |

**SCHEDULE OF ACTIONS**

| Caption and Named Parties | Case No. | Court | Judge |
|---|---|---|---|
| **Caption:**<br>*Hart v. Comcast of Alameda, Inc. et al.*<br><br>**Named Plaintiff(s):**<br>Jon Hart<br><br>**Named Defendant(s):**<br>Comcast of Alameda, Inc.<br>Comcast of California II, Inc.<br>Comcast of California III, Inc.<br>Comcast of California IX, Inc.<br>Comcast of California V, Inc.<br>Comcast of California VI, Inc.<br>Comcast of California X, Inc.<br>Comcast of California XIII, Inc.<br>Comcast Corporation<br>Comcast of Fresno, Inc.<br>Comcast of Marin I, Inc.<br>Comcast of Marin II, Inc.<br>Comcast of Northern California I, Inc.<br>Comcast of Northern California II, Inc.<br>Comcast of Sacramento I, LLC<br>Comcast of Sacramento II, LLC<br>Comcast of San Leandro, Inc.<br>Comcast of Sierra Valleys, Inc.<br>Does 1-250 | 07-06350 | N.D. Cal. | Phyllis J. Hamilton |

| | | | |
|---|---|---|---|
| **Caption:**<br>*Tan v. Comcast Corp.*<br><br>**Named Plaintiff(s):**<br>Sonny Tan<br><br>**Named Defendant(s):**<br>Comcast Corporation | 08-2735 | E.D. Pa. | Legrome D. Davis |
| **Caption:**<br>*Leigh v. Comcast of California II, Inc., et al.*<br><br>**Named Plaintiff(s)**<br>Jordan Leigh and Michael Arana<br><br>**Named Defendant(s):**<br>Comcast of California II, Inc.<br>Comcast of California III, Inc.<br>Comcast of California V, Inc.<br>Comcast of California VI, Inc.<br>Comcast of California IX, Inc.<br>Comcast of California X, Inc.<br>Comcast of California XIII, Inc.<br>Does 1-150 | 08-4601 | C.D. Cal. | S. James Otero |
| **Caption:**<br>*Lis v. Comcast of Chicago Corp. et al.*<br><br>**Named Plaintiff(s):**<br>Roger Lis<br><br>**Named Defendant(s):**<br>Comcast of Chicago, Inc.<br>Comcast of Illinois I, Inc.<br>Comcast of Illinois III, Inc.<br>Comcast of Illinois IV, Inc.<br>Comcast of Illinois/Texas, Inc.<br>Comcast MO Express of Illinois, Inc.<br>Comcast of Northern Illinois, Inc.<br>Comcast Sound Communications, Inc.<br>Comcast of South Chicago, Inc.<br>Comcastic, Inc.<br>Does 1-150 | 08-3984 | N.D. Ill. | James B. Zagel |
| **Caption:**<br>*Libonati v. Comcast Cablevision of Jersey City, Inc., et al.*<br><br>**Named Plaintiff(s):**<br>Daniel Libonati, Jr.<br><br>**Named Defendant(s):**<br>Comcast Cablevision of Jersey City, Inc. | 08-3518 | D.N.J. | Joseph E. Irenas |

| | | | |
|---|---|---|---|
| Comcast Cablevision of Meadowlands, Inc. Comcast Cellular Corporation Comcast of Hopewell Valley, Inc. Comcast of New Jersey, LLC ABC Corporation Nos. 1-100 | | | |
| **Caption:** *Topolski v. Comcast Corp. et al.* **Named Plaintiff(s):** Robert M. Topolski **Named Defendant(s):** Comcast Corporation Comcast Cable Communications Holding, Inc. Comcast Cable Communications, LLC Comcast Cable Communications Management, LLC | 08-0852 | D. Or. | Paul Papak |
| | | | |
| | | | |

Dated:  August 14, 2008

/s/  **Seamus C. Duffy**
Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
Telephone: 215-988-2700
Facsimile: 215-988-2757

*Counsel for Defendants*
*Comcast Corporation,*
*Comcast Cable Comms. LLC,*
*Comcast Cable Comms. Holdings, Inc.,*
*Comcast Cable Management, LLC,*
*Comcast of California II, Inc.,*
*Comcast of California III, Inc.,*
*Comcast of California V, Inc.,*
*Comcast of California VI, Inc.,*
*Comcast of California IX, Inc.,*
*Comcast of California X, Inc.,*
*Comcast of California XII, Inc.,*
*Comcast of Alameda, Inc.,*
*Comcast of California XIII, Inc.,*
*Comcast of Fresno, Inc.,*
*Comcast of Marin I, Inc.,*
*Comcast of Marin IO, Inc.,*
*Comcast of Northern California I, Inc.,*
*Comcast of Northern California II, Inc.,*
*Comcast of Sacramento I, LLC,*
*Comcast of Sacramento Ii, LLC,*

*Comcast of San Leandro, Inc.,*
*Comcast of Sierra Valleys, Inc.,*
*Comcast Cablevision of Jersey City, LLC,*
*Comcast Cablevision of Meadowlands, LLC,*
*Comcast of Hopewell Valley, Inc.,*
*Comcast of New Jersey, LLC,*
*Comcast of Chicago, Inc.,*
*Comcast of Illinois I, Inc.,*
*Comcast of Illinois III, Inc.,*
*Comcast of Illinois IV, Inc.,*
*Comcast of Illinois/Texas, LP,*
*Comcast Mo Telecommunications Corp.,*
*Comcast Programming Holdings, Inc.,*
*Comcast of South Chicago, Inc.*

# EXHIBIT B

1 | LEXINGTON LAW GROUP, LLP
Mark N. Todzo (168389)
2 | Eric S. Somers (139050)
Howard J. Hirsch (213209)
3 | 1627 Irving Street
San Francisco, CA 94122
4 | Telephone: (415) 759-4111
Facsimile: (415) 759-4112
5 |
Attorneys for Plaintiff
6 | JON HART

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ALAMEDA

10 | JON HART, On Behalf of Himself and All        ) Case No.        07355993
Others Similarly Situated, and On Behalf of the )
11 | General Public,                               ) CLASS ACTION
                                                  )
12 |                     Plaintiff,               ) COMPLAINT FOR:
                                                  )
13 |         vs.                                  ) (1)   BREACH OF CONTRACT;
                                                  )
14 | COMCAST OF ALAMEDA, INC.; COMCAST            ) (2)   BREACH OF THE COVENANT
OF CALIFORNIA II, INC.; COMCAST OF               )       OF GOOD FAITH AND FAIR
15 | CALIFORNIA III, INC.; COMCAST OF             )       DEALING;
CALIFORNIA IX, INC.; COMCAST OF                  )
16 | CALIFORNIA V, INC.; COMCAST OF               ) (3)   BUSINESS AND PROFESSIONS
CALIFORNIA VI, INC.; COMCAST OF                  )       CODE §17200 et seq.;
17 | CALIFORNIA X, INC.; COMCAST OF               )
CALIFORNIA XIII, INC.; COMCAST                   ) (4)   BUSINESS AND PROFESSIONS
18 | CORPORATION; COMCAST OF FRESNO,              )       CODE §17500 et seq.; and
INC.; COMCAST OF MARIN I, INC.;                  )
19 | COMCAST OF MARIN II, INC.; COMCAST           ) (5)   CONSUMER LEGAL
OF NORTHERN CALIFORNIA I, INC.;                  )       REMEDIES ACT
20 | COMCAST OF NORTHERN CALIFORNIA II,           )
INC.; COMCAST OF SACRAMENTO I, LLC;              ) DEMAND FOR JURY TRIAL
21 | COMCAST OF SACRAMENTO II, LLC;               )
COMCAST OF SAN LEANDRO, INC.;                    )
22 | COMCAST OF SIERRA VALLEYS, INC.; and         )
DOES 1-250                                       )
23 |                                             )
                    Defendants.                 )
24 |
25
26
27
28

COMPLAINT - HART v. COMCAST

1      Plaintiff Jon Hart ("Plaintiff"), on behalf of himself, those similarly situated, and the

2 general public, based on information and belief and investigation of his counsel, except for

3 information based on personal knowledge, hereby alleges:

### NATURE OF ACTION

5      1.      Defendants advertise, market and sell their high speed internet service (the

6 "Service") based on claims of "lightning fast" and "mind-blowing" speeds. Defendants further

7 promise their customers and prospective customers that they will have "unfettered access to all

8 the internet has to offer." Nevertheless, Defendants intentionally and severely impede the use of

9 certain internet applications by their customers, slowing such applications to a mere crawl or

10 stopping them altogether. This class action complaint seeks to end Defendants' practice and

11 seeks recovery of fees paid by customers who paid for services they did not receive.

12      2.      Defendants' breach of their promises to provide unfettered access to the internet

13 constitutes a breach of its contract as well as a breach of the implied covenant of good faith and

14 fair dealing. Defendants' marketing and advertising, all of which is based on representations of

15 the speed at which users may download and upload content onto the internet is deceptive, given

16 Defendants' practice of severely limiting the speed of certain internet applications such as peer-

17 to-peer file sharing and lotus notes (the "Blocked Applications"). As such, Defendants'

18 advertising practices violate the Consumers Legal Remedies Act (Civil Code §1750, *et seq.*,

19 hereinafter the "CLRA"), and constitute an unlawful, unfair and fraudulent business practice

20 under Business & Professions Code §17200 and false and misleading advertising under Business

21 & Professions Code §17500.[1]

22      3.      Defendants impede their customers' access to the Blocked Applications by

23 transmitting unauthorized hidden messages to the computers of customers who utilize such

24 applications. These transmissions severely impair and/or completely block the customers' use

25 of the Blocked Applications by telling the computers to stop communicating via such

26 applications. Thus, Defendants' unauthorized interference with its customers' computers results

27

28      [1]      All statutory references herein are to California statutes, unless otherwise noted.

1   in such customers' loss of use of their computers and the Service. Accordingly, Defendants'

2   practice constitutes unlawful acts in violation of the Computer Fraud and Abuse Act, 18 U.S.C.

3   §1030 (the "CFAA"). Additionally, by impairing use of the Blocked Applications while

4   permitting the unimpaired use of other applications, Defendants unfairly discriminate against

5   certain internet applications, in violation of established Federal Communications Commission

6   ("FCC") policy.

7         4.     Accordingly, Plaintiff and the class seek contract damages to compensate them

8   for the impediments to their Service. Plaintiff and the class further seek an order enjoining

9   Defendants' acts of unfair competition and false and misleading advertising and awarding

10   restitution to the individual victims of Defendants' unfair and deceptive practices pursuant to

11   Business & Professions Code §§17203 and 17535. In addition, Plaintiff and the class of

12   similarly situated California individuals on whose behalf Plaintiff brings this action seek an

13   injunction and actual and punitive damages pursuant to the CLRA.

14                               **PARTIES**

15         5.     Plaintiff Jon Hart is a citizen of the State of California. Plaintiff is a "person"

16   within the meaning of Business & Professions Code §17204, and brings this action on behalf of

17   himself, those similarly situated and the general public. Plaintiff is a purchaser of the Service

18   and has experienced severe limitations on the speed of the Service when he utilizes Blocked

19   Applications.

20         6.     Defendant Comcast of Alameda, Inc. is a California corporation and is a person

21   within the meaning of Business & Professions Code §17201. Comcast of Alameda, Inc.

22   distributes, markets and/or sells the Service for use in California.

23         7.     Defendant Comcast of California II, Inc. is a California corporation and is a

24   person within the meaning of Business & Professions Code §17201. Comcast of California II,

25   Inc. distributes, markets and/or sells the Service for use in California.

26

27

28

1    8.   Defendant Comcast of California III, Inc. is a California corporation and is a

2 person within the meaning of Business & Professions Code §17201. Comcast of California III,

3 Inc. distributes, markets and/or sells the Service for use in California.

4    9.   Defendant Comcast of California IX, Inc. is a California corporation and is a

5 person within the meaning of Business & Professions Code §17201. Comcast of California IX,

6 Inc. distributes, markets and/or sells the Service for use in California.

7    10.  Defendant Comcast of California V, Inc. is a California corporation and is a

8 person within the meaning of Business & Professions Code §17201. Comcast of California V,

9 Inc. distributes, markets and/or sells the Service for use in California.

10   11.  Defendant Comcast of California VI, Inc. is a California corporation and is a

11 person within the meaning of Business & Professions Code §17201. Comcast of California VI,

12 Inc. distributes, markets and/or sells the Service for use in California.

13   12.  Defendant Comcast of California X, Inc. is a California corporation and is a

14 person within the meaning of Business & Professions Code §17201. Comcast of California X,

15 Inc. distributes, markets and/or sells the Service for use in California.

16   13.  Defendant Comcast of California XIII, Inc. is a California corporation and is a

17 person within the meaning of Business & Professions Code §17201. Comcast of California XIII,

18 Inc. distributes, markets and/or sells the Service for use in California.

19   14.  Defendant Comcast Corporation is a Pennsylvania corporation and is a person

20 within the meaning of Business & Professions Code §17201. Comcast Corporation distributes,

21 markets and/or sells the Service for use in California.

22   15.  Defendant Comcast of Fresno, Inc. is a California corporation and is a person

23 within the meaning of Business & Professions Code §17201. Comcast of Fresno, Inc.

24 distributes, markets and/or sells the Service for use in California.

25   16.  Defendant Comcast of Marin I, Inc. is a California corporation and is a person

26 within the meaning of Business & Professions Code §17201. Comcast of Marin I, Inc.

27 distributes, markets and/or sells the Service for use in California.

28

- 3 -

1        17.    Defendant Comcast of Marin II, Inc. is a California corporation and is a person

2    within the meaning of Business & Professions Code §17201. Comcast of Marin II, Inc.

3    distributes, markets and/or sells the Service for use in California.

4        18.    Defendant Comcast of Northern California I, Inc. is a California corporation and

5    is a person within the meaning of Business & Professions Code §17201. Comcast of Northern

6    California I, Inc. distributes, markets and/or sells the Service for use in California.

7        19.    Defendant Comcast of Northern California II, Inc. is a California corporation and

8    is a person within the meaning of Business & Professions Code §17201. Comcast of Northern

9    California II, Inc. distributes, markets and/or sells the Service for use in California.

10       20.    Defendant Comcast of Sacramento I, LLC is a California corporation and is a

11   person within the meaning of Business & Professions Code §17201. Comcast of Sacramento I,

12   LLC distributes, markets and/or sells the Service for use in California.

13       21.    Defendant Comcast of Sacramento II, LLC is a California corporation and is a

14   person within the meaning of Business & Professions Code §17201. Comcast of Sacramento II,

15   LLC distributes, markets and/or sells the Service for use in California.

16       22.    Defendant Comcast of San Leandro, Inc. is a California corporation and is a

17   person within the meaning of Business & Professions Code §17201. Comcast of San Leandro,

18   Inc. distributes, markets and/or sells the Service for use in California.

19       23.    Defendant Comcast of Sierra Valleys, Inc. is a California corporation and is a

20   person within the meaning of Business & Professions Code §17201. Comcast of Sierra Valleys,

21   Inc. distributes, markets and/or sells the Service for use in California.

22       24.    Defendant Does 1 through 250 are persons or entities whose true names and

23   capacities are presently unknown to Plaintiff, and who therefore are sued by such fictitious

24   names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously

25   named defendants perpetrated some or all of the wrongful acts alleged herein and are responsible

26   in some manner for the matters alleged herein. Plaintiff will amend this complaint to state the

27   true names and capacities of such fictitiously named defendants when ascertained.

28

1      25.    The term "Defendants," as used herein, is defined to mean the Defendants named

2  in paragraphs 6-23, as well as all Defendant DOES 1-250.

3      26.    At all times herein mentioned, each defendant was the agent, servant, employee,

4  co-conspirator and/or joint venturer of each of the other defendants.  In doing the things alleged

5  in the causes of action stated herein, each and every defendant was acting within the course and

6  scope of this agency, employment, conspiracy, and/or joint venture, and was acting with the

7  consent, permission and authorization of each of the other defendants.  All actions of each

8  defendant, as alleged in the causes of action stated herein, were ratified, approved and/or

9  authorized by every other defendant with full knowledge of such acts.  Defendants are thus

10  jointly and severally liable for such actions.

11                    **JURISDICTION AND VENUE**

12      27.    The Court has jurisdiction over this action pursuant to Business and Professions

13  Code §17203, which allows enforcement in any court of competent jurisdiction.  The California

14  Superior Court has jurisdiction over this action pursuant to California Constitution Article VI,

15  §10, which grants the Superior Court "original jurisdiction in all cases except those given by

16  statute to other trial courts."  The statutes under which this action is brought do not grant

17  jurisdiction to any other trial court.

18      28.    This Court has jurisdiction over Defendants because each is a corporation or

19  partnership that has sufficient minimum contacts in California, is a citizen of California, or

20  otherwise intentionally avails itself of the California market through its marketing and sales of

21  the Service in the State of California and/or by having such other contacts with California so as

22  to render the exercise of jurisdiction over it by the California courts consistent with traditional

23  notions of fair play and substantial justice.

24      29.    Venue is proper in the Alameda Superior Court pursuant to California Code of

25  Civil Procedure Code ("CCP") §§395 and 395.5, Business & Professions Code §17204 and Civil

26  Code §1780(c) because Defendants do business in this county, at least part of the liability arose

27

28

1    in this county, and a substantial part of the events and conduct giving rise to the violations of law

2    asserted herein occurred in this county.

3                              **CLASS ACTION ALLEGATIONS**

4            30.    Plaintiff brings this suit as a class action pursuant to CCP §382 and Civil Code

5    §1781, on behalf of himself and the class defined as follows:

6                   all persons in California who purchased the Service between
                    November 13, 2003 and the present and used or attempted to use
7                   peer-to-peer or online file sharing applications and/or lotus notes.
                    Specifically excluded from this Class are Defendants; the officers,
8                   directors or employees of Defendants; any entity in which
                    Defendants have a controlling interest; and any affiliate, legal
9                   representative, heir or assign of Defendants. Also excluded are any
10                  federal, state or local governmental entities, any judicial officer
                    presiding over this action and the members of his/her immediate
11                  family and judicial staff, and any juror assigned to this action.
12

13   (the "Class").

14           31.    The Class is sufficiently numerous as it includes hundreds or thousands of

15   persons who have purchased the Service throughout California. Thus, joinder of such persons in

16   a single action or bringing all members of the Class before the Court is impracticable. The

17   disposition of the Class members' claims in this class action will substantially benefit both the

18   parties and the Court.

19           32.    There is a well-defined community of interest in the questions of law and fact

20   involved in this action and affecting the parties. These common questions of law and fact

21   substantially predominate over any questions that may affect only individual Class members.

22   Among these common questions of law and fact are:

23           (a)    whether Defendants advertise and market the Service by promoting the

24   speed at which its customers may download and upload data from the internet;

25           (b)    whether Defendants promise that customers of the Service will be

26   provided with unfettered access to the internet;

27           (c)    whether Defendants block the Blocked Applications;

28           (d)    whether Defendants impede the Blocked Applications;

1           (e) · whether Defendants' blockage or impediment of the Blocked Applications

2 constitutes a breach of the contract;

3           (f)     whether there is an enforceable written contract between Defendants and

4 the Class;

5           (g)     whether Defendants' blockage or impediment of the Blocked Applications

6 results in aggregate loss by the Class in excess of $5000;

7           (h)     whether Defendants' blockage or impediment of the Blocked Applications

8 constitutes a violation of the CFAA;

9           (i)     whether Defendants' blockage or impediment of the Blocked Applications

10 while permitting unfettered use of other applications constitutes a violation of Federal

11 Communications Commission ("FCC") Policy Statement, FCC 05151;

12           (j)     whether Defendants' marketing and advertising is likely to deceive the

13 Class; and

14           (h)     whether members are entitled to compensatory, injunctive and other

15 equitable relief.

16     33.     Plaintiff asserts claims that are typical of the claims of the entire Class. Plaintiff

17 and all Class members have been subjected to the same wrongful conduct because they have

18 purchased the Service, which does not perform in the manner that Defendants represent.

19 Plaintiff and the Class have thus all overpaid for the Service.

20     34.     Plaintiff will fairly and adequately represent and protect the interests of the other

21 Class members and has no interests antagonistic to those of other Class members. Plaintiff is

22 committed to the vigorous prosecution of this action and has retained counsel experienced in

23 litigation of this nature to represent him. Plaintiff anticipates no difficulty in the management of

24 this litigation as a class action.

25     35.     Proceeding as a class action provides substantial benefits to both the parties and

26 the Court because this is the most efficient method for the fair and efficient adjudication of the

27 controversy. Class members have suffered and will suffer irreparable harm and damages as a

28

1    result of Defendants' wrongful conduct. Because of the nature of the individual Class members'

2    claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for

3    the wrongs complained of herein, and a representative class action is therefore appropriate, the

4    superior method of proceeding, and essential to the interests of justice insofar as the resolution of

5    Class members' claims is concerned. Absent a representative class action, Class members would

6    continue to suffer losses for which they would have no remedy, and Defendants would unjustly

7    retain the proceeds of their ill-gotten gains. Even if separate actions could be brought by

8    individual members of the Class, the resulting multiplicity of lawsuits would cause undue

9    hardship and expense for the Court and the litigants, as well as create a risk of inconsistent

10   rulings which might be dispositive of the interests of the other Class members who are not

11   parties to the adjudications and/or may substantially impede their ability to protect their interests.

12                                    **BACKGROUND FACTS**

13          36.    Defendants market and/or sell the Service. The Service is designed to provide

14   Defendants' customers with high-speed access to the internet. Accordingly, Defendants refer to,

15   market and sell the Service under the name "High Speed Internet."

16          37.    The speed at which a user is able to access the internet is one of the most

17   important aspects of internet service. Internet access speed is particularly important for

18   individuals who download and/or upload large files and is thus particularly material to Plaintiff

19   and members of the Class.

20          38.    Users of the Blocked Applications typically download and/or upload large files,

21   so internet access speed is particularly important to such users.

22          39.    Plaintiff and the Class are users of Blocked Applications.

23          40.    Defendants' advertising and marketing of the Service revolves around claims

24   regarding the speed of the Service. For example, Defendants make the following representations

25   concerning the Service in their advertising:

26          *        Get on the fast track...fast. With Comcast High-Speed Internet, surf the

27                   web at lightning speed;

28

1           *       Stop crawling the web and start burning rubber with scorching speeds.

2           *       Stop crawling the web and start burning rubber with our Performance (6

3                   Mpbs) service!  And now with PowerBoost, our fast connection gets even

4                   faster.

5           *       Zoom around the web at mind-blowing speeds.

6           *       Comcast High-Speed Internet delivers everything you need to get the most

.7                  from your Internet experience.  Download at crazy-fast speeds.

8           *       Our customers enjoy unfettered access to all the content, services, and

9                   applications that the internet has to offer.

10          *       Way faster than DSL ... up to 4 times faster than 1.5 Mbps DSL and up to

11                  twice as fast as 3.0 Mbps DSL.

12       41.    Plaintiff upgraded his internet service to Defendants' High-Speed Internet

13   Performance Plus in September 2007 in order to gain faster uploads and downloads to and from

14   the internet.  A major reason for the upgrade, was to enable Plaintiff to utilize the Blocked

15   Applications, which require high speed internet access.

16       42.    Defendants have numerous different terms of service and/or use posted on their

17   website.  In addition, at the time a potential subscriber attempts to purchase the service on

18   Defendants' website, a scroll window opens with the Comcast High-Speed Internet Subscriber

19   Agreement (the "Agreement").  Although only 10-15 lines of text are visible at one time in the

20   scroll box, if the Agreement is cut and pasted into a word processor, it is 22 pages of single-

21   spaced text.  Given these different documents referencing the terms of use of the Service, it is not

22   easy to determine what, if any contract applies to the Service.  However, all of the different

23   terms of service promise that Defendants will provide the Service.  Many of the terms of service

24   explicitly reference the internet access speeds.  For example, the Terms and Conditions state that

25   "Comcast speed tiers range from 4.0 to 16.0 Mbps download speed (maximum upload speed

26   from 384Kbps to 786Kbps respectively)."  Significantly, none of the terms of service state that

27

28

1   Comcast can or will impede, limit, discontinue, block or otherwise impair or treat differently the

2   Blocked Applications.

3        43.    Plaintiff and Class members have performed their obligations under the terms of

4   their agreements with Defendants by paying their monthly charges.

5        44.    Nevertheless, Defendants severely impede and/or block the Blocked Applications

6   used by Plaintiff and the Class. As a result of Defendants' impairment, Plaintiff and the Class

7   experience internet upload and download speeds for the Blocked Applications that are

8   exponentially slower than the speeds advertised by Defendants and/or experience complete

9   blockage of their file sharing applications.

10       45.    Defendants actively and intentionally slow and/or block the Blocked Applications

11   by sending hidden messages to computers that are running file sharing applications. These

12   hidden messages appear to the computer as coming from the other computers with which it is

13   sharing files, telling it to stop communicating. The result is that file sharing applications are

14   completely blocked or severely impeded.

15       46.    Plaintiff and the Class did not authorize Defendants to send them hidden

16   messages in order to block and/or impair their use of the Blocked Applications.

17       47.    Plaintiff and the Class have suffered damage as a result of Defendants'

18   transmission of unauthorized messages. Plaintiff and the Class have suffered a loss of use of

19   their computers and the Service as a result of Defendants' unauthorized transmissions. The loss

20   to Plaintiff and the Class exceeds $5,000.

21       48.    On September 23, 2005, the FCC issued a Policy Statement, FCC 05-155, that set

22   out its policy that internet network services should be operated in a neutral manner. The FCC's

23   policy of network neutrality furthers a number of principles including that:

24           *     "consumers are entitled to access the lawful Internet content of their

25               choice;

26           *     "consumers are entitled to run applications and use services of their

27               choice, subject to the needs of law enforcement.

28

COMPLAINT - HART v. COMCAST

1      49.    Defendants' policy of discriminating against use of the Blocked Applications

2  violates FCC Policy Statement, FCC 05-155.

3                       **FIRST CAUSE OF ACTION**

4                          **(Breach of Contract)**

5      50.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 49

6  of this Complaint.

7      51.    Plaintiff and the Class entered into a written or implied contract with Defendants

8  to pay monthly fees in order to obtain the Service.

9      52.    Plaintiff and members of the Class performed their obligations under the contract

10  by paying their monthly fees.  Nevertheless, Defendants unjustifiably breached the contract by

11  restricting Plaintiff's and the Class' access to, and use of, the Service.

12      53.    Plaintiff and members of the Class were damaged by Defendants' breach of the

13  contract in that they did not receive the Service for which they paid, and are therefore entitled to

14  damages according to proof at trial.

15      Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

16                     **SECOND CAUSE OF ACTION**

17       **(Breach of Implied Covenant of Good Faith and Fair Dealing)**

18      54.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 53

19  of this Complaint.

20      55.    In exchange for payment of a monthly fee by Plaintiff and the Class, Defendants

21  agreed to provide the Service to Plaintiff and the Class.  Defendants did not inform Plaintiff and

22  the Class that it could or would limit their service by impeding and/or blocking the Blocked

23  Applications.  In fact, Defendants told Plaintiff and the Class that they would "enjoy unfettered

24  access to all the content, services, and applications that the internet has to offer."

25      56.    Plaintiff and members of the Class purchased the Service with the reasonable

26  expectation that they would have full access to the Service, including when using the Blocked

27  Applications.

28

1       57.    In addition, Plaintiff and members of the Class purchased the Service with the

2   reasonable expectation that Defendants would deal with them honestly, fairly, equitably, in good

3   faith and in full conformity with the fundamental and implied terms of the contract. Defendants

4   brought about and intended this expectation through the language used in its terms of use and in

5   the Agreement, through their advertising, and through the express representations of their

6   employees, agents and representatives.

7       58.    In breach of the covenant of good faith and fair dealing, Defendants have blocked

8   and/or impeded use of the Service by Plaintiff and the Class by impairing use of the Blocked

9   Applications. Defendants have thus unreasonably denied Plaintiff and Class members the

10   benefit of their bargain.

11       59.    Defendants have materially and fundamentally breached the duty of good faith

12   and fair dealing owed to Plaintiff and members of the Class in at least the following respects:

13          a.    Unreasonably, secretly, and in bad faith scheming to impede use of the

14   Blocked Applications;

15          b.    Unreasonably and in bad faith failing to clearly and definitely notify

16   Plaintiff and members of the Class of the fact that Plaintiff and members of the Class would be

17   unable to use the Blocked Applications;

18          c.    Unreasonably and in bad faith continuing to misrepresent to Plaintiff and

19   members of the Class that they would enjoy unfettered access to the internet, when in fact

20   Defendants were impeding their access to the internet; and

21          d.    Unreasonably and in bad faith putting the interest of Defendants ahead of

22   Plaintiff and the Class members.

23       60.    Defendants' conduct represents a failure and/or refusal to discharge their

24   contractual responsibilities, prompted by a conscious and deliberate act, which unfairly frustrates

25   the agreed common purposes and disappoints the reasonable expectations of Plaintiff and

26   members of the Class and thereby deprives Plaintiff and members of the Class of the benefits of

27   the agreed-upon terms in the Agreement.

28

1    61.    Plaintiff and members of the Class performed their obligations under the written

2    or implied contract by paying their monthly fees.

3    62.    Plaintiff and members of the Class were damaged by Defendants' breach of the

4    covenant of good faith and fair dealing in that they did not receive the benefits of the Service for

5    which they paid, and are therefore entitled to damages according to proof at trial.

6    Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

7    **THIRD CAUSE OF ACTION**

8    **(Violations of the Consumer Legal Remedies Act – Injunctive Relief Only)**

9    63.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 62

10   of this Complaint.

11   64.    The acts and practices of Defendants as described above were intended to deceive

12   Plaintiff and the Class members as described herein and has resulted and will result in damages

13   to Plaintiff and the Class members.  These actions violated and continue to violate the CLRA in

14   at least the following respects:

15   a.    In violation of Section 1770(a)(5) of the CLRA, Defendants' acts and

16   practices constitute representations that the Service has characteristics, uses and/or benefits

17   which it does not;

18   b.    In violation of Section 1770(a)(7) of the CLRA, Defendants' acts and

19   practices constitute representations that the Service is of a particular quality which it is not; and

20   c.    In violation of Section 1770(a)(9) of the Act, Defendants' acts and

21   practices constitute the advertisement of the goods in question without the intent to sell them as

22   advertised.

23   65.    By reason of the foregoing, Plaintiff and the Class members have been irreparably

24   harmed.

25   66.    By committing the acts alleged above,  violated the CLRA.

26   67.    In compliance with the provisions of California Civil Code §1782, in conjunction

27   with the filing of this action, while the Complaint is an appropriate notice of violation, Plaintiff

28

1   will notify Defendants in writing of the particular violations of §1770 of the Act and demand

2   Defendants rectify the actions described above by refunding the purchase price and give notice

3   to all affected consumers of their intent to do so. Plaintiff will send this notice by certified mail,

4   return receipt requested, to Defendants' principal places of business.

5        68.   If Defendants fail, within thirty days after receipt of the §1782 notice, to

6   adequately respond to Plaintiff's demand to rectify the wrongful conduct described above on

7   behalf of all Class members, Plaintiff will amend the Complaint to seek actual and punitive

8   damages for violations of the CLRA.

9        69.   Plaintiff and Class members are entitled, pursuant to California Civil Code

10   §1780(a)(2), to an order: (1) enjoining the above-described wrongful acts and practices; (2)

11   requiring payment of damages to Plaintiff and the Class; and (3) requiring the payment of

12   restitution to Plaintiff and the Class. In addition, Plaintiff and the Class are entitled to the

13   payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the

14   Court under California Civil Code §1780(d).

15        Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

16                **FOURTH CAUSE OF ACTION**

17        **(Violations of Business & Professions Code §17200 *et seq.***
               **Based On Fraudulent Acts And Practices)**

18

19        70.   Plaintiff realleges and incorporates herein by reference paragraphs 1 through 69

20   of this Complaint.

21        71.   Under Business & Professions Code §17200, any business act or practice that is

22   likely to deceive members of the public constitutes a fraudulent business act or practice.

23        72.   Defendants have engaged and continue to engage in conduct that is likely to

24   deceive Plaintiff and members of the Class, all of whom are members of the general public. This

25   conduct includes, but is not limited to, promoting and advertising the fast speeds that apply to the

26   Service without limitation, when, in fact, Defendants severely limit the speed of the Service for

27   certain applications. It further includes Defendants' misrepresentations that its customers will

28   enjoy "unfettered access" to all internet applications, when, in fact, Defendants not only fetter

1  certain applications, but completely block them. Further, Defendants deceive consumers into

2  purchasing the Service in the mistaken belief that they will be able to utilize the Service for file

3  sharing applications, while actively limiting and/or blocking such applications.

4      73.    The speed at which a user is able to access the internet is an important and

5  material factor to consumers of high speed internet services and is especially important and

6  material to users of Blocked Applications including Plaintiff and the Class.

7      74.    By committing the acts alleged above, Defendants have engaged in fraudulent

8  business acts and practices, which constitute unfair competition within the meaning of Business

9  & Professions Code §17200.

10      75.    Plaintiff and the Class have all paid money for the Service. However, Plaintiff

11  and the Class did not obtain the full value of the advertised Service due to Defendants'

12  undisclosed obstruction of certain file sharing applications. Accordingly, Plaintiff and the Class

13  have suffered injury in fact and lost money or property as a result of Defendants' acts of false

14  advertising.

15      76.    An action for injunctive relief and restitution is specifically authorized under

16  Business & Professions Code §17203.

17          Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

18      **FIFTH CAUSE OF ACTION**

19      **(Violations of Business & Professions Code §17500 *et seq*.)**

20      77.    Plaintiff realleges and incorporates by reference as if specifically set forth herein

21  Paragraphs 1 through 76 inclusive.

22      78.    Business & Professions Code §17500 provides that it is unlawful for any

23  corporation to knowingly make, by means of any advertising device or otherwise, any untrue or

24  misleading statement with the intent to sell a product or service, or to induce the public to

25  purchase a product or service. Any statement in advertising that is likely to deceive members of

26  the public constitutes false and misleading advertising under Business & Professions Code

27  §17500.

28

1    79.    Defendants have disseminated, and continues to disseminate advertising, that they

2  know or should reasonably know is false and misleading.  This conduct includes, but is not

3  limited to, promoting and advertising the fast speeds that apply to the Service without limitation,

4  when, in fact, Defendants severely limit the speed of the Service for certain applications.  It

5  further includes Defendants' misrepresentations that their customers will enjoy "unfettered

6  access" to all internet applications, when, in fact, Defendants not only fetter certain applications,

7  but completely block them.  Defendants know or reasonably should know that this advertising is

8  false and misleading as set forth in detail in the preceding paragraphs.

9    80.    By committing the acts alleged above, Defendants have knowingly disseminated

10  untrue and/or misleading statements in an advertising or other device in order to sell or induce

11  members of the public to purchase the Service, in violation of Business & Professions Code

12  §17500.

13    81.    Plaintiff and the Class have all paid money for the Service.  However, Plaintiff

14  and the Class did not obtain the full value of the advertised Service due to Defendants'

15  undisclosed obstruction of the Blocked Applications.  Accordingly, Plaintiff and the Class have

16  suffered injury in fact and lost money or property as a result of Defendants' acts of false

17  advertising.

18    82.    An action for injunctive relief and restitution is specifically authorized for

19  violations of Business & Professions Code §17500 *et seq*. under Business & Professions Code

20  §17535.  Business & Professions Code §17534.5 provides that "the remedies or penalties

21  provided by this chapter are cumulative to each other and to the remedies or penalties available

22  under all other laws of this state."

23    Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

24    **SIXTH CAUSE OF ACTION**

25    **(Violations of Business & Professions Code §17200 *et seq*.**
     **Based on Commission of Unlawful Acts)**

26
27    83.    Plaintiff realleges and incorporates by reference as if specifically set forth herein

     Paragraphs 1 through 82 inclusive.

28

1    84.    The violation of any law constitutes an unlawful business practice under Business

2    & Professions Code §17200.

3    85.    As detailed more fully in the preceding paragraphs, the acts and practices alleged

4    herein were intended to or did result in the sale of the Service in violation of the CLRA, Civil

5    Code Section 1750, *et seq.*, and specifically Section 1770(a)(5), Section 1770(a)(7), and Section

6    1770(a)(9).

7    86.    As detailed more fully above, Defendants have committed violations of Business

8    & Professions Code §17500 *et seq.* by knowingly disseminating and continuing to disseminate

9    false and misleading advertisements regarding the Service.

10    87.    By violating the CLRA and Business & Professions Code §17500, Defendants

11    have engaged in unlawful business acts and practices which constitute unfair competition within

12    the meaning of Business & Professions Code §17200.

13    88.    Under the CFAA, it is unlawful to knowingly and without authorization cause the

14    transmission of a program, information, code or command to a computer used for interstate

15    commerce or communication, where such transmission causes damage, and the aggregate

16    resulting loss is at least $5,000 in value.  18 U.S.C. §1030(a)(5).  By sending unauthorized secret

17    messages to the computers of Plaintiff and the Class in order to block and/or impede their use of

18    the Blocked Applications, Defendants have caused Plaintiff and the Class to suffer damage and

19    loss as set forth above, in an aggregate amount in excess of $5,000.  Accordingly, Defendants

20    have violated the CFAA.

21    89.    By violating the CFAA, Defendants have engaged in unlawful business acts and

22    practices which constitute unfair competition within the meaning of Business & Professions

23    Code §17200.

24    90.    As detailed above, Defendants' practice of discriminating against use of the

25    Blocked Applications violates FCC Policy Statement, FCC 05-151.  By violating the FCC

26    policy, Defendants have engaged in unlawful business acts and practices which constitute unfair

27    competition within the meaning of Business & Professions Code §17200.

28

1    91.    Plaintiff and the Class have all paid money for the Service.  However, Plaintiff

2    and the Class did not obtain the full value of the advertised Service due to Defendants'

3    undisclosed obstruction of certain file sharing applications.  Accordingly, Plaintiff and the Class

4    have suffered injury in fact and lost money or property as a result of Defendants' acts of false

5    advertising.

6    92.    An action for injunctive relief and restitution is specifically authorized under

7    Business & Professions Code §17203.

8    Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

9    **SEVENTH CAUSE OF ACTION**

10   **(Violations of Business & Professions Code §17200 *et seq.*
     Based on Unfair Acts and Practices)**

11

12   93.    Plaintiff realleges and incorporates by reference as if specifically set forth herein

     Paragraphs 1 through 92 inclusive.

13

14   94.    Under Business & Professions Code §17200, any business act or practice that is

     unethical, oppressive, unscrupulous and/or substantially injurious to consumers, or that violates a

15   legislatively declared policy, constitutes an unfair business act or practice.

16

17   95.    Defendants have engaged, and continues to engage, in conduct which is immoral,

     unethical, oppressive, unscrupulous and/or substantially injurious to consumers.  This conduct

18   includes, but is not limited to misrepresenting that its customers enjoy unfettered access to all

19   internet applications while at the same time severely limiting access to certain applications by

20   sending hidden messages to its customers computers.  Defendants deceive consumers into

21   purchasing the Service in the mistaken belief that they will be able to utilize the Service for use

22   of the Blocked Applications, while actively limiting and/or blocking such applications.

23   Defendants' scheme was and is immoral, unethical, oppressive, unscrupulous and/or

24   substantially injurious to consumers.   The gravity of harm caused by Defendants' conduct as

25   described herein far outweighs the utility, if any, of such conduct.

26

27   96.    Defendants have engaged, and continue to engage, in conduct which violates the

     legislatively declared policy of the CLRA against misrepresenting the characteristics, uses,

28

1    benefits, and quality of goods and services for sale. In addition, Defendants have engaged, and

2    continue to engage in conduct which violates the policies behind the CFAA and FCC Policy 05-

3    151.

4        97.    By committing the acts alleged above, Defendants have engaged in unfair

5    business acts and practices which constitute unfair competition within the meaning of Business

6    & Professions Code §17200.

7        98.    Plaintiff and the Class have all paid money for the Service. However, Plaintiff

8    and the Class did not obtain the full value of the advertised Service due to Defendants'

9    undisclosed obstruction of certain file sharing applications. Accordingly, Plaintiff and the Class

10   have suffered injury in fact and lost money or property as a result of Defendants' acts of false

11   advertising.

12       99.    An action for injunctive relief and restitution is specifically authorized under

13   Business & Professions Code §17203.

14       Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

15   <div align="center">**PRAYER FOR RELIEF**</div>

16       WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

17       A.    That the Court declare this a class action;

18       B.    That the Court preliminarily and permanently enjoin Defendants from conducting

19   their businesses through the unlawful, unfair or fraudulent business acts or practices, untrue and

20   misleading advertising and other violations of law described in this Complaint;

21       C.    That the Court order Defendants to conduct a corrective advertising and

22   information campaign advising consumers that the Service does not have the characteristics,

23   uses, benefits, and quality Defendants have claimed;

24       D.    That the Court order Defendants to implement whatever measures are necessary

25   to remedy the unlawful, unfair or fraudulent business acts or practices, untrue and misleading

26   advertising and other violations of law described in this Complaint;

27

28

1    E.    That the Court order Defendants to notify each and every member of the Class of

2    the pendency of the claims in this action in order to give such individuals and businesses an

3    opportunity to obtain restitution from Defendants;

4    F.    That the Court order Defendants to pay restitution to restore to all affected

5    persons all funds acquired by means of any act or practice declared by this Court to be an

6    unlawful, unfair or a fraudulent business act or practice, untrue or misleading advertising or a

7    violation of the CLRA, CFAA and/or FCC Policy 05-151, plus pre-judgment and post-judgment

8    interest thereon;

9    G.    That the Court order Defendants to disgorge all monies wrongfully obtained and

10    all revenues and profits derived by Defendants as a result of their acts or practices as alleged in

11    this Complaint;

12    H.    As to the First and Second Causes of Action, that the Court award damages

13    calculated as purchase price of the Products here at issue, plus any out-of-pocket costs associated

14    with the replacement of such Products, plus pre-judgment and post-judgment interest thereon;

15    I.    As to the Second Cause of Action, that the Court impose statutory, punitive

16    and/or exemplary damages for Defendants' acts constituting oppression, fraud or malice in an

17    amount sufficient to punish  and deter others from similar wrongdoing;

18    J.    That the Court grant Plaintiff his reasonable attorneys' fees and costs of suit

19    pursuant to Code of Civil Procedure §1021.5, Civil Code § 1780(d), the common fund doctrine

20    and/or any other applicable legal theory; and

21    K.    That the Court grant such other and further relief as may be just and proper.

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28

COMPLAINT - HART v. COMCAST

1

**JURY DEMAND**

2
    Plaintiff demands a trial by jury on all causes of action so triable.

3

4
DATED: November _13_, 2007

        Respectfully submitted,

5

        LEXINGTON LAW GROUP, LLP

6

7

8
        Mark N. Todzo, Esq.

9
        Attorneys for Plaintiff
        JON HART

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - HART v. COMCAST

ORIGINAL FILED

1  | SIMMONSCOOPER LLC
   | John A. Bruegger (CSB #250494)
2  | 100 N. Sepulveda Blvd., Suite 1350
   | El Segundo, CA 90245
3  | T: (310) 322-3555, F: (310) 322-3655

JUL 1 1 2008

LOS ANGELES
SUPERIOR COURT

4

5  | SIMMONSCOOPER LLC
   | Ken Brennan, *Application for Pro Hac Vice to be Filed*
   | 707 Berkshire Blvd.
6  | PO Box 521
   | East Alton, IL 62024
7  | T: (618) 259-2222, F: (618) 259-2251

8

9  | GILBERT RANDOLPH LLP
   | August J. Matteis, Jr., *Application for Pro Hac Vice to be Filed*
   | Richard Shore, *Application for Pro Hac Vice to be Filed*
10 | Alyson A. Foster, *Application for Pro Hac Vice to be Filed*
   | Brian Weinthal, *Application for Pro Hac Vice to be Filed*
11 | 1100 New York Avenue, NW, Suite 700
   | Washington, DC 20005
12 | T: (202) 772-1923, F: (202) 772-1924

13

14 | HANLY CONROY BIERSTEIN SHERIDAN
   | FISHER & HAYS LLP
15 | Andrea Bierstein, *Application for Pro Hac Vice to be Filed*
   | 112 Madison Avenue
16 | New York, NY 10016-7416
   | T: (212) 784-6403, F: (212) 784-6420

17

18 | *Attorneys for Plaintiffs JORDAN LEIGH and MICHAEL ARANA*

19 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
   | **COUNTY OF LOS ANGELES**
20 | **CENTRAL DISTRICT**

21 | JORDAN LEIGH, and MICHAEL ARANA,     ) CASE NO.: BC392029
   | On Behalf of Themselves and          )
22 | All Others Similarly Situated,       )
   |                                      )
23 |                         Plaintiffs,  ) <u>CLASS ACTION</u>
   |                                      )
24 |                v.                    ) **PLAINTIFFS' FIRST AMENDED**
   |                                      ) **COMPLAINT FOR:**
25 | COMCAST OF CALIFORNIA II, INC.,      )
   | *et al.*,                            ) **(1)    VIOLATIONS OF BUSINESS**
26 |                         Defendants.  )        **AND PROFESSIONS CODE §**
   |                                      )        **17500,** *et seq.*
27 |                                      )
   |                                      )
28 |                                      )

|  | (2) | **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200,** *et seq.* |
|---|---|---|
|  | (3) | **VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT** |
|  |  | **DEMAND FOR JURY TRIAL** |
|  |  | The Honorable Victoria Chaney Department 324 |

Plaintiffs Jordan Leigh and Michael Arana ("Plaintiffs"), on behalf of themselves and all others similarly situated, based on information and belief and investigation of their counsel, except for information based on personal knowledge, hereby allege:

## NATURE OF THE ACTION

1.    Speed and access are key features of high-speed Internet service. Defendant entities (collectively, "Comcast" or "Defendants," as defined in Paragraph 16, below), providers of Internet service to citizens of California, advertise, market, and sell their high-speed Internet service as providing both "the fastest Internet connection" and "unfettered access to all the content, services, and applications that the Internet has to offer." Comcast specifically represents that it provides the fastest possible access to "web applications" that are the most "data intensive" and that it "does not block access to any web sites or online applications, including peer-to-peer services." These and other similar statements by Comcast are patently false.

2.    Comcast intentionally blocks, slows, and delays its customers from using peer-to-peer ("P2P") file-sharing applications, or otherwise impedes those applications, and does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges electronic signals known as "reset packets," making it appear as if these reset packets are coming from one of the computers attempting to share a particular file. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises his or her voice as one of the callers, says "talk to you later," and abruptly disconnects the call.

FIRST AMENDED CLASS ACTION COMPLAINT

1　　　　　3.　　　Comcast's clandestine techniques are similar to those used by totalitarian

2　　governments to censor the use of the Internet. No doubt Comcast would characterize this behavior

3　　as illegal and malicious hacking if perpetrated by others on Comcast and its customers. Indeed,

4　　Comcast's customers would be justified in assuming that Comcast was protecting them from this

5　　sort of conduct, rather than subjecting them to it.

6　　　　　4.　　　Comcast's customers were not told that Comcast would block, slow, delay, or

7　　otherwise impede P2P file-sharing applications. On the contrary, they were assured by Comcast

8　　that they would receive "unfettered access" to the Internet and its applications using the "fastest

9　　Internet connection." They never authorized Comcast to engage in practices contrary to these

10　　promises.

11　　　　　5.　　　As a result of Comcast's actions, Plaintiffs and the other members of the Class paid

12　　for a promised service that they did not receive. Comcast's actions constitute false or misleading

13　　advertising under section 17500 of California's Business and Professions Code; unlawful, unfair,

14　　or fraudulent business acts or practices and misleading advertising under section 17200 of

15　　California's Business and Professions Code; and violations of California's Consumers Legal

16　　Remedies Act (Cal. Civ. Code § 1750, *et seq.*, hereinafter "CLRA"). Accordingly, Plaintiffs, on

17　　behalf of themselves and those similarly situated, seek all relief to which they are entitled,

18　　including equitable relief, restitution, and reasonable attorney's fees as provided for under sections

19　　17535 and 17203 of California's Business and Professions Code; section 1780 of the CLRA; and

20　　section 1021.5 of California's Code of Civil Procedure.

21　　　　　　　　　　　　　**PARTIES TO THE ACTION**

22　　　　　6.　　　Plaintiff Leigh is a twenty-eight year-old webmaster and communications student

23　　who has lived in California for the past five (5) years. Plaintiff Leigh is a "person" and a

24　　"consumer" under sections 17506 and 17201 of California's Business and Professions Code, and

25　　under section 1761 of the CLRA, who brings this action on behalf of himself and those similarly

26　　situated. Plaintiff Leigh has subscribed to Comcast's high-speed Internet service for the past two

27　　(2) years and has experienced severe speed and content limitations with regard to the use of P2P

28　　file-sharing protocols and other Internet applications.

FIRST AMENDED CLASS ACTION COMPLAINT

1    7.    Plaintiff Arana is a twenty-nine year-old graphic designer and chauffeur who has

2    lived in California his entire life. Plaintiff Arana is a "person" and a "consumer" under sections

3    17506 and 17201 of California's Business and Professions Code, and under section 1761 of the

4    CLRA, who brings this action on behalf of himself and those similarly situated. Plaintiff Arana

5    has subscribed to Comcast's high-speed Internet service for the past four (4) years and has

6    experienced severe speed and content limitations with regard to the use of P2P file-sharing

7    protocols and other Internet applications.

8    8.    Defendant COMCAST OF CALIFORNIA II, INC. is a registered California

9    corporation and is a "person" within the meaning of sections 17506 and 17201 of California's

10    Business and Professions Code, and section 1761 of the CLRA.

11    9.    Defendant COMCAST OF CALIFORNIA III, INC. is a registered California

12    corporation and is a "person" within the meaning of sections 17506 and 17201 of California's

13    Business and Professions Code, and section 1761 of the CLRA.

14    10.    Defendant COMCAST OF CALIFORNIA V, INC. is a registered California

15    corporation and is a "person" within the meaning of sections 17506 and 17201 of California's

16    Business and Professions Code, and section 1761 of the CLRA.

17    11.    Defendant COMCAST OF CALIFORNIA VI, INC. is a registered California

18    corporation and is a "person" within the meaning of sections 17506 and 17201 of California's

19    Business and Professions Code, and section 1761 of the CLRA.

20    12.    Defendant COMCAST OF CALIFORNIA IX, INC. is a registered California

21    corporation and is a "person" within the meaning of sections 17506 and 17201 of California's

22    Business and Professions Code, and section 1761 of the CLRA.

23    13.    Defendant COMCAST OF CALIFORNIA X, INC. is a registered California

24    corporation and is a "person" within the meaning of sections 17506 and 17201 of California's

25    Business and Professions Code, and section 1761 of the CLRA.

26    14.    Defendant COMCAST OF CALIFORNIA XIII, INC. is a registered California

27    corporation and is a "person" within the meaning of sections 17506 and 17201 of California's

28    Business and Professions Code, and section 1761 of the CLRA.

FIRST AMENDED CLASS ACTION COMPLAINT

1    15.    Defendants DOES 1 – 150 are persons or entities whose true names and affiliations

2    are currently unknown to Plaintiffs, and who therefore are sued under fictitious names. Plaintiffs

3    allege that each of the fictitiously named Defendants is a registered California corporation.

4    Plaintiffs further allege that each of the fictitiously named Defendants perpetrated some or all of

5    the wrongful acts alleged herein. Plaintiffs will amend this First Amended Complaint to state the

6    true names and affiliations of Defendants DOES 1 – 150 as soon as such information is

7    ascertained.

8    16.    The terms "Comcast" and "Defendants," as used herein, are defined to mean the

9    Defendants named in Paragraphs 8 through 15.

10    17.    Defendants are all entities registered with the Office of the Secretary of State of

11    California whose registered agent, C T Corporation System, has an address of 818 West Seventh

12    Street, Los Angeles, CA 90017. Defendants are authorized to, and regularly do, conduct business

13    in California by advertising, marketing, selling, or providing services within California.

14    18.    At all times herein mentioned, each of the Defendants was an agent, servant,

15    employee, co-conspirator, or joint venturer of each of the other Defendants. In doing the things

16    alleged in the causes of action stated herein, each and every Defendant was acting within the

17    course and scope of this agency, employment, conspiracy, or joint venture, and was acting with

18    the consent, permission, and authorization of each of the other Defendants. All actions of each of

19    the Defendants, as alleged in the causes of action stated herein, were ratified, approved, or

20    authorized by every other Defendant with full knowledge of such acts. Defendants are thus jointly

21    and severally liable for such actions.

22    19.    The causes of action alleged herein arise out of Defendants' high-speed Internet

23    service, trade practices, and advertising strategies originating and employed in California.

24    **JURISDICTION AND VENUE**

25    20.    This Court has personal jurisdiction over the Defendants under section 410.10 of

26    California's Code of Civil Procedure because Defendants are entities that have sufficient

27    minimum contacts in California, are citizens of California, or otherwise intentionally avail

28    themselves of the California market through their advertising, marketing, selling, or providing of

1    high-speed Internet service in California or by having such other contacts with California so as to

2    render the exercise of jurisdiction over them by the California courts consistent with traditional

3    notions of fair play and substantial justice.

4         21.    This Court has subject matter jurisdiction over this action under sections 17535 and

5    17203 of California's Business and Professions Code, and section 1780 of the CLRA.

6         22.    Venue is proper in Los Angeles County under sections 395 and 395.5 of

7    California's Code of Civil Procedure, and section 1780(c) of the CLRA.

8                              **FACTUAL ALLEGATIONS**

9    A.    Comcast Markets High Speeds and Unfettered Access to the Internet.

10        23.    Comcast provides high-speed Internet service to citizens of California.

11        24.    Fast download and upload speeds, and unfettered access, are key features of

12   Internet service. These features are especially important to consumers who download or upload

13   large files.

14        25.    Comcast advertises, markets, and sells its high-speed Internet service on the

15   express basis that it provides exceptionally fast and unfettered access to the Internet and Internet

16   applications.

17        26.    Regarding the speed of its Internet access, Comcast represents, among other things,

18   the following:

19

20
       •    "[W]hen it comes to getting the fastest Internet connection, a lot of different
21            services claim to be the fastest, but Comcast actually delivers."

22     •    "The speed that this digital cable Internet connection can provide blows
            away the speeds that most competing technologies can attain."
23
       •    "Comcast's high speed Internet service provides anywhere from four to
24            six times the speed that DSL based Internet access can provide!"

25     •    That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing,"
            "Scorching," "Lightning-Fast," and "Way Faster Than DSL."
26

27        27.    Comcast represents that it provides the fastest speeds precisely for the applications

28   that need it most – those that require large amounts of data to be uploaded and downloaded:

- • "[Comcast] makes it possible for you to download even large files in just a few moments and to get onto sites such as gaming sites or virtual worlds."

- • "Comcast's high speed Internet also has the advantage of always being on and ready for use."

- • "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. This will be even more true as the Internet becomes an ever growing part of our lives. The need for speed comes from the fact that many of the best Web applications are also the most data intensive. That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web."

- • "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!"

28.    Comcast further represents that it does not block, slow, or delay any Internet applications, but rather provides "unfettered access to all the content, services, and applications that the Internet has to offer." Comcast states that its service "can be used to open up the Internet, and all the potential that it holds, for your enjoyment. With all of these features from Comcast, you have unbound access to all of the best aspects of the World Wide Web!"

B.    Contrary to Its Representations, Comcast Blocks, Slows, Delays, or Otherwise Impedes Applications That Require Large Data Transfers.

29.    Contrary to its representations, Comcast blocks, slows, delays, or otherwise impedes Internet access for certain data-intensive Internet applications, such as P2P file-sharing protocols like BitTorrent, Gnutella, Lotus Notes, and other applications.

30.    In early 2007, public interest organizations and consumers alleged that Comcast Corporation and its affiliates throughout the country (the "Comcast Entities") were engaging in these practices. The Comcast Entities denied the allegations and stuck to their original representations by claiming that they did not block or otherwise impede access to the Internet for any applications.

31.    Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether users' access to high-speed Internet service was being blocked by the Comcast Entities for certain applications.

32.    The testing led to shocking results. The Comcast Entities were blocking, slowing,
and delaying Internet access for certain P2P applications, and were doing so in an outrageously
deceptive manner – by impersonating the computers of users involved in file-sharing. The
Comcast Entities were forging what are known as "reset packets," making it appear as if these
reset packets were coming from one of the computers attempting to share files. The reset packets
instructed the source computers to stop transmitting data, thus causing the computers involved to
stop uploading and downloading shared files.

33.    Even after these results were made public, the Comcast Entities continued to deny
their actions by stating on the company's website that "[o]ur customers enjoy unfettered access to
all the content, services, and applications that the Internet has to offer." The Comcast Entities
further state that they do not:

> [B]lock access to any Web site or applications, including BitTorrent.
> Our Customers use the Internet for downloading and uploading files,
> watching movies and videos, streaming music, sharing digital
> photos, accessing numerous peer-to-peer sites, VOIP applications
> like Vonage, and thousands of other applications online.

34.    Then, in public comments submitted to the Federal Communications Commission
("FCC") on February 12, 2008, the Comcast Entities finally admitted to "delaying" Internet access
for certain P2P applications by generating forged reset packets that interrupted the connection
between two computers attempting to share files. According to the Comcast Entities, their efforts
to delay certain file-sharing applications were actually an attempt to prevent service degradation
resulting from what they characterized as excessive bandwidth congestion created by these file-
sharing applications. The Comcast Entities admitted that they had established pre-determined
"congestion thresholds" that applied to the use of bandwidth in particular neighborhoods. When a
Comcast subscriber in a particular neighborhood attempted to share a file in an area in which the
"congestion threshold" was already exceeded, the Comcast Entities would send a forged reset
packet that would terminate the connection between that subscriber and the computer with whom
he or she was attempting to share files.

35.    Notwithstanding that the Comcast Entities admitted these facts in their comments
to the FCC, they never disclosed to their subscribers or potential subscribers that they blocked,

FIRST AMENDED CLASS ACTION COMPLAINT

1    slowed, or delayed Internet access. On the contrary, the Comcast Entities continued to state that

2    they provided unfettered access to the Internet using the fastest possible Internet connection.

3        36.    At all relevant times, Comcast has engaged and continues to engage in the same

4    practices described in Paragraphs 29 through 35 above in California.

5    C.    Plaintiffs and the Other Class Members Paid Comcast
        for Promised Services They Never Received.

6

7        37.    Plaintiff Leigh currently lives in Rohnert Park, California. He is a twenty-eight

8    year-old webmaster and communications student who has lived in California for the past five (5)

9    years.

10        38.    Plaintiff Arana currently lives in Monterey, California. He is a twenty-nine year-

11    old graphic designer and chauffeur who has lived in California his entire life.

12        39.    Plaintiffs subscribe to the so-called "high-speed" Internet service provided by

13    Comcast. They use their Internet connections for a wide variety of functions, including various

14    protocols and applications that involve the transfer of large amounts of data, such as P2P file-

15    sharing.

16        40.    Plaintiffs and the other Class members were part of the target audience to which

17    Comcast directed the advertisements generally described in Paragraphs 25 through 28 above.

18    Plaintiffs and the other Class members viewed these and other advertisements in various media

19    (television, print, radio, Internet, etc.) and relied on the representations contained therein to

20    purchase monthly subscriptions to Comcast's high-speed Internet service.

21        41.    Plaintiffs have noticed on numerous occasions that their attempts to use various

22    Internet applications, such as P2P file-sharing, have been blocked, slowed, or delayed by Comcast.

23        42.    Plaintiffs and the other Class members all subscribed to Comcast's high-speed

24    Internet service at some point between June 5, 2004 and the forthcoming date of class

25    certification, and have paid all necessary subscription fees. Comcast never notified Plaintiffs or

26    the other Class members that it would block, slow, or delay P2P file-sharing or any other Internet

27    applications. On the contrary, both before and after they subscribed, Plaintiffs and the other

28    Class members were assured by Comcast that they would receive the fastest possible unfettered

1   access to the Internet. Indeed, Plaintiffs and the other Class members were inundated by Comcast

2   with repeated representations that its high-speed Internet service provided fast and unfettered

3   access to the Internet. Plaintiffs and the other Class members never authorized Defendants to

4   block, slow, or delay their access to the Internet for any applications.

5       43.    Plaintiffs and the other Class members have suffered injury as a result of Comcast's

6   conduct described above.

7                           **CLASS ACTION ALLEGATIONS**

8       44.    This action is brought as a class action under section 382 of California's Code of

9   Civil Procedure, and is further maintainable as a class action under the requirements of section

10  1781(b) of the CLRA as set forth below.

11  A.    Class Description

12      45.    The "Class" is defined as follows:

13          All citizens of California who purchased or received high-speed Internet
            service from Comcast at any time between June 5, 2004 and the
14          forthcoming date of class certification. Specifically excluded from this
            Class is Comcast and all of its subsidiaries, parents, and other affiliates,
15          all officers, directors, and employees of these entities, and all legal
            representatives, heirs, and assigns of these entities. Also excluded are
16          any judicial officers who preside over this action and any juror that
17          participates in this lawsuit.

18  B.    Impracticability of Joinder

19      46.    The Class is composed of thousands of citizens of California who purchased

20  Comcast's high-speed Internet service. Accordingly, joinder of all Class members would be

21  impracticable. Defendants have harmed thousands of subscribers in California, but the nature of

22  the harm is such that few, if any, subscribers would be able to pursue a claim for damages

23  independent of a class action. The wrongful conduct at issue is highly complex, so it is unlikely

24  that an individual plaintiff will have the resources to vindicate his or her rights. Therefore, the

25  disposition of Plaintiffs' and the other Class members' claims in a class action will provide

26  substantial benefits to the parties and the Court, as this will promote the orderly and expeditious

27  administration and adjudication of the Class members' claims, foster economics of time, effort,

28  and resources, and ensure uniformity of decisions. Furthermore, the Class is ascertainable and

there is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon Comcast's uniform conduct as described below.

C.    Commonality

47.    Defendants have acted in ways that affect all members of the proposed Class similarly. Questions of fact and law are common to each member of the Class. The common questions of law or fact, which predominate over questions that may affect particular Class members, include, but are not limited to, the following:

a)    whether Comcast made untrue or misleading representations that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data;

b)    whether Comcast made untrue or misleading representations that its high-speed Internet service provides fast connections and unfettered access to the Internet, when, in fact, the service is hindered by Comcast's intentional efforts to block, delay, or otherwise impede that service;

c)    whether Comcast represents to consumers that its high-speed Internet service has characteristics, ingredients, uses, benefits, or quantities that it does not have;

d)    whether Comcast represents that its high-speed Internet service is of a particular standard, quality, or grade when in fact it is of another;

e)    whether Comcast advertised or offered its high-speed Internet service without intent to supply reasonably expectable demand; and

f)    whether Comcast violated California law by committing the conduct outlined above and possibly other similar conduct.

D.    Typicality

48.    Plaintiffs' claims are typical of the claims of the proposed Class as a whole because each Class member purchased Comcast's high-speed Internet service and received something less than that for which he or she paid. Thus, each Class member was wronged by the same offending conduct, and proof of Plaintiffs' claims will similarly prove the claims of absent members of the Class.

1  E.    Fair and Adequate Representation

2      49.    Plaintiffs are capable of fairly and adequately protecting the interests of the

3  Class because their claims are common to the Class and proof of those claims will prove the

4  claims of absent Class members. Plaintiffs' interests are in harmony with the interests of

5  other members of the Class, and none of Plaintiffs' interests are adverse to those of the other Class

6  members. Plaintiffs intend to pursue this litigation vigorously, and have selected as their counsel

7  Gilbert Randolph LLP, SimmonsCooper LLC, and Hanly Conroy Bierstein Sheridan Fisher &

8  Hayes LLP, law firms that are experienced in complex litigation and that have served as class

9  counsel in other complex matters.

10  F.    Predominance and Superiority

11      50.    Questions of law and fact that are common to Plaintiffs and the other Class

12  members predominate over questions affecting only individual Class members, and a class action

13  is superior to any other available method for the fair and efficient adjudication of this controversy.

14  **JURY TRIAL DEMANDED**

15      51.    Plaintiffs hereby demand a trial by jury of all issues so triable.

16  **COUNT I**
**Violation of California's Business & Professions Code Section 17500**

17

18      52.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

19  51 as though fully restated herein.

20      53.    Under section 17500 of California's Business and Professions Code, it is

21  unlawful for any person, with intent directly or indirectly to perform services, to make or

22  disseminate any statement concerning those services that is untrue or misleading. To have

23  standing under section 17500, a plaintiff must demonstrate that he or she has suffered an actual

24  injury, and that such injury occurred as a result of the defendant's conduct.

25      54.    As set forth in Paragraphs 1 through 51 above, Comcast repeatedly stated to

26  Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

27  the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast

28  repeatedly stated to Plaintiffs and the other Class members that its high-speed Internet service

FIRST AMENDED CLASS ACTION COMPLAINT

1 provides fast download and upload speeds for applications that involve large transfers of data.

2 Indeed, Comcast stated that it actually increases the speed of its service ("kicks the Internet

3 connection into overdrive") for such transfers. Comcast made and disseminated these statements

4 intending to provide Internet service to Plaintiffs and the other Class members.

5      55.     The foregoing statements made and disseminated by Comcast were untrue or

6 misleading. Contrary to Comcast's statements, it intended to and did block, slow, or delay its

7 customers' access to the Internet and to P2P file-sharing and other Internet applications. As

8 described above, Comcast achieved this result by, among other things, surreptitiously transmitting

9 forged reset packets to users' computers that immediately terminated all file-sharing activities.

10      56.     Plaintiffs and the other Class members relied on Comcast's untrue or misleading

11 statements in subscribing to and paying for Comcast's high-speed Internet service and were denied

12 the full value of the promised Internet service because Comcast's statements were untrue or

13 misleading. Accordingly, Plaintiffs and the other Class members have suffered injury in fact and

14 have lost money or property as a result of Comcast's untrue or misleading representations.

15      57.     Based on the foregoing facts, Comcast's practices violated section 17500 of

16 California's Business and Professions Code. An action for injunctive relief and restitution with

17 respect to violations of section 17500 is specifically authorized by section 17535 of California's

18 Business and Professions Code. Wherefore, Plaintiffs pray judgment against Defendants as set

19 forth hereafter.

20                                **COUNT II**
**Violation of California's Business & Professions Code Section 17500**

21

22      58.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

23 57 as though fully restated herein.

24      59.     Under section 17500 of California's Business and Professions Code, it is unlawful

25 for any person, with intent directly or indirectly to induce the public to enter into any obligation

26 relating to services, to make or disseminate any statement concerning those services that is untrue

27 or misleading. To have standing under section 17500, a plaintiff must demonstrate that he or she

28 has suffered an actual injury, and that such injury occurred as a result of the defendant's conduct.

1       60.    As set forth in Paragraphs 1 through 57 above, Comcast repeatedly stated to

2   Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

3   the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast

4   repeatedly stated to Plaintiffs and the other Class members that its high-speed Internet service

5   provides fast download and upload speeds for applications that involve large transfers of data.

6   Indeed, Comcast stated that it actually increases the speed of its service ("kicks the Internet

7   connection into overdrive") for such transfers.  Comcast made and disseminated these statements

8   intending to induce Plaintiffs and the other Class members, among other members of the public, to

9   enter into obligations relating to services – specifically, to purchase subscriptions to Comcast's

10   high-speed Internet service that obligated them to pay monthly fees for that service.

11       61.    The foregoing statements made and disseminated by Comcast were untrue or

12   misleading.  Contrary to Comcast's statements, it intended to and did block, slow, or delay its

13   customers' access to the Internet and to P2P file-sharing and other Internet applications.  As

14   described above, Comcast achieved this result by, among other things, surreptitiously transmitting

15   forged reset packets to users' computers that immediately terminated all file-sharing activities.

16       62.    Plaintiffs and the other Class members relied on Comcast's untrue or misleading

17   statements in subscribing to and paying for Comcast's high-speed Internet service and were denied

18   the full value of the promised Internet service because Comcast's statements were untrue or

19   misleading.  Accordingly, Plaintiffs and the other Class members have suffered injury in fact and

20   have lost money or property as a result of Comcast's untrue or misleading representations.

21       63.    Based on the foregoing facts, Comcast's practices violated section 17500 of

22   California's Business and Professions Code.  An action for injunctive relief and restitution with

23   respect to violations of section 17500 is specifically authorized by section 17535 of California's

24   Business and Professions Code.  Wherefore, Plaintiffs pray judgment against Defendants as set

25   forth hereafter.

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

**COUNT III**
**Violation of California's Business & Professions Code Section 17200**

64.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 63 as though fully restated herein.

65.     Under section 17200 of California's Business and Professions Code, it is unlawful for any person to engage in an act of unfair competition, which includes unlawful, unfair, or fraudulent business acts or practices. An "unfair act or practice" includes any conduct that offends established public policies or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. To have standing under section 17200, a plaintiff must demonstrate that he or she has suffered an actual injury, and that such injury occurred as a result of the defendant's conduct.

66.     As set forth in Paragraphs 1 through 63 above, Comcast repeatedly stated to Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly stated to Plaintiffs and the other Class members that its high-speed Internet service provides fast download and upload speeds for applications that involve large transfers of data. Indeed, Comcast stated that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.

67.     The foregoing statements made and disseminated by Comcast were untrue or misleading. Contrary to Comcast's statements, it intended to and did block, slow, or delay its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

68.     Plaintiffs and the other Class members relied on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service and were denied the full value of the promised Internet service because Comcast's statements were untrue or misleading. Accordingly, Plaintiffs and the other Class members have suffered injury in fact and have lost money or property as a result of Comcast's untrue or misleading representations.

1    69.    Comcast's practices offend California's established public policy of protecting

2  consumers from untruthful, misleading, or deceptive statements, acts, or practices; and constitute

3  immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct.

4    70.    Based on the foregoing facts, Comcast's practices violated section 17200 of

5  California's Business and Professions Code.  An action for injunctive relief and restitution with

6  respect to violations of section 17200 is specifically authorized by section 17203 of California's

7  Business and Professions Code.  Wherefore, Plaintiffs pray judgment against Defendants as set

8  forth hereafter.

9                              **COUNT IV**
                **Violation of California's Business & Professions Code Section 17200**
10

11    71.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

12  70 as though fully restated herein.

13    72.    Under section 17200 of California's Business and Professions Code, it is unlawful

14  for any person to engage in an act of unfair competition, which includes unlawful, unfair, or

15  fraudulent business acts or practices.  A fraudulent business act or practice under section 17200 is

16  established where a particular act is likely to deceive members of the public who then sustain

17  injury thereby.  To have standing under section 17200, a plaintiff must demonstrate that he or she

18  has suffered an actual injury, and that such injury occurred as a result of the defendant's conduct.

19    73.    As set forth in Paragraphs 1 through 70 above, Comcast repeatedly stated to

20  Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

21  the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast

22  repeatedly stated to Plaintiffs and the other Class members that its high-speed Internet service

23  provides fast download and upload speeds for applications that involve large transfers of data.

24  Indeed, Comcast stated that it actually increases the speed of its service ("kicks the Internet

25  connection into overdrive") for such transfers.

26    74.    The foregoing statements made and disseminated by Comcast were untrue

27  or misleading and were likely to deceive members of the public.  Contrary to Comcast's

28  statements, it intended to and did block, slow, or delay its customers' access to the Internet and to

---

16

1  P2P file-sharing and other Internet applications.  As described above, Comcast achieved this result
2  by, among other things, surreptitiously transmitting forged reset packets to users' computers that
3  immediately terminated all file-sharing activities.

4      75.    Plaintiffs and the other Class members relied on Comcast's untrue or misleading
5  statements in subscribing to and paying for Comcast's high-speed Internet service and were denied
6  the full value of the promised Internet service because Comcast's statements were untrue or
7  misleading.  Accordingly, Plaintiffs and the other Class members have suffered injury in fact and
8  have lost money or property as a result of Comcast's untrue or misleading representations.

9      76.    Based on the foregoing facts, Comcast's practices violated section 17200 of
10  California's Business and Professions Code.  An action for injunctive relief and restitution with
11  respect to violations of section 17200 is specifically authorized by section 17203 of California's
12  Business and Professions Code.  Wherefore, Plaintiffs pray judgment against Defendants as set
13  forth hereafter.

**COUNT V**
**Violation of California's Business & Professions Code Section 17200**

14
15

16      77.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through
17  76 as though fully restated herein.

18      78.    Under section 17200 of California's Business and Professions Code, it is unlawful
19  for any person to engage in an act of unfair competition, which includes the dissemination of any
20  unfair, deceptive, untrue, or misleading advertising.  To have standing under section 17200, a
21  plaintiff must demonstrate that he or she has suffered an actual injury, and that such injury
22  occurred as a result of the defendant's conduct.

23      79.    As set forth in Paragraphs 1 through 76 above, Comcast advertised its high-speed
24  Internet service as providing both the fastest Internet connection and unfettered access to the
25  Internet.  Moreover, Comcast advertised its high-speed Internet service as providing fast download
26  and upload speeds for applications that involve large transfers of data.  Indeed, Comcast advertised
27  that it actually increased the speed of its service ("kicks the Internet connection into overdrive")
28  for such transfers.

1     80.     The advertising disseminated by Comcast was unfair, deceptive, untrue, or

2   misleading. Contrary to Comcast's advertising, it intended to and did block, slow, or delay its

3   customers' access to the Internet and to P2P file-sharing and other Internet applications. As

4   described above, Comcast achieved this result by, among other things, surreptitiously transmitting

5   forged reset packets to users' computers that immediately terminated all file-sharing activities.

6     81.     Plaintiffs and the other Class members relied on Comcast's advertising in

7   subscribing to and paying for Comcast's high-speed Internet service and were denied the full value

8   of the promised Internet service because Comcast's advertising was unfair, deceptive, untrue, or

9   misleading. Accordingly, Plaintiffs and the other Class members have suffered injury in fact and

10  have lost money or property as a result of Comcast's unfair, deceptive, untrue, or misleading

11  advertising.

12    82.     Based on the foregoing facts, Comcast's practices violated section 17200 of

13  California's Business and Professions Code. An action for injunctive relief and restitution with

14  respect to violations of section 17200 is specifically authorized by section 17203 of California's

15  Business and Professions Code. Wherefore, Plaintiffs pray judgment against Defendants as set

16  forth hereafter.

17                              **COUNT VI**
                **Violation of California's Business & Professions Code Section 17200**
18

19    83.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

20  82 as though fully restated herein.

21    84.     Under section 17200 of California's Business and Professions Code, it is unlawful

22  for any person to engage in an act of unfair competition, which includes any act prohibited by

23  section 17500 of California's Business and Professions Code. Under section 17500, it is unlawful

24  for any person, with intent directly or indirectly to perform services, to make or disseminate any

25  statement concerning those services that is untrue or misleading. To have standing under section

26  17200, a plaintiff must demonstrate that he or she has suffered an actual injury, and that such

27  injury occurred as a result of the defendant's conduct.

28

1          85.     As set forth in Paragraphs 1 through 82 above, Comcast repeatedly stated to

2   Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

3   the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast

4   repeatedly stated to Plaintiffs and the other Class members that its high-speed Internet service

5   provides fast download and upload speeds for applications that involve large transfers of data.

6   Indeed, Comcast stated that it actually increases the speed of its service ("kicks the Internet

7   connection into overdrive") for such transfers.  Comcast made and disseminated these statements

8   intending to provide Internet service to Plaintiffs and the other Class members.

9          86.     The foregoing statements made and disseminated by Comcast were untrue or

10  misleading.  Contrary to Comcast's statements, it intended to and did block, slow, or delay its

11  customers' access to the Internet and to P2P file-sharing and other Internet applications.  As

12  described above, Comcast achieved this result by, among other things, surreptitiously transmitting

13  forged reset packets to users' computers that immediately terminated all file-sharing activities.

14         87.     Plaintiffs and the other Class members relied on Comcast's untrue or misleading

15  statements in subscribing to and paying for Comcast's high-speed Internet service and were denied

16  the full value of the promised Internet service because Comcast's statements were untrue or

17  misleading.  Accordingly, Plaintiffs and the other Class members have suffered injury in fact and

18  have lost money or property as a result of Comcast's untrue or misleading representations.

19         88.     Based on the foregoing facts, Comcast's practices violated section 17200 of

20  California's Business and Professions Code.  An action for injunctive relief and restitution with

21  respect to violations of section 17200 is specifically authorized by section 17203 of California's

22  Business and Professions Code.  Wherefore, Plaintiffs pray judgment against Defendants as set

23  forth hereafter.

**COUNT VII**
**Violation of California's Business & Professions Code Section 17200**

26         89.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

27  88 as though fully restated herein.

28

1    90.    Under section 17200 of California's Business and Professions Code, it is unlawful

2    for any person to engage in an act of unfair competition, which includes any act prohibited by

3    section 17500 of California's Business and Professions Code.  Under section 17500, it is unlawful

4    for any person, with intent directly or indirectly to induce the public to enter into any obligation

5    relating to services, to make or disseminate any statement concerning those services that is untrue

6    or misleading.  To have standing under section 17200, a plaintiff must demonstrate that he or she

7    has suffered an actual injury, and that such injury occurred as a result of the defendant's conduct.

8    91.    As set forth in Paragraphs 1 through 88 above, Comcast repeatedly stated to

9    Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

10    the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast

11    repeatedly stated to Plaintiffs and the other Class members that its high-speed Internet service

12    provides fast download and upload speeds for applications that involve large transfers of data.

13    Indeed, Comcast stated that it actually increases the speed of its service ("kicks the Internet

14    connection into overdrive") for such transfers.  Comcast made and disseminated these statements

15    in its advertising materials intending to induce Plaintiffs and the other Class members, among

16    other members of the public, to enter into obligations relating to services – specifically, to

17    purchase subscriptions to Comcast's high speed Internet service that obligated them to pay

18    monthly fees for that service.

19    92.    The foregoing statements made and disseminated by Comcast were untrue or

20    misleading.  Contrary to Comcast's statements, it intended to and did block, slow, or delay its

21    customers' access to the Internet and to P2P file-sharing and other Internet applications.  As

22    described above, Comcast achieved this result by, among other things, surreptitiously transmitting

23    forged reset packets to users' computers that immediately terminated all file-sharing activities.

24    93.    Plaintiffs and the other Class members relied on Comcast's untrue or misleading

25    statements in subscribing to and paying for Comcast's high-speed Internet service and were denied

26    the full value of the promised Internet service because Comcast's statements were untrue or

27    misleading.  Accordingly, Plaintiffs and the other Class members have suffered injury in fact and

28    have lost money or property as a result of Comcast's untrue or misleading representations.

1      94.     Based on the foregoing facts, Comcast's practices violated section 17200 of

2    California's Business and Professions Code. An action for injunctive relief and restitution with

3    respect to violations of section 17200 is specifically authorized by section 17203 of California's

4    Business and Professions Code. Wherefore, Plaintiffs pray judgment against Defendants as set

5    forth hereafter.

<div align="center">

**COUNT VIII**
**Violation of the Consumers Legal Remedies Act Section 1770(a)(5)**

</div>

6

7

8      95.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

9    94 as though fully restated herein.

10      96.     Under section 1770(a)(5) of the CLRA, it is unlawful to represent that goods or

11    services have characteristics, ingredients, uses, benefits, or quantities that they do not have in any

12    transaction intended to result or resulting in the sale or lease of goods or services to any consumer.

13    To have standing under the CLRA, a plaintiff must demonstrate that he or she has suffered an

14    actual injury, and that such injury occurred as a result of the defendant's conduct.

15      97.     As set forth in Paragraphs 1 through 94 above, Comcast repeatedly represented to

16    Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

17    the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast

18    repeatedly represented to Plaintiffs and the other Class members that its high-speed Internet

19    service provides such fast and unfettered access for applications that involve large transfers of

20    data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the

21    Internet connection into overdrive") for such transfers. Comcast made these representations in

22    advertising and marketing materials intended to result or resulting in the sale of high-speed

23    Internet service by Comcast to Plaintiffs and the other Class members.

24      98.     The foregoing representations made by Comcast in its advertising and marketing

25    materials were untrue. Comcast's high-speed Internet service does not have the characteristics,

26    ingredients, uses, benefits, or quantities that Comcast represented it has; it is inferior to what was

27    advertised and marketed. Contrary to Comcast's representations, it blocked, slowed, or delayed its

28    customers' access to the Internet and to P2P file-sharing and other Internet applications. As

<div align="center">

21

FIRST AMENDED CLASS ACTION COMPLAINT

</div>

1  described above, Comcast achieved this result by, among other things, surreptitiously transmitting

2  forged reset packets to users' computers that immediately terminated all file-sharing activities.

3       99.    Plaintiffs and the other Class members relied on Comcast's untrue representations

4  in subscribing to and paying for Comcast's high-speed Internet service and were denied the full

5  value of the promised Internet service because Comcast's representations were untrue.

6  Accordingly, Plaintiffs and the other Class members have suffered injury in fact and have lost

7  money or property as a result of Comcast's untrue representations.

8       100.    Based on the foregoing facts, Comcast's practices violated section 1770(a)(5) of

9  the CLRA, and Plaintiffs and the other Class members are entitled, pursuant to sections 1780(a)(2)

10  and (3) of the CLRA, to an order: (1) enjoining the above-described wrongful acts and practices;

11  and (2) requiring payment of restitution to Plaintiffs and the Class members. In addition, Plaintiffs

12  and the other Class members are entitled to the payment of costs and attorney's fees and any other

13  relief deemed appropriate by the Court under section 1780(d) of the CLRA and section 1021.5 of

14  California's Code of Civil Procedure.

15       101.    In compliance with the provisions of section 1782 of the CLRA, and in conjunction

16  with the filing of this action, while the complaint is an appropriate notice of violation, Plaintiffs

17  will notify Defendants in writing of the particular violations of the CLRA, and demand that

18  Defendants rectify the actions described herein by refunding the purchase price and giving notice

19  to all affected consumers of its intent to do so. Plaintiffs will send this notice to Defendants by

20  certified mail, return receipt requested, at the address of Defendants' agent or principal place of

21  business in California.

22       102.    If Defendants fail, within thirty (30) days after receipt of the section 1782 notice

23  and demand, to adequately respond to Plaintiffs' demand to rectify the wrongful conduct described

24  above with respect to all Class members, Plaintiffs reserve their right to amend the complaint to

25  seek actual and punitive damages for violations of the CLRA as provided for under sections

26  1780(a) and 1782(d) of the CLRA.

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

**COUNT IX**

**Violation of the Consumers Legal Remedies Act Section 1770(a)(7)**

3      103.   Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

4   102 as though fully restated herein.

5      104.   Under section 1770(a)(7) of the CLRA, it is unlawful to represent that goods or

6   services are of a particular standard, quality, or grade if they are of another in any transaction

7   intended to result or resulting in the sale or lease of goods or services to any consumer.  To have

8   standing under the CLRA, a plaintiff must demonstrate that he or she has suffered an actual injury,

9   and that such injury occurred as a result of the defendant's conduct.

10      105.   As set forth in Paragraphs 1 through 102 above, Comcast repeatedly represented to

11   Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

12   the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast

13   repeatedly represented to Plaintiffs and the other Class members that its high-speed Internet

14   service provides such fast and unfettered access for applications that involve large transfers of

15   data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the

16   Internet connection into overdrive") for such transfers.  Comcast made these representations in

17   advertising and marketing materials intended to result or resulting in the sale of high-speed

18   Internet service by Comcast to Plaintiffs and the other Class members.

19      106.   The foregoing representations made by Comcast in its advertising and marketing

20   materials were untrue.  Comcast's high-speed Internet service is not of the standard, quality, or

21   grade represented by Comcast; it is of a lesser standard, quality, or grade.  Contrary to Comcast's

22   representations, it blocked, slowed, or delayed its customers' access to the Internet and to P2P file-

23   sharing and other Internet applications.  As described above, Comcast achieved this result by,

24   among other things, surreptitiously transmitting forged reset packets to users' computers that

25   immediately terminated all file-sharing activities.

26      107.   Plaintiffs and the other Class members relied on Comcast's untrue representations

27   in subscribing to and paying for Comcast's high-speed Internet service and were denied the full

28   value of the promised Internet service because Comcast's representations were untrue.

1    Accordingly, Plaintiffs and the other Class members have suffered injury in fact and have lost

2    money or property as a result of Comcast's untrue representations.

3        108.    Based on the foregoing facts, Comcast's practices violated section 1770(a)(7) of

4    the CLRA, and Plaintiffs and the other Class members are entitled, pursuant to sections 1780(a)(2)

5    and (3) of the CLRA, to an order: (1) enjoining the above-described wrongful acts and practices;

6    and (2) requiring payment of restitution to Plaintiffs and the Class members.  In addition, Plaintiffs

7    and the Class members are entitled to the payment of costs and attorney's fees and any other relief

8    deemed appropriate by the Court under section 1780(d) of the CLRA and section 1021.5 of

9    California's Code of Civil Procedure.

10       109.    In compliance with the provisions of section 1782 of the CLRA, and in conjunction

11   with the filing of this action, while the complaint is an appropriate notice of violation, Plaintiffs

12   will notify Defendants in writing of the particular violations of the CLRA, and demand that

13   Defendants rectify the actions described herein by refunding the purchase price and giving notice

14   to all affected consumers of its intent to do so.  Plaintiffs will send this notice to Defendants by

15   certified mail, return receipt requested, at the address of Defendants' agent or principal place of

16   business in California.

17       110.    If Defendants fail, within thirty (30) days after receipt of the section 1782 notice

18   and demand, to adequately respond to Plaintiffs' demand to rectify the wrongful conduct described

19   above with respect to all Class members, Plaintiffs reserve their right to amend the complaint to

20   seek actual and punitive damages for violations of the CLRA as provided for under sections

21   1780(a) and 1782(d) of the CLRA.

22                                **COUNT X**
                **Violation of the Consumers Legal Remedies Act Section 1770(a)(9)**
23

24       111.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

25   110 as though fully restated herein.

26       112.    Under section 1770(a)(9) of the CLRA, it is unlawful to advertise goods or services

27   with intent not to sell them as advertised in any transaction intended to result or resulting in the

28   sale or lease of goods or services to any consumer.  To have standing under the CLRA, a plaintiff

1 | must demonstrate that he or she has suffered an actual injury, and that such injury occurred as a

2 | result of the defendant's conduct.

3 |     113.   As set forth in Paragraphs 1 through 110 above, Comcast repeatedly represented to

4 | Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

5 | the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast

6 | repeatedly represented to Plaintiffs and the other Class members that its high-speed Internet

7 | service provides such fast and unfettered access for applications that involve large transfers of

8 | data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the

9 | Internet connection into overdrive") for such transfers. Comcast made these representations in

10 | advertising materials intended to result or resulting in the sale of high-speed Internet service by

11 | Comcast to Plaintiffs and the other Class members.

12 |     114.   The foregoing representations made by Comcast in its advertising materials were

13 | untrue. Comcast's high-speed Internet service is not as advertised by Comcast. Contrary to

14 | Comcast's representations, it blocked, slowed, or delayed its customers' access to the Internet and

15 | to P2P file-sharing and other Internet applications. As described above, Comcast achieved this

16 | result by, among other things, surreptitiously transmitting forged reset packets to users' computers

17 | that immediately terminated all file-sharing activities.

18 |     115.   Plaintiffs and the other Class members relied on Comcast's untrue representations

19 | in subscribing to and paying for Comcast's high-speed Internet service and were denied the full

20 | value of the promised Internet service because Comcast's representations were untrue.

21 | Accordingly, Plaintiffs and the other Class members have suffered injury in fact and have lost

22 | money or property as a result of Comcast's untrue representations.

23 |     116.   Based on the foregoing facts, Comcast's practices violated section 1770(a)(9) of

24 | the CLRA, and Plaintiffs and the other Class members are entitled, pursuant to sections 1780(a)(2)

25 | and (3) of the CLRA, to an order: (1) enjoining the above-described wrongful acts and practices;

26 | and (2) requiring payment of restitution to Plaintiffs and the Class members. In addition, Plaintiffs

27 | and the Class members are entitled to the payment of costs and attorney's fees and any other relief

28 |

FIRST AMENDED CLASS ACTION COMPLAINT

1  deemed appropriate by the Court under section 1780(d) of the CLRA and section 1021.5 of

2  California's Code of Civil Procedure.

3       117.   In compliance with the provisions of section 1782 of the CLRA, and in conjunction

4  with the filing of this action, while the complaint is an appropriate notice of violation, Plaintiffs

5  will notify Defendants in writing of the particular violations of the CLRA, and demand that

6  Defendants rectify the actions described herein by refunding the purchase price and giving notice

7  to all affected consumers of its intent to do so.  Plaintiffs will send this notice to Defendants by

8  certified mail, return receipt requested, at the address of Defendants' agent or principal place of

9  business in California.

10       118.   If Defendants fail, within thirty (30) days after receipt of the section 1782 notice

11  and demand, to adequately respond to Plaintiffs' demand to rectify the wrongful conduct described

12  above with respect to all Class members, Plaintiffs reserve their right to amend the complaint to

13  seek actual and punitive damages for violations of the CLRA as provided for under sections

14  1780(a) and 1782(d) of the CLRA.

15  <div align="center">**COUNT XI**</div>
<div align="center">**Violation of the Consumers Legal Remedies Act Section 1770(a)(10)**</div>

16

17       119.   Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through

18  118 as though fully restated herein.

19       120.   Under section 1770(a)(10) of the CLRA, it is unlawful to advertise goods or

20  services with intent not to supply reasonably expectable demand in any transaction intended to

21  result or resulting in the sale or lease of goods or services to any consumer.  To have standing

22  under the CLRA, a plaintiff must demonstrate that he or she has suffered an actual injury, and that

23  such injury occurred as a result of the defendant's conduct.

24       121.   As set forth in Paragraphs 1 through 118 above, Comcast repeatedly represented to

25  Plaintiffs and the other Class members that Comcast's high-speed Internet service provides both

26  the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast

27  repeatedly represented to Plaintiffs and the other Class members that its high-speed Internet

28  service provides such fast and unfettered access for applications that involve large transfers of

1    data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the

2    Internet connection into overdrive") for such transfers. Comcast made these representations in

3    advertising materials intended to result or resulting in the sale of high-speed Internet service by

4    Comcast to Plaintiffs and the other Class members.

5         122.    Comcast made the foregoing representations notwithstanding that it intended not to

6    supply reasonably expectable demand for the high-speed Internet services it advertised. Contrary

7    to Comcast's representations, it blocked, slowed, or delayed its customers' access to the Internet

8    and to P2P file-sharing and other Internet applications. As described above, Comcast achieved

9    this result by, among other things, surreptitiously transmitting forged reset packets to users'

10    computers that immediately terminated all file-sharing activities. Comcast engaged in these tactics

11    because it alleged that they were necessary to prevent service degradation resulting from excessive

12    bandwidth congestion created by file-sharing applications – precisely the applications that

13    Comcast had promised in its advertising would receive unfettered access to the fastest internet

14    connection. In short, Comcast advertised its high-speed Internet service intending not to supply

15    reasonably expectable demand for precisely the service it promised to supply.

16         123.    Plaintiffs and the other Class members relied on Comcast's untrue representations

17    in subscribing to and paying for Comcast's high-speed Internet service and were denied the full

18    value of the promised Internet service because Comcast's representations were untrue.

19    Accordingly, Plaintiffs and the other Class members have suffered injury in fact and have lost

20    money or property as a result of Comcast's untrue representations.

21         124.    Based on the foregoing facts, Comcast's practices violated section 1770(a)(10) of

22    the CLRA, and Plaintiffs and the other Class members are entitled, pursuant to sections 1780(a)(2)

23    and (3) of the CLRA, to an order: (1) enjoining the above-described wrongful acts and practices;

24    and (2) requiring payment of restitution to Plaintiffs and the Class members. In addition, Plaintiffs

25    and the Class members are entitled to the payment of costs and attorney's fees, and any other relief

26    deemed appropriate by the Court under section 1780(d) of the CLRA and section 1021.5 of

27    California's Code of Civil Procedure.

28

FIRST AMENDED CLASS ACTION COMPLAINT

1     125.   In compliance with the provisions of section 1782 of the CLRA, and in conjunction

2 with the filing of this action, while the complaint is an appropriate notice of violation, Plaintiffs

3 will notify Defendants in writing of the particular violations of the CLRA, and demand that

4 Defendants rectify the actions described herein by refunding the purchase price and giving notice

5 to all affected consumers of its intent to do so. Plaintiffs will send this notice to Defendants by

6 certified mail, return receipt requested, at the address of Defendants' agent or principal place of

7 business in California.

8     126.   If Defendants fail, within thirty days after receipt of the section 1782 notice and

9 demand, to adequately respond to Plaintiffs' demand to rectify the wrongful conduct described

10 above with respect to all Class members, Plaintiffs reserve their right to amend the complaint to

11 seek actual and punitive damages for violations of the CLRA as provided for under sections

12 1780(a) and 1782(d) of the CLRA.

13                                **PRAYERS FOR RELIEF**

14     WHEREFORE, Plaintiffs, individually and for all others similarly situated, respectfully

15 request that this Court:

16     1.   Certify the Class as defined in this First Amended Complaint;

17     2.   Order Comcast to notify each and every member of the Class of the pendency of

18 the claims in this action in order to give such persons an opportunity to seek relief;

19     3.   Enjoin Comcast from engaging in conduct that violates sections 17200 and 17500

20 of California's Business and Professions Code, and the CLRA, as defined in this First Amended

21 Complaint;

22     4.   Enter a judgment in favor of Plaintiffs and the Class on Counts I-XI;

23     5.   Award restitution to Plaintiffs and the Class;

24     6.   Create a common fund comprised of all restitution to Class members;

25     7.   Award Class counsel attorney's fees in accordance with section 1780(d) of the

26 CLRA and section 1021.5 of California's Code of Civil Procedure, the Common Fund Doctrine or

27 any other applicable law;

28     8.   Award costs of this suit; and

FIRST AMENDED CLASS ACTION COMPLAINT

9.    Award such other relief as this Court may deem to be just, proper, and equitable.

Dated: July 11, 2008                    Respectfully submitted,

SIMMONSCOOPER LLC

By: _____
John A. Bruegger, CSB # 250494
100 N. Sepulveda Blvd., Suite 1350
El Segundo, CA 90245
Telephone:    (310) 322-3555
Facsimile:    (310) 322-3655
E-Mail:        jbruegger@simmonscooper.com

SIMMONSCOOPER LLC
Ken Brennan, *Application for Pro Hac Vice to be Filed*
707 Berkshire Blvd., PO Box 521
East Alton, IL 62024
Telephone:    (618) 259-2222
Fax:            (618) 259-2251
E-Mail:        kbrennan@simmonscooper.com

GILBERT RANDOLPH LLP
August J. Matteis, Jr., *Application for Pro Hac Vice to be Filed*
Richard Shore, *Application for Pro Hac Vice to be Filed*
Alyson A. Foster, *Application for Pro Hac Vice to be Filed*
Brian Weinthal, *Application for Pro Hac Vice to be Filed*
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone:    (202) 772-1923
Facsimile:    (202) 772-1924
E-Mail:        matteisa@gilbertrandolph.com

HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYS LLP
Andrea Bierstein, *Application for Pro Hac Vice to be Filed*
112 Madison Avenue
New York, NY 10016-7416
Telephone:    (212) 784-6403
Facsimile:    (212) 784-6420
E-Mail:        abierstein@hanlyconroy.com

*Attorneys for Plaintiffs Jordan Leigh and Michael Arana*

FIRST AMENDED CLASS ACTION COMPLAINT

ANTHONY P. MONZO
(LLM Taxation)

ANDREW D. CATANESE

ATTORNEYS AT LAW
# MONZO CATANESE
A Professional Corporation

F. THOMAS HILLEGASS

MELINDA J. WEBER

June 5, 2008

<u>VIA HAND DELIVERY</u>

Direct Filing – Law Division
SUPERIOR COURT OF NEW JERSEY
9 North Main Street
Cape May Court House, NJ  08210

      Re:   Daniel Libonati, Jr., etc. v. COMCAST Cablevision of Jersey City, Inc., et al.
               Our File No.:  1725-001

Dear Clerk:

    I am enclosing with this letter the following:

1.    Original and one copy of first page of Complaint;
2.    Case Information Statement;
3.    Our law firm's check in the amount of $200.00 for the filing fee.

    Kindly file the Complaint, returning the copy of the first page stamped filed along with the track assignment notice for service upon the defendants. I have enclosed a return envelope for your convenience.

    Thank you.

Regards,

ANDREW D. CATANESE
acatanese@monzolaw.com

ADC:kdp
Enclosures

cc:   Daniel Libonati, Jr. – Via Email Only
      Gilbert Randolph LLP – Via Email Only

RECEIVED

2008 JUN -5 PM 3: 36

OFFICE OF THE
CIVIL DIVISION MANAGER

Andrew D. Catanese, Esquire
MONZO CATANESE, P.C.
Schoolhouse Office Park
211 S. Main Street, Suite 104
Cape May Court House, NJ 08210
(609) 463-4601; Fax (609) 463-4606

August J. Matteis, Jr., Esquire
Richard D. Shore, Esquire
Brian Weinthal, Esquire
GILBERT RANDOLPH LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
(202) 772-2200
((Application for Admission Pro Hac Vice to be filed)

Attorneys for Plaintiff

| | |
|---|---|
| DANIEL LIBONATI, JR., <br><br> On Behalf of Himself, and All Others Similarly Situated, <br><br><div align="right">Plaintiff,</div><br> v. <br><br> COMCAST CABLEVISION OF JERSEY CITY, INC., COMCAST CABLEVISION OF MEADOWLANDS, INC., COMCAST CELLULAR CORPORATION, COMCAST OF HOPEWELL VALLEY, INC., COMCAST OF NEW JERSEY, LLC, ABC CORPORATION NOS. 1-100, FICTITIOUS ENTITIES, <br><br><div align="right">Defendants.</div> | SUPERIOR COURT OF NEW JERSEY LAW DIVISION CAPE MAY COUNTY <br><br> DOCKET NO.: <br><br> Civil Action (CLASS ACTION) <br><br> **COMPLAINT AND DEMAND FOR JURY** |

{APM00031037.DOC v. 2}

Plaintiff, Daniel Libonati, Jr., ("Plaintiff"), on behalf of himself and all others similarly situated, based on information and belief and investigation of his counsel except for information based on personal knowledge, hereby alleges:

## NATURE OF THE ACTION

1.      Speed and access are key features of high-speed Internet service. Defendant entities listed above (collectively, "Comcast" or "Defendant," as defined in Paragraph 13 below), providers of Internet service to citizens of New Jersey, advertise, market, and sell their high-speed Internet service as providing "the fastest Internet connection" and "unfettered access to all the content, services, and applications that the Internet has to offer." Comcast specifically represents that it provides the fastest possible access to "web applications" that are the most "data intensive" and that it "does not block access to any web sites or online applications, including peer-to-peer services." These and other similar statements by Comcast are patently false.

2.      Comcast intentionally blocks its customers from using peer-to-peer ("P2P") file-sharing and other Internet applications, or otherwise impedes those applications, and it does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges what are known as "reset packets," making it appear as if they are coming from one of the computers attempting to share a file. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises his or her voice as one of the callers, says "talk to you later," and abruptly disconnects the call.

3.      Comcast's clandestine techniques are similar to those used by totalitarian governments to censor the use of the Internet. No doubt Comcast would characterize this

behavior as illegal and malicious hacking if perpetrated by others on Comcast and its customers. Indeed, Comcast's customers would be justified in assuming that Comcast was protecting them from this sort of conduct, rather than subjecting them to it.

4.    Comcast's customers were not told that Comcast would block or otherwise impede P2P file-sharing or any other Internet applications. On the contrary, they were assured by Comcast that they would receive "unfettered access" to the Internet and its applications using the "fastest Internet connection." They never authorized Comcast to engage in practices contrary to these promises.

5.    As a result of Comcast's actions, Plaintiff and the other members of the Class paid for a promised service that they did not receive. Comcast's actions constitute deceptive trade practices in connection with the sale or advertisement of any merchandise under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("NJCFA"), including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission. *See,* N.J.S.A. 56:8-2. Under the Act, "merchandise" includes services such as Internet service. *See,* N.J.S.A. 56:8-1(c). Accordingly, Plaintiff, on behalf of himself, and those similarly situated, seeks all relief to which he is entitled, including equitable relief, actual damages, treble damages, a refund of all moneys Comcast acquired by means of its unlawful conduct, reasonable attorneys fees, filing fees, and reasonable costs of suit pursuant to N.J.S.A. 56:8-19.

## PARTIES TO THE ACTION

6.    Plaintiff resides in Hazlet Township, Monmouth County, New Jersey. He was a nine-year Comcast customer whose service was terminated on January 24, 2008 for "excessive

bandwidth usage." Comcast was not willing to reveal to Plaintiff the secret "bandwidth limit" that they applied to him. He has used P2P protocols to attempt to upload and share files with friends, and did in fact encounter massive delays in the process. Plaintiff has suffered an ascertainable loss under N.J.S.A. 56:8-19 and brings this action on behalf of himself and all others similarly situated.

7.    Comcast Cablevision of Jersey City, Inc., is a New Jersey domestic corporation and is authorized to, and regularly does, conduct business within New Jersey.

8.    Comcast Cablevision of Meadowlands, Inc., is a New Jersey domestic corporation, and is authorized to, and regularly does, conduct business within New Jersey.

9.    Comcast Cellular Corporation, is a New Jersey domestic corporation and is authorized to, and regularly does, conduct business within New Jersey.

10.    Comcast of Hopewell Valley, Inc., is a New Jersey domestic corporation and is authorized to, and regularly does, conduct business within New Jersey.

11.    Comcast of New Jersey, LLC, is a New Jersey domestic limited liability company and is authorized to, and regularly does, conduct business within New Jersey.

12.    ABC Corporation Nos. 1-100, are businesses or entities actually doing business in Cape May County whose true names and affiliations are currently unknown to Plaintiff, and who therefore are sued under fictitious names. Plaintiff further alleges that each of the fictitiously named Defendants perpetrated some or all of the wrongful acts alleged herein. Plaintiff will amend this Complaint to state the true names and affiliations of Defendants ABC Corporation Nos. 1-100 as soon as such information is ascertained.

13.    The terms "Comcast" and "Defendants," as used herein, are defined to mean the Defendants named in Paragraphs 7 through 12 above.

14.    The causes of action alleged herein arise out of Comcast's high-speed Internet service, trade practices, and advertising strategies originating and employed in New Jersey, including without limitation, Cape May County.

## JURISDICTION AND VENUE

15.    This Court has personal jurisdiction over Comcast pursuant to R. 4:4-4(a)(6), because Comcast was authorized to do business in New Jersey within the time period relevant to the claims stated herein, or has transacted business within New Jersey, by, among other things, doing a series of acts in New Jersey for the purpose of realizing pecuniary benefit or contracting to supply services in New Jersey, or has succeeded to the obligations of entities that were authorized to do business in New Jersey or have transacted business in New Jersey.

16.    This Court has subject matter jurisdiction over this action pursuant to N.J.S.A. 56:8-19 because, as explained more fully herein, Comcast's action violate the NJCFA.

17.    Venue is proper within Cape May County pursuant to R. 4:3-2 because the cause of action arose, in part, in Cape May County and because Defendants conduct or have conducted business within this County.

## FACTUAL ALLEGATIONS

### A.    Comcast Markets High Speeds and Unfettered Access to the Internet.

18.    Comcast provides high-speed Internet services to citizens of New Jersey.

19.    Fast download and upload speeds and unfettered access are key features of Internet service. These features are especially important to consumers who download or upload large files.

20.    Comcast advertises, markets, and sells its high-speed Internet service on the express basis that it provides exceptionally fast and unfettered access to the Internet.

21.    Regarding the speed of its Internet access, Comcast represents, among other things, the following:

- "[W]hen it comes to getting the fastest Internet connection, a lot of different services claim to be the fastest, but Comcast actually delivers."

- "The speed that this digital cable Internet connection can provide blows away the speeds that most competing technologies can attain."

- "Comcast's high speed Internet service provides anywhere from four to six times the speed that DSL based Internet access can provide!"

- That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing," "Scorching," "Lightning-Fast," and "Way Faster Than DSL."

22.    Comcast represents that it provides the fastest speeds precisely for the applications that need it most – those that require large amounts of data to be uploaded and downloaded:

- "[Comcast] makes it possible for you to download even large files in just a few moments and to get onto sites such as gaming sites or virtual worlds."

- "Comcast's high speed Internet also has the advantage of always being on and ready for use."

- "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. This will be even more true as the Internet becomes an ever growing part of our lives. The need for speed comes from the fact that many of the best Web applications are also the most data intensive. That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web."

- "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!"

23.    Comcast further represents that it does not block or slow any Internet applications, but rather provides "unfettered access to all the … applications the Internet has to offer." Comcast states that its service "can be used to open up the Internet, and all the potential

that it holds, for your enjoyment. With all of these features from Comcast, you have unbound access to all of the best aspects of the World Wide Web!"

**B.    Contrary to Its Representations, Comcast Blocks, Delays, Slows or Otherwise Impedes Applications That Require Large Data Transfers.**

24.    Contrary to its representations, Comcast blocks, delays, slows, or otherwise impedes Internet access for certain data-intensive Internet applications, such as P2P file-sharing using BitTorrent, Gnutella, Lotus Notes, and possibly other applications.

25.    In early 2007, public interest organizations and consumers alleged that Comcast Corporation and its affiliates throughout the country ("Comcast Entities") were engaging in these practices. Comcast denied the allegations and stuck to their original representations by claiming that they did not block or otherwise impede access to the Internet for any applications.

26.    Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether users' access to high-speed Internet service was being blocked by the Comcast Entities for certain applications.

27.    The testing led to shocking results. The Comcast Entities were blocking, slowing, and delaying Internet access for certain P2P applications, and were doing so in an outrageously deceptive manner – by impersonating the computers of users involved in file-sharing. The Comcast Entities were forging what are known as "reset packets," making it appear as if they were coming from one of the computers attempting to file-share. The reset packet instructed the recipient computer to stop transmitting data, thus causing the computers involved to stop uploading and downloading the shared files.

28.    Even after these results were made public, the Comcast Entities continued to deny their actions by stating on the company's website that "[o]ur customers enjoy unfettered access

to all the content, services, and applications that the Internet has to offer." The Comcast Entities further state that they do not:

> [B]lock access to any Web site or applications, including BitTorrent. Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOIP applications like Vonage, and thousands of other applications online.

29.    Then, in public comments submitted to the Federal Communications Commission ("FCC") on February 12, 2008, the Comcast Entities finally admitted to "delaying" Internet access for certain P2P applications by generating forged reset packets that interrupted the connection between two computers attempting to share files. According to the Comcast Entities, their efforts to delay certain file-sharing applications were actually an attempt to prevent service degradation resulting from what they characterized as excessive bandwidth congestion created by these file-sharing applications. The Comcast Entities admitted that they had established pre-determined "congestion thresholds" that applied to the use of bandwidth in particular neighborhoods. When a Comcast subscriber in a particular neighborhood attempted to share a file in an area in which the "congestion threshold" was already exceeded, the Comcast Entities would send a forged reset packet that would terminate the connection between that subscriber and the computer with whom he or she was attempting to share files.

30.    Notwithstanding that the Comcast Entities admitted these facts in their comments to the FCC, they never disclosed to their subscribers or potential subscribers that they blocked, slowed, or delayed Internet access. On the contrary, the Comcast Entities continued to state that they provided unfettered access to the Internet using the fastest possible Internet connection.

31.    During all relevant times, Comcast has engaged and continues to engage in New Jersey in the same practices described in Paragraphs 17 through 29 above.

C.    **Plaintiff and the Other Class Members Paid Comcast**
      **for Promised Services They Never Received.**

32.    Plaintiff has lived in New Jersey for thirty-six years. Plaintiff was a nine-year Comcast customer whose service was terminated on January 24, 2008 for "excessive bandwidth usage." Comcast was not willing to reveal to Plaintiff the secret "bandwidth limit" that they applied to him.

33.    Plaintiff has experienced severe speed and content limitations with regard to various protocols and applications that involve the transfer of large amounts of data.

34.    Plaintiff and the other Class members, including members in Cape May County, were part of the target audience to which Comcast directed the advertisements generally described in Paragraphs 25 through 28 above. Plaintiff and the other Class members viewed these and other advertisements in various media (television, print, radio, Internet, etc.) and relied on the representations contained therein to purchase monthly subscriptions to Comcast's high-speed Internet service.

35.    Plaintiff and the other Class members all subscribed to Comcast's high-speed Internet service at some point between June 5, 2002 and the present and have paid all necessary subscription fees. Comcast never notified Plaintiff or the other Class members that it would block, delay, slow, or otherwise impede P2P file-sharing or other Internet applications. On the contrary, both before and after they subscribed, Plaintiff and the other Class members were assured by Comcast that they would receive the fastest possible unfettered access to the Internet. Indeed, Plaintiff and the other Class members were inundated by Comcast with repeated representations that Comcast's high-speed Internet service provided fast and unfettered access to

the Internet. Plaintiff and the other Class members never authorized Defendant to block, slow, or delay their access to the Internet for any applications.

36.    Plaintiff and other Class members have renewed their subscriptions on a monthly basis in reliance upon Comcast's representations regarding fast and unfettered access to the internet.

37.    Plaintiff and the other Class members have suffered an ascertainable loss as a result of Comcast's conduct as described above.

## CLASS ACTION ALLEGATIONS

38.    This action is brought as a class action pursuant to R. 4:32 and is properly maintainable as a class action as set forth below.

### A.    Class Description

39.    The "Class" is defined as follows:

> All citizens of New Jersey who purchased or maintained high-speed Internet service from Comcast at any time between June 5, 2002 and the date that the Court certifies the class. Specifically excluded from this Class is Comcast and all of its subsidiaries, parents, and other affiliates, all officers, directors, and employees of these entities, and all legal representatives, heirs, and assigns of these entities. Also excluded are any judicial officers who preside over this action and any juror that participates in this lawsuit.

### B.    Impracticability of Joinder

40.    The Class is composed of thousands of citizens of New Jersey who purchased Comcast's high-speed Internet service. Accordingly, under R. 4:32-1(a)(1), joinder of all Class members would be impracticable. The disposition of Plaintiff's and the other Class members' claims in a class action will provide substantial benefits to the parties and the Court. The Class is ascertainable and there is a well-defined community of interest in the questions of law or fact

alleged since the rights of each Class member were infringed or violated in a similar fashion based upon Comcast's uniform conduct as described below.

## C.    Commonality

41.    Defendant has acted in ways that affect all members of the proposed Class similarly. Questions of fact and law are common to each member of the Class, under R. 4:32-1(a)(2). These common questions of law or fact include, but are not limited to, the following:

a)    whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute deception, fraud, false pretense, false promise or misrepresentation in connection with the sale of merchandise under the NJCFA;

b)    whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a concealment of a material fact in connection with the sale of merchandise under the NJCFA;

c)    whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute an omission of a material fact in connection with the sale of merchandise under the NJCFA; and

d)    whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute deception, fraud, false pretense, false promise or misrepresentation in connection with the advertisement of merchandise under the NJCFA.

## D.    Typicality

42.    Plaintiff's claims are typical of the claims of the proposed Class, under R. 4:32-1(a)(3) because each Class member purchased Comcast's high-speed Internet service and received something less than that for which they paid. Thus, each Class member was wronged by the same offending conduct, and proof of Plaintiff's claims will similarly prove the claims of absent members of the Class.

**E.     Fair and Adequate Representation**

43.     Plaintiff is capable of fairly and adequately protecting the interests of the Class, pursuant to R. 4.32-1(a)(4) because his claims are common to the Class and proof of those claims will prove the claims of absent Class members. Plaintiff's interests are in harmony with the interests of other members of the Class, and none of Plaintiff's interests are adverse to those of other Class members. Plaintiff intends to pursue this litigation vigorously, and he selected as his counsel Gilbert Randolph LLP and Monzo Catanese, P.C., law firms experienced, collectively, in complex litigation. Gilbert Randolph LLP has served as class counsel in other complex matters.

**F.     Predomination**

44.     Questions of law and fact that are common to the Plaintiff and the Class predominate over question affecting only individual members, in accordance with R. 4:32-1(b)(3). This action predominately concerns Defendants' actions, namely, Defendants' dissemination of advertisements that promised that their high-speed Internet services would be fast and unfettered, and Defendants' acts that undermined those promises. Defendants' conduct towards Plaintiff and the Class was the same in this regard. Further, the impact of Defendants' conduct on Plaintiff and the Class was also standard, that is, all Class members paid for services that they did not receive.

**G.     Superiority**

45.     This class action is the superior method for adjudication of Plaintiff's and the Class's claims, under R. 4:32-1(b)(3). Class members have little interest in pursuing individual actions because the size of each class member's damages is very small; therefore, a class action is the superior method of pursuing these claims. There is no other pending litigation that concerns this Class's claims. Further, a class action is superior because Defendants' actions

towards Plaintiff and the Class were similar. Thus, the class action is manageable; and adjudication of the claims of each member of the Class would result in thousands of needlessly repetitive trials.

## COUNT I
## Misrepresentation of Merchandise

46.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 45 as though fully restated herein.

47.     Under Section 56:8-2 of the NJCFA, it is an unlawful trade practice to use "deception, fraud, false pretense, false promise, or misrepresentation . . ." in connection with any sale of "merchandise" in New Jersey or in connection with the subsequent performance where such unlawful trade practice results in an ascertainable loss. Under Section 56:8-1 (c) of the NJCFA, "merchandise" includes services such as Comcast's high-speed Internet service.

48.     As set forth in Paragraphs 1 through 45 above, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides both the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

49.     The foregoing statements made and disseminated by Comcast constitute deception, fraud, false pretense, false promise, or misrepresentation. Contrary to Comcast's statements, it intended to and did block, slow, or delay its customers' access to the Internet and

to P2P file-sharing and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

50.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service.  Plaintiff and the other Class members were denied the full value of the promised Internet service because Comcast's statements were untrue or misleading.  Plaintiff and the other Class members have suffered an ascertainable loss and have lost money or property as a result of Comcast's untrue or misleading representations.

51.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, is intentional, willful, malicious, and wanton.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

## COUNT II
## Concealment of a Material Fact

52.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 51 as though fully restated herein.

53.     Under Section 56:8-2 of the NJCFA it is an unlawful trade practice to conceal a material fact in connection with a sale of merchandise, including services, in New Jersey or in connection with the subsequent performance.

54.     As set forth in Paragraphs 1 through 51 above, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides both the fastest Internet connection and unfettered access to the Internet.   Moreover, Comcast

repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class. Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

55.     The foregoing conduct constitutes concealment of material facts by Comcast. Contrary to Comcast's statements, it intended to and did block, delay, slow or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities. Comcast did not disclose these facts to Plaintiffs or the Class members.

56.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct, and its concealment of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct. Plaintiff and the other Class members have suffered an ascertainable loss and have lost money or property as a result of Comcast's untrue or misleading representations and omissions.

57.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

## COUNT III
## Omission of a Material Fact

58.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 57 as though fully restated herein.

59.    Section 56:8-2 of the NJCFA prohibits the omission of any material fact in connection with a sale of merchandise, including services, in New Jersey or in connection with the subsequent performance.

60.    As set forth in Paragraphs 1 through 57 above, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides both the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class. Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

61.    The foregoing conduct constitutes omission of material facts by Comcast. Contrary to Comcast's statements, it intended to and did block, delay, slow or otherwise impede its customers' access to the Internet and to P2P file-sharing applications. As described above, Comcast achieved this result by surreptitiously transmitting forged reset packets to users'

computers that immediately terminated all file-sharing activities. Comcast did not disclose these facts to Plaintiffs or Class members.

62.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct, and its omission of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct. Accordingly, Plaintiff and the other Class members have suffered an ascertainable loss and have lost money or property as a result of Comcast's untrue or misleading representations.

63.     These omissions constitute a failure to state material facts because speed and unfettered access to the Internet are the principal selling points of high-speed Internet service. Virtually all of Comcast's advertising addresses these two qualities.

64.     Comcast's omissions injured Plaintiff and the other members of the Class and caused them to sustain an ascertainable loss because they were caused to purchase Comcast's high-speed Internet service by the omissions and because they paid for promised service that they did not receive.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

## COUNT IV
### Deceptive Advertising

65.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 64 as though fully restated herein.

66.    The NJCFA prohibits the use of "deception, fraud, false pretense, false promise, or misrepresentation," in connection with the advertisement of any merchandise, including services. *See* N.J.S.A.56:8-2.

67.    As set forth in Paragraphs 1 through 64 above, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides both the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

68.    The foregoing statements made and disseminated by Comcast constitute deception, fraud, false pretense, false promise, or misrepresentation. Contrary to Comcast's statements, it intended to and did block, slow, or delay its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

69.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service and were denied the full value of the promised Internet service because Comcast's statements were untrue or misleading. Accordingly, Plaintiff and the other Class members have

suffered an ascertainable loss and have lost money or property as a result of Comcast's untrue or misleading representations.

70.     This constitutes deceptive advertising because speed and unfettered access to the Internet are the principal selling points of high-speed Internet service. Virtually all of Comcast's advertising addresses these two qualities.

71.     Comcast's deceptive advertising injured Plaintiff and the other members of the Class and caused them to sustain ascertainable loss because they were caused to purchase Comcast's high-speed Internet service by the omissions and because they paid for promised service that they did not receive.

72.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

## COUNT V
### Civil Conspiracy

73.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 72 as though fully restated herein.

74.     Defendants, each of them, conspired or agreed with their parent corporation, each to the other, to engage in a conscious course of conduct to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling and in doing so, chose to commit unlawful acts in violation of the NJFCA, as set forth herein.

75.    Defendants did, in fact, commit such unlawful acts pursuant to the conspiracy and knowingly conspired to continue to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling in violation of the NJCFA, as set forth herein. Defendants, each to the other, conspired or agreed with their parent corporation to engage in a course of deceitful advertising and promotion so as to continue to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling, while advertising and causing members of the consuming public, including Plaintiff and members of the Class herein, to be lured into a false sense of security believing that they were, among other things, receiving unfettered access to the internet, when Defendants knew or should have known that they were not. Defendants engaged in a common plan and scheme with their parent corporation to conceal this knowledge from the public and to conceal the nature of the product they were selling. Defendants, together with their parent corporation, were engaged in a joint venture, enterprise, or agency for the aforesaid purpose of deceit and by reason of their capacity as joint venturers, each in furtherance of the conspiracy as aforesaid, the heretofore mentioned acts, deeds, knowledge, and omissions of said Defendants are imputable to the parent corporation, both jointly and severally.

76.    As a direct and proximate result of the aforesaid conspiracy, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

### COUNT VI
### Punitive Damages

77.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 76 as though fully restated herein.

78.    Plaintiff alleges that the harm Plaintiff suffered was the result of the Defendants' acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. *See* N.J.S.A. 2A:15-5.12.

79.    Therefore, Plaintiff respectfully requests the Court to award Plaintiff and the Class punitive damages.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, respectfully requests that this Court:

I.    Certify the Class as defined in this Complaint;

II.    Order Comcast to notify each and every member of the Class of the pendency of the claims in this action in order to give such persons an opportunity to seek relief;

III.    Enjoin Comcast from engaging in conduct that violates the NJCFA, as defined in this Complaint;

IV.    Enter a judgment in favor of Plaintiff and the Class on Counts I-VI;

V.    Award compensatory damages to Plaintiff and the Class;

VI.    Award Plaintiff and the Class treble damages; pursuant to N.J.S.A. 56:8-19;

VII.    Award Plaintiff and the Class a refund of all moneys Comcast acquired by means of its unlawful conduct;

VIII.    Award    Plaintiff    and    the    Class    punitive    damages;    pursuant    to N.J.S.A. 2A:15-5.9, *et seq.*;

IX.    Create a common fund comprised of all damages awarded to Plaintiff and the Class;

X.    Award Class counsel attorney's fees pursuant to N.J.S.A. 56:8-19, the Common Fund Doctrine, or any other applicable law;

XI.    Award Plaintiff and the Class interest as prescribed by law;

XII.    Award Plaintiff and the Class the costs of this suit; and

XIII.    Award Plaintiff and the Class such other relief as this Court may deem to be just, proper, and equitable.

## JURY DEMAND

Pursuant to R.4:35 plaintiffs hereby demand trial by jury as to all issues.

Dated: June 5, 2008                    Respectfully submitted,

Andrew D. Catanese
Monzo Catanese, P.C.
211 South Main Street, Suite 104
Cape May Court House, NJ 08210
(609) 463-4601

August J. Matteis, Jr.
Gilbert Randolph LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
(202) 772-2200
*(Application for Admission Pro Hac Vice
to be filed)*
*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)

To the best of my knowledge, information, and belief, there are two class action claims that relate to the subject matter of this Complaint. The matter in controversy herein is not the subject of any other action pending in any court or arbitration proceeding. Notwithstanding the foregoing, plaintiff is aware of one pending suit in the District of Columbia as well as anticipated suits in California and Illinois arising out of similar conduct by affiliates of the Comcast defendants named herein. Additionally, to the best of my knowledge, information, and belief, there are no other persons known to me who should be added as parties to this matter, nor are there any other actions contemplated.

Dated: June 5, 2008

Respectfully submitted,

Andrew D. Catanese
Monzo Catanese, P.C.
Schoolhouse Office Park
211 South Main Street
Suite 104
Cape May Court House, NJ 08210
(609) 463-4601

August J. Matteis, Jr.
Gilbert Randolph LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
(202) 772-2200
*(Application for Admission Pro Hac Vice
to be filed)*

*Attorneys for Plaintiff*



004884

LAW OFFICES MONZO CATANESE, P.C.
```
DATE    : Jun  5/2008
CHE  # : 04884
AMOUNT: $200.00
ACCOUNT: GENERAL - 1
PAID TO: Treasurer  State of New Jersey
Filing Fee  Class Action Complaint
1725 -  COMCAST- Class Action Suit
MATTER: 1725-001
LAWYER: Andrew D. Catanese
c/o Monzo Catanese, PC
211 South Main Street -- Suite 104
Cape May Court House
NJ
08210
COMCAST- Class Action Suit
```

```
** GENERAL BALANCES **
UNBILLED DISBS:            17.63
A/R BALANCE    :           0.00



** TRUST BALANCES **



TRUST BALANCE :            0.00
```

# CIVIL CASE INFORMATION STATEMENT

## (CIS)

RECEIVED

2008 JUN -5 PM 3: 30

OF SUPERIOR COURT

CIVIL DIVISION

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1

Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: CK    CG    CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Andrew D. Catanese, Esquire | (609) 463-4601 | Cape May |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
|---|---|
| Monzo Catanese, P.C. | |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 211 South Main Street, Suite 104<br>Cape May Court House, NJ 08210 | Complaint |
| | JURY DEMAND    ☒ YES    ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Daniel Libonati, Jr., On Behalf Of Himself, And All Othres Similarly Situated | Daniel LiBonati, Jr., etc. v. COMCAST Cablevision of Jersey City, Inc., COMCAST Cablevision of Meadowlands, Inc., COMCAST Cellular Corporation, COMCAST of Hopewell Valley, Inc., COMCAST of New Jersey, LLC, ABC Corporation Nos. 1-100, Fictitious Entities. |

| CASE TYPE NUMBER<br>(See reverse side for listing)<br><br>See Below | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES    ☒ NO<br><br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|

| RELATED CASES PENDING?<br>☐ YES    ☒ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  ☒ YES  ☐ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br><br>☐ NONE<br>☒ UNKNOWN |
|---|---|

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  ☒ YES  ☐ NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☒ BUSINESS |
|---|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☒ YES  ☐ NO |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

Plaintiff will request certification of class action.

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  ☐ YES  ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
|---|---|---|

| WILL AN INTERPRETER BE NEEDED?  ☐ YES  ☒ NO | IF YES, FOR WHAT LANGUAGE: |
|---|---|

| ATTORNEY SIGNATURE:<br><br>Andrew D. Catanese, Esq. | 6/5/08 |
|---|---|

 

**SIDE 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (Briefly describe nature of action) |

**Track II — 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603 | AUTO NEGLIGENCE – PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 699 | TORT – OTHER |

**Track III — 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Mass Tort (Track IV)**
| | | | |
|---|---|---|---|
| 241 | TOBACCO | 275 | ORTHO EVRA |
| 248 | CIBA GEIGY | 276 | DEPO-PROVERA |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 277 | MAHWAH TOXIC DUMP |
| 271 | ACCUTANE | 278 | ZOMETA/AREDIA |
| 272 | BEXTRA/CELEBREX | 601 | ASBESTOS |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category:

☐ Verbal Threshold          ☒ Putative Class Action          ☐ Title 59

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

------------------------------------------------------ :

Roger Lis,
On Behalf of Himself, and
All Others Similarly Situated,

                      Plaintiff,

               v.

COMCAST OF CHICAGO, INC.;
COMCAST OF ILLINOIS I, INC.;
COMCAST OF ILLINOIS III, INC.;
COMCAST OF ILLINOIS IV, INC.;
COMCAST OF ILLINOIS/TEXAS, INC.;
COMCAST MO EXPRESS OF ILLINOIS, INC.;
COMCAST OF NORTHERN ILLINOIS, INC.;
COMCAST SOUND COMMUNICATIONS, INC.;
COMCAST OF SOUTH CHICAGO, INC.;
COMCASTIC, INC.;
DOES 1-150,

                      Defendants.

------------------------------------------------------ :

*FILED*
CH-802
JUN 0 5 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**08 C H 2 0 3 5 4**

Civil No._____

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

      Plaintiff, Roger Lis ("Plaintiff"), on behalf of himself and all others similarly situated,

based on information and belief and investigation of his counsel except for information based on

personal knowledge, hereby alleges:

      1.      Speed and access are key features of high-speed Internet service. Defendant

entities (collectively, "Comcast" or "Defendant"), providers of Internet service to citizens of

Illinois, advertise, market, and sell their high-speed Internet service as providing "the fastest

Internet connection" and "unfettered access to all the content, services, and applications that the

Page 1 of 24                                        Case No. _____

Internet has to offer." Comcast specifically represents that it provides the fastest possible access to "web applications" that are the most "data intensive" and that it "does not block access to any web sites or online applications, including peer-to-peer services." These and other similar statements by Comcast are patently false.

2.    Comcast intentionally blocks its customers from using peer-to-peer ("P2P") file-sharing and other Internet applications, or otherwise impedes those applications, and it does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges what are known as "reset packets," making it appear as if they are coming from one of the computers attempting to file-share. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises her or her voice as one of the callers, says "talk to you later," and abruptly disconnects the call.

3.    Comcast's clandestine techniques are similar to those used by totalitarian governments to censor the use of the Internet. No doubt Comcast would characterize the behavior as illegal and malicious hacking if perpetrated by others on Comcast and its customers. Indeed, Comcast's customers would be justified in assuming that Comcast was protecting them from that sort of conduct, rather than subjecting them to it.

4.    Comcast's customers were not told that Comcast would block or otherwise impede P2P file-sharing or any other Internet applications. On the contrary, they were assured by Comcast that they would receive "unfettered access" to the Internet and its applications using the "fastest Internet connection." They never authorized Comcast to engage in practices contrary to these promises.

Case No. _____

5.      As a result of Comcast's actions, Plaintiff and the other members of the

Class paid for a promised service that they did not receive.  Comcast's actions constitute

deceptive trade practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act

("Illinois Consumer Fraud Act"), including, but not limited to, the use or employment of any

deception, fraud, false pretense, false promise, misrepresentation, or the concealment,

suppression, or omission of any material fact, with intent that others rely upon the concealment,

suppression, or omission of such material fact, or the use or employment of any practice

described in Section 2 of the Illinois Deceptive Trade Practices Act, in the conduct of any trade

or commerce, all of which actions by statute are deemed unlawful whether any person has in fact

been misled, deceived, or damaged thereby.  *See* 815 ILCS 505/2.  The Illinois Deceptive Trade

Practices Act provides, among other things, that a person engages in a deceptive trade practice

when that person represents that the goods or services are of a particular standard, quality, or

grade or that goods are a particular style or model if they are of another or advertises goods or

services with intent not to sell them as advertised.  *See* 815 ILCS 510/2 (a)(7) and (9),

respectively.  As defined in the Illinois Consumer Fraud Act, trade or commerce includes

services such as Internet service.  *See* 815 ILCS 505/1.  Accordingly, Plaintiff, on behalf of

himself, and those similarly situated, seeks all relief to which he is entitled, including equitable

relief, actual damages, punitive damages, reasonable attorneys fees, filing fees and reasonable

costs of suit.  *See* 815 ILCS 505/10a(c).

## PARTIES TO THE ACTION

6.     Plaintiff, who is a resident of Cook County, Illinois and is a "consumer" within the meaning of 815 ILCS 505/1(e), brings this action on behalf of himself and all those similarly situated. Plaintiff subscribed to Comcast's high-speed Internet service for a period of approximately eight (8) years beginning in 1999.

7.     Comcast of Chicago, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

8.     Comcast of Illinois I, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

9.     Comcast of Illinois III, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

10.    Comcast of Illinois IV, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's

conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

11.    Comcast of Illinois/Texas, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

12.    Comcast MO Express of Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

13.    Comcast of Northern Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

14.    Comcast Sound Communications, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

Case No. _____

15.     Comcast of South Chicago, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

16.     Comcastic, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

17.     Defendants DOES 1 – 150 are persons or entities whose true names and affiliations are currently unknown to Plaintiff, and who therefore are sued under fictitious names. Plaintiff alleges that each of the fictitiously named Defendants is a domestic Illinois corporation. Plaintiff further alleges that each of the fictitiously named Defendants perpetrated some or all of the wrongful acts alleged herein. Plaintiff will amend this Complaint to state the true names and affiliations of Defendants DOES 1 – 150 as soon as such information is ascertained.

18.     The terms "Comcast" and "Defendants" as used herein, are defined to mean the Defendants named in Paragraphs 7 through 17 above.

19.     The causes of action alleged herein arise out of Comcast's high-speed Internet service, trade practices, and advertising strategies originating and employed in Illinois.

## JURISDICTION AND VENUE

20.     Jurisdiction over Comcast is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), Section 2-209((a)(7) (making or performance of any contract or promise substantially connected with this State), Section 2-209(b)(4) (corporation doing business

within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the

Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(a)(1), (a)(7),

(b)(4), and (c).

21.     The Court has subject matter jurisdiction over the action pursuant to

815 ILCS 505/2 because, as explained more fully herein, Comcast's actions violate the Illinois

Consumer Fraud Act.

22.     Venue is proper within the County pursuant to 735 ILCS 5/2-101 because

the transaction or some part thereof out of which the cause of action arose occurred within

this County.

## FACTUAL ALLEGATIONS

### A.     Comcast Markets High Speeds and Unfettered Access to the Internet.

23.     Comcast provides high-speed Internet services to the citizens of Illinois.

24.     Fast download and upload speeds and unfettered access are key features of

Internet service. These features are especially important to consumers who download or upload

large files.

25.     Comcast advertises, markets, and sells its high-speed Internet service on the

express basis that it provides exceptionally fast and unfettered access to the Internet.

26.     Regarding the speed of its Internet access, Comcast represents, among other

things, the following:

- "[W]hen it comes to getting the fastest Internet connection, a lot of
  different services claim to be the fastest, but Comcast actually delivers."
- "The speed that the digital cable Internet connection can provide blows
  away the speeds that most competing technologies can attain."
- "Comcast's high speed Internet service provides anywhere from four to
  six times the speed that DSL based Internet access can provide!"

Case No. _____

- That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing," "Scorching," "Lightning-Fast," and "Way Faster Than DSL."

27.     Comcast represents that it provides the fastest speeds precisely for the applications that need it most – those that require large amounts of data to be uploaded and downloaded:

- "[Comcast] makes it possible for you to download even large files in just a few moments and to get onto sites such as gaming sites or virtual worlds."

- "Comcast's high speed Internet also has the advantage of always being on and ready for use."

- "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. The will be even more true as the Internet becomes an ever growing part of our lives. The need for speed comes from the fact that many of the best Web applications are also the most data intensive. That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web."

- "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!"

28.     Comcast further represents that it does not block or slow any Internet applications, but rather provides "unfettered access to all the . . . applications the Internet has to offer." Comcast states that its service "can be used to open up the Internet, and all the potential that it holds, for your enjoyment. With all of these features from Comcast, you have unbound access to all of the best aspects of the World Wide Web!"

**B.      Contrary to Its Representations, Comcast Blocks, Delays, Slows or Otherwise Impedes Applications That Require Large Data Transfers.**

29.     Contrary to its representations, Comcast blocks, delays, slows, or otherwise impedes Internet access for certain data-intensive Internet applications, such as P2P file sharing using BitTorrent, Gnutella, Lotus Notes, and possibly other applications.

30.     In early 2007, public interest organizations and consumers alleged that Comcast Corporation and its affiliates throughout the country (collectively, the "Comcast Entities") were engaging in these practices. The Comcast Entities denied the allegations and stuck to their original representations by claiming that they did not block or otherwise impede access to the Internet for any applications.

31.     Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether users' access to high-speed Internet service was being blocked by the Comcast Entities for certain applications.

32.     The testing led to shocking results. The Comcast Entities were blocking, delaying, slowing, or otherwise impeding Internet access for certain P2P applications, and were doing so in an outrageously deceptive manner, by impersonating the computers of users involved in file-sharing. The Comcast Entities were forging what are known as "reset packets," making it appear as if they were coming from one of the computers attempting to file-share. The reset packet instructed the recipient computer to stop transmitting data, thus causing the computers involved to stop uploading and downloading the shared files.

33.     Even after these results were made public, the Comcast Entities continued to deny their actions by stating on the company's website that "[o]ur customers enjoy unfettered access to all the content, services, and applications that the Internet has to offer." The Comcast Entities further state that they do not:

> [B]lock access to any Web site or applications, including BitTorrent. Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOIP applications like Vonage, and thousands of other applications online.

34.    Then, in public comments submitted to the Federal Communications Commission ("FCC") on February 12, 2008, the Comcast Entities finally admitted to "delaying" Internet access for certain P2P applications by generating forged reset packets that interrupted the connection between two computers attempting to share files.  According to the Comcast Entities, their efforts to delay certain file-sharing applications were actually an attempt to prevent service degradation resulting from what they characterized as excessive bandwidth congestion created by these file-sharing applications.  The Comcast Entities admitted that they had established pre-determined "congestion thresholds" that applied to the use of bandwidth in particular neighborhoods.  When a Comcast subscriber in a particular neighborhood attempted to share a file in an area in which he or she had exceeded the "congestion threshold," the Comcast Entities would send a forged reset packet that would terminate the connection between that subscriber and the computer with whom he or she was attempting to share files.

35.    Notwithstanding that the Comcast Entities admitted these facts in their comments to the FCC, they never disclosed to their subscribers or potential subscribers that they blocked, delayed, slowed, or otherwise impeded Internet access.  On the contrary, the Comcast Entities continued to state that they provided unfettered access to the Internet using the fastest possible Internet connection.

36.    During all relevant times, Comcast has engaged and continues to engage in Illinois in the very same practices described in paragraphs 23 through 35 above.

Case No. _____

**C.    Plaintiff and the Other Class Members Paid Comcast
for Promised Services They Never Received.**

37.    Plaintiff has lived in Illinois for his entire life (57 years).  Plaintiff previously subscribed to Comcast's high-speed Internet service for a period of approximately eight (8) years beginning in 1999.  He used his Internet connection for a wide range of uses.

38.    Plaintiff  has experienced severe speed and content limitations with regard to various protocols and applications that involve the transfer of large amounts of data.

39.    Plaintiff and the other Class members were part of the target audience to which Comcast directed the advertisements generally described in Paragraphs 25 through 28 above. Plaintiff and the other Class members viewed these and other advertisements in various media (television, print, radio, Internet, etc.) and relied on the representations contained therein to purchase monthly subscriptions to Comcast's high-speed Internet service.

40.    Plaintiff and the other Class members all subscribed to Comcast's high-speed Internet service at some point between June 5, 2005 and the present, and have paid all necessary subscription fees.  Comcast never notified Plaintiff or the other Class members that it would block, delay, slow, or otherwise impede the P2P file-sharing or other Internet applications.  On the contrary, both before and after they subscribed, Plaintiff and the other Class members were assured by Comcast that they would receive the fastest possible unfettered access to the Internet. Indeed, Plaintiff and the other Class members were inundated by Comcast with repeated representations that Comcast's high-speed Internet service provided fast and unfettered access to the Internet.  Plaintiff and the other Class members never authorized Defendant to block, delay, slow, or otherwise impede their access to the Internet for any applications.

41.    Plaintiff and the other Class members have suffered damage as a result of Comcast's conduct as described above.

Case No. _____

## CLASS ACTION ALLEGATIONS

42.     The action is brought as a class action pursuant to 735 ILCS 5/2-801, *et seq.* and is properly maintainable as a class action as set forth below.

**A.     Class Description**

43.     The "Class" is defined as follows:

> All citizens of Illinois who purchased or maintained high-speed
> Internet service from Comcast at any time between June 5, 2005 and
> the date that the Court certifies the class. Specifically excluded from
> the Class are Comcast and all of its subsidiaries, parents, and other
> affiliates, all officers, directors, and employees of these entities, and
> all legal representatives, heirs, and assigns of these entities. Also
> excluded are any judicial officers who preside over the action and any
> juror that participates in the lawsuit.

**B.     Impracticability of Joinder**

44.     The Class is composed of thousands of citizens of Illinois who purchased Comcast's high-speed Internet service. Accordingly, under 735 ILCS 5/2-801(1), joinder of all Class members would be impracticable. The disposition of Plaintiff's and the other Class members' claims in a class action will provide substantial benefits to the parties and the Court. The Class is ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon Comcast's uniform conduct as described below.

**C.     Commonality**

45.     Defendant has acted in ways that affect all members of the proposed Class similarly. Questions of fact and law are common to each member of the Class pursuant to 735 ILCS 5/2-801(2). These common questions of law or fact include, but are not limited to, the following:

> a)      whether Comcast's false statements that it would provide fast, unfettered
> access to the Internet, specifically with respect to applications that involve

large transfers of data, constitute deception, fraud, false pretense, false promise or misrepresentation in connection with the sale of merchandise under the Illinois Consumer Fraud Act;

b) whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a concealment of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act;

c) whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute an omission of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act; and

d) whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a representation that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not or whether the foregoing statements made and disseminated by Comcast also constitute an advertisement of goods or services with intent not to sell them as advertised under the Illinois Consumer Fraud Act.

### D.   Predomination

46.   Questions of law and fact that are common the Plaintiff and the Class predominate over question affecting only individual members pursuant to 735 ILCS 5/2-801(2). This action predominately concerns Defendants' actions, namely, Defendants' dissemination of advertisements that promised that their high-speed Internet services would be fast and unfettered, and Defendants' acts that undermined those promises. Defendants' conduct towards Plaintiff and the Class was the same in this regard. Further, the impact of Defendants' conduct on Plaintiff and the Class was also standard, that is, all Class members paid for services that they did not receive.

### E.   Fair and Adequate Representation

47.   Plaintiff is capable of fairly and adequately protecting the interests of the Class under 735 ILCS 5/2-801(3) because his claims are common to the Class and proof of those

claims will prove the claims of absent Class members. Plaintiff's interests are in harmony with the interests of other members of the Class, and none of Plaintiff's interests are adverse to those of other Class members. Plaintiff intends to pursue this litigation vigorously, and he selected counsel experienced in complex litigation and class actions.

**F.   Fair and Efficient Method of Adjudication**

48.   This class action is an appropriate method for the fair and efficient adjudication of this action pursuant to 735 ILCS 5/2-801(4). Adjudication of this action on a class-wide basis would secure economies of time, effort, and expense. Defendants' actions towards Plaintiff and the Class members were similar, therefore, adjudication of the claims of each member of the Class would result in thousands of needlessly repetitive trials. Further, the actual damages of each member of the Class is so small as to make adjudication of each claim on an individual basis inefficient.

<div align="center">

**COUNT I**
**Misrepresentation of Merchandise**

</div>

49.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 48 as though fully restated herein.

50.   Under Section 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an unlawful trade practice to use "deception, fraud, false pretense, false promise, or misrepresentation . . ." in connection with any sale of "merchandise" in Illinois. Under Section 815 ILCS 505/1 of the Illinois Consumer Fraud Act, "merchandise" includes services such as Comcast's high-speed Internet service.

51.   As set forth in paragraphs 1 through 48, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides the fastest and unfettered access to the Internet. Moreover, Comcast repeatedly represented to

Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

52.    The foregoing representations, made and disseminated by Comcast, constitute deception, fraud, false pretense, false promise, and misrepresentation. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

53.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements. Plaintiff and the other Class members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

54.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

55.    As a direct and proximate result of the aforesaid misrepresentation of merchandise, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

Case No. _____

56.     Accordingly, Comcast's actions are an unlawful trade practice under
Section 56:8-2 of the Illinois Consumer Fraud Act, and Plaintiff and the other Class members
are entitled to relief including, but not limited to, an injunction against the use of the unlawful
trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages,
and any other relief that the Court deems proper.

<div align="center">

**COUNT II**
**Concealment of a Material Fact**

</div>

57.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1
through 56 as though fully restated herein.

58.     Under 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an unlawful trade
practice to conceal a material fact in connection with a sale of merchandise, including services,
in Illinois.

59.     As set forth in paragraphs 1 through 56, Comcast repeatedly represented in
advertisements and other communications to Plaintiff and the other Class members that its
high-speed Internet subscribers would receive fast access to the Internet, and that the access
would be unfettered. Moreover, Comcast repeatedly represented to Plaintiff and the other Class
members that Comcast's high-speed Internet service provides such fast and unfettered access for
applications that involve large transfers of data. Indeed, Comcast represented that it actually
increases the speed of its service ("kicks the Internet connection into overdrive") for such
transfers. Comcast made these representations in connection with its sale of high-speed Internet
service to Plaintiff and the other members of the Class. Comcast did not disclose that it blocked,
delayed, slowed, or otherwise impeded access to the Internet.

60.     The foregoing conduct constitutes concealment of material facts by Comcast.
Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede

Case No. _____

its customers' access to the Internet and to P2P and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities. Comcast did not disclose these facts to Plaintiffs or the Class members.

61.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its concealment of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct. Plaintiff and the other Class members have been damaged as a result of Comcast's conduct.

62.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

63.    As a direct and proximate result of the aforesaid concealment of a material fact, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

64.    Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT III
### Omission of a Material Fact

65.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 64 as though fully restated herein.

66.    Section 815 ILCS 505/2 of the Illinois Consumer Fraud Act prohibits the omission of any material fact in connection with a sale of merchandise, including services, in Illinois.

67.    As set forth in paragraphs 1 through 64 above, Comcast repeatedly represented in advertisements to Plaintiff and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class. Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

68.    The foregoing conduct constitutes omission of material facts by Comcast. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities. Comcast did not disclose these facts to Plaintiffs or the Class members.

69.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its omission of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised

Internet service by this conduct. Plaintiff and the other Class members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

70.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

71.     Plaintiff and the other Class members were injured when Comcast omitted these material facts, when in fact Comcast blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

72.     As a direct and proximate result of the aforesaid omissions of material facts, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

73.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT IV
### Deceptive Advertising

74.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 73 as though fully restated herein.

75.     The Illinois Consumer Fraud Act prohibits the use or employment of any practice described in Section 2 of the Illinois Deceptive Trade Practices Act. *See* 815 ILCS 505/2. The Illinois Deceptive Trade Practices Act provides, among other things, that a person engages in a deceptive trade practice when that person represents that the goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another or

advertises goods or services with intent not to sell them as advertised. *See* 815 ILCS 510/2 (a)(7) and (9), respectively.

76.     As set forth in paragraphs 1 through 73, Comcast repeatedly represented in advertisements to Plaintiff and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

77.     The foregoing statements, made and disseminated by Comcast, constitute representations that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not. The foregoing statements made and disseminated by Comcast also constitute advertisements of goods or services with intent not to sell them as advertised. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

78.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements. Accordingly, Plaintiff and the other Class

members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

79.     This conduct constitutes deceptive advertising because speed and unfettered access to the Internet are the principal selling points of high-speed Internet service. Virtually all of Comcast's advertising addresses these two qualities.

80.     Plaintiff and the other Class Members were injured when Comcast, contrary to its advertisements, blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

81.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

82.     As a direct and proximate result of the aforesaid deceptive advertising, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

83.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT V
### Civil Conspiracy

84.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 83 as though fully restated herein.

85.     Defendants, each of them, conspired or agreed, as agents, each to the other, to engage in a conscious course of conduct to engage in deception, fraud, false pretense, false

promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling and in doing so, chose to commit unlawful acts in violation of the Illinois Consumer Fraud Act, as set forth herein.

      86.    Defendants did, in fact, commit such unlawful acts pursuant to the conspiracy and knowingly conspired to continue conduct to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling in violation of the Illinois Consumer Fraud Act, as set forth herein. Defendants acting as agents, each to the other, engaged in a course of deceitful advertising and promotion so as to continue to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling, while advertising and causing members of the consuming public, including Plaintiff and members of the Class herein, to be lured into a false sense of security believing that they were, among other things, receiving unfettered access to the internet, when Defendants knew or should have known that they were not. Defendants engaged in a common plan and scheme to conceal this knowledge from the public and to conceal the nature of the product they were selling. Defendants, together with all other co-defendants herein, were engaged in a joint venture, enterprise or agency for the aforesaid purpose of deceit and by reason of their capacity as joint venturers, each in furtherance of the conspiracy as aforesaid, the heretofore mentioned acts, deeds, knowledge and omissions of said Defendants are imputable to all of the other Defendant joint tortfeasors, both jointly and severally.

      87.    As a direct and proximate result of the aforesaid conspiracy, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

88.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself,  and all others similarly situated, and the general public, respectfully requests that the Court:

I.      Certify the Class as defined in the Complaint;

II.     Order Comcast to notify each and every member of the Class of the pendency of the claims in the action in order to give such persons an opportunity to seek relief;

III.    Enjoin Comcast from engaging in conduct that violates the Illinois Consumer Fraud Act as defined in the Complaint;

IV.     Enter a judgment in favor of Plaintiff and the Class on Counts I-V;

V.      Award compensatory damages to Plaintiff and the Class;

VI.     Award Plaintiff and the Class punitive damages;

VII.    Create a common fund comprised of all damages to Plaintiffs and the Class;

VIII.   Award Class counsel attorney's fees pursuant to 815 ILCS 505/10a(c), the Common Fund Doctrine or any other applicable law;

IX.     Award Plaintiff and the Class interest as prescribed by law;

X.      Award Plaintiff and the Class costs of the suit; and

XI.     Award Plaintiff and the Class such other relief as the Court may deem to be just, proper, and equitable.

Case No. _____

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues in the Complaint triable to the jury.

Dated:  June 5, 2008

Respectfully submitted,

Kenneth J. Brennan, Esq. (Il. Bar #6239037)
John A. Bruegger (Il. Bar #6278821)
SIMMONSCOOPER LLC
707 Berkshire Boulevard
PO Box 521
East Alton, IL  62024
Telephone:        (618) 259-2222
Facsimile:        (618) 259-2251
Email:             kbrennan@simmonscooper.com

August J. Matteis, Jr.
GILBERT RANDOLPH LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Telephone:        (202) 772-1923
Facsimile:        (202) 772-1924
E-Mail:            matteisa@gilbertrandolph.com
*(Application for Admission Pro Hac Vice
to be filed)*

*Attorneys for Plaintiff Roger Lis*

Case No. _____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

---------------------------------------------------------------- :
                                                :

| | |
|---|---|
| Roger Lis, on behalf of himself and all others similarly situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| COMCAST OF CHICAGO, INC.; | : |
| COMCAST OF ILLINOIS I, INC.; | :   Civil No._____ |
| COMCAST OF ILLINOIS III, INC.; | : |
| COMCAST OF ILLINOIS IV, INC.; | : |
| COMCAST OF ILLINOIS/TEXAS, INC.; | :   **CLASS ACTION** |
| COMCAST MO EXPRESS OF ILLINOIS, INC.; | : |
| COMCAST OF NORTHERN ILLINOIS, INC.; | : |
| COMCAST SOUND COMMUNICATIONS INC.; | : |
| COMCAST OF SOUTH CHICAGO, INC.; | : |
| COMCASTIC, INC.; | : |
| DOES 1-150, | : |
| | : |
| Serve at: | : |
| | : |
|       C T Corporation System | : |
|       208 S. LaSalle Street | : |
|       Suite 814 | : |
|       Chicago, IL 60604, | : |
| | : |
| Defendants. | : |

---------------------------------------------------------------

## DECLARATION OF DAMAGES PURSUANT TO SUPREME COURT RULE 222(b)

Now comes the Affiant, KENNETH J. BRENNAN, of SIMMONSCOOPER LLC, attorneys for the Plaintiff, and after being first duly sworn on his oath respectfully states that the total money damages sought by the Plaintiff herein does exceed the sum of Fifty Thousand Dollars ($50,000.00).

Case No._____

Further, Affiant sayeth not.

STATE OF ILLINOIS   )
           ) ss
COUNTY OF MADISON  )

                  Kenneth J. Brennan

SUBSCRIBED AND SWORN to before me this _____ day of _____,
2008.

OFFICIAL SEAL
Julianne E. Pani Wood
Notary Public, State of Illinois
My Commission Expires 1/3/2011

               Notary Public

Case No._____

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
03/07/2008
CT Log Number 513168700

||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:**    Rosemarie Pierce
Comcast Corporation
1701 John F. Kennedy Blvd, One Comcast Center - 50th Floor
Philadelphia, PA 19103

**RE:**    **Process Served in District of Columbia**

**FOR:**    Comcast of the District, LLC (Domestic State: DC)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Dr. Sanford Sidner and Mr. Jonathan Betts, etc., Pltfs. vs. Comcast of the District, LLC, Dft. |
| **DOCUMENT(S) SERVED:** | First Amended Class Action Complaint, Certificate of Service, Filing Summary |
| **COURT/AGENCY:** | Superior Court - Civil Division, DC<br>Case # 2008 CA 001180 B |
| **NATURE OF ACTION:** | Class Action - Comcast blocks or otherwise impedes applications that require large data transfers |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Messenger on 03/07/2008 at 15:45 |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | August J. Matteis, Jr.<br>Gilbert Randolph LLP<br>1100 New York Avenue, N.W.<br>Suite 700<br>Washington, DC 20005<br>202-772-1923 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 790464773769 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | C T Corporation System<br>Mark Diffenbaugh<br>1015 15th Street, N.W.<br>Suite 1000<br>Washington, DC 20005 |
| **TELEPHONE:** | 202-572-3133 |



RECEIVED
MAR 1  2008
LEGAL DIVISION

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. SANFORD SIDNER,<br>2307 Woodridge Street, NE<br>Washington, DC 20018<br><br>and<br><br>MR. JONATHAN BETTS,<br>1420 Chapin Street, NW, Apt. 305<br>Washington, DC 20009,<br><br>On Behalf of Themselves,<br>All Others Similarly Situated,<br>And the General Public,<br><br>          Plaintiffs,<br><br>          v.<br><br>COMCAST OF THE DISTRICT, LLC<br>900 Michigan Avenue, NE<br>Washington, DC 20017,<br><br>          Defendant. | No. 2008 CA 001180 B<br>Hon. Jennifer M. Anderson<br>Calendar No. 9<br>Class Action<br>Jury Trial Demanded |

## FIRST AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, Dr. Sanford Sidner and Jonathan Betts ("Plaintiffs," or "Plaintiff Sidner" and

"Plaintiff Betts," respectively), on behalf of themselves, those similarly situated, and the general

public, based on information, belief, and investigation of their counsel, except for information

based on personal knowledge, hereby allege:

### NATURE OF THE ACTION

1.      Speed and access are key features of high-speed Internet service. Comcast of

the District, LLC ("Defendant" or "Comcast"), the largest provider of Internet service to citizens

of the District of Columbia, advertises, markets, and sells its high-speed Internet service as

providing "the fastest Internet connection" and "unfettered access to all the content, services, and

applications that the Internet has to offer." Comcast specifically represents that it provides the

fastest possible access to "web applications" that are the most "data intensive" and that it "does

not block access to any web sites or online applications, including peer-to-peer services."

These and other similar statements by Comcast are patently false.

      2.    Comcast intentionally blocks its customers from using peer-to-peer ("P2P")

file-sharing applications, or otherwise impedes these applications, and does so in a shockingly

deceptive manner – by impersonating the computers of users attempting to share files. Comcast

forges what are known as "reset packets," making it appear as if these "reset packets" are coming

from one of the computers attempting to share a particular file. The forged reset packets tell the

transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a

phone conversation, Comcast is like an operator who breaks in, disguises his or her voice as one

of the callers, says "talk to you later," and abruptly disconnects the call.

      3.    Comcast's clandestine techniques are similar to those used by totalitarian

governments to censor the use of the Internet. No doubt Comcast would characterize this

behavior as illegal and malicious hacking if perpetrated by others on Comcast and its customers.

Indeed, Comcast's customers would be justified in assuming that Comcast was protecting them

from this sort of conduct, rather than subjecting them to it.

      4.    Comcast's customers were not told that Comcast would block or otherwise

impede P2P file-sharing applications. On the contrary, they were assured by Comcast that

they would receive "unfettered access" to the Internet using the "fastest Internet connection."

They never authorized Comcast to engage in any practices contrary to these promises.

5.      As a result of Comcast's actions, Plaintiffs and the other members of the
Class paid for a promised service that they did not receive.  Comcast's actions constitute
deceptive trade practices under the District of Columbia Consumer Protection Procedures Act
("DCCPPA") including, but not limited to, misrepresentation of goods or services,
misrepresentation of a material fact, omission of a material fact, and false advertising.
*See* D.C. Code §§ 28-3904(a), (d), (e), (f), (h) & (i) (West 2007).  Accordingly, Plaintiffs, on
behalf of themselves, those similarly situated, and the general public, demand a jury trial and
seek all relief to which they are entitled, including injunctive relief, treble damages or $1,500 per
violation (whichever is greater), reasonable attorney's fees, and punitive damages.

## PARTIES TO THE ACTION

6.      Plaintiff Sidner is a District of Columbia citizen who resides at 2307 Woodridge
Street, NE, Washington, DC.  Plaintiff Sidner is a "person" and a "consumer" under Sections
28-3901(a)(1) and (a)(2) of the DCCPPA who brings this action on behalf of himself, those
similarly situated, and the general public.  Plaintiff Sidner currently subscribes to Comcast's
high-speed Internet service and has experienced severe speed and content limitations with regard
to the use of P2P file-sharing and other Internet applications.

7.      Plaintiff Betts is a District of Columbia citizen who resides at 1420 Chapin
Street, NW, Apartment 305, Washington, DC.  Plaintiff Betts is a "person" and a "consumer"
under Sections 28-3901(a)(1) and (a)(2) of the DCCPPA who brings this action on behalf of
himself, those similarly situated, and the general public.  Plaintiff Betts currently subscribes to
Comcast's high-speed Internet service and has experienced severe speed and content limitations
with regard to the use of P2P file-sharing and other Internet applications.

3

8.     Defendant Comcast of the District, LLC is an entity registered in the District of Columbia, having an address of 900 Michigan Avenue, NE, Washington, DC, and is authorized to, and regularly does, conduct business within the District of Columbia.

9.     The causes of action alleged herein arise out of Comcast's high-speed Internet service, trade practices, and advertising strategies originating and employed in the District of Columbia.

## JURISDICTION

10.     This Court has personal jurisdiction over Comcast pursuant to D.C. Code § 422 because Comcast is organized under the laws of, and maintains its principal place of business in, the District of Columbia.

11.     This Court has subject matter jurisdiction over this action pursuant to DCCPPA § 28-3905(k)(1).

## FACTUAL ALLEGATIONS

**A.     Comcast Markets High Speeds and Unfettered Access to the Internet.**

12.     Comcast is by far the largest provider of high-speed Internet services to citizens of the District of Columbia.

13.     Fast download and upload speeds and unfettered access are key features of Internet service. These features are especially important to consumers who download or upload large files.

14.     Comcast advertises, markets, and sells its high-speed Internet service on the express basis that it provides exceptionally fast and unfettered access to the Internet.

15.     Regarding the speed of its Internet access, Comcast represents, among other things, the following:

4

- "[W]hen it comes to getting the fastest Internet connection, a lot of different services claim to be the fastest, but Comcast actually delivers."
- "The speed that this digital cable Internet connection can provide blows away the speeds that most competing technologies can attain."
- "Comcast's high speed Internet service provides anywhere from four to six times the speed that DSL based Internet access can provide!"
- That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing," "Scorching," "Lightning-Fast," and "Way Faster Than DSL."

16.    Comcast represents that it provides the fastest speeds precisely for the applications that need it most – those that require large amounts of data to be uploaded and downloaded:

- "[Comcast] makes it possible for you to download even large files in just a few moments and to get onto sites such as gaming sites or virtual worlds."
- "Comcast's high speed Internet also has the advantage of always being on and ready for use."
- "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. This will be even more true as the Internet becomes an ever growing part of our lives. The need for speed comes from the fact that many of the best Web applications are also the most data intensive. That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web."
- "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!"

17.    Comcast further represents that it does not block or slow any Internet applications, but rather provides "unfettered access to all the … applications the Internet has to offer."  Comcast states that its service "can be used to open up the Internet, and all the potential that it holds, for your enjoyment.  With all of these features from Comcast, you have unbound access to all of the best aspects of the World Wide Web!"

**B.    Contrary to Its Representations, Comcast Blocks or Otherwise Impedes Applications that Require Large Data Transfers.**

18.    Contrary to its representations, Comcast blocks, delays, and slows Internet access for certain data-intensive Internet applications, such as P2P file-sharing protocols like BitTorrent, Gnutella, Lotus Notes, and other applications.

19.    In early 2007, public interest organizations and consumers alleged that Comcast Corporation and its affiliates throughout the country ("Comcast Entities") were engaging in these practices. The Comcast Entities denied the allegations and stuck to their original representations by claiming that they did not block or otherwise impede access to the Internet for any applications.

20.    Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether users' access to high-speed Internet service was being blocked by Comcast Entities for certain applications.

21.    The testing led to shocking results. The Comcast Entities were blocking, slowing, and delaying Internet access for certain P2P applications, and were doing so in an outrageously deceptive manner – by impersonating the computers of users involved in file-sharing. The Comcast Entities were forging what are known as "reset packets," making it appear as if these reset packets were coming from one of the computers attempting to share files. The reset packets instructed the uploading computer to stop transmitting data, thus causing both computers involved in the operation to stop uploading and downloading the shared-file.

22.    Even after these results were made public, the Comcast Entities continued to deny their actions by stating on the company's website that "[o]ur customers enjoy unfettered access to all the content, services, and applications that the Internet has to offer." The Comcast Entities further state that they do not:

6

[B]lock access to any Web site or applications, including BitTorrent. Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOIP applications like Vonage, and thousands of other applications online.

23.    Comcast is engaging in the very same conduct in the District of Columbia.

**C.    Plaintiffs and the Other Class Members Paid Comcast for Promised Services They Never Received.**

24.    Plaintiff Sidner has lived in the District of Columbia for more than twenty years. After serving as a United States Marine, Plaintiff Sidner earned a Bachelor's Degree in Physical Anthropology from the University of Cote Ivoire (Ivory Coast), and later received a Master's Degree and a Doctoral Degree (Ph.D.) in Electrical Engineering from Stanford University. He has held a number of public and private sector jobs since that time.

25.    Plaintiff Betts is a Master's Degree Candidate in International Relations who currently attends the School of Advanced International Studies at the Johns Hopkins University. He moved to the District of Columbia within the past year where he presently works as a local network administrator.

26.    Plaintiffs both subscribe to the so-called "high-speed" Internet service provided by Comcast. They use their Internet connections for a wide range of activities, including various applications of P2P file-sharing programs.

27.    Plaintiffs have each noticed that their Internet connections are exceptionally slow – far beneath the respective upload and download speeds promised by Comcast. All requests to Comcast to rectify these inferior upload and download speeds have been ignored.

28.    Plaintiffs have also noticed on numerous occasions that their attempts to use P2P file-sharing protocols and Lotus Notes, and possibly other applications, have been severely slowed and/or completely blocked by Comcast.

29.     Plaintiffs and the other Class members all subscribed to Comcast's high-speed

Internet service at some point between February 16, 2005 and February 16, 2008, and have paid

all necessary subscription fees.  At the time that they purchased their subscriptions, Plaintiffs and

the other Class members did not receive any notification or warning that Defendant would block

or delay their uploads and downloads, including their use of P2P file-sharing applications.  On

the contrary, Plaintiffs and the other Class members were assured that they would receive the

fastest possible unfettered access to the Internet by Comcast's advertising representations.

Indeed, Plaintiffs and the other Class members were inundated with repeated representations that

Comcast's high-speed Internet service provided fast and unfettered access to the Internet.

Plaintiffs and the other Class members never authorized Defendant to block or otherwise impede

their access to the Internet for any application.

30.     Plaintiffs and the other Class members have suffered damage as a result of

Comcast's false advertisements and unfair trade practices.  Moreover, Plaintiffs and the other

Class members have suffered damage as a result of Comcast's limitations on their ability to use

the Internet and to access certain Internet applications.

### CLASS ACTION ALLEGATIONS

31.     This action is brought as a class action pursuant to DC Superior Court Rule of

Civil Procedure 23 and the DCCPPA (§§ 28-3901-3913) and is properly maintainable as a class

action as set forth below.

A.     **Class Description**

32.     The "Class" is defined as follows:

All citizens of the District of Columbia who purchased or maintained
high-speed Internet service from Comcast at any time between February
16, 2005 and February 16, 2008.  Specifically excluded from this Class is
Comcast and all of its subsidiaries, parents, and other affiliates, all

8

officers, directors, and employees of these entities, and all legal representatives, heirs, and assigns of these entities. Also excluded are any judicial officers who preside over this action and any juror that participates in this lawsuit.

**B.    Impracticability of Joinder**

33.    The Class is composed of thousands of citizens of the District of Columbia who purchased Comcast's high-speed Internet service. Accordingly, joinder of all Class members would be impracticable. The disposition of Plaintiffs' and the other Class members' claims in a class action will provide substantial benefits to the parties and to the Court. The Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon Comcast's uniform conduct as described below.

**C.    Commonality**

34.    Defendant has acted in ways that affect all members of the proposed Class similarly. Questions of fact and law are common to each member of the Class. The common questions of law or fact, which predominate over questions that may affect particular Class members, include, but are not limited to, the following:

a)    whether Comcast represents to consumers that its high-speed Internet service has characteristics, uses, benefits, or qualities that it does not have;

b)    whether Comcast represents that its high-speed Internet service is of a particular standard or quality when in fact it is of another;

c)    whether Comcast misrepresented a material fact that has a tendency to mislead by representing to its consumers that its high-speed Internet service provides fast connections and unfettered access to the Internet;

d)    whether Comcast failed to state a material fact that tended to mislead when it failed to tell consumers that its high speed Internet service does not provide fast, unfettered access to the Internet, but rather would be hindered by Comcast's intentional actions that block, delay, or otherwise impede users' attempts to use certain applications;

9

     e)     whether Comcast falsely advertised its high-speed Internet service by making clear representations that it would provide fast, unfettered access to the Internet, when in fact Comcast had no intent to provide such a service and was in fact intentionally blocking, delaying, or otherwise impeding that service;

     f)     whether Comcast advertised or offered its high-speed Internet service without stating the reasonably expected public demand, and without explaining that such demand could directly hinder users' attempts to use certain Internet applications; and

     g)     whether Comcast violated the DCCPPA by committing the conduct outlined above and possibly other similar conduct.

## D.    Typicality

35.    Plaintiffs' claims are typical of the claims of the proposed Class as a whole because each Class member purchased Comcast's high-speed Internet service and received something less than that for which he or she paid. Thus, each Class member was wronged by the same offending conduct, and proof of Plaintiffs' claims will similarly prove the claims of absent members of the Class.

## E.    Fair and Adequate Representation

36.    Plaintiffs are capable of fairly and adequately protecting the interests of the Class because their claims are common to the Class and proof of those claims will prove the claims of absent Class members. Plaintiffs' interests are in harmony with the interests of other members of the Class, and none of Plaintiffs' interests are adverse to those of other Class members. Plaintiffs intend to pursue vigorously this litigation, and they have selected as counsel Gilbert Randolph LLP, a law firm experienced in complex litigation that has served as class counsel in other complex matters.

## F.    Class Certification is Appropriate Under DC Rule Civ. P. 23(b)(2).

37.    Defendant has acted on grounds applicable to all Class members. Thus, injunctive and declaratory relief are appropriate with respect to the potential Class as a

whole, making class certification appropriate under District of Columbia Rule of Civil

Procedure 23(b)(2).

**G.**     **Class Certification is Appropriate Under DC Rule Civ. P. 23(b)(3).**

38.     The questions of law enumerated in the Counts below are not only common to all

members of the Class, but also predominate over individualized issues of law or fact.  Other

factors favoring the certification of this suit as a class action include:

a)     A class action is the most efficient way to fairly adjudicate this controversy.  Defendant has harmed thousands of subscribers in the District of Columbia, but the nature of the harm is such that few, if any, subscribers would be able to pursue a claim for damages independent of a class action.  The wrongful conduct at issue is highly complex, so it is unlikely that an individual plaintiff will have the resources to vindicate his or her rights.  Therefore, to maximize efficiency and subscriber access to potential remedies, a class action is the superior procedural mechanism.

b)     This action will promote an orderly and expeditious administration and adjudication of the Class members' claims, foster economics of time, effort, and resources, and ensure uniformity of decisions.

c)     No substantial difficulties are likely to be encountered in managing this class action.

### JURY TRIAL DEMANDED

39.     Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to

Rule 38 of the Rules of Civil Procedure for the Superior Court of the District of Columbia

and §§ 28-3905(k) of the DCCPPA.

### COUNT I
### DCCPPA:  Misrepresentation of Goods or Services

40.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1

through 39 as though fully restated herein.

41.     Under Section 28-3904(a) of the DCCPPA, it is an unlawful trade practice to

represent that goods or services have characteristics, uses, benefits, or quantities that they do

11

not have. Under Section 28-3904(d) of the DCCPPA, it is an unlawful trade practice to represent that goods or services are of a particular standard or quality if in fact they are of another. Section 28-3904 of the DCCPPA provides that it is a violation of the DCCPPA to commit an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby."

42.    As set forth in paragraphs 1–39 above, Comcast repeatedly represented in advertisements to Plaintiffs and the other Class members that its high-speed Internet subscribers would receive the fastest available access to the Internet and that the access would be unfettered. Moreover, Comcast specifically represented that its high-speed Internet service would provide such high speeds for applications that required large transfers of data.

43.    Comcast's representations were false. The Internet service provided to Plaintiffs and the other Class members does not have the characteristics, uses, benefits, or quantities it was represented to have by Comcast, and it does not meet the standard or quality it was represented to have by Comcast. Rather, Comcast actively and intentionally blocks, delays, slows, or otherwise impedes consumers' access to file-sharing applications by sending hidden, forged reset packets to users' computers that signal other computers to halt file-sharing activities. The result is that the Internet access of Plaintiffs and the other Class members is restricted and impeded, rather than unfettered and fast, particularly with respect to applications that require large transfers of data.

44.    The ability to access the Internet without being blocked or otherwise impeded, and to do so at fast speeds, is important and material to consumers of high-speed Internet services such as those sold by Comcast to Plaintiffs and the other Class members, especially with respect to applications that require large transfers of data.

12

45.    Plaintiffs and the other Class members were injured when Comcast represented to them that its high-speed Internet service was fast and unfettered when in fact Comcast blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiffs and the other Class members of the services for which they had paid.

46.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

47.    Accordingly, Plaintiffs and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, treble damages or $1,500 per violation (whichever is greater), reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT II
## DCCPPA:  Misrepresentation of a Material Fact

48.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 47 as though fully restated herein.

49.    Under Section 28-3904(e) of the DCCPPA, it is an unlawful trade practice to make a misrepresentation as to a material fact that has a tendency to mislead.  Section 28-3904 of the DCCPPA provides that it is a violation to commit unlawful trade practices "whether or not any consumer is in fact misled, deceived or damaged thereby."

50.    As set forth in paragraphs 1–47 above, Comcast repeatedly represented in advertisements and other communications to Plaintiffs and the other Class members that its high-speed Internet subscribers would receive fast access to the Internet, and that the access

13

would be unfettered. Moreover, Comcast specifically represented that its high-speed Internet service provides high speeds for applications that require large transfers of data.

51.    The ability to access the Internet without being blocked or otherwise impeded, and to do so at fast speeds, is important and material to consumers of high-speed Internet services such as those sold by Comcast to Plaintiffs and the other Class members, especially with respect to applications that require large transfers of data.

52.    Comcast's statements about its high-speed Internet service misrepresented material facts and had a tendency to mislead Plaintiffs and the other Class members. Notwithstanding Comcast's representations that its high-speed Internet service was fast and unfettered, Comcast actively and intentionally blocks, delays, slows, or otherwise impedes consumers' access to file-sharing applications, particularly with respect to applications that require large transfers of data. Moreover, the manner in which Comcast does so involves further misrepresentations intended to mislead Plaintiffs and the other Class members. Specifically, Comcast carries out its blocking and delaying scheme by sending hidden forged reset packets to users' computers that purport to come from one of the computers involved in file-sharing, and that signal other computers to halt file-sharing activities.

53.    Comcast's misrepresentations injured Plaintiffs and the other members of the Class because they were induced to purchase Comcast's high-speed Internet service by the false and misleading statements and because they paid for a promised service that they did not receive.

54.    Accordingly, Plaintiffs and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, treble damages or $1,500 per violation (whichever is greater), reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

55.     Comcast's practices violate the DCCPPA.  Comcast's persistent conduct in these

unlawful trade practices and willful disregard for the rights of Plaintiffs and the Class members

warrants an award of punitive damages under DCCPPA § 28-3905(k)(1)(C).

### COUNT III
### DCCPPA:  Omission of a Material Fact

56.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1

through 55 as though fully restated herein.

57.     The DCCPPA prohibits the failure to state a material fact if such failure tends to

mislead.  *See* DCCPPA § 28-3904(f).

58.     As set forth in paragraphs 1–55 above, Comcast repeatedly represented in

advertisements to Plaintiffs and the other Class members that subscribers would receive

extremely fast and unfettered access to the Internet.  Moreover, Comcast specifically represented

that its high-speed Internet service provides high speeds for applications that require large

transfers of data.

59.     Comcast failed to state that it actively and intentionally blocks consumers' access

to file-sharing applications by sending hidden forged reset packets to users' computers that

signal other computers to halt file-sharing activities; that it limits consumers' access to certain

Internet applications in any fashion; that consumers would not receive high-speed access to

file-sharing applications that require large data transfers; or that reset packets were coming from

Comcast rather than the computer involved in the file-sharing.

60.     These omissions constitute a failure to state material facts because speed and

unfettered access to the Internet are the principal selling points of high-speed Internet service.

Virtually all of Comcast's advertising addresses these two qualities.

15

61.    Accordingly, Plaintiffs and the other Class members are entitled to all relief that the court deems proper, including, but not limited to, an injunction against the use of the unlawful trade practices, treble damages or $1,500 per violation (whichever is greater), reasonable attorney's fees, and punitive damages.

62.    Comcast's practices violate the DCCPPA. Comcast's persistent conduct in these unlawful trade practices and willful disregard for the rights of Plaintiffs and the other Class members warrants an award of punitive damages under DCCPPA § 28-3905(k)(1)(C).

### COUNT IV
### DCCPPA:  False Advertising

63.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 62 as though fully restated herein.

64.    The DCCPPA prohibits the advertising or offering of goods or services without the intent to sell them as advertised or offered. *See* DCCPPA § 28-3904(h).

65.    As set forth in paragraphs 1–62 above, Comcast repeatedly represented in advertisements to Plaintiffs and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet. Moreover, Comcast specifically represented that its high-speed Internet service provides high speeds for applications that require large transfers of data.

66.    In fact, Comcast never intended to provide its customers with fast and unfettered access to all Internet applications. Rather, Comcast actively and intentionally blocked consumers' access to file-sharing applications by sending hidden forged reset packets to users' computers that signal other computers to halt file-sharing activities. The result is that Plaintiffs and the other Class members received low-speed and the inability to access certain applications on the Internet, particularly those that require large transfers of data.

16

67.      This constitutes false advertising because speed and unfettered access to the

Internet are the principal selling points of high-speed Internet service. Virtually all of Comcast's

advertising addresses these two qualities.

68.      Accordingly, Plaintiffs and the other Class members are entitled to all relief that

the court deems proper, including, but not limited to, an injunction against the use of the

unlawful trade practices, treble damages or $1,500 per violation (whichever is greater),

reasonable attorney's fees, and punitive damages.

69.      Comcast's practices violate the DCCPPA. Comcast's persistent conduct in these

unlawful trade practices and willful disregard for the rights of Plaintiffs and the other Class

members warrants an award of punitive damages under DCCPPA § 28-3905(k)(1)(C).

## COUNT V
## DCCPPA: Failure to Supply Reasonably Expected Public Demand

70.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1

through 69 as though fully restated herein.

71.      The DCCPPA prohibits advertising or offering services without supplying

reasonably expected public demand, unless the advertisement or offer discloses a limitation or

other qualifying condition which has no tendency to mislead. *See* DCCPPA § 28-3904(i).

72.      As set forth in paragraphs 1–69 above, Comcast repeatedly represented in

advertisements to Plaintiffs and the other Class members that subscribers would receive

extremely fast and unfettered access to the Internet. Moreover, Comcast specifically represented

that its high-speed Internet service provides high speeds for applications that require large

transfers of data.

73.      Comcast failed to disclose that substantial public demand for use of bandwidth

could limit users' access to certain applications on the Internet. Comcast Entities have since in

17

their FCC filing admitted that they have established pre-determined "congestion thresholds" that apply to the use of bandwidth in particular neighborhoods. When a P2P user in a particular neighborhood attempts to share a file in an area in which the "congestion threshold" is already exceeded, Comcast Entities send a reset packet to terminate the connection between users attempting to share those files.

74.    Accordingly, Plaintiffs and the other Class members are entitled to all relief that the court deems proper, including, but not limited to, an injunction against the use of the unlawful trade practices, treble damages or $1,500 per violation (whichever is greater), reasonable attorney's fees, and punitive damages.

75.    Comcast's practices violate the DCCPPA. Comcast's persistent conduct in these unlawful trade practices and willful disregard for the rights of Plaintiffs and the other Class members warrants an award of punitive damages under DCCPPA § 28-3905(k)(1)(C).

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs, Dr. Sanford Sidner and Jonathan Betts, individually and for all others similarly situated, respectfully request that this Court:

I.    Certify the Demand for Trial by Jury of all issues so triable;

II.    Certify the Class as defined in this First Amended Class Action Complaint and Demand for Jury Trial;

III.    Order Comcast to notify each and every member of the Class of the pendency of the claims in this action in order to give such persons an opportunity to seek relief;

IV.    Enjoin Comcast from engaging in conduct that violates the DCCPPA, as defined in this First Amended Complaint;

V.      Enter a judgment in favor of Dr. Sidner, Mr. Betts, and the Class on Counts I-V;

VI.     Award compensatory, treble, and/or statutory damages to Dr. Sidner, Mr. Betts,

and the Class;

VII.    Award punitive damages;

VIII.   Create a common fund comprised of all damages to Class members;

IX.     Award Class counsel attorney's fees pursuant to DCCPPA § 28-3905(k)(1)(B),

the Common Fund Doctrine, and/or any other applicable law;

X.      Award interest as prescribed by law;

XI.     Award the costs of this suit; and

XII.    Award such other relief as this Court may deem to be just and proper.

Dated: March 7, 2008                    Respectfully submitted,


                                        _/s/   August J. Matteis, Jr._____
                                        August J. Matteis, Jr.
                                        D.C. Bar No. 433068

                                        GILBERT RANDOLPH LLP
                                        Richard Shore
                                        Brian Weinthal
                                        1100 New York Avenue, NW
                                        Suite 700
                                        Washington, DC 20005
                                        Telephone:    (202) 772-1923
                                        Facsimile:    (202) 772-1924

                                        Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, August J. Matteis, Jr., hereby certify that on this 7th day of March, 2008, a true and

correct copy of the foregoing First Amended Class Action Complaint and Demand for Jury Trial

was served via hand-delivery on the following:

C T Corporation System
Registered Agent for Comcast of the District, LLC
1015 15th Street, NW
Suite 1000
Washington, DC 20005


/s/     August J. Matteis, Jr.
August J. Matteis, Jr.
D.C. Bar No. 433068

Gilbert Randolph LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
P:     (202) 772-1923
F:     (202) 772-1924
E:     matteisa@gilbertrandolph.com

 Your submission was successful! Your trace number is **ED301J020080593**. The details of your filing are shown below.

| Timestamp: |
| --- |
| 03/07/2008 1:53:55 PM (Eastern (U.S. and Canada)) |

**Name:** August Matteis

**Law Firm or Organization:** Gilbert Randolph LLP

**Bar Number:** 433068

**Filer Position:** Attorney

**Address:** 1100 New York Avenue NW
Suite 700
Washington, DC 20005

**Phone:** (202) 772-2200

**Fax:** (202) 772-3333

**Email:** matteisa@gilbertrandolph.com

Filing Information

**Case Title:** Sanford Sidner v. Comcast of the District, LLC

**Sealed Case:** No

**County Name:** D.C. Superior Court

**Court Type:** District

**Court Name:** D.C. Superior Court

**Cause/Case Number:** 2008 CA 001180 B

**Document Type:** Amended Complaint Filed

**Plaintiff Attorney(s):**

August Matteis

**Judge(s):** Jennifer Anderson

**Special Instructions:**

**Client Matter #:** 1216.001

Document Information

**File Name:** Amended Complaint Case No 2008 CA 001180 B.pdf

JS 44 (Rev. 11/04)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Sonny Tan

**DEFENDANTS**

Comcast Corporation

**(b)** County of Residence of First Listed Plaintiff    San Francisco, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Philadelphia, PA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan Wheeler, Esquire; Law Offices of Jonathan Wheeler, P.C., 1617 JFK Blvd, #1270, Philadelphia, PA  19103; 215-568-2900

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. §1030
Brief description of cause:
Intentional interference with subscribers' internet connection & Violation of Computer Fraud and Abuse Act.

**VII. REQUESTED IN COMPLAINT:**  ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  **DEMAND $**  CHECK YES only if demanded in complaint:  **JURY DEMAND:** ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE  06/12/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

APPENDIX F

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _____15 Saint Francis Square, Daly City, CA 94015_____

Address of Defendant: _____Once Comcast Center, Philadelphia, PA 19103_____

Place of Accident, Incident or Transaction: _____Pennsylvania_____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
Yes ☐    No ☒

Does this case involve multidistrict litigation possibilities?
Yes ☒    No ☐

*RELATED CASE, IF ANY:*

Case Number: _____    Judge _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes ☐    No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes ☐    No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes ☐    No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) 18 U.S.C. §1030, 28 U.S.C. §1331, 1332, 1367,

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*

I, _____Jonathan Wheeler_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: __6/12/08_____    Jonathan Wheeler, Esq.    12649
                                    Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __6/12/08_____    Jonathan Wheeler, Esq.    12649
                                    Attorney-at-Law          Attorney I.D.#

APPENDIX F

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _____ 15 Saint Francis Square, Daly City, CA 94015 _____

Address of Defendant: _____ Once Comcast Center, Philadelphia, PA 19103 _____

Place of Accident, Incident or Transaction: _____ Pennsylvania _____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
Yes ☐    No ☒

Does this case involve multidistrict litigation possibilities?
Yes ☒    No ☐

*RELATED CASE, IF ANY:*

Case Number: _____    Judge _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes ☐    No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes ☐    No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes ☐    No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
   (Please specify) 18 U.S.C. §1030, 28 U.S.C. §1331, 1332, 1367,

B.  *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _____ Jonathan Wheeler _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: __6/12/08____    _____ Jonathan Wheeler, Esq. _____    _____ 12649 _____
                          Attorney-at-Law                        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __6/12/08____    _____ Jonathan Wheeler, Esq. _____    _____ 12649 _____
                          Attorney-at-Law                        Attorney I.D.#

**APPENDIX I**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Sonny Tan, Individually and on behalf of all others similarly situated | : : : | CIVIL ACTION |
| v. | : : | |
| Comcast Corporation | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.        ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits        ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.        ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court. (See reverse side of this form for a detailed explanation of special
      management cases.)        (X)

(f)  Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| | | |
|---|---|---|
| __6/12/08__ | __Jonathan Wheeler__ | __Plaintiff__ _____ |
| **Date** | **Attorney-at-law** | **Attorney for** |
| __215-568-2900__ | __215-568-2901__ | __jwheeler@jwheelerlaw.com__ |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SONNY TAN, individually and on behalf of
all others similarly situated

vs.

COMCAST CORPORATION

Civil Action No.:

CLASS ACTION COMPLAINT

## **CLASS ACTION COMPLAINT**

Plaintiff Sonny Tan, on behalf of himself and all others similarly situated ("Plaintiff"), by his undersigned attorneys, allege as follows:

1.      This is a class action brought by Plaintiff, on behalf of himself all and other similarly situated customers, against Comcast Corporation ("Comcast" or "Defendant") under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), Common Law Fraud, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing and Unjust Enrichment seeking redress for the illegal acts of the Defendant, for declaratory and injunctive relief to end the improper practices of the Defendant and prevent further losses to the class and future computer users.

## **NATURE OF THE CASE**

2.      Defendant promises its subscribers "unfettered access to all the content, services and applications that the Internet has to offer." *See* http://www.comcast.com/customers/faq/ FaqDetails.ashx?ID=4391. Defendant, nevertheless, does not provide "unfettered access". Instead, Defendant intentionally interferes with its subscribers' connections to the Internet by delaying and/or blocking altogether certain communications.

3.     Specifically, on or about May 2007, Defendant installed new software or equipment on its networks that began secretly interfering with Comcast subscribers' ability to share files online. The technology employed by the Defendant involves Comcast computers masquerading as those of its users. Without the subscribers' knowledge or consent, Defendants are now able to delay or block altogether the free flow of online information otherwise accessible to its subscribers.

4.     This improper practice first came to light when Comcast slowed a peer-to-peer transmission of the King James Bible. Customer complaints and subsequent tests have all confirmed Defendant's practice of throttling peer-to-peer traffic.

5.     This class action complaint seeks to end Defendant's unauthorized practices and seeks recovery of fees paid by subscribers for services they did not receive.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §1030, 28 U.S.C. §§1331, 1332 and 1367. This Court has personal jurisdiction over the Defendant pursuant to 18 U.S.C. §§1965(b) and (d) and because Defendant's principal places of business is within this District. Diversity jurisdiction is also conferred over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, § 7, 119 Stat. 13 ("CAFA").

7.     Venue is proper in this district pursuant to 18 U.S.C. §1965(a), 28 U.S.C. §1391(b), 15 U.S.C. §22, and 28 U.S.C. §1391 because the Defendant is founded in this District, does business within this District, and conducts the interstate trade and commerce described below in substantial part within this District.

8.     During all or part of the period in which the events described in this Complaint occurred, the Defendant participated in a scheme to defraud Plaintiff and other members of the Class in a continuous and uninterrupted flow of interstate commerce.

-2-

9.      The activities of Defendant, as described herein, were within the flow of, and had a substantial effect on, interstate commerce.

## PARTIES

10.      Plaintiff Sonny Tan ("Tan" or "Plaintiff") is a Comcast subscriber who resides in San Francisco, California. During the Class Period, Tan was a regular paying subscriber of Comcast's high-speed Internet service. Defendant's representations and contract never disclosed to Tan that his Internet communications would in any way be interfered or delayed by the Defendant without Tan's permission. Nor was Tan informed that Defendant would discriminate against any of his attempts to share files with others on the World Wide Web. If Defendant had disclosed that its high speed Internet service did not, in fact, offer "unfettered access to all the content, services and applications that the Internet has to offer", Tan would have not paid for said services.

11.      Defendant Comcast is the largest provider of cable services in the United States, running both cable TV and cable Internet networks throughout the country. As the largest Internet service provider, Comcast services 13.2 million high-speed Internet subscribers in more than half the states in our nation.

12.      Comcast is headquartered at One Comcast Center, Philadelphia, Pennsylvania 19103 and is publicly traded on the NASDAQ (CMCSA).

## SUBSTANTIVE ALLEGATIONS

13.      Defendant promises its subscribers "unfettered access to all the content, services and applications that the Internet has to offer." *See* http://www.comcast.com/customers/faq /FaqDetails.ashx?ID=4391. Defendant, nevertheless, intentionally interferes with its subscribers' connection to the Internet to the extent certain online communications are delayed or blocked altogether.

-3-

14.     Defendant also advertises, markets and sells its high-speed Internet service based on claims of "crazy-fast", "blazing-fast" and "mind-blowing" speeds in which users may download and upload content online. Defendant further claims in its online promotional materials to "Leave slow behind" and that "Comcast High-Speed Internet is way faster than DSL. Our 6 Mbps connection gives you lickety-split speed up to 4 times faster than 1.5 Mbps DSL and up to 7 times faster than 768 Kbps DSL." Such representations, however, are all contrary to Defendant's hidden practice of severely limiting the speed of certain Internet communications, such as BitTorrent peer-to-peer (P2P) file-sharing communications, Gnutella, Lotus Notes and other protocols by which content is communicated online. Furthermore, nothing in the subscribers' 22-page terms of agreement with Comcast indicated that the Defendant throttles traffic. Accordingly, Defendant is breaking its promise of "unfettered access" as well as breaking its promise of high-speed access to the Internet, and, therefore, is in breach of both its contract and its implied covenant of good faith and fair dealing.

### Defendant's Method of Interference with Unfettered Access by Forging Traffic

15.     Information on the Internet is often exchanged between computers using a standard protocol called Transmission Control Protocol ("TCP"). When a computer believes it got a "wrong number" or received a "busy signal", it sends a TCP message known as "reset" packets or "RST" packets. TCP RST packets generally cause inbound Internet connections to close down, or otherwise not be received by the subscriber.

16.     Peer-to-peer transmissions account for roughly half of all traffic on the Web, enabling computers to transfer all types of data across the Internet. BitTorrent, a rapidly growing peer-to-peer file sharing application, is able to assemble fairly large files for download relatively quickly by tapping into dozens, or even hundreds, of other participating computers. A rapidly growing number

-4-

of companies are using BitTorrent as a legitimate protocol for exchanging data. "Vuze", for instance, is a company that uses BitTorrent as a distribution mechanism to sell downloads from a huge library of licensed content.

17.    Various tests have confirmed that attempts to upload or download files - such as the Bible - over Defendant's high-speed Internet service have failed due to connections being disrupted by forged TCP RST packets. For example, numerous RST packets have been received when a computer attempts to download a file from a second computer ("Computer #2") over Defendant's Internet service, even though there is absolutely no record of any RST packet ever being sent by Computer #2. The two computers then stopped communicating all as a result of false RST packets being planted by an imposter, namely the Defendant.

18.    As a result of Defendant's stealth technology, messages invisible to the user are seemingly being sent or received by the subscriber's computer that tells the other computer it intends to connect with to stop communicating. Defendant is in effect impersonating parties as the respective computers are attempting to communicate an exchange of data. In other words, Comcast is behaving like a telephone operator breaking into a conversation, impersonating each talker in the voice of the other to communicate: "This call is over, I'm hanging up."

## Defendant's Method of Profiting by Throttling Traffic

19.    Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiff and the members of the Class to maximize Defendant's gain.

20.    While Defendant attempts to defend their protocol-specific interference under the facade of standard network management, the reality is Defendant's practice is an unnecessary or illegitimate means of responding to congestion on their network. Defendant's unauthorized

-5-

interference with its subscribers' online experience results in the subscribers' loss of use with regards to their computers and high-speed Internet service.

21.    As a result of Defendant's deceptive, fraudulent and misleading practices, advertising, marketing and sales of its high-speed Internet service, Defendant is enriched at the expense of its subscribers. Defendant is not only profiting from false promises of accessibility, but is steering profits toward its own digital cable content by blocking similar content otherwise accessible online. Furthermore, Defendant's active interference with its high-speed Internet subscribers' file-sharing communications is beyond standard network management of an Internet service provider, and runs counter to the tradition and public policy of treating all types of Internet traffic neutrally and equally. By impairing use of peer-to-peer communication protocols while permitting the unimpaired use of other protocols, Defendant unfairly discriminates against certain forms of Internet communications of its subscribers and their ability to exchange data. It is thus against equity and good conscience to permit Defendant to retain all the ill-gotten benefits it receives from its subscribers who are promised unfettered, high-speed access to the Internet.

## CLASS ALLEGATIONS

22.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

23.    Plaintiff sues on his own behalf and on behalf of a Class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as a Class action on behalf of a nationwide Class defined as all persons who, from May 2007 to the date of Class certification, subscribed to Comcast high-speed Internet service.

24.    Plaintiff does not know the exact size or identities of the proposed Class, since such information is in the exclusive control of Defendant. Plaintiff, however, believes that the Class encompasses over tens of thousands, possibly millions, of individuals who are geographically

dispersed throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

25.    All members of the Class have been subject to and affected by the same practices and policies described herein. There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

- The nature, scope and operations of Defendant's wrongful practices;
- Whether Defendant intentionally accesses its subscribers computers;
- Whether Defendant's practices breached its contract with its subscribers;
- Whether Defendant's practices breached their implied covenant of good faith and fair dealing with its subscribers;
- Whether Defendant has engaged in fraud, deceit and misrepresentation;
- Whether Defendant has been unjustly enriched;
- Whether the Court can enter declaratory and injunctive relief; and
- The proper measure of damages.

26.    The claims of the named Plaintiff are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiff and the other members of the Class are subject to the same wrongful practices by the Defendant.

27.    The individual named Plaintiff will fairly and adequately represent the interests of the Class. He is committed to the vigorous prosecution of the Class' claims and has retained attorneys who are qualified to pursue this litigation and have experience in Class actions.

28.    The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class, which would as a practical

matter, be dispositive of the interests of other members of the Class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

29.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the parties opposing the Class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow to exist inconsistent and incompatible rights within the Class.

30.    The Defendant has acted or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

31.    The questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

32.    A Class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

- Individual claims by the Class members are impractical as the costs of pursuit far exceed what any one individual Plaintiff or Class member has at stake.

- As a result, individual members of the Class have no interest in prosecuting and controlling separate actions.

- It is desirable to concentrate litigation of the claims herein in this forum.

- The proposed Class action is manageable.

-8-

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF COMPUTER FRAUD & ABUSE ACT 18 U.S.C. § 1030

33.    Plaintiff and Class members incorporate and re-allege the above paragraphs.

34.    This claim for relief arises under 18 U.S.C. § 1030.

35.    As set forth above, Defendant is violating 18 U.S.C. § 1030 by intentionally accessing its subscribers' computers without authorization.

36.    As a result of engaging in such practices, Defendant causes damage by impairing the integrity or availability of data and information, as well as certain communications and protocols.

37.    The aggregate damage being caused to the subscribers of Defendant's high-speed Internet service during the past one-year period is at least the statutory requirement of $5,000.00.

38.    Accordingly, Defendants' intentional interference with its subscribers' connection to the Internet, and failure to provide unfettered access as promised, violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and Plaintiff and the Class are, thus, entitled to economic damages subject to proof at trial.

### COUNT II
### BREACH OF CONTRACT

39.    Plaintiff and Class members incorporate and re-allege the above paragraphs.

40.    Plaintiff and Class members entered into a written or implied contract with Defendant to pay monthly fees in exchange for its high-speed Internet service.

41.    Plaintiff and Class members performed their obligations under the contract by paying their monthly fees.

42.    Plaintiff and Class members performed their obligations under the contract by paying their monthly fees. However, Defendant unjustifiably breached the contract by intentionally

-9-

interfering with Plaintiffs and Class members' access and use of Defendant's high speed Internet service and, thus, entitled to damages subject to proof at trial.

<div align="center">

**COUNT III**
**BREACH OF IMPLIED In FACT CONTRACT AND COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

</div>

43.    Plaintiff and Class members incorporate and reallege the above paragraphs.

44.    Defendant, through its advertising and marketing of its high-speed Internet service, made uniform representations and offers regarding the quality of its service, namely that it would provide "unfettered access to all the content, services and applications that the Internet has to offer."

45.    Plaintiff and Class members accepted Defendant's offer of unfettered access to their "high-speed" Internet service, and gave consideration by paying their monthly fees. Plaintiff and Class members thus entered into an implied-in-fact contract with Defendant, which was thereby breached by Defendant's practice of offering "low-speed" Internet service and impairing access to the content, services and applications that the Internet has to offer.

46.    Plaintiff and Class members performed all their obligations under the contracts by paying for their service.

47.    Additionally, Defendant breached its implied covenant of good faith and fair dealing, by knowingly failing to provide Plaintiff and Class members with the service they desired, paid consideration for and thought they were receiving.

48.    Plaintiff and Class members had the legal capacity to enter into the aforementioned implied agreements.

49.    As a direct and proximate result of the breaches set forth herein, Plaintiff and Class members have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court.

<div align="center">

-10-

</div>

## COUNT IV
## DECEIT FRAUD AND/OR MISREPRESENTATION

50.    Plaintiff re-alleges and incorporates by reference the above paragraphs of this Class Action Complaint as set forth herein.

51.    During the Class Period Defendant made, and continues to engage in fraudulent, misrepresentative, false and/or deceptive practices.

52.    These aforementioned fraud, misrepresentations, deceptive, and/or false acts and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff and Class members when signing up for Defendants' high–speed Internet service.

53.    Plaintiff and Class members would have acted differently had they not been misled, but instead been informed that Defendant did not provide unfettered access and high-speed service. Plaintiff would have opted for another Internet service provider that delivered upon its promises.

54.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and Class members to alter their position to their detriment.

55.    Plaintiff and Class members justifiably and reasonably relied on Defendant's omissions and misrepresentations, and, as such, were damaged by the Defendant.

56.    As a direct and proximate result of Defendant's omissions and misrepresentations, Plaintiff and Class member have suffered damages including paying for a high-speed Internet service they did not receive.

## COUNT V
## UNJUST ENRICHMENT

57.    Plaintiff and Class members incorporate and re-allege the above paragraphs as if fully set out herein.

58.    Defendant's deceptive scheme unjustly enriched Defendant, to the detriment of the

-11-

Class, by causing Defendant to receive payments for a high-speed Internet service that it did not provide.

59.     Plaintiff and Class members have been injured by paying for a high-speed Internet service that they did not receive.

60.     Defendant's retention of funds paid by Plaintiffs and Class members violates the fundamental principles of justice, equity, and good conscience.

61.     Accordingly, Defendant should be ordered to return any funds obtained as a result of their deceptive scheme to the Class.

62.     As a result of Defendant's deceptive, fraudulent and misleading practices, advertising, marketing and sales of its high speed Internet service, Defendants are enriched at the expense of its subscribers. Defendant's active interference with its high-speed Internet subscribers' file-sharing communications is beyond standard network management, and runs counter to the tradition and public policy of treating all types of Internet traffic equally. It is thus against equity and good conscience to permit Defendant to retain the ill-gotten benefits it receives from its subscribers who are promised unfettered, high-speed access to the Internet.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a)     Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Class, and designating his counsel as counsel for the Class;

(b)     A declaration that Defendant has committed the violations alleged herein;

(c)     Ordering Defendant to disgorge the payments and profits they wrongfully obtained at the expense of the Plaintiff and Class members;

-12-

(d) Ordering that restitution be made to Plaintiff and Class members for Defendant's unjust enrichment;

(e) Ordering that an accounting be made by Defendant of its wrongfully obtained payments and profits;

(f) An injunction preventing Defendant from engaging in future fraudulent practices;

(g) Costs of this action, including reasonable attorneys fees and expenses; and

(h) Any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable as a matter of right.

Respectfully submitted,

LAW OFFICES OF JONATHAN WHEELER, P.C.


BY:    REESE RICHMAN LLP
Michael R. Reese, Esquire
Kim E. Richman, Esquire
230 Park Avenue, 10th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272


LAW OFFICES OF JONATHAN WHEELER, P.C.


BY:    *Jonathan Wheeler / jw994*
JONATHAN WHEELER, ESQUIRE
Attorney I.D. No.: 12649
One Penn Center - Suite 1270
1617 JFK Boulevard
Philadelphia, PA 19103
Telephone: (215) 568-2900
Facsimile: (215) 568-2901

***Counsel for Plaintiff***

-13-

**Kari E. Hong**, Oregon State Bar ID # 06590
kari@honglawfirm.com
LAW OFFICES OF KARI E. HONG
320 SW Stark Street, Suite 518
Portland, OR 97204
T: (503) 242-3500
F: (503) 242-3505

**August J. Matteis, Jr.**
matteisa@gilbertrandolph.com
**Richard Shore**
shorer@gilbertrandolph.com
**Alyson A. Foster**
fostera@gilbertrandolph.com
**Brian Weinthal**
weinthalb@gilbertrandolph.com
GILBERT RANDOLPH LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
T: (202) 772-2200
F: (202) 772-1924

**John A. Bruegger**
jbruegger@simmonscooper.com
SIMMONSCOOPER LLC
100 N. Sepulveda Blvd., Suite 1350
El Segundo, CA 90245
T: (310) 322-3555
F: (310) 322-3655

CV '08 - 8 52 - -     PK

**Kenneth J. Brennan**
kbrennan@simmonscooper.com
SIMMONSCOOPER LLC
707 Berkshire Blvd., PO Box 521
East Alton, IL 62024
T: (618) 259-2222
F: (618) 259-2251

**Andrea Bierstein**
abierstein@hanlyconroy.com
HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP
112 Madison Avenue
New York, NY 10016-7416
T: (212) 784-6403
F: (202) 784-6420

*Attorneys for Plaintiff Robert M. Topolski*



THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

FILED'08 JUL 18 15:12USDC-ORP

**ROBERT M. TOPOLSKI,**
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

**COMCAST CORPORATION,
COMCAST CABLE
COMMUNICATIONS HOLDING,
INC., COMCAST CABLE
COMMUNICATIONS, LLC., AND
COMCAST CABLE
COMMUNICATIONS
MANAGEMENT, LLC,**

Defendants.

FILED'08 JUL 18 15:12USDC-ORP

CV '08 - 852 -- PK

**CLASS ACTION ALLEGATION COMPLAINT**
Consumer Protection Action (28 U.S.C. 1332)
DEMAND FOR JURY TRIAL

Plaintiff Robert M. Topolski, on behalf of himself and all others similarly situated, based

on information and belief and investigation of his counsel, except for information based on

personal knowledge, hereby alleges:

## NATURE OF THE ACTION

1.      Speed and access are key features of high-speed Internet service.  Defendant

entities (collectively, "Comcast" or "Defendant") comprise one of the largest providers of high-

speed Internet service in Oregon and in approximately thirty-eight other states and the District of

Columbia.  Comcast provides such service to tens of thousands of Oregonians and millions of

consumers across the country.  Comcast advertised, marketed, and sold its high-speed Internet



service as providing "the fastest Internet connection" and "unfettered access to all the content, services, and applications that the Internet has to offer." Comcast specifically represented that it provides the fastest possible access to "web applications" that are the most "data intensive." Comcast further represented that it "does not block access to any web sites or online applications, including peer-to-peer services." These and other similar statements by Comcast are patently false.

2.      Comcast intentionally blocks, slows, delays, or otherwise impedes its customers from using peer-to-peer file-sharing applications and protocols ("P2P applications"). And it does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges electronic signals known as "reset packets," making it appear as if these electronic signals are coming from one of the computers attempting to share a file. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises his or her voice as one of the callers, says "we have a bad connection," and abruptly disconnects the call.

3.      Comcast's clandestine techniques are similar to those used by totalitarian governments to censor the use of the Internet. No doubt Comcast would characterize this behavior as illegal and malicious hacking if perpetrated by others on Comcast and its customers. Indeed, Comcast's customers would be justified in assuming that Comcast was protecting them from this sort of conduct, rather than subjecting them to it.

4.      Comcast's customers were not told that Comcast would block, slow, delay, or otherwise impede P2P file-sharing applications. On the contrary, they were assured by Comcast

that they would receive "unfettered access" to the Internet, using the "fastest Internet connection." They never authorized Comcast to engage in practices contrary to these promises.

5.      As a result of Comcast's actions, Plaintiff and the Class paid for a promised service that they did not receive. Comcast's actions constitute unlawful trade practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, as well as unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the consumer protection laws of each of the states in which Comcast sells high-speed Internet service. Accordingly, Plaintiff, on behalf of himself and those similarly situated, seeks all relief to which he is entitled, including equitable relief, a refund of all moneys Comcast acquired by means of its unlawful conduct, statutory damages, actual damages, treble damages, punitive damages, reasonable attorney's fees, filing fees, and reasonable costs.

## PARTIES TO THE ACTION

6.      Plaintiff is a resident of Oregon and has subscribed to Comcast's high-speed Internet service for many years. Plaintiff is a career networking professional and was the first to uncover Comcast's impersonation of personal computers and blocking of file-sharing. Plaintiff, a barbershop quartet enthusiast, attempted to legally share public-domain files relating to the Tin-Pan Alley musical era, but was unable to do so because of Comcast's blocking. Plaintiff currently serves as the Chief Technology Consultant for Free Press and Public Knowledge, public interest groups dedicated to reforming the media. Plaintiff has testified before the Federal Communications Commission and has addressed Congressional staff about Comcast's blocking activities.

7.      Defendant Comcast Corporation is a Pennsylvania domestic business corporation with its principal place of business in Philadelphia, Pennsylvania. Comcast Corporation is the

national parent company of all businesses that, *inter alia*, are responsible for Comcast's high-speed Internet service, advertising, and network management, including the Defendants named in Paragraphs 8 through 10.

8.    Defendant Comcast Cable Communications Holding, Inc. is a Delaware domestic business corporation with its principal place of business in Philadelphia, Pennsylvania.

9.    Defendant Comcast Cable Communications, LLC is a Delaware domestic business corporation with its principal place of business in Philadelphia, Pennsylvania.

10.    Defendant Comcast Cable Communications Management, LLC is a Delaware domestic business corporation with its principal place of business in Philadelphia, Pennsylvania.

11.    The Defendants named in Paragraphs 8 through 10 above are national operating entitles that are responsible for the nationwide advertising and marketing of Comcast's high-speed Internet service and for developing and implementing network management practices.

12.    The terms "Comcast" and "Defendant," as used herein, are defined to mean the Defendants named in Paragraphs 7 through 10 above.

## JURISDICTION AND VENUE

13.    This Court has personal jurisdiction over Comcast because it advertises in Oregon, engages in substantial business in Oregon, and has injured Oregonians while engaging in such activities. Comcast is the one of the largest providers of cable and high-speed Internet services in Oregon and across the country. In the Portland metropolitan area alone, Comcast has over 500,000 cable subscribers. Nationally, Comcast has over 39 million cable subscribers, which includes 13 million high-speed Internet subscribers.

14.    This Court has diversity jurisdiction under 28 U.S.C. § 1332(d)(2). Plaintiff seeks class certification of all persons who have paid for Comcast's high-speed Internet services during

the statutory period. Defendant Comcast is a citizen of Pennsylvania and Delaware. Further, the

amount in controversy exceeds the jurisdictional minimum of $5,000,000.

15.    Venue is proper under 28 U.S.C. § 1391(a) because the acts giving rise to the

cause of action occurred in Oregon and the Court has personal jurisdiction over Comcast.

## FACTUAL ALLEGATIONS

### A.    Comcast Markets Fast, Unfettered Access to the Internet.

16.    Fast download and upload speeds and unfettered access are key features of

Internet service. These features are especially important to consumers who download or upload.

17.    Comcast advertised, marketed, and sold its high-speed Internet service on the

express basis that it provides exceptionally fast and unfettered access to the Internet.

18.    Regarding the speed of its Internet service, Comcast represented, among other

things, the following:

- "[W]hen it comes to getting the fastest Internet connection, a lot of
  different services claim to be the fastest, but Comcast actually delivers."
- "The speed that this digital cable Internet connection can provide blows
  away the speeds that most competing technologies can attain."
- "Comcast's high speed Internet service provides anywhere from four to
  six times the speed that DSL based Internet access can provide!"
- That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing,"
  "Scorching," "Lightning-Fast," and "Way Faster Than DSL."

19.    Comcast represented that it provides the fastest speeds precisely for the

applications that need it most – those that require large amounts of data to be uploaded and

downloaded:

- "[Comcast] makes it possible for you to download even large files in just a
  few moments and to get onto sites such as gaming sites or virtual worlds."
- "Comcast's high speed Internet also has the advantage of always being on
  and ready for use."

- "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. This will be even more true as the Internet becomes an ever growing part of our lives. The need for speed comes from the fact that many of the best Web applications are also the most data intensive. That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web."

- "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!"

20.     Comcast further represented that it does not block, slow, delay, or otherwise impede any Internet applications, but rather provides "unfettered access to all the . . . applications the Internet has to offer." Comcast stated that its service "can be used to open up the Internet, and all the potential that it holds, for your enjoyment. With all of these features from Comcast, you have unbound access to all of the best aspects of the World Wide Web!"

**B.      Contrary to Its Representations, Comcast Blocks, Slows, Delays, or Otherwise Impedes Its Subscribers' Internet Access.**

21.     Contrary to its representations, Comcast blocks, slows, delays, or otherwise impedes Internet access for certain applications, such as BitTorrent, Gnutella, Lotus Notes, and possibly other applications and protocols.

22.     In early 2007, public interest organizations and consumers alleged that Comcast and its subsidiaries were engaging in these practices. Comcast denied the allegations and stuck to its original misrepresentations by claiming that it did not block, slow, delay, or otherwise impede access to the Internet for any applications or protocols.

23.     Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether Comcast was impeding its subscribers' access to its high-speed Internet services.

24.    The testing led to shocking results. Comcast was blocking, slowing, delaying, or otherwise impeding Internet access for certain P2P applications, and was doing so in an outrageously deceptive manner – by impersonating the computers of users involved in file-sharing. Comcast was forging what are known as "reset packets," making it appear as if they were coming from one of the computers attempting to file-share. The reset packet instructed the source computer to stop transmitting data, thus causing the computers involved to stop uploading and downloading the shared files.

25.    Even after these results were made public, Comcast continued to deny its actions by stating on the company's website that "[o]ur customers enjoy unfettered access to all the content, services, and applications that the Internet has to offer." Comcast further stated that it does not:

> [B]lock access to any Web site or applications, including BitTorrent. Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOIP applications like Vonage, and thousands of other applications online.

26.    Then, in public comments submitted to the Federal Communications Commission ("FCC") on February 12, 2008, Comcast finally admitted to "delaying" Internet access for certain P2P applications by generating forged reset packets that interrupted the connection between two computers attempting to share files. According to Comcast, its efforts to "delay" certain file-sharing applications were actually an attempt to prevent service degradation resulting from what it characterized as excessive bandwidth congestion created by these file-sharing applications, but "only during periods of peak network congestion." Comcast further admitted that it had established pre-determined "congestion thresholds" that applied to

the use of bandwidth in particular neighborhoods, thus implying that its congestion thresholds apply only during certain peak usage periods.

27.    After those comments were submitted, however, an independent group studied Comcast's congestion patterns and determined that Comcast actually "delays" file-sharing around the clock, not "only during periods of peak network congestions" as Comcast had told the FCC. And in its most recent comment to the FCC on July 10, 2008, Comcast admitted that this is true.

28.    Notwithstanding that Comcast made all of the aforementioned admissions in comments to the FCC, Comcast never disclosed to its subscribers or potential subscribers that it blocked, slowed, delayed, or otherwise impeded their Internet access. On the contrary, Comcast continued to state that it provided unfettered access to the Internet using the fastest possible Internet connection.

29.    On July 11, 2008, Federal Communications Commission Chairman Kevin J. Martin announced that he would seek to stop Comcast from its practice of slowing Internet access of users sharing large files.

30.    At all relevant times, Comcast has engaged in the same practices described above in each of the states (and the District of Columbia) in which it sells high-speed Internet service.

**C.    Plaintiff and the Class Paid Comcast for Promised Services They Never Received.**

31.    Plaintiff is an Oregon resident. He has subscribed to Comcast's high-speed Internet service for several years, and uses his Internet connection primarily for personal use, including sharing files with others.

32.    Comcast directed its false advertisements toward an audience that included Plaintiff and the Class. Comcast inundated Plaintiff and the Class with repeated representations that Comcast's high-speed Internet service provided fast and unfettered access to the Internet.

Comcast failed to inform Plaintiff and the Class that it would block, slow, delay, or otherwise

impede P2P file-sharing applications. On the contrary, Comcast repeatedly assured that Plaintiff

and the Class would receive fast, unfettered Internet access.

33.     Due to Comcast's misrepresentations and omissions, Plaintiff and the Class

believed that they had purchased and would receive fast, unfettered access to the Internet.

34.     Accordingly, Plaintiff attempted to use P2P applications to share his personal

property, such as barbershop quartet music and related files, with other users. However,

Plaintiff's attempts to share his property were blocked, slowed, delayed, or otherwise impeded

by Comcast's deceptive interference.

35.     As a result, Plaintiff and the Class have suffered an ascertainable loss because

they paid for promised services that they did not receive.

## CLASS ACTION ALLEGATIONS

36.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure and is properly maintainable as a class action as set forth below.

**A.     Class Description**

37.     The "Class" is defined as follows:

> All current residents of the United States who purchased or received high-speed
> Internet service from Comcast at any time between July 18, 2002 and the
> forthcoming date of class certification. Specifically excluded from the Class are
> Comcast, its subsidiaries, parents, and other affiliates, all officers, directors, and
> employees of these entities, and all legal representatives, heirs, and assigns of
> these entities. Also excluded are any judicial officers who preside over this action
> and any juror that participates in this lawsuit.

**B.     Impracticability of Joinder (FRCP 23(a)(1), LR 23.2(a))**

38.     The Class is composed of millions of persons who purchased Comcast's high-

speed Internet service. Accordingly, joinder of all Class members would be impracticable under

Rule 23(a)(1) of the Federal Rules of Civil Procedure. Comcast has harmed millions of

subscribers, but the nature of the harm is such that few, if any, subscribers would be able to pursue a claim for damages independent of a class action. Therefore, the disposition of Plaintiff's and the other Class members' claims in a class action will provide substantial benefits to the parties and the Court, as this will promote the orderly and expeditious administration and adjudication of the Class members' claims, foster economics of time, effort, and resources, and ensure uniformity of decisions.

39.    Furthermore, the Class is ascertainable because it consists of a definable class of individuals who subscribed to Comcast's high-speed Internet service during a certain period of time. And, there is a well-defined community of interest in the questions of law or fact alleged since each Class member was similarly harmed by Comcast's uniform conduct.

**C.    Commonality (FRCP 23(a)(2), LR 23.2(a), LR 23.2(d))**

40.    This case arises from Comcast's misrepresentations about its high-speed Internet service, which Defendant made uniformly throughout the country to the general public, including the Class. Defendant's conduct has affected all members of the Class similarly. Thus, the central questions of fact and law in this case are common to the Class as a whole under Rule 23(a)(2), and the requested relief will depend on questions of law that apply in the same manner to each member of the Class. The common questions of law or fact include:

      a.  whether Comcast represented to consumers that its high-speed Internet services have certain characteristics, uses, benefits, or qualities;

      b.  whether Comcast engaged in a scheme to block, slow, delay, or otherwise impede its subscribers' access to the Internet;

      c.  whether Comcast failed to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data;

      d.  whether Comcast denied its efforts to block, slow, delay, or otherwise impede its subscribers' access to the Internet when confronted with such evidence;

e.   whether Plaintiff and the Class suffered an ascertainable loss;

f.   whether Comcast's conduct constitutes a violation of 73 P.S. § 201-2(xxi),
which makes in unlawful to "[e]ngag[e] in any other fraudulent or
deceptive conduct which creates a likelihood of confusion or of
misunderstanding"; and

g.   whether Comcast's conduct constitutes a violation of the consumer
protection statutes of the states in which it provides high-speed Internet
service.

## D.    Typicality (FRCP 23(a)(3), LR 23.2(a))

41.    Plaintiff's claims are typical of the claims of the proposed Class under

Rule 23(a)(3) because each Class member purchased Comcast's high-speed Internet service and

received something less than that for which they paid. Thus, each Class member was wronged

by the same offending conduct, and proof of Plaintiff's claims will similarly prove the claims of

absent members of the Class.

## E.    Fair and Adequate Representation (FRCP 23(a)(4), LR 23.2(c))

42.    Plaintiff is capable of fairly and adequately protecting the interests of the Class

pursuant to Rule 23(a)(4) because his claims are common to the Class and proof of those claims

will prove the claims of absent Class members. Plaintiff's interests are in harmony with, not

adverse to, the interests of the Class. Plaintiff intends to pursue this litigation vigorously, and he

selected as his counsel Gilbert Randolph LLP, SimmonsCooper LLP, Hanley Conroy Bierstein

Sheridan Fisher & Hays, and the Law Offices of Kari E. Hong, law firms experienced in

complex litigation that have served as class counsel in other complex matters.

## F.    Class Certification is Appropriate Under Rule 23(b)(2) (LR 23.2(b))

43.    Comcast has uniformly misrepresented that Plaintiff and the Class would receive

fast, unfettered Internet access. Thus, injunctive and declaratory relief is appropriate with

respect to the potential Class as a whole, making class certification appropriate under

Rule 23(b)(2). Further, injunctive and declaratory relief is an appropriate remedy under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the Oregon Unfair Trade Practices Act and is among the relief sought by the Plaintiff and the Class.

## G.    Class Certification is Appropriate Under Rule 23(b)(3) (LR 23.2(b))

44.    Class certification also is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over individual questions and a class action is a superior vehicle for addressing Defendant's conduct.

### *Predominance*

45.    Questions of law and fact that are common to Plaintiff and the Class predominate over questions affecting only individual members in accordance with Rule 23(b)(3). This action predominately concerns Defendant's actions, namely, Defendant's dissemination of advertisements that promised that its high-speed Internet services would be fast and unfettered, and Defendant's acts that undermined those promises. Defendant's conduct toward Plaintiff and each Class member was the same in this regard. Further, the impact of Defendant's conduct on Plaintiff and the Class was also standard, that is, all Class members paid for services that they did not receive.

### *Superiority*

46.    This class action is the superior method for adjudication of Plaintiff's and the Class's claims under Rule 23(b)(3). Class members have little interest in pursuing individual actions because the size of each class member's damages is very small. This makes a class action the superior method of pursuing these claims. Further, a class action is superior because Defendant's actions towards Plaintiff and the Class were similar. Thus, the class action is manageable; and adjudication of the claims of each member of the Class would result in thousands of needlessly repetitive trials.

**COUNT I**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**

47.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 46 as though fully stated herein.

48.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-2(xxi), makes it unlawful to engage in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Because Comcast has its national headquarters in Pennsylvania, Pennsylvania law applies to the Class's claims.

49.     As set forth above, Comcast repeatedly represented to Plaintiff and the Class that Comcast's high-speed Internet service would provide the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the Class that its high-speed Internet service provides fast download and upload speeds and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it would increase the speed ("kick[] the Internet connection into overdrive") for such transfers. Comcast made and disseminated these statements as part of its efforts to sell high-speed Internet services to Plaintiff and the Class.

50.     Comcast failed to inform its customers that it would block, slow, delay, or otherwise impede their fast and unfettered access to the Internet. Nor did Comcast obtain their permission to do so.

51.     Comcast's representations and omissions were false. Contrary to Comcast's statements, the Internet services provided to Plaintiff and the Class were not fast and unfettered. Rather, Comcast intentionally blocked, slowed, delayed, or otherwise impeded its customers' access to the Internet and to P2P applications. As described, Comcast achieved this result by

surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

52.    Comcast's representations and omissions were deceptive. Comcast created the likelihood of, and did actually cause, confusion about the nature of the services being provided. Comcast caused its customers to have the expectation that they would obtain fast and unfettered access to the Internet when Comcast had no intention of providing such access.

53.    Comcast's misrepresentations and omissions caused Plaintiff and the Class to pay for services that they did not receive. Plaintiff and the Class have suffered an ascertainable loss because they have lost money, property, and the benefit of their bargain as a result of Comcast's misrepresentations and omissions.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

### COUNT II
### Unjust Enrichment Under Pennsylvania Law

54.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 as though fully restated herein.

55.    Unjust enrichment occurs when a benefit has been conferred on the defendant by the plaintiff, the defendant is aware of and appreciates the benefit, and retention of that benefit would be inequitable without payment of value.

56.    As set forth, Comcast repeatedly represented to Plaintiff and the Class that Comcast's high-speed Internet service would provide the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the Class that its high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it would increase the speed

("kick[] the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet services to Plaintiff and the Class.

57.    Comcast failed to inform its customers that it would block, slow, delay, or otherwise impede their fast and unfettered access to the Internet.  Nor did Comcast obtain their permission to do so.

58.    Comcast's representations were false and deceptive.  Contrary to Comcast's statements, the Internet service provided to Plaintiff and the Class was not fast and unfettered. Rather, Comcast intentionally blocked, slowed, delayed, or otherwise impeded its customers' access to the Internet and to P2P applications.  As described, Comcast achieved this result by surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

59.    Comcast knowingly caused its subscribers to pay for services that they did not receive.

60.    By engaging in this conduct, Comcast has been unjustly enriched by the sale of high-speed Internet service.  As a proximate result of Comcast's  unlawful, deceptive, and unfair conduct, Plaintiff and the Class conferred a benefit on Comcast in the form of payment for services they did not receive.  Comcast has knowingly obtained and appreciated that money. Thus, under the circumstances alleged herein, it would be unfair and inequitable for Comcast to retain the profits it has unjustly obtained at the expense of Plaintiff and the Class.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

## COUNT III
## Violation of the Consumer Protection Statutes of Certain States

61.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 60 as though fully stated herein.

62.    As set forth above, Comcast repeatedly represented to Plaintiff and the Class that Comcast's high-speed Internet service would provide the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the Class that its high-speed Internet service provides fast download and upload speeds and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it would increase the speed ("kick[] the Internet connection into overdrive") for such transfers. Comcast made and disseminated these statements as part of its efforts to sell high-speed Internet services to Plaintiff and the Class.

63.    Comcast failed to inform its customers that it would block, slow, delay, or otherwise impede their fast and unfettered access to the Internet. Nor did Comcast obtain their permission to do so.

64.    Comcast's representations and omissions were false. Contrary to Comcast's statements, the Internet services provided to Plaintiff and the Class were not fast and unfettered. Rather, Comcast intentionally blocked, slowed, delayed, or otherwise impeded its customers' access to the Internet and to P2P applications. As described, Comcast achieved this result by surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

65.    Comcast's representations and omissions were deceptive. Comcast created the likelihood of, and did actually cause, confusion about the nature of the services being provided.

Comcast caused its customers to have the expectation that they would obtain fast and unfettered access to the Internet when Comcast had no intention of providing such access.

66.    Comcast's misrepresentations and omissions regarding the characteristics and benefits of its high-speed Internet service caused its customers to have the expectation that they would obtain fast and unfettered access to the Internet, and Plaintiff and the Class relied on Comcast's representations when they purchased Comcast's service.

67.    Comcast's misrepresentations and omissions caused Plaintiff and the Class to pay for services that they did not receive. Plaintiff and the Class have suffered an ascertainable loss because they have lost money, property, and the benefit of their bargain as a result of Comcast's misrepresentations and omissions.

68.    Comcast's actions as described above constitute unfair competition or trade or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the consumer protection laws of each of the states in which Comcast sells high-speed Internet service: Ala. Code § 8-19-1, *et seq.* (Alabama); Ariz. Rev. Stat. § 44-1522, *et seq.* (Arizona); Ark. Code § 4-88-101, *et seq.* (Arkansas); Cal. Bus. & Prof. Code § 17200, *et seq.* and Cal. Bus. & Prof. Code § 17500, *et seq.* (California); Colo. Rev. Stat. § 6-1-105, *et seq.* (Colorado); Conn. Gen. Stat. § 42-110a, *et seq.* (Connecticut); D.C. Code Ann. § 28-3901, *et seq.* (District of Columbia); Del. Code Ann. Tit. 6, § 2511, *et seq.* (Delaware); Fla. Stat. Ann. § 501.201, *et seq.* (Florida); Ga. Code Ann. § 10-1-390, *et seq.* (Georgia); Idaho Code § 48-601, *et seq.* (Idaho); 815 ILCS § 505/1, *et seq.* (Illinois); Ind. Code Ann. § 24-5-0.5.1, *et seq.* (Indiana); Kan. Stat. § 50-623, *et seq.* (Kansas); Ky. Rev. Stat. § 367.110, *et seq.* (Kentucky); La. Rev. Stat. Ann. § 51:1401, *et seq.* (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* (Maine); Md. Com. La Code Ann. § 13-101, *et seq.*, Md. Com. Law Code Ann. § 13-301, *et seq.*, and Md. Com. Law Code Ann.

§ 13-408, *et seq.* (Maryland); Mass. Gen. L. ch. 93A, § 1, *et seq.* (Massachusetts); Mich. Stat.

Ann. § 445.901, *et seq.* and Mich. Stat. Ann.§ 19.418(1), *et seq.* (Michigan); Minn.

Stat.§ 325F.68, *et seq.* and Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3, *et seq.*

(Mississippi); Mo. Rev. Stat. § 407.010, *et seq.* (Missouri); N.H. Rev. Stat. Ann. § 358-A:1, *et*

*seq.* (New Hampshire); N.J. Rev. Stat. § 56:8-1, *et seq.* (New Jersey); N.M. Stat. Ann. § 57-12-1,

*et seq.* (New Mexico); N.Y. Gen. Bus. Law § 349, *et seq.* (New York); N.C. Gen. Stat. § 75-1, *et*

*seq.* (North Carolina); Ohio Rev. Code Ann. § 1345.01, *et seq.* (Ohio); Ore. Rev. Stat. § 646.605,

*et seq.* (Oregon); Penn. Stat. § 201-1, *et seq.* (Pennsylvania); R.I. Gen. Laws § 6-13.1-1, *et seq.*

(Rhode Island); S.C. Code Ann. § 39-5-10, *et seq.* (South Carolina); Tenn. Code Ann. § 47-13-

101, *et seq.* (Tennessee); Tex. Bus. & Com. Code Ann. § 17.41, *et seq.* (Texas); Utah Code Ann.

§ 13-11-1, *et seq.* (Utah); Vt. Stat. Ann. Tit. 9, § 2451, *et seq.* (Vermont); VA. Code Ann. § 59.1-

196, *et seq.* (Virginia); Wash. Rev. Code § 19.86.010, *et seq.* (Washington); W. Va. Code § 46A-

6-101, *et seq.* (West Virginia); and Wis. Stat. § 100.20, *et seq.* (Wisconsin).

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set

forth below, which is incorporated herein by this reference.

## COUNT IV
## Unjust Enrichment Under Oregon Law
## (On Behalf of Oregon Residents)

69.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1

through 68 as though fully restated herein.

70.    Unjust enrichment occurs when a benefit has been conferred on the defendant by

the plaintiff, the defendant is aware of and appreciates the benefit, and retention of that benefit

would be inequitable without payment of value.

71.     As set forth, Comcast repeatedly represented to Plaintiff and all other Oregon residents that Comcast's high-speed Internet service would provide the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast repeatedly represented to Plaintiff and all other Oregon residents that its high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it would increase the speed ("kick[] the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet services to Plaintiff and all other Oregon residents.

72.     Comcast failed to inform its customers that it would block, slow, delay, or otherwise impede their fast and unfettered access to the Internet.  Nor did Comcast obtain their permission to do so.

73.     Comcast's representations were false and deceptive.  Contrary to Comcast's statements, the Internet services provided to Plaintiff and all other Oregon residents were not fast and unfettered.  Rather, Comcast intentionally blocked, slowed, delayed, or otherwise impeded its customers' access to the Internet and to P2P applications.  As described, Comcast achieved this result by surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

74.     Comcast knowingly caused its subscribers to pay for services that they did not receive.

75.     By engaging in this conduct, Comcast has been unjustly enriched by the sale of high-speed Internet services.  As a proximate result of Comcast's  unlawful, deceptive, and unfair conduct, it has knowingly obtained money for promised services that it did not provide.

Under the circumstances alleged herein, it would be unfair and inequitable for Comcast to retain the profits it has unjustly obtained at the expense of Plaintiff and all other Oregon residents.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

## COUNT V
### Violation of the Oregon Unfair Trade Practices Act
### (Misrepresentation of Qualities of Services)
### (On Behalf of Oregon Residents)

76.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 75 as though fully restated herein.

77.    ORS 646.608(1)(e) makes it unlawful to represent that "services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that they do not have." "Services" include Comcast's high-speed Internet services under ORS Section 646.604(6).

78.    As set forth, Comcast repeatedly represented to Plaintiff and all other Oregon residents that its high-speed Internet service provides both the fastest Internet connection and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and all other Oregon residents that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it would increase the speed ("kick[] the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and all other Oregon residents.

79.    Comcast failed to inform its customers that it would block, slow, delay, or otherwise impede their fast and unfettered access to the Internet. Nor did Comcast obtain their permission to do so.

80.    Comcast's representations were false.  Contrary to Comcast's statements, the Internet service provided to Plaintiff and all other Oregon residents was not fast and unfettered. Rather, Comcast intentionally blocked, slowed, delayed, or otherwise impeded its customers' access to the Internet and to P2P file-sharing applications.

81.    Comcast's misrepresentations regarding the characteristics and benefits of its high-speed Internet service caused its customers to have the expectation that they would obtain fast and unfettered access to the Internet, and Plaintiff and all other Oregon residents relied on Comcast's representations when they purchased Comcast's service.

82.    Comcast's misrepresentations caused Plaintiff and all other Oregon residents to pay for services that they did not receive.  Plaintiff and all other Oregon residents have suffered an ascertainable loss because they have lost money, property, and the benefit of their bargain as a result of Comcast's misrepresentations and omissions.

83.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

### COUNT VI
### Violation of the Oregon Unfair Trade Practices Act
### (False Advertisement of Services)
### (On Behalf of Oregon Residents)

84.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 83 as though fully restated herein.

85.    ORS 646.608(1)(i) prohibits the advertisement of "services with intent not to provide them as advertised, or with intent not to supply reasonably expectable public demand. . . ."  .

86.    As set forth, Comcast repeatedly represented to Plaintiff and all other Oregon residents that Comcast's high-speed Internet service provides both the fastest Internet connection and unfettered access to the Internet.  Moreover, Comcast repeatedly represented to Plaintiff and all other Oregon residents that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it would increase the speed ("kick[] the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and all other Oregon residents.

87.    Comcast failed to inform its customers that it would block, slow, delay, or otherwise impede their fast and unfettered access to the Internet.  Nor did Comcast obtain their permission to do so.

88.    Comcast's representations were false.  Contrary to Comcast's statements, the Internet service provided to Plaintiff and all other Oregon residents was not fast and unfettered.  Rather, Comcast intentionally blocked, slowed, delayed, or otherwise impeded its customers' access to the Internet and to P2P file-sharing applications.  As described, Comcast achieved this result by surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

89.    Comcast caused its customers to have the expectation that they would obtain fast and unfettered access to the Internet when it had no intention of providing, and did not in fact

provide, such access. Plaintiff and all other Oregon residents relied on Comcast's representations when they purchased Comcast's service.

90. As a result, Comcast caused Plaintiff and all other Oregon residents to pay for services that they did not receive. Plaintiff and all other Oregon residents have suffered an ascertainable loss because they have lost money, property, and the benefit of their bargain as a result of Comcast's misrepresentations and omissions.

91. Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

WHEREFORE, Plaintiff demands relief in accordance with the "Prayers for Relief" set forth below, which is incorporated herein by this reference.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, respectfully requests that this Court:

I.      Certify the Class as defined in this Complaint;

II.     Order Comcast to notify each and every member of the Class of the pendency of the claims in this action in order to give such persons an opportunity to seek relief;

III.    Enjoin Comcast from engaging in conduct that violates the Pennsylvania Unlawful Trade Practices and Consumer Protection Law and the consumer protection laws of each of the states in which Comcast sells high-speed Internet service;

IV.     Enter a judgment in favor of Plaintiff and the Class on all Counts;

V.      Award compensatory damages to Plaintiff and the Class;

VI.     Award Plaintiff and the Class statutory damages under applicable law;

VII.    Award Plaintiff and the Class actual damages under applicable law;

VIII.    Award Plaintiff and the Class a refund of all moneys Comcast acquired by means of its unlawful conduct;

IX.    Award Plaintiff and the Class treble damages under applicable law;

X.    Award Plaintiff and the Class punitive damages under applicable law;

XI.    Create a common fund comprised of all damages to Class members;

XII.    Award Class counsel attorney's fees pursuant to applicable law and the Common Fund Doctrine;

XIII.    Award Plaintiff and the Class interest as prescribed by law;

XIV.    Award Plaintiff and the Class the costs of this suit; and

XV.    Award Plaintiff and the Class such other relief as this Court may deem to be just, proper, and equitable.

Dated: July 18, 2008        Respectfully submitted,

_____

Kari E. Hong
OSB # 06590
(503) 242-3500
Attorney for Plaintiff Robert M. Topolski

kari@honglawfirm.com
LAW OFFICES OF KARI E. HONG
320 SW Stark Street, Suite 518
Portland, OR 97204
T: (503) 242-3500
F: (503) 242-3505

August J. Matteis, Jr.
matteisa@gilbertrandolph.com
Richard Shore
shorer@gilbertrandolph.com
Alyson A. Foster
fostera@gilbertrandolph.com
Brian Weinthal
weinthalb@gilbertrandolph.com
GILBERT RANDOLPH LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
T: (202) 772-2200, F: (202) 772-1924

John A. Bruegger
jbruegger@simmonscooper.com
SIMMONSCOOPER LLC
100 N. Sepulveda Blvd., Suite 1350
El Segundo, CA 90245
T: (310) 322-3555, F: (310) 322-3655

Kenneth J. Brennan
kbrennan@simmonscooper.com
SIMMONSCOOPER LLC
707 Berkshire Blvd., PO Box 521
East Alton, IL 62024
T: (618) 259-2222, F: (618) 259-2251

Andrea Bierstein
abierstein@hanlyconroy.com
HANLY CONROY BIERSTEIN
    SHERIDAN FISHER & HAYES LLP
112 Madison Avenue
New York, NY 10016-7416
T: (212) 784-6403, F: (202) 784-6420

*Attorneys for Robert M. Topolski*

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 00-3805-CIV-GRAHAM

LINO ANDRES CORREA-RODRIGUEZ,

      Plaintiff,

vs.

BRIDGESTONE/FIRESTONE, INC. and
FORD MOTOR COMPANY,

      Defendants.
_____/



FILED by _____ D.C.

OCT 19 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### ORDER

    **THIS CAUSE** came before the Court <u>sua</u> <u>sponte</u>.

    **THE COURT** has considered the Motion, the pertinent portions
of the record and is otherwise fully advised in the premises.
Plaintiffs filed this action on September 8, 2000 against
Bridgestone/Firestone, Inc. ("BFI") and Ford Motor Company
("Ford"). Ford has moved before the Judicial Panel on
Multidistrict Litigation (the "MDL") to consolidate this case for
pretrial purposes with the multitude of other recently filed
federal cases involving allegedly defective Firestone tires. The
MDL has set this matter for a hearing on October 17, 2000.

    In light of the foregoing, it is

    **ORDERED AND ADJUDGED** that Ford's Motion to Stay is GRANTED.
The case is stayed pending a decision by the MDL.

Rec'd in MIA Dkt 10-23-00

**DONE AND ORDERED** in Chambers at Miami, Florida, this _19th_

day of October, 2000.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:  Magistrate Judge Turnoff
     Wendy F. Lumish, Esq.
     Aaron S. Podhurst, Esq.
     Lee P. Teichner, Esq.