IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER LIS,<br><br>      Plaintiff,<br><br>  v.<br><br>COMCAST OF CHICAGO, INC., *et al.*,<br><br>      Defendants. | No. 1:08-CV-3984<br><br>Judge Zagel<br>Magistrate Judge Cox |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

**INTRODUCTION**

This consumer protection class action seeks redress on behalf of Illinois consumers for Comcast's false advertising in Illinois of its high-speed Internet service, and arises solely among Illinois citizens under Illinois law.  Plaintiff Roger Lis ("Plaintiff") is an Illinois citizen and pursues this action on behalf of all Illinois citizens who subscribed to Comcast's high-speed Internet service during the proposed period.  The defendants[1] are subsidiaries of Comcast Corporation ("Comcast Corp.") and, at the time of filing, were registered with the Illinois Secretary of State as Illinois corporations organized under the laws of Illinois.  Plaintiff named these Defendants based on the subscriber agreement between Comcast and its customers:

> Comcast Services will be provided to you . . . on the terms and conditions set forth in this Agreement for Residential Services (the "Agreement") *by the operating company subsidiary of Comcast Corporation that owns and/or operates the cable television system in your area*.

Comcast Agreement for Residential Services, attached as Ex. A-1 to Declaration of Alyson A. Foster, Aug. 29, 2008 ("Foster Dec.") (emphasis added).[2]

Plaintiff's complaint alleges claims under Illinois law based on Comcast's false advertising of its high-speed Internet service as providing "the fastest Internet connection" and "unfettered access to all the content, services, and applications that the Internet has to offer." Compl., July 14, 2008 ("Compl."), attached as Ex. A-2 to Foster Dec., ¶ 1.  Contrary to these (and other) advertisements, Comcast delays and impedes its customers' use of certain Internet applications, such as file-sharing applications, by using electronic "reset packets" to impersonate private users' computers and force them to reject those applications. *Id.* ¶ 2.  Thus, based on

---

[1] Comcast of Illinois I, III and IV, Comcast of Illinois/Texas, Inc., Comcast MO Express of Illinois, Inc., Comcast of Northern Illinois, Inc., Comcast Sound Communications, Inc., Comcast of South Chicago, Inc., and Comcastic, Inc. (collectively, "Defendants" or "Comcast of Illinois").

[2] All citations to "Ex. A-__" refer to the exhibits to the Foster Declaration.

Comcast's false advertising in Illinois to Illinois citizens of services sold and rendered in Illinois, Plaintiff seeks damages, injunctive, and other relief under Illinois's Deceptive Practices Act. *Id* ¶ 5.

This action does not belong in federal court. In their Notice of Removal, filed July 14, 2008 (attached as Ex. A-3 to Foster Dec.), Defendants have not met their burden of proving that this Court may properly exercise subject matter jurisdiction. First, Defendants fail to show that "minimal diversity jurisdiction" exists under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), because no "member of a class of plaintiffs is a citizen of a State different from any defendant." Second, Defendants fail to show that Plaintiff's claims arise under federal law and thereby create federal question jurisdiction under 28 U.S.C. § 1332. Third, even if federal jurisdiction existed, this Court must remand the action under CAFA's local and home state controversy provisions, 28 U.S.C.§ 1332(d)(4), because this action satisfies each requirement of CAFA's mandatory remand provisions.

**BACKGROUND**

This class action was filed in the Illinois Superior Court on June 5, 2008, against Comcast of Illinois, alleging violations of Illinois' Consumer Fraud and Deceptive Trade Practices Act ("Illinois Consumer Fraud Act"), codified at 815 ILCS 505/1 *et seq.* (West 2002). Defendants are "Comcast of Illinois" entities registered as Illinois corporations. Ex. A-2 ¶¶ 7-16.

Plaintiff's Complaint alleges that Defendants engaged in false and misleading advertising of Comcast's high-speed Internet service. Specifically, Defendants, providers of Comcast's high-speed Internet service to citizens of Illinois, advertise their high-speed Internet service as providing "the fastest Internet connection" and "unfettered access to all the content, services, and

applications that the Internet has to offer," and represent that this service "does not block access to any web sites or online applications, including peer-to-peer services." *Id.*

In reality, Defendants intentionally block, slow, and delay their customers from using peer-to-peer file-sharing applications, or otherwise impede those applications, and do so in a deceptive manner—by impersonating the computers of users attempting to share files. *Id.* ¶ 2. Comcast forges electronic signals known as "reset packets" that impersonate one of the computers attempting to share a particular file. *Id.* The forged reset packets tell the transmitting computer to stop its transmission. *Id.* Comcast initially denied that this practice occurs, but ultimately admitted to the Federal Communications Commission that it "delays" consumers' use of certain file-sharing applications through the use of reset packets.[3]

As a result of Defendants' actions, Plaintiff and the other members of the Class paid for a promised service that they did not receive. *Id.* ¶ 4. Defendants' actions constitute multiple violations of the Illinois Consumer Fraud Act. The complaint challenges the Defendants' deception, fraud, false pretense, false promise, misrepresentation, and their concealment, suppression, or omission, of material facts. *Id.* ¶ 5. The five-count complaint states claims for defendants' "Misrepresentation of Merchandise" (Count I), "Concealment of a Material Fact" (Count II), "Omission of a Material Fact" (Count III), "Deceptive Advertising" (Count IV), and for conspiring to engage in the misrepresentations, concealments, omissions, and deceptions giving rise to Counts I through IV (Count V). Plaintiff seeks actual damages, equitable relief, restitution, punitive damages, and attorney's fees and costs.

---

[3] On August 20, 2008, the Federal Communications Commission ("FCC") issued an order stating that Comcast's actions constitute unreasonable network management practices, and ordered Comcast to end this practice and disclose to consumers the precise nature of its network management practices. *See* Mem. Op. & Order, Aug. 20, 2008, *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-08-183A1.pdf (last visited Aug. 24, 2008).

# ARGUMENT

## I. LEGAL STANDARDS

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). They may adjudicate only those cases authorized by the Constitution and statutes of the United States. *Id.* "Before entertaining any claim, a federal district court must assure itself that it has jurisdiction to hear the matter presented to it." *Hay v. Indiana State Bd. of Tax Com'rs*, 312 F.3d 876, 878 (7th Cir. 2002). Federal courts are presumed to lack subject matter jurisdiction. *Kokkonen*, 511 U.S. at 377. Therefore, the burden of overcoming this presumption lies with the party asserting federal jurisdiction—here, Defendants. *Id.*

Removal is proper only where the plaintiff's claims originally could have been brought in federal court. 28 U.S.C. § 1441; *Caterpillar Inc. v. William*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987). There is a strong presumption against removal jurisdiction, and the statute is strictly construed against removal. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). All doubts must be resolved in favor of remand. *Id.*

## II. DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROVING MINIMAL DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(D)

The Class Action Fairness Act does not confer diversity jurisdiction over this action because no "member of [the] class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1331(d)(2)(A). CAFA applies only to class actions in which there is minimal diversity between the parties. *Id.* Defendants contend that minimal diversity exists because, they say, i) some of the class members might be citizens of states other than Illinois and ii) the citizenship of non-party affiliates of the Defendants creates minimal diversity. Defendants

bear the burden to establish minimal diversity under CAFA. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). Defendants have failed to meet their burden.

### A. DEFENDANTS HAVE FAILED TO ESTABLISH THAT ANY CLASS MEMBER IS NOT A CITIZEN OF ILLINOIS

CAFA affords plaintiffs the opportunity to ensure a state forum for their actions by restricting claims alleged in their lawsuit. In addition to requiring minimal diversity between the parties, CAFA defines the term "class members" as "the persons (named or unnamed) who fall within the definition of the proposed or certified class." 28 U.S.C. § 1332. CAFA allows a plaintiff to limit his class to citizens of a particular state by defining the class in that manner.

Here, the Complaint defines the proposed class as "[a]ll citizens of Illinois who purchased or received high-speed Internet service from Comcast at any time between June 5, 2005 and the present." Ex. A-2 ¶ 43. Therefore, every member of the proposed class is a Illinois citizen. The class definition first limits the class to Illinois citizens (*i.e.*, "All citizens of Illinois") and then narrows the class to a subset of those citizens (*i.e.*, "those citizens who purchased or received high-speed Internet service from the defendants between June 5, 2005 and the forthcoming date of certification"). *Id.*

Despite this seemingly obvious proposition, Defendants imply that the class includes citizens of other states because it might include "subscribers" who were Illinois citizens when they first subscribed to Comcast but have since moved away (or who may move away before the date of class certification). Ex. A-3 ¶ 3. Defendants offer no proof to support this speculation, and thus cannot meet their burden of establishing minimal diversity.

In any event, their argument is without merit. The proposed class is defined not by reference solely to "subscribers" who purchased high-speed Internet service from Defendants in Illinois, but rather is defined as expressly limited to "citizens of Illinois."[4]

### B. DEFENDANTS HAVE NOT ESTABLISHED THAT THEY ARE NOT ILLINOIS CITIZENS

The Defendants concede that Defendants Comcast of Chicago, Inc., Comcast of Illinois I, Inc., Comcast of Illinois III, Inc., Comcast of Illinois IV, Inc., Comcast of Northern Illinois, Inc., and Comcast of South Chicago, Inc. are organized in Illinois. Ex. A-3 ¶ 5. These defendants are Illinois citizens. 28 U.S.C. 1332 (c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"). Plaintiff alleges and the Defendants do not dispute that Defendant Comcastic, Inc. is a domestic Illinois corporation. Ex. A-2 ¶ 16. Therefore, Defendant Comcastic, Inc. is an Illinois citizen. 28 U.S.C. 1332 (c)(1).

The Defendants attempt to create minimal diversity by contending or implying that the remaining three defendants are not Illinois citizens. First, they contend that in 2006 defendant Comcast of Illinois/Texas, Inc. merged into Comcast Indiana/Michigan/Texas LP, a Delaware Limited Partnership. Ex. A-3 ¶ 6. They claim the surviving limited partnership is organized under Delaware with corporate offices in Pennsylvania. *Id.* Assuming these facts are true, the Defendants have not established the citizenship of the limited partnership. This is because "the citizenship of a partnership is the citizenship of the partners, even if they are limited partners."

---

[4] *Compare Schwartz v. Comcast Corp.*, No. Civ. A. 05-2340, 2005 WL 1799414, at *2 (E.D. Pa. July 28, 2005) (holding that class definition "All persons and entities who are citizens of the Commonwealth of Pennsylvania . . . and who subscribed to Comcast's high-speed internet system for service in Pennsylvania [during the relevant time period]" makes "clear that all class members are citizens of Pennsylvania").

6

*Carden v. Arkoma Associates*, 494 U.S. 185, 185, 110 S. Ct. 1015 (1990).  Defendants do not state the citizenship of any of the partners.

Even assuming the limited partnership's citizenship is determined by its state of organization and principal place of business, the Defendants have not established the principal place of business of Comcast Indiana/Michigan/Texas LP and thus have not established minimal diversity.  The Seventh Circuit employs the "nerve center test" to determine where a corporation has its principal place of business for the purposes of diversity jurisdiction. *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).  "The nerve center test considers the following factors: the place where corporate decisions are made, where the corporation is funded, where its general counsel, directors, officers and shareholders are located, where the primary bank account exists, and the place of its principle office and corporate headquarters." *Chamberlain Mfg. Corp. v. Maremont Corp.*, 828 F. Supp. 589, 591 (N.D. Ill. 1993).  While the Defendants contend that this entity has "corporate offices" in Pennsylvania, Ex. A-3 ¶ 6, they do not allege where corporate decisions are made, where the corporation is funded, where its general counsel, directors, officers and members are located, where the primary bank account exists, and the place of its principle office and headquarters.  Because the citizenship of Comcast Indiana/Michigan/ Texas LP is unknown, the citizenship of that entity cannot create minimal diversity.

Next, the Defendants attempt to create minimal diversity by contending that Defendant Comcast MO Express of Illinois, Inc. merged into Comcast MO Telecommunications Corp., a Delaware Corporation, and that defendant Comcast Sound Communications, Inc. merged into Comcast Programming Holdings Inc., also a Delaware Corporation.  Ex. A-3 ¶¶ 7, 8.  Assuming the surviving entities of these mergers are, as the Defendants allege, organized under Delaware law and therefore Delaware citizens, the Defendants have not established minimal diversity

because, once again, the Defendants have not alleged the principal place of business (nor even addresses) for the surviving entities.

Minimal diversity requires the existence of two adverse parties who are not co-citizens. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531, 87 S. Ct. 1199 (1967). The Complaint names ten Defendants. The Defendants concede six are Illinois citizens and do not dispute that a seventh is an Illinois citizen. These entities are clearly co-citizens with the members of the putative class. The Defendants fail to allege facts necessary to establish the remaining three Defendants are not Illinois citizens. Because the facts necessary to establish minimal diversity appear neither in the Complaint nor the Notice of Removal, this Courts lacks federal subject matter jurisdiction under CAFA.

  **C.** **THE CITIZENSHIP OF NON-PARTIES AFFILIATED WITH DEFENDANTS DOES NOT CREATE MINIMAL DIVERSITY**

Defendants next contend that a holding company, Comcast Cable Communications Holding, Inc., and two additional entities, Comcast Cable Communications, LLC, and Comcast Cable Communications Management, LLC (together, the "affiliated entities"), are required parties under Rule 19, Fed. R. Civ. P., and that as required parties their citizenship must be considered when determining whether minimal diversity exists. Defendants are incorrect.

  1. Defendants Have Not Established That Any Diverse Non-Party Is A Required Party

Determining whether a party is a required party under Rule 19 is a fact specific inquiry. *Republic of Philippines v. Pimentel*, -- U.S. --, 128 S.Ct. 2180, 2188 (2008). *See also* Wright & Miller, Federal Practice & Procedure § 1609 at 39 (2001 ed). "There is no precise formula for determining whether a particular non-party is necessary to an action." *Id.* at § 1604, at 38. The court must apply the Rule 19 factors in a practical and equitable manner and the factors are not to be applied rigidly. *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 481 (7th Cir.

8

1996). Further, the Rule 19(a) inquiry is not merely whether it might be convenient or even helpful to join the party, but whether the Court could "accord complete relief among existing parties" or whether these entities claim an interest relating to the subject matter of the action.

The Defendants have the burden to establish joinder is required under Rule 19. *Rotec Indus., Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 932 (N.D. Ill. 2006). Here, the Defendants have not even moved for joinder under Rule 19, let alone met their burden of proof. The Notice of Removal offers no evidence or argument explaining why these affiliated entities must be joined under Rule 19. It states only that these entities "are responsible for the nationwide advertising and marketing of Comcast's high speed Internet service and for developing and implementing network management practices." Ex. A-3 ¶ 9. Were the Defendants to seek joinder, such a motion would likely fail. Plaintiff's claims are based on conduct in Illinois and the subscriber agreement admits that Comcast's Illinois operations are *not* run by these entities. On the current record before this Court, and without proper Rule 19 briefing, it is impossible to conclude that these entities must be joined pursuant to Rule 19.

    2.    <u>The Citizenship Of Allegedly Required Parties Cannot Create Minimal Diversity</u>

In any event, this Court's subject matter jurisdiction is determined from the face of the Complaint at the time of removal, not as subsequently amended. "Whether defendants have satisfied the requirements of CAFA . . . is determined at the time of removal." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 556 F. Supp. 2d 858, 859 (N.D. Ill. 2008).[5] Defendants do not dispute this well-settled rule, but they ask this Court to craft an exception based on *Roche v.*

---

[5] *See In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Because jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint.").

9

*Country Mut. Ins. Co.*, No. 07-367, 2007 WL 2003092 (S.D. Ill. July 6, 2007) (unpublished). eir reliance on *Roche* is unavailing.

    First, in *Roche*, the defendants argued that removal jurisdiction was appropriate because they had moved under Rule 19 to join diverse entities as defendants. *Id.* at *2. Here, the Defendants have *not* filed a Rule 19 motion; the issue is simply not ripe for resolution.

    Second, the *Roche* Court denied the Defendants' Rule 19 motion and its statement post-removal joinder of a necessary party can create minimal diversity of citizenship under CAFA sufficient is no more than dicta. *Id.* at *4. And this dicta is wrong. This dicta misstates the law and overlooks the principle that a court lacking subject matter jurisdiction lacks the power to join an absent party under Rule 19. Indeed, the district court in *Roche* acknowledged that it was aware of no case concluding that post-removal joinder of a mandatory party can create minimal diversity of citizenship under CAFA. *Id.* at *3 ("The Court has not been able to locate a case that addresses the precise issue presented by this case, namely, whether post-removal joinder of a mandatory party can create minimal diversity of citizenship for CAFA purposes."). Rather, the court noted that joinder of a mandatory party can *destroy* complete diversity, and saw "no principled distinction between, on the one hand, destruction of jurisdiction by the joinder of a mandatory party and, on the other hand, creation of jurisdiction by such joinder." *Id.*

    The district court overlooked the critical distinction: namely, that Rule 19 presupposes the existence of subject matter jurisdiction without regard to Rule 19 joinder. Subsection (a) of the Rule reads in pertinent part: "A person who is subject to service of process *and whose joinder will not deprive the court of subject-matter jurisdiction* must be joined as a party if . . ." Fed. R. Civ. P. 19(a) (emphasis added). Joinder could "deprive" a court of subject matter jurisdiction only if subject matter jurisdiction were present. Further, subsection (b) of the rule provides that

10

the court must decide whether to proceed in the absence of the necessary party. Again, unless subject matter jurisdiction already were present, the court would not have discretion to proceed.

Finally, the fact-intensive, equitable, and malleable nature of the Rule 19 analysis makes that rule a poor vehicle to create subject matter jurisdiction. "Jurisdictional rules ought to be simple and precise so that judges and lawyers are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated. The more mechanical the application of a jurisdictional rule, the better. The chief and often the only virtue of a jurisdictional rule is clarity." *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 740 (7th Cir. 2004). This Court should not create a new basis for federal jurisdiction.

### III. DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROVING "FEDERAL QUESTION" JURISDICTION UNDER 28 U.S.C. § 1331

Removal based on federal question jurisdiction is governed by the "well-pleaded complaint rule." *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). If a properly pleaded complaint raises no federal question on its face, federal question jurisdiction does not exist. *Id.* This rule is based on the principle that "the plaintiff is the master of the complaint . . . and . . . may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Id.* at 398-99. Thus, if the plaintiff "can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal." *People of State of Ill. v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 575 (7th Cir. 1982).

Here, this Court lacks federal question jurisdiction because Plaintiff has asserted only state claims and this action does not arise under the Constitution, laws or treaties of the United States. Nor do Defendants contend otherwise. Rather, they argue that the Complaint arises under federal law only "*to the extent* that Plaintiff challenges Comcast's management of its network rather than

11

Comcast's marketing or advertising services." Ex. A-3 ¶¶ 22 & 25 (emphasis added). Yet Defendants do not actually contend the Complaint challenges, *to any extent whatsoever*, Defendants' management of their network. Indeed, the Complaint on its face challenges only the Defendants' false, misleading, deceptive, and fraudulent advertising of their high-speed Internet service, and *not* the actual methods with which they manage that service. Ex. A-2 ¶ 5. Each count bears this out. *See supra* at 5 (describing Counts). And, by distinguishing challenges to advertising from challenges to network management, Defendants concede that Plaintiff's challenges to their marketing and advertising do *not* give rise to any federal question. Ex. A-3 ¶ 22 (claiming federal question jurisdiction exists "to the extent Plaintiff challenges Comcast's management of its network *rather than Comcast's marketing and advertisement of its services*") (emphasis added).

Because no federal question appears on the face of the well-pleaded Complaint, Defendants allude to several corollaries and exceptions to the well-pleaded complaint rule, specifically, the complete preemption doctrine, the substantial federal question doctrine, and the artful pleading doctrine. *Id.* ¶ 27. None of these doctrines applies here.

### A.     The Complete Preemption Doctrine Does Not Apply

The complete preemption doctrine applies whenever federal law has replaced whatever state law cause of action exists with an exclusive federal cause of action. *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 790 (7th Cir. 2002) ("[C]omplete preemption can only exist where, *inter alia*, the federal statute provides a private right of action"). The complete preemption doctrine does not apply to this action because there no federal cause of action arises from the alleged facts.

Defendants do not contend otherwise. Instead they merely cite to a provision of the Communications Decency Act of 1996 ("CDA"), an Internet parental control statute, 47 U.S.C. § 230(b), and claim that provision reflects Congressional policy that the "Internet . . . should be

12

'unfettered' by state regulation." Ex. A-3 ¶ 23.  This section, however, is titled "Protection for 'good samaritan' blocking and screening of offensive material" and was passed to protect Internet service providers from tort suits based on their removal of offensive material (such as child pornography) posted by third parties.  *See Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163-64 (9th Cir. 2008).  It does not create the federal policy Defendants seek, and it does not satisfy the requirements of complete preemption.[6]

### A.   The Substantial Federal Question Doctrine Does Not Apply

The Defendants next invoke the controversial, rarely-applied, and inapposite "substantial federal question" doctrine.  The substantial federal question doctrine permits removal under 28 U.S.C. § 1331 "when a well-pleaded complaint necessarily 'requires resolution of a substantial question of federal law.'"  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848 (1983).  Here, the Complaint does not challenge how Defendants manage their network, but rather their advertising practices.  Thus, no question of federal law—substantial or otherwise—must be resolved for Plaintiff to obtain the relief he seeks.

### B.   The Artful Pleading Doctrine Does Not Apply

Finally, the artful pleading doctrine, a "corollary to the well-pleaded complaint rule," provides that a plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint.  *Id.* at 22.  Like the complete preemption doctrine, the existence of a federal cause of action is an antecedent to the artful pleading doctrine.  *Id.* at 23.  But as discussed, this action does not arise under federal law by operation of the artful pleading doctrine.  The complaint

---

[6] Indeed, the Supreme Court has only recognized complete preemption in three instances:  (1) ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), (2) the Labor Management Relations Act of 1947, § 301, 29 U.S.C. § 185; and (3) for claims relating to possessory rights in Indian land grants.  *See TPS Utilicom Servs., Inc. v. AT & T Corp.*, 223 F. Supp. 2d 1089, 1096 n.5 (C.D. Cal. 2002) (citations omitted).

13

pleads state law claims only, and Defendants do not suggest the existence of any federal claim that Plaintiff has artfully pled as state law claims.

## IV. REMAND IS REQUIRED UNDER CAFA

CAFA does not confer subject matter jurisdiction over this action because all class members and Defendants are citizens of Illinois. However, even if federal jurisdiction were proper under CAFA, the local controversy (28 U.S.C. § 1332(d)(4)(A)) and home state exceptions (28 U.S.C. § 1332(d)(4)(B)) to CAFA jurisdiction require remand.

### A. The Local Controversy Exception Requires Remand

Under CAFA's local controversy exception, a district court must decline CAFA jurisdiction when four circumstances are met. § 1332(D)(4)(A). All of them are met here.

<u>First</u>, it is beyond dispute that "greater than two thirds of the members of the putative class are citizens of the state in which the action was filed." 28 U.S.C. § 1332(d)(4)(A)(i)(I). Plaintiff filed this action in Illinois and the putative class is comprised solely of Illinois citizens.

<u>Second</u>, "at least one defendant is a defendant from whom members of the putative class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the state in which the action was filed." 28 U.S.C. § 1332(d)(4)(A)(i)(II). Defendants admit that at least six defendants are citizens of Illinois, Ex. A-3 ¶ 5, and the alleged conduct of these Defendants—that these Defendants marketed and advertised their services with misrepresentations, concealments, omissions, and deception; and, that these Illinois citizens conspired with one another to engage in the foregoing misrepresentations, concealments, omissions, and deception, *see* Ex. A-2 Counts I-V—form the basis of the asserted claims.

<u>Third</u>, "the principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III). Here, the class members are Illinois citizens, Ex. A-2 ¶ 43, who paid subscription fees, *id.* at ¶ 40, and were

subject to false advertising in Illinois. *Id.* at ¶ 5. *See also* Ex. A-3 (Notice of Removal) ¶ 12 (calculating amount in controversy by reference to subscribers with Illinois billing addresses). Thus, the principal injuries resulting from Defendants' alleged conduct were incurred in Illinois.

<u>Fourth</u>, "no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the instant class action." 28 U.S.C. § 1332(d)(4)(A)(ii).

Thus, remand is required under the local controversy exception to CAFA jurisdiction.

  B.  <u>The Home State Controversy Exception Requires Remand</u>

Under the "home state controversy" exception to CAFA jurisdiction, a district court must not exercise its CAFA jurisdiction where two thirds or more of the members of the proposed plaintiff class, and the primary defendants, are citizens of the state in which the action originally was filed. 28 U.S.C. § 1332(d)(4)(B) ("A district court shall decline to exercise jurisdiction . . ." when the home state controversy applies).

Those requirements are met here. First, all class members (and thus more than two thirds or them) are citizens of the state in which the action was filed. *See* Ex. A-2 ¶ 43. Second, the Complaint alleges that all Defendants are Illinois citizens, *id.* ¶¶ 7-16, which Defendants fail to refute. And as explained above, *see supra* at 10, Defendants are the "primary" defendants in this case: This action addresses Comcast advertising of its services in Illinois, and Defendants are the entities responsible for those operations. *See, e.g.*, Ex. A-1 (Subscriber Agreement). All requirements of the mandatory home state controversy exception are thus met and this Court may not exercise any jurisdiction it may have under CAFA.

## **CONCLUSION**

  WHEREFORE, Plaintiff asks that this Court remand this action and grant such further relief as this Court deems proper.

Dated:  August 29, 2008					Respectfully submitted,


						       /s Kenneth J. Brennan
						Kenneth J. Brennan (Il. Bar #6239037)
						John A. Bruegger (Il. Bar #6278821)
						SIMMONSCOOPER LLC
						707 Berkshire Boulevard
						PO Box 521
						East Alton, IL  62024
						Telephone: (618) 259-2222
						Facsimile: (618) 259-2251
						Email: kbrennan@simmonscooper.com

						August J. Matteis, Jr.*
						GILBERT RANDOLPH LLP
						1100 New York Avenue, NW
						Suite 700
						Washington, DC 20005
						Telephone: (202) 772-1923
						Facsimile: (202) 772-1924
						E-Mail: matteisa@gilbertrandolph.com
						*Application for Admission Pro Hac Vice to be filed

						*Attorneys for Plaintiff Roger Lis*