**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROGER LIS,<br><br>     Plaintiff,<br><br>  v.<br><br>COMCAST OF CHICAGO, INC., *et al.*,<br><br>     Defendants. | No. 1:08-CV-3984<br><br>Judge Zagel<br>Magistrate Judge Cox |

**DECLARATION OF ALYSON A. FOSTER IN SUPPORT OF**
**PLAINTIFF'S MOTION TO REMAND**

I, Alyson A. Foster, declare as follows:

  1.  I am an associate with the law firm of Gilbert Randolph LLP, one of four firms currently serving as counsel to Plaintiff Roger Lis ("Plaintiff") in this action.

  2.  Attached as Exhibit 1 is a true and correct copy of the Comcast Agreement for Residential Services.

  3.  Attached as Exhibit 2 is a true and correct copy of the Class Action Complaint filed by Plaintiff on July 14, 2008 in the Circuit Court of Cook County, Illinois.

  4.  Attached as Exhibit 3 is a true and correct copy of the Notice of Removal filed by the defendants on July 14, 2008.

  I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 29, 2008, at Washington, D.C.

             _____
             Alyson A. Foster

# EXHIBIT 1

## TO DECLARATION OF ALYSON A. FOSTER, AUG. 29, 2008

# Subscriber Agreement

TERMS OF SERVICE:  Subscriber Agreement  |  Acceptable Use Policy  |  Network Management  |  Report Abuse To Comcast

## Comcast Agreement For Residential Services

### About This Agreement, Our Services, And Your Rights

Comcast Services will be provided to you ("you," "your," or "Customer") on the terms and conditions set forth in this Agreement for Residential Services (the "Agreement") by the operating company subsidiary of Comcast Corporation that owns and/or operates the cable television system in your area ("Comcast," "we," "us," or "our") and in any applicable Tariff(s)on file with the FCC, state utility commission or other comparable state agency. For purposes of this Agreement, "affiliate" means any entity that controls, is controlled by or is under common control with Comcast Corporation. Services may include, but are not limited to, cable television service ("Video"), Comcast High-Speed Internet service ("HSI"), and Comcast Digital Voice Service ("CDV") (each a "Service" and collectively the "Services").

The terms and conditions in the "GENERAL TERMS AND CONDITIONS" section below are applicable to all Services unless otherwise indicated. Additional terms and conditions applicable to HSI and CDV are included in this Agreement in sections titled "ADDITIONAL PROVISIONS APPLICABLE TO HSI" or "ADDITIONAL PROVISIONS APPLICABLE TO CDV".

We may change our prices, fees, the Services and/or the terms and conditions of this Agreement in the future. Unless this Agreement or applicable law specifies otherwise, we will give you thirty (30) days prior Notice of any significant change to this Agreement. If you find the change unacceptable, you have the right to cancel your Service(s). However, if you continue to receive Service(s) after the end of the notice period (the "Effective Date") of the change, we will consider that you have accepted the changes. You may not modify this Agreement by making any typed, handwritten, or any other changes to it for any purpose.

Note: This Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Services.

## General Terms And Conditions

### 1. Acceptance Of This Agreement
You will have accepted this Agreement and be bound by its terms if you use the Services or otherwise indicate your affirmative acceptance of such Services.

### 2. Charges And Billings

   a.  **Charges, Fees, and Taxes That You Must Pay.** You agree to pay all charges associated with the Services, including, but not limited to, installation charges, monthly

service charges, Comcast Equipment (as defined below) charges, service call charges, measured and per call charges, applicable federal, state, and local taxes (however designated) and any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Services. You agree to pay any regulatory recovery fees which Comcast invoices you for municipal, state and federal government fees or assessments imposed on Comcast, or any programs in which Comcast participates, including, but not limited to, public, educational and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting 911/E911 system. **YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY.** We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price is related to a change in governmental or quasi-governmental taxes, fees or assessments, in which case we may elect not to provide notice except where required by applicable law. Not all fees apply to all Services.

> **For Video Customers.** Video price information is supplied with our Welcome Kit.

> **For HSI Customers.** HSI price information is available at www.comcast.com (or an alternative site if we notify you).

> **For CDV Customers.** CDV pricing information is supplied with our Welcome Kit. Additional pricing information is available at www.comcast.com/CDV/termsofservice (or an alternative site if we notify you).

> **For Minimum Term Customers.** If you have signed a minimum term addendum, which maybe available within your area, your price for Service(s) is as specified in the minimum **term addendum.**

b.  **How We Will Bill You.** Unless you have signed a minimum term addendum, Services are provided to you on a month-to-month basis. You will generally be billed monthly, in advance, for recurring service charges, equipment charges, and fees. **IN ADDITION, YOU MUST PAY, ON OR BEFORE THE DAY WE INSTALL ANY OR ALL OF THE SERVICES, THE FIRST MONTH'S SERVICE CHARGES, COMCAST EQUIPMENT CHARGES, ANY DEPOSITS, AND ANY INSTALLATION CHARGES.** You may be billed for some Services individually after they have been provided to you; these include measured and per-call charges (as explained below) and charges for pay-per-view movies or events, interactive television, and e-commerce.

Your first bill may include pro-rated charges from the date you first begin receiving Services, as well as monthly recurring charges for the next month and charges for non-recurring charges for any nonrecurring services you have received. If you make partial payment of any bill, we will apply that payment to the outstanding charges in the amounts and proportions that we determine. However, we do not waive our rights to collect the full balance owed to us by accepting partial payment.

> **For CDV Customers.** If you pay a flat monthly fee for your calling plan, that fee may not cover certain types of calls. You will be billed for these excluded call types on a per-call basis (e.g., operator services) or a measured basis (e.g., international calls).Generally, for billing purposes, a measured call begins when the call is answered by the called party or an automated answering device (such as an answering machine or fax machine); it ends when one of the parties disconnects the call. However, some providers (e.g., those involved in calls to foreign countries) charge for a completed call when the called party's line rings or after a certain number of rings. If such a provider charges Comcast, its affiliates, or suppliers as if your call were answered by the called party, Comcast will charge you for a completed call.

Measured calls are recorded in whole minutes, with partial minutes rounded up to the next whole minute. If the computed charge for a measured call or for taxes or surcharges includes a fraction of a cent, the fraction is rounded up to the nearest whole cent. Consult the CDV pricing information for information on per-call charges and the timing of measured-call charges. You understand and agree that our paper bills for CDV contain only a summary of charges,

and that detailed information about your calls and charges will be available only for a limited period at a password-protected portion of our Website. You may call 1-800-COMCAST for a paper copy of outbound toll call records related to your most recent bill. There may be an additional charge for these outbound toll call records except as otherwise required by applicable law. Comcast reserves the right to limit or block any CDV usage as Comcast deems necessary to prevent harm to its network, fraud, or other abuse of CDV services.

c. **Third-Party Charges That Are Your Responsibility.** You acknowledge that you may incur charges with third-party service providers that are separate and apart from the amounts charged by us. These may include charges resulting from accessing on-line services, calling parties who charge for their telephone-based services, purchasing or subscribing to other offerings via the Internet or Interactive options on your Video Service, if applicable, or otherwise. You are solely responsible for all charges payable to third parties, including all applicable taxes. In addition, you are solely responsible for protecting the security of credit card and other personal information provided to others in connection with such transactions.

d. **Alternative Billing Arrangements.** In certain cases, Comcast may agree to provide billing services on behalf of third parties, as the agent of the third party. Any such third-party charges shall be payable pursuant to any contract or other arrangement between you and the third party. We shall not be responsible for any dispute regarding these charges between you and any third party. You must address all such disputes directly with the third party.

e. **Payment by Credit Card or Check.** If you use a credit card to pay for the Services, that use is governed by the card issuer agreement for that card, and you must refer to that agreement for your rights and liabilities as a cardholder. If Comcast does not receive payment from your credit card issuer or its agents, you agree to pay all amounts due upon demand. If you make payment by check, you authorize Comcast to collect your check electronically. You agree that you may not amend or modify this Agreement with any restrictive endorsements (such as "paid in full"), releases, or other statements on or accompanying checks or other payments accepted by Comcast and that any such notations shall have no legal effect.

f. **Our Remedies if You Pay Late or Fail to Pay**

   i. **Late or Non-Payments:** You may be billed fees, charges and assessments related to late payments or non-payments if for any reason (i) Comcast does not receive from you any required payment for the Services by the payment due date or (ii) you pay less than the full amount due for the Services.

   ii. **Fees Not Considered Interest or Penalties:** Comcast does not anticipate that you will fail to pay for the Services on a timely basis, and we do not extend credit to customers. Any fees, charges, and assessments due to late payment or nonpayment are not interest, credit service charges, or finance charges or penalties. Rather, they are liquidated damages intended to be a reasonable advance estimate of our costs resulting from late payments and non-payments. These costs will be difficult to calculate or to predict when we set such fees, charges, and assessments, because we cannot know in advance: (a) whether you will pay for the Services on a timely basis, if ever; (b) if you do pay late, when you will actually pay; and (c) what costs we will incur because of your late payment or non-payment.

   iii. **Collection Costs:** If we are required to use a collection agency or attorney to collect money owed by you, you agree to pay the reasonable costs of collection. These costs include but are not limited to any collection agency's fees, reasonable attorneys' fees, and arbitration or court costs.

   iv. **Suspension/Disconnect:** If you fail to pay the full amount due for any or all of the Services then Comcast, at its sole discretion in accordance with applicable law, may suspend or disconnect any or all the Services you receive.

g. **Reconnection Fees and Related Charges.** Should you wish to resume a Service after any suspension, we may require you to pay a reconnection fee. Should you wish to reinstate any or all Services after disconnection, we may require you to pay an installation fee and/or service activation fee. These fees are in addition to all past due charges and other fees. Reconnection of the Services is subject to our credit policies, this Agreement and applicable law.

Exhibit 1 Page 3

h. **Our Right to Make Credit Inquiries.** YOU AUTHORIZE COMCAST TO MAKE INQUIRIES AND TO RECEIVE INFORMATION ABOUT YOUR CREDIT EXPERIENCE FROM OTHERS, TO ENTER THIS INFORMATION IN YOUR FILE, AND TO DISCLOSE THIS INFORMATION CONCERNING YOU TO APPROPRIATE THIRD PARTIES FOR REASONABLE BUSINESS PURPOSES.

i. **Your Responsibilities Concerning Billing Questions.** Subject to applicable law, if you intend to dispute a charge or request a billing credit, you must contact Comcast within sixty (60) days of the date on the bill. You waive any disputes or credits that you do not report within sixty (60) days.

## 3. Refundable Deposit

We may require you to pay a refundable deposit when you activate the Service(s). We may also require you to pay a refundable deposit after activation of the Service(s) if you add Comcast Equipment and/ or Service(s) or if you fail to pay any amounts when they are due hereunder. If we disconnect your Service(s) or are otherwise required under applicable law to refund the deposit, we shall within forty-five (45) days or as otherwise specified by applicable law return a sum equal to the deposit(s) you paid (without interest unless otherwise required by law) minus any amounts due on your account (including without limitation, any amounts owed for Services or for any Comcast Equipment that is damaged, altered, or not returned).

## 4. Changes To Services

Subject to applicable law, we have the right to change our Services, Comcast Equipment and rates or charges, at any time with or without notice. We also may rearrange, delete, add to or otherwise change programming or features or offerings contained in the Services, including but not limited to, content, functionality, hours of availability, customer equipment requirements, speed and upstream and downstream rate limitations. If we do give you notice, it may be provided on your monthly bill, as a bill insert, in a newspaper or other communication permitted under applicable law. If you find a change in the Service(s) unacceptable, you have the right to cancel your Service(s). However, if you continue to receive Service(s) after the change, this will constitute your acceptance of the change. Please take the time to read any notices of changes to the Service(s). We are not liable for failure to deliver any programming, services, CHANGES TO SERVICESfeatures or offerings except as provided in Section 11e.

## 5. Access To Your Premises

You agree to allow us and our agents the right, to enter at reasonable times your property upon which the Services and/or Comcast Equipment will be provided (the "Premises"), for purposes of installing, configuring, maintaining, inspecting, upgrading, replacing and removing the Services and/or Comcast Equipment used to receive any of the Services. You warrant that you are either the owner of the Premises or that you have the authority to give us access to the Premises. If you are not the owner of the Premises, you are responsible for obtaining any necessary approval from the owner to allow us and our agents into the Premises to perform the activities specified above. In addition, you agree to supply us or our agent, if we ask, the owner's name, address and phone number and/or evidence that the owner has authorized you to grant access to us and our agents to the Premises.

## 6. Maintenance And Ownership Of Equipment

a. **Comcast Equipment.** You agree that except for the wiring installed inside the Premises ("Inside Wiring"), all Comcast equipment belongs to us or other third parties and will not be deemed fixtures or in any way part of the Premises. Comcast Equipment includes all new or reconditioned equipment installed, provided or leased to you

Exhibit 1 Page 4

by us or our agents, including but not limited to, cabling or wiring and related electronic devices, cable modems, multimedia terminal adapters ("MTA"), wireless gateway/routers, any other hardware and all software or "downloads" to Comcast Equipment. You agree to use Comcast Equipment only for the Services pursuant to this Agreement. We may remove or change the Comcast Equipment at our discretion at any time the Services are active or following the termination of your Service(s). You agree to allow us access to the Premises for these purposes. You may not sell, lease, abandon or give away the Comcast Equipment, or permit any other provider of video, high speed data or telephone services to use the Comcast Equipment. The Comcast Equipment may only be used in the Premises. At your request, we may relocate the Comcast Equipment in the Premises for an additional charge, at a time agreeable to you and us. YOU UNDERSTAND AND ACKNOWLEDGE THAT IF YOU ATTEMPT TO INSTALL OR USE THE COMCAST EQUIPMENT OR SERVICES AT A LOCATION OTHER THAN THE PREMISES, THE SERVICES MAY FAIL TO FUNCTION OR MAY FUNCTION IMPROPERLY. You agree that you will not allow anyone other than Comcast employees or agents to service the Comcast Equipment. We suggest that the Comcast Equipment in your possession be covered by your homeowners, renters, or other insurance. You will be directly responsible for loss, repair, replacement and other costs, damages, fees and charges if you do not return the Comcast Equipment to us in an undamaged condition.

b. **Customer Equipment.**

Responsibility: Comcast has no responsibility for the operation or support, maintenance or repair of any equipment, software or services that you elect to use in connection with the Services or Comcast Equipment (the "Customer Equipment".)

For HSI and CDV Customers. You can find Comcast's current minimum technical and other requirements for HSI customers at help.comcast.net/help/faq/index.jsp?faq=Computer_Setup117528 and for CDV customers at www.comcast.com/customers/faq/FaqCategory.ashx?CatId=288. These requirements may be located at an alternative site if we so notify you. To use CDV, you will need a MTA that meets our specifications. In some areas, we may permit you to use CDV with an MTA that you have purchased. Depending on availability in your area, you may have an option to install the MTA yourself or to have Comcast install it for you. You agree to keep the MTA plugged into a working electrical power outlet at all times. Whether a cable modem, gateway/router, MTA or other device is owned by you or us, we have the unrestricted right, but not the obligation, to upgrade or change the firmware in these devices remotely or on the Premises at any time that we determine it necessary or desirable in order to provide Services to you in accordance with our specifications and requirements.

For CDV Customers. In order to use CDV, you are required to provide certain equipment such as a phone handset or equivalent, inside phone wiring and outlets, and an electrical power outlet. If you live in an apartment or a similar multi-tenant dwelling, you may have to provide a cordless phone as well. If we do not have access to the inside phone wiring in your home or if you are installing CDV yourself without the assistance of a Comcast technician ("self-installation") where we make that option available, you will need to plug a cordless phone into the MTA in order to use CDV throughout your home. CERTAIN MAKES AND MODELS OF CORDLESS PHONES USE THE ELECTRICAL POWER IN YOUR HOME. IF THERE IS AN ELECTRICAL POWER OUTAGE, THE CORDLESS PHONE WILL CEASE TO OPERATE DURING THE OUTAGE, PREVENTING USE OF CDV VIA THE CORDLESS PHONE. DO NOT ATTEMPT TO CONNECT CDV TO INSIDE PHONE WIRING YOURSELF (see "Connecting an MTA to Inside Phone Wiring"). In order to use online features of CDV, where we make those features available, you are required to provide certain hardware, such as a personal computer, software, an Internet browser, and access to the Internet.

i. **Non-Recommended Configurations:** Customer Equipment that does not meet Comcast's minimum technical or other specifications constitutes a "Non-Recommended Configuration." NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS OR AGENTS WARRANT THAT A NON-RECOMMENDED CONFIGURATION WILL ENABLE YOU TO SUCCESSFULLY INSTALL, ACCESS, OPERATE OR USE THE SERVICES. YOU ACKNOWLEDGE THAT ANY

Exhibit 1 Page 5

SUCH INSTALLATION, ACCESS, OPERATION, OR USE COULD CAUSE CUSTOMER EQUIPMENT TO FAIL TO OPERATE OR CAUSE DAMAGE TO CUSTOMER EQUIPMENT, YOU, YOUR PREMISES OR COMCAST EQUIPMENT. NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS OR AGENTS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY SUCH FAILURE OR DAMAGE. Comcast reserves the right to deny you customer support for the Services and/or terminate Service(s) if you use a Non-Recommended Configuration.

ii. **No Unauthorized Devices or Tampering:** You agree not to attach any unauthorized device to Comcast Equipment or the Services. If you make any unauthorized connection or modification to Comcast Equipment or the Services or any other part of our cable network, we may terminate your Service and recover such damages as may result from your actions. Unless expressly authorized by us, you agree not to install anything to intercept or receive any of the Services offered over our cable network or to assist any person in intercepting or receiving any of the Services offered over our cable network. You also agree that you will not attach anything to the Inside Wiring, Comcast Equipment or Customer Equipment, whether installed by you or us, which singly or together impairs the integrity of our cable network or degrades our cable network's signal quality or strength or creates signal leakage.

You hereby agree that we may recover damages from you for tampering with any Comcast Equipment or any other part of our cable network or for receiving unauthorized Service(s). You agree that it would be difficult if not impossible to calculate precisely the lost revenue resulting from your receipt of unauthorized Service(s) or the alteration or improper use of Comcast Equipment. You therefore agree to pay us as liquidated damages, the sum of $500.00 per device used to receive the unauthorized Services in addition to our cost to replace any altered, damaged or unreturned Comcast Equipment or other equipment owned by Comcast, including any incidental costs. The unauthorized reception of the Services may also result in criminal fines and/or imprisonment.

> **For CDV Customers.** You will be liable for all authorized and unauthorized CDV use. You agree to notify us immediately in writing or by calling our customer service line during normal business hours if you become aware at any time that the MTA has been stolen or that your Services are being stolen or used without your authorization. When you call or write, you must provide your account number and a detailed description of the circumstances of the theft of your MTA or unauthorized use of your CDV Services. If you fail to notify us in a timely manner, your Services may be terminated without notice, with additional charges to you.

c. **Inside Wiring**. You may install Inside Wiring, such as additional cable wiring and outlets, provided it does not interfere with the normal operations of our cable network. If you have us install Inside Wiring, we will charge you for that service. Regardless of who installed it, we consider the Inside Wiring your property or the property of whomever owns the Premises. Accordingly, you are responsible for the repair and maintenance of the Inside Wiring, unless you and Comcast have agreed otherwise in writing. (If you do not own the Premises, contact your landlord or building manager about the repair or maintenance of Inside Wiring.) If you have us repair or maintain the Inside Wiring, we will charge you for that service.

> **For CDV Customers.** Except as described below, you may use CDV with your telephone Inside Wiring, as long as we have reasonable access to it and you have the right to give us access to it. If you wish to have your MTA connected to your telephone Inside Wiring, you are advised to have a Comcast technician perform the installation. To make that connection, we must first disconnect your telephone Inside Wiring from the network of your existing telephone provider (such as a Bell network), which may disable any services you receive from them. If you install CDV yourself (where self-installation is an option), you should connect the MTA to a cordless phone, not directly to your telephone Inside Wiring. If the MTA is connected to your telephone Inside Wiring without first disconnecting the wiring from any existing telephone provider's network, the MTA may be damaged and/or CDV may not operate properly.

Exhibit 1 Page 6

## 7. Use Of Services

You agree that the Services and the Comcast Equipment will be used only by you and the members of your immediate household living with you at the same address and only for personal, residential, non-commercial purposes, unless otherwise specifically authorized by us in writing. You will not use the Comcast Equipment at any time at an address other than the Premises without our prior written authorization. You agree and represent that you will not resell or permit another to resell the Services in whole or in part. You will not use or permit another to use the Comcast Equipment or the Service(s), directly or indirectly, for any unlawful purpose, including, but not limited to, in violation of any posted Comcast policy applicable to the Services. Use of the Comcast Equipment or Services for transmission, communications or storage of any information, data or material in violation of any U.S. federal, state or local regulation or law is prohibited.

You acknowledge that you are accepting this Agreement on behalf of all persons who use the Comcast Equipment and/or Services and that you shall have sole responsibility for ensuring that all other users understand and comply with the terms and conditions of this Agreement and any applicable Comcast policies including, but not limited to, acceptable use and privacy policies. You further acknowledge and agree that you shall be solely responsible for any transactions, including, without limitation, purchases made through or in connection with the Services. You agree to indemnify, defend and hold harmless Comcast and its affiliates, suppliers, and agents against all claims and expenses (including reasonable attorney fees) arising out of the use of the Services, the Comcast Equipment and/or the Customer Equipment or the breach of this Agreement or any of the applicable Comcast policies by you or any other user.

**For HSI Customers.**

a. **Acceptable Use Policy.** The Comcast Acceptable Use Policy ("AUP") and other policies concerning HSI are posted on the Service's Web site at www.comcast.net (or an alternative Web site if we so notify you). You further agree that Comcast may modify the AUP or other policies from time to time. Notwithstanding anything to the contrary in this Agreement, YOU ACKNOWLEDGE AND AGREE THAT THE TERMS OF THE AUP AND ANY OTHER APPLICABLE COMCAST POLICIES MAY BE PUT INTO EFFECT OR REVISED FROM TIME TO TIME WITHOUT NOTICE BY POSTING A NEW VERSION OF THE AUP OR POLICY AS SET FORTH ABOVE. YOU AND OTHER USERS OF THE SERVICE SHOULD CONSULT THE AUP AND ALL POSTED POLICIES REGULARLY TO CONFORM TO THE MOST RECENT VERSION.

b. **Prohibited Uses of HSI.** You agree not to use HSI for operation as an Internet service provider, a server site for ftp, telnet, rlogin, e-mail hosting, "Web hosting" or other similar applications, for any business enterprise, or as an end-point on a non-Comcast local area network or wide area network. You agree to indemnify, defend and hold harmless Comcast and its affiliates, suppliers, and agents against all claims and expenses (including reasonable attorney fees) arising out of any breach of this Section including, but not limited to, any claims based on or arising out of any material violation of any applicable law.

**For CDV Customers.** You agree the MTA and CDV will only be used at the Premises, except that certain online features may be accessible from locations other than the Premises. You understand and acknowledge that if you improperly install the Comcast Equipment or CDV at another location in the Premises, then CDV, including but not limited to 911/E911, may fail to function or may function improperly. If you move the MTA or CDV to another location without notifying us, you do so in violation of this Agreement and at your own risk. You expressly agree not to use CDV for auto-dialing, continuous or extensive call forwarding, telemarketing, fax broadcasting or fax blasting, or for any other use that results in excessive usage inconsistent with normal residential calling patterns. If we determine, in our sole

Exhibit 1 Page 7

discretion, that your use of CDV is excessive or in violation of this Agreement, we reserve the right (i) immediately and without notice to terminate or modify CDV or (ii) assess additional charges for each month in which any excessive usage occurred.

## 8. Assignability

This Agreement and the Services furnished hereunder may not be assigned by you. You agree to notify us immediately of any changes of ownership or occupancy of the Premises. We may freely assign our rights and obligations under this Agreement with or without notice to you.

## 9. Termination Of This Agreement

a. **Term.** This Agreement will be in effect from the time that charges commence until (i) it is terminated as provided for by this Agreement or by any addendum to this Agreement or (ii) it is replaced by a revised Agreement. If you self-install Comcast Equipment, Service charges begin the earliest of (i) the day on which you picked up Comcast Equipment at our service center, (ii) the day you install the Service, or (iii) five (5) days after the date we ship the Comcast Equipment to you. If you self-install an MTA, cable modem or converter that you obtained from a source other than Comcast, charges begin the day that your order for the Services is entered into our system. The option to self-install an MTA, cable modem or converter and/or to use a non-Comcast-supplied MTA, cable modem or converter is subject to availability. Any non-Comcast supplied MTA, cable modem or converter must comply with Comcast's minimum requirements.

b. **Termination by You.** Unless you have signed a minimum term addendum, you may terminate this Agreement for any reason at any time by notifying Comcast in one of three ways: (i) send a written notice to the postal address of your local Comcast business office; (ii) send an electronic notice to the e-mail address specified on www.comcast.com; or (iii) call our customer service line during normal business hours. Subject to applicable law or the terms of any agreements with governmental authorities, all applicable fees and charges will accrue until this Agreement has terminated, the Services have been disconnected, and all Comcast Equipment has been returned. We will refund all prepaid monthly service fees charged for Services after the date of termination (less any outstanding amounts due Comcast for the Services, affiliate services, Comcast Equipment, or other applicable fees and charges).

c. **Suspension and Termination by Comcast.** Under the conditions listed below, Comcast reserves the right, subject to applicable law, to act immediately and without notice to terminate or suspend the Services and/or to remove from the Services any information transmitted by or to any authorized users (e.g., email or voicemail). Comcast may take these actions if it: (i) determines that such use or information does not conform with the requirements set forth in this Agreement, (ii) determines that such use or information interferes with Comcast's ability to provide the Services to you or others, (iii) reasonably believes that such use or information may violate any laws, regulations, or written and electronic instructions for use, or (iv) reasonably believes that such use or information interferes with or endangers the health and/or safety of our personnel or third parties. Comcast's action or inaction under this Section shall not constitute review or approval of your or any other users' use of the Services or information transmitted by or to you or users.

d. **Your Obligations upon Termination.**

You agree that upon termination of this Agreement you will do the following:

i. You will immediately cease all use of the Services and all Comcast Equipment;

ii. You will pay in full for your use of the Services up to the date that this Agreement has been terminated and the Services are disconnected; and

iii. Within ten (10) days of the date on which Services are disconnected, you will return all Comcast Equipment to us at our local business office or to our designee in working order, normal wear and tear excepted. Otherwise, you will be charged the amount set forth in the current pricing lists for such Comcast Equipment, or

Exhibit 1 Page 8

the revised amount for which you receive notice; if no amount has been specified for the particular model of Comcast Equipment, you will be charged the retail price for a new replacement. You may also be charged incidental costs that we incur in replacing the Comcast Equipment. Upon our request, you will permit us and our employees, agents, contractors, and representatives to access the Premises during regular business hours to remove the Comcast Equipment and other material provided by Comcast. We will conduct this removal at a time agreed on by you and us, and you will ensure that all Comcast Equipment is returned to Comcast.

## 10. Limited Warranty

THE COMCAST EQUIPMENT AND THE SERVICES ARE PROVIDED "AS IS," WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS WARRANT THAT THE COMCAST EQUIPMENT OR THE SERVICES WILL MEET YOUR REQUIREMENTS, PROVIDE UNINTERRUPTED USE, OR OPERATE AS REQUIRED, WITHOUT DELAY, OR WITHOUT ERROR. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS WARRANT THAT ANY COMMUNICATIONS WILL BE TRANSMITTED IN UNCORRUPTED FORM. ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OF PERFORMANCE, NONINFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY, ARE HEREBY DISCLAIMED AND EXCLUDED UNLESS OTHERWISE PROHIBITED OR RESTRICTED BY APPLICABLE LAW.

## 11. Limitation Of Comcast's Liability

a. **Application.** The limitations of liability set forth in this Section apply to any acts, omissions, and negligence of Comcast and its underlying third-party service providers, agents and suppliers (and their respective officers, employees, agents, contractors or representatives) which, but for that provision, would give rise to a cause of action in contract, tort or under any other legal doctrine.

b. **Customer Equipment.** CUSTOMER EQUIPMENT MAY BE DAMAGED OR SUFFER SERVICE OUTAGES AS A RESULT OF THE INSTALLATION, SELF-INSTALLATION, USE, INSPECTION, MAINTENANCE, REPAIR, AND REMOVAL OF COMCAST EQUIPMENT AND THE SERVICES. EXCEPT FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY DAMAGE, LOSS, OR DESTRUCTION TO THE CUSTOMER EQUIPMENT. IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT BY COMCAST, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS, WE SHALL PAY AT OUR SOLE DISCRETION FOR THE REPAIR OR REPLACEMENT OF THE DAMAGED CUSTOMER EQUIPMENT UP TO A MAXIMUM OF $500. THIS SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY RELATING TO SUCH ACTIVITY.

>   **For HSI Customers.** YOU UNDERSTAND THAT YOUR COMPUTER OR OTHER DEVICES MAY NEED TO BE OPENED, ACCESSED OR USED EITHER BY YOU OR BY US OR OUR AGENTS, IN CONNECTION WITH THE INSTALLATION OR REPAIR OF HSI. THE OPENING, ACCESSING OR USE OF YOUR COMPUTER OR OTHER DEVICES USED IN CONNECTION WITH YOUR COMPUTER MAY VOID WARRANTIES PROVIDED BY THE COMPUTER OR DEVICE MANUFACTURER OR OTHER PARTIES RELATING TO THE COMPUTER'S OR DEVICE'S HARDWARE OR SOFTWARE. NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS, OR AGENTS SHALL HAVE ANY LIABILITY WHATSOEVER AS THE RESULT OF THE VOIDING OF ANY SUCH WARRANTIES.

c. **Other Services or Equipment.** BY ACCEPTING THIS AGREEMENT, YOU WAIVE ALL CLAIMS AGAINST COMCAST FOR INTERFERENCE, DISRUPTION, OR

Exhibit 1 Page 9

INCOMPATIBILITY BETWEEN THE COMCAST EQUIPMENT OR THE SERVICES AND ANY OTHER SERVICE, SYSTEMS, OR EQUIPMENT. IN THE EVENT OF SUCH INTERFERENCE, DISRUPTION, OR INCOMPATIBILITY, YOUR SOLE REMEDY SHALL BE TO TERMINATE THE SERVICES IN ACCORDANCE WITH SECTION 9.

d.   **Software.** When you use certain features of the Services, such as online features (where available), you may require special software, applications, and/or access to the Internet. Comcast makes no representation or warranty that any software or application installed on Customer Equipment, downloaded from the Service, or available through the Internet does not contain a virus or other harmful feature. It is your sole responsibility to take appropriate precautions to protect any Customer Equipment from damage to its software, files, and data as a result of any such virus or other harmful feature. We may, but are not required to, terminate all or any portion of the installation or operation of the Services if a virus or other harmful feature or software is found to be present on your Customer Equipment. We are not required to provide you with any assistance in removal of viruses. If we decide, in our sole discretion, to install or run virus check software on your Customer Equipment, we make no representation or warranty that the virus check software will detect or correct any or all viruses. You acknowledge that you may incur additional charges for any service call made or required on account of any problem related to a virus or other harmful feature detected on your Customer Equipment. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY DAMAGE TO OR LOSS OF ANY HARDWARE, SOFTWARE, FILES, OR DATA RESULTING FROM A VIRUS, ANY OTHER HARMFUL FEATURE, OR FROM ANY ATTEMPT TO REMOVE IT.

In addition, as part of the installation process for the software and other components of the Service, system files on your Customer Equipment may be modified. Comcast does not represent, warrant or covenant that these modifications will not disrupt the normal operations of any Customer Equipment including without limitation your computer(s), or cause the loss of files. Comcast does not represent, warrant, or covenant that the installation of the special software or applications or access to our Web portal(s) will not cause the loss of files or disrupt the normal operations of any Customer Equipment, including but not limited to your computer(s). FOR THESE AND OTHER REASONS, YOU ACKNOWLEDGE AND UNDERSTAND THE IMPORTANCE OF BACKING UP ALL FILES TO ANOTHER STORAGE MECHANISM PRIOR TO SUCH ACTIVITIES. YOU UNDERSTAND AND ACCEPT THE RISKS IF YOU DECIDE NOT TO BACK UP FILES. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY DAMAGE TO OR LOSS OF ANY SOFTWARE, FILES, OR DATA.

e.   **Disruption of Service.** The Services are not fail-safe and are not designed or intended for use in situations requiring fail-safe performance or in which an error or interruption in the Services could lead to severe injury to business, persons, property or environment ("High Risk Activities"). These High Risk Activities may include, without limitation, vital business or personal communications, or activities where absolutely accurate data or information is required. You expressly assume the risks of any damages resulting from High Risk Activities. We shall not be liable for any inconvenience, loss, liability, or damage resulting from any interruption of the Services, directly or indirectly caused by, or proximately resulting from, any circumstances beyond our control, including, but not limited to, causes attributable to you or your property; inability to obtain access to the Premises; failure of any cable signal at the transmitter; failure of a communications satellite; loss of use of poles or other utility facilities; strike; labor dispute; riot or insurrection; war; explosion; malicious mischief; fire, flood, lightening, earthquake, wind, ice, extreme weather conditions or other acts of God; failure or reduction of power; or any court order, law, act or order of government restricting or prohibiting the operation or delivery of the Services. In all other cases an interruption of the Services, you shall be entitled upon a request made within sixty (60) days of such interruption, to a pro rata credit for any Service interruption exceeding twenty-four consecutive hours after such interruption is reported to us, or such other period of time as may be specifically provided by law.

Exhibit 1 Page 10

Unless specifically otherwise provided by law, such credit shall not exceed the fixed monthly charges for the month of such Service interruption and excludes all nonrecurring charges, one-time charges, per call or measured charges, regulatory fees and surcharges, taxes and other governmental and quasi-governmental fees. **EXCEPT AND UNLESS SPECIFICALLY PROHIBITED BY LAW, SUCH CREDIT SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY FOR AN INTERRUPTION OF SERVICE. IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES FROM WHATEVER CAUSE, INCLUDING, BUT NOT LIMITED TO, LOSS OF BUSINESS OR WAGES.** Any credits provided by Comcast are at our sole discretion and in no event shall constitute or be construed as a course of conduct by Comcast.

> **For CDV Customers.** You understand and acknowledge that you will not be able to use CDV under certain circumstances, including but not limited to the following: (i) if our network or facilities are not operating or (ii) if normal electrical power to the MTA is interrupted and the MTA does not have a functioning battery backup. You also understand and acknowledge that the performance of the battery backup is not guaranteed. If the battery backup does not provide power, CDV will not function until normal power is restored. You also understand and acknowledge that you will not be able to use online features of CDV, where we make those features available, under certain circumstances including but not limited to the interruption of your Internet connection.

f.  **Directory Listings.** IF WE MAKE AVAILABLE AN OPTION TO LIST YOUR NAME, ADDRESS, AND/OR TELEPHONE NUMBER IN A PUBLISHED DIRECTORY OR DIRECTORY ASSISTANCE DATABASE, AND ONE OR MORE OF THE FOLLOWING CONDITIONS OCCURS: (I) YOU REQUEST THAT YOUR NAME, ADDRESS AND/OR PHONE NUMBER BE OMITTED FROM A DIRECTORY OR DIRECTORY ASSISTANCE DATABASE, BUT THAT INFORMATION IS INCLUDED IN EITHER OR BOTH; (II) YOU REQUEST THAT YOUR NAME, ADDRESS AND/OR PHONE NUMBER BE INCLUDED IN A DIRECTORY OR DIRECTORY ASSISTANCE DATABASE, BUT THAT INFORMATION IS OMITTED FROM EITHER OR BOTH; OR (III) THE PUBLISHED OR LISTED INFORMATION FOR YOUR ACCOUNT CONTAINS MATERIAL ERRORS OR OMISSIONS, THEN THE AGGREGATE LIABILITY OF COMCAST AND ITS AFFILIATES, SUPPLIERS OR AGENTS SHALL NOT EXCEED THE MONTHLY CHARGES, IF ANY, WHICH YOU HAVE ACTUALLY PAID TO COMCAST TO LIST, PUBLISH, NOT LIST, OR NOT PUBLISH THE INFORMATION FOR THE AFFECTED PERIOD. YOU SHALL HOLD HARMLESS COMCAST AND ITS AFFILIATES, SUPPLIERS OR AGENTS AGAINST ANY AND ALL CLAIMS FOR DAMAGES CAUSED OR CLAIMED TO HAVE BEEN CAUSED, DIRECTLY OR INDIRECTLY, BY THE ERRORS AND OMISSIONS IN REFERENCED ABOVE.

g.  **Third Parties.** Notwithstanding anything to the contrary in this Agreement, you acknowledge and understand that we may use third parties to provide components of the Services, including without limitation their services, equipment, infrastructure or content. Comcast is not responsible for the performance (or non-performance) of third-party services, equipment, infrastructure or content, whether or not they constitute components of the Services. Comcast shall not be bound by any undertaking, representation or warranty made by an agent or employee of Comcast or of our underlying third-party providers and suppliers in connection with the installation, maintenance or provision of the Services, if that undertaking, representation or warranty is inconsistent with the terms of this Agreement. In addition, you understand that you will have access to the services and content of third parties through the Service(s), including without limitation that of content providers (whether or not accessible directly from the Service). Comcast is not responsible for any services, equipment, infrastructure and content that are not provided by us (even if they are components of the Service), and we shall have no liability with respect to such services, equipment, infrastructure and content. You should address questions or concerns relating to such services, equipment, infrastructure and content to the creators of such services, equipment, infrastructure and content.

We do not endorse or warrant any third-party products, services or content that are distributed or advertised over the Services.

h.  **Damages.** EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR

CONTRACTORS SHALL UNDER ANY CIRCUMSTANCES OR UNDER ANY LEGAL THEORY (INCLUDING BUT NOT LIMITED TO TORT OR CONTRACT) HAVE ANY LIABILITY TO THE CUSTOMER OR TO ANY OTHER PERSON OR ENTITY FOR THE FOLLOWING LOSSES, DAMAGES, OR COSTS: (i) ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, TREBLE, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL LOSSES OR DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, LOSS OF EARNINGS, LOSS OF BUSINESS OPPORTUNITIES, PERSONAL INJURIES OR DEATH) THAT RESULT DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH (a) YOUR RELIANCE ON OR USE OF THE COMCAST EQUIPMENT OR THE SERVICES OR (b) THE INSTALLATION, SELF-INSTALLATION, MAINTENANCE, FAILURE, OR REMOVAL OF THE SERVICES (INCLUDING BUT NOT LIMITED TO ANY MISTAKES, OMISSIONS, INTERRUPTIONS, COMPUTER OR OTHER HARDWARE OR SOFTWARE BREACH, FAILURES OR MALFUNCTIONS, DELETION OR CORRUPTION OF FILES, WORK STOPPAGE, ERRORS, DEFECTS, DELAYS IN OPERATION, DELAYS IN TRANSMISSION OR FAILURE OF PERFORMANCE OF THE SERVICE, THE COMCAST EQUIPMENT OR THE CUSTOMER EQUIPMENT, OR ANY OTHER MISTAKES, OMISSIONS, LOSS OF CALL DETAIL, E-MAIL, VOICEMAIL OR OTHER INFORMATION OR DATA); OR (ii) ANY LOSSES, CLAIMS, DAMAGES, EXPENSES, LIABILITIES, LEGAL FEES, OR OTHER COSTS THAT RESULT DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH ANY ALLEGATION, CLAIM, SUIT, OR OTHER PROCEEDING BASED UPON A CONTENTION THAT THE USE OF THE COMCAST EQUIPMENT OR THE SERVICES BY YOU OR ANY OTHER PERSON OR ENTITY INFRINGES UPON THE CONTRACTUAL RIGHTS, PRIVACY, CONFIDENTIALITY, COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY RIGHTS OF ANY THIRD PARTY.

i. **Customer's Sole Remedies.** Your sole and exclusive remedies under this Agreement are as expressly set forth in this Agreement. Certain of the above limitations may not apply if your state does not allow the exclusion or limitation of implied warranties or does not allow the limitation or exclusion of incidental or consequential damages. In those states, the liability of Comcast and its employee, affiliates, suppliers, agents and contractors is limited to the maximum extent permitted by law.

j. **Survival of Limitations.** All representations, warranties, indemnifications, and limitations of liability contained in this Agreement shall survive the termination of this Agreement; any other obligations of the parties hereunder shall also survive, if they relate to the period before termination or if, by their terms, they would be expected to survive such termination.

## 12. Indemnification And Liability Of Customer

YOU AGREE THAT YOU SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS COMCAST AND ITS EMPLOYEES, AFFILIATES, SUPPLIERS, AGENTS AND CONTRACTORS AND SHALL REIMBURSE US FOR ANY DAMAGES, LOSSES OR EXPENSES (INCLUDING WITHOUT LIMITATION, REASONABLE ATTORNEY'S FEES AND COSTS) INCURRED BY US IN CONNECTION WITH ANY CLAIMS, SUITS, JUDGMENTS AND CAUSES OF ACTION ARISING OUT OF (i) YOUR USE OF THE SERVICE OR COMCAST EQUIPMENT; (ii) VIOLATION OR INFRINGEMENT OF CONTRACTUAL RIGHTS, PRIVACY, CONFIDENTIALITY, COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY AND PROPRIETARY RIGHTS ARISING FROM YOUR USE OF THE SERVICE OR ANY UNAUTHORIZED APPARATUS OR SYSTEM; (iii) ANY CLAIMS OR DAMAGES ARISING OUT OF THE LACK OF 911/E911 OR DIALING ASSOCIATED WITH A HOME SECURITY, HOME DETENTION OR MEDICAL MONITORING SYSTEM; AND (iv) YOUR BREACH OF ANY PROVISION OF THIS AGREEMENT.

## 13. Binding Arbitration

a. **Purpose.** If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in this Agreement, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means

you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

b.  **Definitions.** As used in this Provision, the term "Dispute" means any dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision (with the exception of the enforceability of the class action waiver clause provided in paragraph F(2)). "Dispute" is to be given the broadest possible meaning that will be enforced. As used in this Provision, "Comcast" means Comcast Cable Communications, LLC., its officers, directors, employees and agents, and all entities using the brand name "Comcast", including your local cable company, its employees, authorized agents, and its parents, subsidiaries and affiliated companies. As used in this Provision, the term "Arbitration Provision" means all the terms of this Section 13.

c.  **Right to Opt Out.** IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN 30 DAYS FROM THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT BY VISITING **WWW.COMCAST.COM/ARBITRATIONOPTOUT**, OR BY MAIL TO COMCAST 1500 MARKET ST., PHILADELPHIA, PA 19102 ATTN: LEGAL DEPARTMENT/ ARBITRATION. YOUR WRITTEN NOTIFICATION TO COMCAST MUST INCLUDE YOUR NAME, ADDRESS AND COMCAST ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH COMCAST THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH COMCAST OR THE DELIVERY OF SERVICES TO YOU BY COMCAST. IF YOU HAVE PREVIOUSLY NOTIFIED COMCAST OF YOUR DECISION TO OPT OUT OF ARBITRATION, YOU DO NOT NEED TO DO SO AGAIN.

d.  **Initiation of Arbitration Proceeding/Selection of Arbitrator.** If you or Comcast elect to resolve your Dispute with Comcast through arbitration pursuant to this Arbitration Provision, the party initiating the arbitration proceeding may select from the following arbitration organizations, which will apply the appropriate rules for consumer claims to arbitrate the Dispute:

    1.  American Arbitration Association ("AAA"), 335 Madison Ave., Floor 10, New York, NY 10017-4605, 1-800-778-7879, www.adr.org

    2.  National Arbitration Forum ("NAF"), P.O. Box 50191, Minneapolis, MN 55405-0191, 1-800-474-2371, www.arbitration-forum.com

e.  **Arbitration Procedures.** Because the service provided to you by Comcast concerns interstate commerce, the Federal Arbitration Act ("FAA"), not state arbitration law, shall govern the arbitrability of all Disputes. However, applicable federal law or the law of the state where you receive the service from Comcast may apply to and govern the substance of any Disputes. Any state statutes pertaining to arbitration, however, shall not be applicable under this Arbitration Provision.

    If there is a conflict between this Arbitration Provision and the rules of the arbitration organization chosen, this Arbitration Provision shall govern. If the arbitration organization that you select will not enforce this Arbitration Provision as written, it cannot serve as the arbitration organization to resolve your dispute with Comcast. If this situation arises, the parties shall agree on a substitute arbitration organization. If the parties are unable to agree, the parties shall mutually petition a court of appropriate jurisdiction to appoint a service that will enforce the Provision as written. If there is a conflict between this Arbitration Provision and the rest of this Agreement, this Arbitration Provision shall govern.

    A single arbitrator will resolve the Dispute. You should know that participating in arbitration may result in limited discovery depending on the rules of the arbitration organization that is chosen to resolve the Dispute. The arbitrator will honor claims of privilege recognized by law and will take reasonable steps to protect customer account information and other confidential or proprietary information. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. An award rendered by the arbitrator may be entered in any court having jurisdiction over the parties for

Exhibit 1 Page 13

purposes of enforcement.

If an award granted by the arbitrator exceeds $75,000, either party can appeal that award to a three-arbitrator panel administered by the same arbitration organization by a written notice of appeal filed within thirty (30) days from the date of entry of the written arbitration award. The members of the three-arbitrator panel will be selected according to the rules of the arbitration organization.

The arbitration organization will then notify the other party that the award has been appealed. The three-arbitrator panel will issue its decision within one hundred and twenty (120) days of the date of the appealing party's notice of appeal. The decision of the three-arbitrator panel shall be final and binding, except for any appellate right which exists under the FAA.

f. **Restrictions:**
   1. YOU MUST CONTACT US WITHIN ONE (1) YEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE (EXCEPT FOR BILLING DISPUTES WHICH ARE SUBJECT TO SECTION 3 OF THE AGREEMENT), OR YOU WAIVE THE RIGHT TO PURSUE ANY CLAIM BASED UPON SUCH EVENT, FACTS OR DISPUTE.
   2. ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED UNLESS THE STATUTE UNDER WHICH YOU ARE SUING PROVIDES OTHERWISE.
   3. ALL PARTIES WAIVE ANY CLAIM TO INDIRECT, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR MULTIPLIED DAMAGES ARISING FROM OR OUT OF ANY DISPUTE WITH COMCAST UNLESS THE STATUTE UNDER WHICH THEY ARE SUING PROVIDES OTHERWISE.
g. **Location of Arbitration.** The arbitration will take place at a location, convenient to you, in the area where you receive the service from us.
h. **Payment of Arbitration Fees and Costs.** COMCAST WILL ADVANCE ALL ARBITRATION FILING FEES AND ARBITRATOR'S COSTS AND EXPENSES UPON YOUR WRITTEN REQUEST GIVEN PRIOR TO THE COMMENCEMENT OF THE ARBITRATION. YOU ARE RESPONSIBLE FOR ALL ADDITIONAL COSTS THAT YOU INCUR IN THE ARBITRATION, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS OR EXPERT WITNESSES. IF THE ARBITRATION PROCEEDING IS DECIDED IN COMCAST'S FAVOR, YOU SHALL REIMBURSE COMCAST FOR THE FEES AND COSTS ADVANCED TO YOU ONLY UP TO THE EXTENT AWARDABLE IN A JUDICIAL PROCEEDING. IF THE ARBITRATION PROCEEDING IS DETERMINED IN YOUR FAVOR, YOU WILL NOT BE REQUIRED TO REIMBURSE COMCAST FOR ANY OF THE FEES AND COSTS ADVANCED BY COMCAST. IF A PARTY ELECTS TO APPEAL AN AWARD TO A THREE-ARBITRATOR PANEL, THE PREVAILING PARTY IN THE APPEAL SHALL BE ENTITLED TO RECOVER ALL REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN THAT APPEAL. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS ARBITRATION PROVISION, COMCAST WILL PAY ALL FEES AND COSTS WHICH IT IS REQUIRED BY LAW TO PAY.
i. **Severability.** If any clause within this Arbitration Provision (other than the class action waiver clause identified in paragraph F(2)) is found to be illegal or unenforceable, that clause will be severed from the Arbitration Provision, and the remainder of the Arbitration Provision will be given full force and effect. If the class action waiver clause is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable, and the dispute will be decided by a court.

In the event that this entire Arbitration Provision is determined to be illegal or unenforceable for any reason, or if a claim is brought in a Dispute that is found

by a court to be excluded from the scope of this Arbitration Provision, you and Comcast have each agreed to waive, to the fullest extent allowed by law, any trial by jury.

j. **Exclusions from Arbitration.** YOU AND COMCAST AGREE THAT THE FOLLOWING WILL NOT BE SUBJECT TO ARBITRATION: (1) ANY CLAIM FILED BY YOU OR BY COMCAST THAT IS NOT AGGREGATED WITH THE CLAIM OF ANY OTHER SUBSCRIBER AND WHOSE AMOUNT IN CONTROVERSY IS PROPERLY WITHIN THE JURISDICTION OF A COURT WHICH IS LIMITED TO ADJUDICATING SMALL CLAIMS; (2) ANY DISPUTE OVER THE VALIDITY OF ANY PARTY'S INTELLECTUAL PROPERTY RIGHTS; (3) ANY DISPUTE RELATED TO OR ARISING FROM ALLEGATIONS ASSOCIATED WITH UNAUTHORIZED USE OR RECEIPT OF SERVICE; (4) ANY DISPUTE THAT ARISES BETWEEN COMCAST AND ANY STATE OR LOCAL REGULATORY AUTHORITY OR AGENCY THAT IS EMPOWERED BY FEDERAL, STATE OR LOCAL LAW TO GRANT A FRANCHISE UNDER 47 U.S.C. ☐☐☐ 522(9); AND (5) ANY DISPUTE THAT YOU PURSUE BEFORE THE LOCAL FRANCHISE AUTHORITY UNDER THE TERMS OF THE FRANCHISE.

k. **Continuation.** This Arbitration Provision shall survive the termination of your service with Comcast.

**SPECIAL NOTE REGARDING ARBITRATION FOR CALIFORNIA CUSTOMERS:**
IF YOU ARE A COMCAST CUSTOMER IN CALIFORNIA, COMCAST WILL NOT SEEK TO ENFORCE THE ARBITRATION PROVISION ABOVE UNLESS WE HAVE NOTIFIED YOU OTHERWISE.

## 14. Customer Privacy Notice And Security

a. Comcast will provide you with a copy of our customer privacy notice at the time we enter into an agreement to provide any Service to you, and annually afterwards, or as otherwise permitted by law. You can view the most current version of our privacy notice by going to www.comcast.com, searching for "privacy policy," and selecting the appropriate link.

b. To the extent that Comcast is expressly required to do so by applicable law, we will provide notice to you of a breach of the security of certain personally identifiable information about you. It is Comcast's information security policy to provide such notice to you in the manner set forth in Section 16.

## 15. General

a. **Entire Agreement.** This Agreement and any other documents incorporated by reference constitute the entire agreement and understanding between the parties with respect to the subject matter of this Agreement, and they replace any and all prior written or verbal agreements. If any portion of this Agreement is held to be unenforceable, the unenforceable portion shall be construed in accordance with applicable law as nearly as possible to reflect the original intentions of the parties, and the remainder of the provisions shall remain in full force and effect. If Comcast fails to insist upon or enforce strict performance of any provision of this Agreement, it shall not thereby waive any provision or right. Neither the course of conduct between the parties nor trade practice shall act to modify any provision of this Agreement.

b. **Additional Representations and Warranties.** In addition to representations and warranties you make elsewhere in this Agreement, you also represent and warrant that:

   i. **Age: You are at least 18 years of age.**

   ii. **Customer Information:** During the term of this Agreement, you have provided and will provide to Comcast information that is accurate, complete and current,

Exhibit 1 Page 15

including without limitation your legal name, address, telephone number(s), the number of computers on which the Service is being accessed and payment data (including without limitation information provided when authorizing recurring payments). You agree to notify us promptly, in accordance with the terms of this Agreement, if there is any change in the information that you have provided to us. If you fail to provide and maintain accurate information, you will breach this Agreement.

c. **Information Provided to Third Parties.** Comcast is not responsible for any information provided by you to third parties, and this information is not subject to the privacy provisions of this Agreement or the privacy notice for the Services. You assume all privacy, security and other risks associated with providing CPNI or personally identifiable information to third parties via the Services. For a description of the privacy protections associated with providing information to third parties, you should refer to the privacy policies, if any, provided by those third parties.

d. **Revocable License.** The Services and Comcast Equipment, including but not limited to any firmware or software embedded in the Comcast Equipment or used to provide the Services, are protected by trademark, copyright, patent and/or other intellectual property laws and international treaty provisions. You are granted a revocable license to use such firmware and software in object code form (without making any modification thereto) strictly in accordance with this Agreement. You acknowledge and understand that you are not granted any other license to use the firmware or software embedded in the Comcast Equipment or used to provide the Services. You expressly agree that you will use the Comcast Equipment exclusively in connection with the Services. You shall not take any action nor allow anyone else to take any action that will reverse compile, disassemble, or reverse engineer or otherwise attempt to derive the source code from the binary code of the firmware or software.

e. **Protection of Comcast's Information and Marks.** All Service information, documents, and materials on our Web sites are protected by trademark, copyright or other intellectual property laws, and international treaty provisions. All Web sites, corporate names, service marks, trademarks, trade names, logos, and domain names (collectively "marks") of Comcast and its affiliates are and shall remain the exclusive property of Comcast. Nothing in this Agreement shall grant you the right or license to use any of the marks.

f. **Export Laws.** You expressly agree to comply with all applicable export and re-export laws, including but not limited to the Export Administration Act, the Arms Export Control Act, and their implementing regulations. You further expressly agree not to use the Services in any way that violates any provision of these export and re-export laws or their implementing regulations.

g. **Retention of Rights.** Nothing contained in this Agreement shall be construed to limit Comcast's rights and remedies available at law or in equity. Upon termination of this Agreement for any reason, Comcast and its suppliers reserve the right to delete all your data, files, electronic messages or other Customer information that is stored on Comcast's or its suppliers' servers or systems. In addition, you may forfeit your account user name and all e-mail, IP, web space addresses and voice mail. In the event you cancel your Comcast Digital Voice Service account without porting your voice service and the telephone number to another service provider, you will forfeit the telephone number. We shall have no liability whatsoever as the result of the loss of any such data, names or addresses.

## 16. Notice Method For Changes To This Agreement

We will provide you notice of changes to this Agreement consistent with applicable law. The notice may be provided on your monthly bill, as a bill insert, in a newspaper, by e-mail, or by other permitted communication. If you find the change unacceptable, you have the right to cancel your Services. However, if you continue to receive Services after the change, we will consider this your acceptance of the change.

For HSI and CDV Customers. Comcast may deliver any required or desired notice to you in any of the following ways, as determined in our sole discretion: (i) by

Exhibit 1 Page 16

posting it on www.comcast.net, www.comcast.net, www.comcast.com or on another Web site about which you have been notified or you bear the risk of failing to do so.

## Additional Provisions Applicable To High-Speed Internet Service

**In addition to the provisions above that are applicable to Comcast Video, HSI and CDV, the following are specifically applicable to HSI Customers, including the Software License Agreement attached as Exhibit A to this Agreement.**

1. **Intellectual Property Rights**
   a. **End User Licenses.** You agree to comply with the terms and conditions of all end user license agreements accompanying any software or plug-ins to such software distributed or used in connection with HSI including, without limitation, the Comcast Software License Agreement, the current version of which is attached to this Agreement as Exhibit A, as these agreements may be amended from time to time. All such agreements are incorporated in this Agreement by reference. When this Agreement terminates, all end user licenses also terminate; you agree to destroy at that time all versions and copies of all software received by you in connection with HSI.
   b. **Ownership of Addresses.** You acknowledge that use of HSI does not give you any ownership or other rights in any Internet/on-line addresses provided to you, including but not limited to Internet Protocol ("IP") addresses, e-mail addresses and Web addresses. We may modify or change these addresses at any time without notice and shall in no way be required to compensate you for these changes.
   c. **Authorization.** Comcast does not claim any ownership of any material that you publish, transmit or distribute using HSI. By using HSI to publish, transmit or distribute material or content, you (i) warrant that the material or content complies with the provisions of this Agreement, (ii) consent to and authorize Comcast, its agents, suppliers, and affiliates to reproduce, publish, distribute, and display the content worldwide and (iii) warrant that you have the right to provide this authorization. You acknowledge that material posted or transmitted using HSI may be copied, republished or distributed by third parties, and you agree to indemnify, defend and hold harmless Comcast, its agents, suppliers, and affiliates for any harm resulting from these actions.
   d. **Copyright.** Title and intellectual property rights to HSI are owned by Comcast, its agents, suppliers, or affiliates or their licensors or otherwise by the owners of such material and are protected by copyright laws and treaties. You may not copy, redistribute, resell or publish any part of HSI without express prior written consent from Comcast or other owner of such material.
   e. **Material Downloaded through HSI.** In addition to any content that may be provided by us, you may access material through HSI that is not owned by Comcast. Specific terms and conditions may apply to your use of any content or material made available through HSI that is not owned by Comcast. You should read those terms and conditions to learn how they apply to you and your use of any non-Comcast content.
2. **Ip Addresses**
   Comcast will provide you with dynamic Internet protocol ("IP") address(es) as a component of HSI, and these IP address(es) can and do change over time. You will not alter, modify, or tamper with dynamic IP address(es) assigned to you or any other customer. You agree not to use a dynamic domain name server or DNS to associate a host name with the dynamic IP address(es) for any commercial purpose. You also agree not to use any software that provides for static IP address(es) on or in conjunction with any computer(s) or network device connected to HSI. If applicable, Comcast will release and/or recover the dynamic IP address(es) when the Service or this Agreement is disconnected, discontinued, or terminated.

Exhibit 1 Page 17

3. **Additional Limitations On Comcast's Liability For Hsi**

   a. **Responsibility for Content.** You acknowledge that there is some content and material on the Internet or otherwise available through HSI which may be offensive to some individuals, may be unsuitable for children, may violate federal, state or local laws, rules or regulations or may violate your protected rights or those of others. We assume no responsibility for this content or material. Anyone who accesses such content and material does so at his or her own risk. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY CLAIMS, LOSSES, ACTIONS, DAMAGES, SUITS OR PROCEEDINGS ARISING OUT OF OR OTHERWISE RELATING TO ACCESS TO SUCH CONTENT OR MATERIAL BY YOU OR OTHERS. Questions or complaints regarding content or material should be addressed to the content or material provider. You acknowledge that software programs are commercially available that claim to be able to restrict access to sexually explicit or other objectionable material on the Internet. We make no representation or warranty regarding the effectiveness of such programs.

   b. **Monitoring of Postings and Transmissions.** Comcast shall have no obligation to monitor postings or transmissions made in connection with HSI. However, you acknowledge and agree that Comcast and its agents have the right to monitor, from time to time, any such postings and transmissions, including without limitation e-mail, newsgroups, chat, IP audio and video, and Web space content. Comcast may also use and disclose them in accordance with the Comcast High-Speed Internet Acceptable Use Policy and other applicable policies, and as otherwise required by law or government request. We reserve the right to refuse to upload, post, publish, transmit or store any information or materials, in whole or in part, that, in our sole discretion, is unacceptable, undesirable or in violation of this Agreement.

   c. **Eavesdropping.** Our facilities are used by numerous persons or entities including, without limitation, other subscribers to HSI. As a result, there is a risk that you could be subject to "eavesdropping." This means that other persons or entities may be able to access and/or monitor your use of HSI. This risk of eavesdropping exists not only with our facilities, but also on the Internet and other services to which access is provided as a part of HSI. If you post, store, transmit, or disseminate any sensitive or confidential information, you do so at your sole risk.

      NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, OR AGENTS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY CLAIMS, LOSSES, ACTIONS, DAMAGES, SUITS OR PROCEEDINGS ARISING OUT OF OR OTHERWISE RELATING TO SUCH ACTIONS BY YOU. You acknowledge that software programs are commercially available that claim to be capable of encryption or anonymization. We make no representation or warranty regarding the effectiveness of these programs.

   d. **FTP/HTTP Service Setup.** You acknowledge that when using HSI there are certain applications such as FTP (File Transfer Protocol) or HTTP (Hyper Text Transfer Protocol) which may be used by other persons or entities to gain access to Customer's Equipment. You are solely responsible for the security of the Customer Equipment or any other equipment you choose to use in connection with the Service, including without limitation any data stored on such equipment. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS OR CONTRACTORS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY CLAIMS, LOSSES, ACTIONS, DAMAGES, SUITS OR PROCEEDINGS RESULTING FROM, ARISING OUT OF OR OTHERWISE RELATING TO THE USE OF SUCH APPLICATIONS BY YOU, OR THE ACCESS BY OTHERS TO THE CUSTOMER EQUIPMENT OR OTHER EQUIPMENT OF YOURS.

   e. **File and Print Sharing.** HSI may function in some ways as a Local Area Network (LAN) with each Customer constituting a node on the network. As such, users outside of the Premises may be able to access the Customer Equipment and other equipment connected in some way to the Customer Equipment. In addition, some available software includes capabilities that will permit other users to gain access to the Customer Equipment and other equipment connected in some

Exhibit 1 Page 18

way to the Customer Equipment, and to the software, files and data stored on such equipment. Unless you are subject to a HSI service plan that expressly provides otherwise, we recommend that you connect only a single computer to HSI and that you disable file and print sharing and other capabilities that allow outside users to gain access to the Customer Equipment. You acknowledge that if you fail to follow these recommendations and choose to run these applications, you should take appropriate security measures, and that you do so at your sole risk. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, OR AGENTS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY CLAIMS, LOSSES, ACTIONS, DAMAGES, SUITS OR PROCEEDINGS RESULTING FROM, ARISING OUT OF OR OTHERWISE RELATING TO ACCESS BY OTHERS OF THE CUSTOMER EQUIPMENT OR ANY OTHER EQUIPMENT CONNECTED IN SOME WAY TO THE CUSTOMER EQUIPMENT, OR TO THE SOFTWARE, FILES AND DATA STORED ON SUCH EQUIPMENT.

f.   **Facilities Allocation.** Comcast reserves the right to determine, in its discretion, and on an ongoing basis, the nature and extent of its facilities allocated to support HSI, including, but not limited to, the amount of bandwidth to be utilized and delivered in conjunction with HSI.

g.   **Cookies.** You acknowledge that accessing certain Web sites through HSI may result in a "cookie" being placed on your computer system. Cookies are small files stored on a computer's hard drive to simplify and improve a user's Web experience. If you don't want them placed on your computer system, it is your responsibility to disable or restrict the placement of cookies through whatever procedures are available on your browser.

## Additional Provisions Applicable To Cdv Service

**In addition to the General Terms and Conditions above, the following terms and conditions are specifically applicable to CDV Customers, including any applicable Tariff(s) on file now or hereafter with the FCC or any state utility commission or comparable state agency in your jurisdiction, which are incorporated into this Agreement by reference.**

1.   **Special Notice For Comcast Digital Voice Subscribers:** Limitations Of Cdv Service

    a.   **Limitations.** CDV includes 911/Enhanced 911 functionality ("911/E911") that may differ from the 911/E911 functionality furnished by other providers. As such, it may have certain limitations. CAREFULLY READ THE INFORMATION BELOW. YOU ACKNOWLEDGE AND ACCEPT ANY LIMITATIONS OF 911/E911. YOU AGREE TO CONVEY THESE LIMITATIONS TO ALL PERSONS WHO MAY HAVE OCCASION TO PLACE CALLS OVER THE SERVICES. IF YOU HAVE ANY QUESTIONS ABOUT 911/E911, CALL 1-800-COMCAST.

        i.   **Correct Address:** In order for your 911/E911 calls to be properly directed to emergency services, Comcast must have your correct Premises address. If you move CDV to a different address without Comcast's approval, 911/E911 calls may be directed to the wrong emergency authority, may transmit the wrong address, and/or CDV (including 911/E911) may fail altogether. Therefore, you must call 1-800-COMCAST before you move CDV to a new address. Comcast will need several business days to update your Premises address in the E911 system so that your 911/E911 calls can be properly directed. All changes in service address require Comcast's prior approval.

        ii.   **Service Interruptions:** CDV Service uses the electrical power in your home. If there is an electrical power outage, 911 calling may be interrupted if the battery backup in the associated MTA is not installed, fails, or is exhausted after several hours. Furthermore, calls, including calls to 911/E911, may not be completed if there is a problem with network facilities, including network congestion, network/equipment/power failure, or another technical problem.

        iii.   **Suspension and Termination by Comcast:** You understand and acknowledge that all CDV Service, including 911/E911, as well as all online features of CDV, where we make these features available, will be disabled if your account is suspended or terminated.

Exhibit 1 Page 19

b. **Limitation of Liability and Indemnification.** YOU ACKNOWLEDGE AND AGREE THAT COMCAST WILL NOT BE LIABLE FOR ANY SERVICE OUTAGE, INABILITY TO DIAL 911 USING THE SERVICES, AND/OR INABILITY TO ACCESS EMERGENCY SERVICE PERSONNEL. YOU AGREE TO DEFEND, INDEMNIFY, AND HOLD HARMLESS COMCAST AND ITS AFFILIATES, SUPPLIERS OR AGENTS FROM ANY AND ALL CLAIMS, LOSSES, DAMAGES, FINES, PENALTIES, COSTS, AND EXPENSES (INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEY FEES) BY, OR ON BEHALF OF, YOU OR ANY THIRD PARTY OR USER OF THE SERVICES RELATING TO THE FAILURE OR OUTAGE OF THE SERVICES, INCLUDING THOSE RELATED TO 911/E911.

2. **Additional Cdv-Specific Provisions Regarding Customer Equipment**

   a. **Incompatible Equipment and Services.** You acknowledge and understand that CDV may not support or be compatible with:

      i. Non-Recommended Configurations as defined in Section 6.b (including but not limited to MTAs not currently certified by Comcast as compatible with the Services);

      ii. Certain non-voice communications equipment, including certain makes or models of alarm and home security systems, certain medical monitoring devices, certain home detention devices, certain fax machines, and certain "dial-up" modems;

      iii. Rotary-dial phone handsets, and certain makes and models of other voice-related communications equipment including key systems, private branch exchange (PBX) equipment, answering machines, and traditional Caller ID units;

      iv. Casual/dial around (10-10) calling; 976, 900, 700, or 500 number calling;

      v. 311, 511, or other N11 calling (other than 411, 611, 711, and 911); and

      vi. Other call types not expressly set forth in our product literature (e.g., outbound shore-to-ship calling).

3. **Transfer Of Your Phone Number(S)**

   For information about switching to another provider from CDV and the assignment of telephone numbers related to CDV Service please call 1-800-COMCAST.

4. **Customer Information**

   Comcast and its suppliers reserve the right both during the term of this Agreement and upon its termination to delete your voicemail, call detail, data, files, or other information that is stored on Comcast's or its suppliers' servers or systems, in accordance with our storage policies. You understand and acknowledge that we shall have no liability whatsoever as a result of the loss or removal of any such voicemail, call detail, data, files, or other information.

## Exhibit A: Comcast Software License Agreement

IMPORTANT - READ CAREFULLY: BY USING ANY SOFTWARE PROVIDED TO YOU IN CONNECTION WITH THE COMCAST HIGH-SPEED INTERNET SERVICE, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS SOFTWARE LICENSE AGREEMENT, THAT YOU UNDERSTAND IT, AND THAT YOU AGREE TO BE BOUND BY ITS TERMS.

1. **Grant Of Limited License**

   The operating company subsidiary of Comcast Corporation that owns and/or operates the cable television system in your area pursuant to a cable television franchise with the local franchising authority, or its affiliate, ("Comcast") grants you (which for purposes of this Software License Agreement shall include members of your

Exhibit 1 Page 20

immediate household for whom you will be responsible hereunder), without additional fee or charge to you, a nonexclusive limited, personal and nontransferable license, with restrictions as described below, to install and use any software program, in object code only, provided to you by, or on behalf of, Comcast in connection with the Comcast High-Speed Internet service (the "Software"), which includes any documentation accompanying the Software, for the sole purpose of using the Comcast High-Speed Internet service, and to make one (1) backup copy of the Software, provided that (i) the Software is installed on only the number of personal computers authorized by Comcast (which number shall be one (1) unless otherwise agreed to by Comcast), (ii) the Software may NOT be modified; (iii) all copyright notices are maintained on the Software; and (iv) you agree to be bound by all the terms of this Software License Agreement. Software is only for your own personal, non-commercial use and not for use in the operation of a business or service bureau or for the benefit of any other person or entity.

2. **No Ownership Rights**

    You have no ownership rights in any Software. Rather, you have a limited license to use the Software as long as this Software License Agreement remains in full force and effect. Ownership of the Software and all intellectual property rights therein shall remain at all times with Comcast and/or its licensors. Any use of Software by any other person, business, corporation, government organization or any other entity is strictly forbidden and is a violation of this Software License Agreement.

3. **Third Party Software**

    There are software programs contained within certain Software that have been licensed to Comcast by third parties. The term "Software" as used herein shall refer to such third party software except where the term Software refers expressly to the ownership or other specific rights of Comcast. The same terms and conditions, including all limitations and restrictions, set forth in this Software License Agreement apply to each third party software program contained in the Software.

4. **Intellectual Property And Privacy**

    a.  The Software contains material that is protected by United States Copyright Law and trade secret law, and by international treaty provisions. All rights not specifically granted to you herein are reserved to Comcast and to any third party with ownership rights in Software and documentation used in the Software. You may not remove any proprietary notice of Comcast or any other party from any copy of Software or documentation.

    b.  Some features of certain Software are provided by third parties, and those third parties may collect or transmit personally identifiable and non-personally identifiable information about you in the course of providing these features. These third parties are not authorized to use your personally identifiable information except for the purpose of providing their services to you through Software. Your use of Software is subject to the terms of the Comcast Customer Privacy Notice, the Comcast Acceptable Use Policy and other applicable terms and policies.

5. **Restrictions And Requirements**

    a.  This Software License Agreement is your proof of license to exercise the rights granted herein. In order to satisfy your obligations hereunder and to maintain the confidentiality of the Software, you must take reasonable steps to protect the Software consistent with the license restrictions set forth herein and Comcast's and other third parties' ownership rights in the Software, including informing anyone permitted access to your computer and the Software about such restrictions on the use of the Software.

    b.  As a condition of the limited license for the Software you may not: (i) publish, display, disclose, rent, lease, modify, loan, distribute, or create derivative works based on the Software or any part thereof; (ii) reverse engineer, decompile, translate, adapt, disassemble or otherwise reduce the Software to human readable form; (iii) attempt to create the source code from the object code for the Software; (iv) transmit the Software over any network or between any devices, although you may use the Software to make such transmissions of other materials; (v) make any third party software contained in the Software a stand-alone product; (vi) take any action that will infringe on the intellectual property or other proprietary rights of Comcast or any third party software provider; or (vii) sublicense, rent, lease, or assign the Software. You may transfer the Software to other computers you own as long as you only use it on only the number of computers authorized

Exhibit 1 Page 21

by Comcast.

    c.  If Comcast informs you, by any method described in the Comcast Customer Agreement to which this Software License Agreement is attached (the "Agreement"), that any enhancements or upgrades are available for the Software, or that the Software otherwise is being modified by Comcast, you will take prompt action to download such enhancements, upgrades or changes, or otherwise obtain such enhancements, upgrades or changes in the manner directed by Comcast, within the time frame stated in the notice. If you fail to do so, you acknowledge that the Software may not work correctly or that you will not be able to take advantage of all available features of the Software after the stated period in the notice.

    d.  You have the obligation to protect yourself and minimize any damages you might suffer if the Software or any portion thereof, has a defect or fails for any reason.

6.   **Disclaimer Of Warranties And Other Disclaimers**

    a.  The Software is provided "AS IS." To the maximum extent permitted by law, Comcast makes NO WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE. Additionally, Comcast makes NO WARRANTIES with respect to lack of viruses, accuracy or completeness of responses, results or lack of negligence, correspondence to description, warranty of title or non-infringement. Comcast does NOT WARRANT that the functions contained in the Software will meet any requirements or needs you may have, or that the Software will operate error free, or in an uninterrupted fashion, or that any defects or errors in the Software will be corrected, or that the Software is compatible with any particular platform. Comcast reserves the right to modify the Software at any time. Comcast is not obligated to provide any updates to the Software. Any use by you of the Software is at your own risk.

    b.  The Software may include one or more features intended to protect your computer from unauthorized access, viruses, "phishing" or other harmful activities. The Software may be useful in diminishing the number of times that your computer will be affected by such harmful activities, but neither Comcast nor the providers of any particular Software can guarantee that the Software will prevent all such harmful activities or that bad actors will not find ways to circumvent the Software. Any ratings of Web sites provided through Software are designed to help you acquire the information you need to help you make your own decisions about whether or not to exchange sensitive or confidential information with a particular Web site, and are not intended to serve as a guarantee of the trustworthiness of a domain or Web site. As such, you should remain vigilant in your use of the Internet. THE LIABILITY OF COMCAST AND THE OTHER PROVIDERS OF THE SOFTWARE TO YOU IS EXPRESSLY LIMITED AS SET FORTH BELOW AND THAT BY USING THE SOFTWARE YOU ACCEPT AND AGREE TO THESE LIMITATIONS.

7.   **Limitation Of Liability And Damages**

You assume full and complete responsibility and liability for your use of the Software. Except as specifically provided in this Agreement, IN NO EVENT WILL COMCAST, OR ANY OTHER ENTITY THAT HAS PROVIDED ANY OF THE SOFTWARE, BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, INDIRECT, SPECIAL, PUNITIVE, OR EXEMPLARY DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, BUSINESS INTERRUPTION, INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES OR LOSS OF BUSINESS INFORMATION OR OTHER DATA) ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR FOR ANY CLAIM BY ANY OTHER PARTY, EVEN IF COMCAST HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. (Certain laws in some states do not allow the exclusion of implied warranties or the limitation of certain damages. If such laws apply, certain of the exclusions or limitations in this Software License Agreement may not be applicable to you.)

Exhibit 1 Page 22

8. **Export Restrictions**

This Software License Agreement is expressly made subject to any laws, regulations, orders, or other restrictions on the export from the United States of America of the Software or information about such Software that may be imposed from time to time by the government of the United States of America. You shall not export the Software, or any portion thereof, or information about the Software without consent of Comcast and compliance with such laws, regulations, orders, or other restrictions.

9. **Termination**

This Software License Agreement is effective only during the term of this Agreement and shall terminate upon any termination of this Agreement. You may terminate this Software License Agreement at any time by destroying or returning to Comcast all copies of the Software and associated documentation in your possession or under your control and terminating this Agreement. This Software License Agreement will terminate: (i) at any time that this Agreement is terminated or (ii) if Comcast finds that you have violated any of the terms of this Software License Agreement. Upon termination, you agree to destroy or return to Comcast all copies of the Software and documentation and, upon Comcast's request, to certify in writing that all known copies, including backup copies, have been destroyed. No waiver of any breach of any provision of this Software License Agreement shall constitute a waiver of any prior, concurrent of subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless it is made in writing and is signed by an authorized representative of the waiving party. All provisions relating to confidentiality, proprietary rights, and nondisclosure shall survive the termination of this Software License Agreement.

10. **General**
    a. Disputes under this Software License Agreement shall be construed, interpreted and governed in accordance with Section 13 of this Agreement.
    b. Comcast may modify the Software and may amend or modify this Software License Agreement at any time in its sole discretion upon notice to you. Comcast will notify you of any such modifications or amendments as provided in this Agreement. Customer agrees that any methods set forth therein will constitute sufficient notice of any change to this Software License Agreement. Your continued use of the Software following notice of such change shall be deemed to be your acceptance of any such change. If you do not agree to any such change, you must immediately stop using the Software and notify Comcast that you are terminating this Software License Agreement and this Agreement. You may not amend or modify this Software License Agreement without Comcast's prior written consent, which we may provide or withhold in our sole discretion. Any attempt by you to amend or modify this Software License Agreement by any other means, including but not limited to, a check notation, a restrictive endorsement, or a note with a payment, is invalid and unenforceable.
    c. Comcast may assign its rights and obligations under this Software License Agreement, without notice, to (i) any affiliate of Comcast, (ii) to any party (or its affiliate) acquiring all or substantially all of the assets or stock, by merger or otherwise, of Comcast or any affiliate of Comcast, or (iii) to any person or entity purchasing or otherwise acquiring the Comcast system serving the Premises (as defined in this Software License Agreement).
    d. This Software License Agreement and this Agreement shall constitute the entire Agreement between the parties hereto. If any part of this Software License Agreement is found invalid or unenforceable, the remainder of this Software License Agreement shall remain in full force and effect and shall be interpreted so as to reasonably give effect to the intention of the parties.

## Comcast High-Speed Internet Home Networking Amendment To Comcast Agreement

THIS AMENDMENT (the "Amendment") is made between the operating company subsidiary of Comcast Corporation that owns and/or operates the cable

Exhibit 1 Page 23

television system in your area pursuant to a cable television franchise with the local franchising authority and you as the Customer, and is effective upon the installation of the Comcast Home Networking Service. This Amendment modifies and is made a part of the Comcast Agreement for Residential Services (the "Agreement"). Unless otherwise defined in this Amendment, all capitalized terms in this Amendment shall have the specified meanings in the Agreement.

1.  USE OF SERVICE
    The Agreement is hereby modified solely to permit you to use the Service in connection with the multiple connection of up to five (5) personal computing devices within your Premises to the Service (the "Comcast Home Networking Service") in accordance with Comcast's then current published Comcast Home Networking Service description (which may be changed from time to time in our sole discretion). You shall be solely responsible for and shall indemnify and hold Comcast and its affiliates, suppliers, and agents harmless from and against any and all claims and expenses (including reasonable attorney's fees) arising out of your use or misuse of the Comcast Home Networking Service. You acknowledge and agree that the Comcast Home Networking Service is for residential, non-commercial purposes only. The Comcast Home Networking Service is not a commercial service and may not be used for commercial purposes. Please contact your local Comcast office to inquire about commercial service options.

2.  COMCAST HOME NETWORKING SERVICE
    The term "Service" shall include the Comcast Home Networking Service. The term "Comcast Equipment" shall include any Comcast Home Networking Service equipment such as gateways, routers, or wireless cards rented from or otherwise supplied by or on behalf of us to you. The term "Customer Equipment" shall include any equipment owned or otherwise provided by you in connection with your use of the Comcast Home Networking Service. We reserve the right to provide the Comcast Home Networking Service and support for that service only to the extent that you use equipment compatible with the Comcast Home Networking Service, such as CableHomeT-certified gateways/routers. Further, you acknowledge that the use of the Comcast Home Networking Service may periodically require updates and/or changes to the software resident in the equipment used in connection with the service. These updates and changes may be performed remotely or on-site by Comcast and/or its affiliates, suppliers, or agents at their sole option. You hereby consent to these updates, which will be performed as deemed necessary by Comcast and/or its affiliates, suppliers, or agents, with or without notice to you. In addition, you acknowledge that the use of the Comcast Home Networking Service may periodically require provisioning, configuration, management, diagnostics, and other administration to or in connection with the service and the equipment used in connection with the service. These activities may be performed remotely or on-site by Comcast and/or its affiliates, suppliers, or agents at their sole option. You hereby consent to such provisioning, configuration, management, diagnostics, and other administration, which will be performed as deemed necessary by Comcast and/or its affiliates, suppliers, or agents, with or without notice to you. You acknowledge and agree that when using the Service (including the Comcast Home Networking Service) to access the Internet or any other online network or service, there are certain risks that may allow other Service users and Internet users to gain access to your computer system. You should take all appropriate security measures when using the Comcast Home Networking Service, including those recommended by Comcast and our affiliates, suppliers, or agents. Neither Comcast nor our affiliates, suppliers, or agents shall have any liability whatsoever for any claims, losses, actions, damages, suits or proceedings resulting from, arising out of or otherwise relating to the use of the Comcast Home Networking Service by you, including without limitation, damages resulting from others accessing your computer or the contents of your transmissions made through the Service or your use of file sharing, print sharing, or other capabilities that allow users to gain access to your computer system.

Exhibit 1 Page 24

3.  FEES AND CHARGES

    You agree to pay the then-current fees and charges for the Comcast Home Networking Service upon receipt of an invoice (including any taxes, franchise fees or other fees or charges levied by a governmental agency).

4.  REVISION

    This Amendment forms part of the Agreement between Comcast and you and may be modified by Comcast on thirty (30) days prior notice as provided for in the Agreement. Your election to continue use of the Comcast Home Networking Service thereafter shall constitute your acceptance of any modification. The Service and the Comcast Home Networking Service are subject to availability on an ongoing basis.

5.  NO CHANGE

    Except as otherwise set forth in this Amendment, the terms and conditions of the Agreement, as modified by this Amendment, shall continue to apply to the Service and your use of the Comcast Home Networking Service. In the event of a conflict between this Amendment and the Agreement arising out of your use of the Comcast Home Networking Service, the terms and conditions of this Amendment shall prevail.

### Terms And Conditions Of Sale For Products For High-Speed Internet Customers

All hardware and software purchased by you (each, a "Product") from Comcast and accompanying these Terms and Conditions of Sale for Products ("Terms and Conditions") are expressly provided to you pursuant to the Terms of Service previously provided to you when you entered into the Comcast Agreement for Residential Services with Comcast (collectively, the "Terms of Service" and together with the Terms and Conditions, the "Agreement"). To review all the Terms of Service, go to www.comcast.net/terms/, and to review the Comcast Agreement for Residential Services, go to www.comcast.net/terms/subscriber.jsp.

By accepting delivery of the Product, you agree to be bound by and accept the terms and conditions of this Agreement and understand that the Terms of Service are incorporated by reference into this Agreement. If you do not agree to the terms and conditions of this Agreement, do not use the Product and return the Product to Comcast in the original packaging together with your proof of purchase on or before thirty (30) days after the date of purchase for a refund of the purchase price. As used in this Agreement, Comcast shall mean Comcast Cable Communications Management, LLC or any entity that controls, is controlled by or is under common control therewith.

PLEASE READ THIS DOCUMENT CAREFULLY AND PLEASE REREAD THE TERMS OF SERVICE, AS THEY CONTAIN IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU.

### Section 1. No Warranties; Disclaimer

a.  COMCAST MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY PRODUCTS, AND HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR

Exhibit 1 Page 25

PURPOSE. THE PRODUCTS ARE, THEREFORE, SOLD TO YOU "AS IS" AND "WITH ALL FAULTS", AND THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY, AND EFFORT OF THE PRODUCTS IS WITH YOU. FURTHER, COMCAST MAKES NO WARRANTY AND HEREBY DISCLAIMS ALL WARRANTIES AGAINST INTERFERENCE WITH YOUR ENJOYMENT OF THE PRODUCTS AND AGAINST INFRINGEMENT WITH RESPECT TO THE PRODUCTS.

b. COMCAST IS NOT THE MANUFACTURER OF THE PRODUCT. IN THE EVENT THAT THE MANUFACTURER HAS PROVIDED A WARRANTY WITH THE PRODUCT (WHETHER EXPRESS OR IMPLIED), COMCAST DOES NOT ADOPT, WILL NOT HONOR AND HEREBY DISCLAIMS ALL SUCH WARRANTIES, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

c. If a disclaimer of warranties with respect to the Products is not permitted under applicable law, then, to the maximum extent permitted by applicable law, all warranties on the Products shall be limited in duration to the period commencing on the date of your receipt of the Products and expiring (i) two years after such date or (ii) when you sell or otherwise transfer ownership of the Products to any other person or entity.

## Section 2. Limitations Of Liability

a. IN NO CIRCUMSTANCE AND UNDER NO LEGAL THEORY (INCLUDING WITHOUT LIMITATION TORT, CONTRACT OR OTHERWISE) SHALL COMCAST HAVE ANY LIABILITY TO YOU OR TO ANY OTHER PERSON OR ENTITY FOR: (i) ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, TREBLE, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL LOSSES OR DAMAGES OF ANY NATURE INCLUDING WITHOUT LIMITATION LOSS OF PROFITS, LOSS OF EARNINGS, LOSS OF BUSINESS OPPORTUNITIES OR PERSONAL INJURY (INCLUDING DEATH), RESULTING DIRECTLY OR INDIRECTLY OUT OF, OR OTHERWISE ARISING IN CONNECTION WITH, YOUR PURCHASE OR USE OF THE PRODUCTS, OR THE INSTALLATION, REPAIR OR SERVICING OF THE PRODUCTS BY COMCAST, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; OR (ii) ANY LOSSES, CLAIMS, DAMAGES, EXPENSES, LIABILITIES OR COSTS (INCLUDING LEGAL FEES) RESULTING DIRECTLY OR INDIRECTLY OUT OF, OR OTHERWISE ARISING IN CONNECTION WITH, ANY ALLEGATION, CLAIM, SUIT OR OTHER PROCEEDING BASED UPON AN ASSERTION THAT THE USE OF THE PRODUCTS BY YOU OR ANY OTHER PERSON OR ENTITY INFRINGES THE COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET, CONFIDENTIALITY, PRIVACY, OR OTHER INTELLECTUAL PROPERTY RIGHTS OR CONTRACTUAL RIGHTS OF ANY THIRD PARTY.

b. THE MAXIMUM LIABILITY OF COMCAST ARISING FROM OR RELATING TO THIS AGREEMENT, YOUR PURCHASE OF THE PRODUCTS, OR ANY SERVICES PERFORMED WITH RESPECT TO THE PRODUCTS, SHALL BE LIMITED TO THE AMOUNT PAID BY YOU FOR THE PURCHASE OF THE PRODUCTS.

c. The limitations of liability set forth above shall not apply to liability for death or personal injury to the extent applicable law prohibits such limitation. Similarly, some states do not allow the limitation or exclusion of incidental or consequential damages. In such states, the liability of Comcast shall be limited to the maximum extent permitted by law.
LEG Rev. 4/07

**Get More**

**Add Comcast Services**     Faster High-Speed Internet     Digital Cable     Digital Voice     High Definition TV

© 2008 Comcast Interactive Media   Privacy Statement   Acceptable Use Policy   Terms of Service   Contact Us   Moving?   Advertise With Us   **Pay My Bill**

# EXHIBIT 2

## TO DECLARATION OF ALYSON A. FOSTER, AUG. 29, 2008

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

---------------------------------------------------------------- :

Roger Lis,
On Behalf of Himself, and
All Others Similarly Situated,

                Plaintiff,

     v.

COMCAST OF CHICAGO, INC.;
COMCAST OF ILLINOIS I, INC.;
COMCAST OF ILLINOIS III, INC.;
COMCAST OF ILLINOIS IV, INC.;
COMCAST OF ILLINOIS/TEXAS, INC.;
COMCAST MO EXPRESS OF ILLINOIS, INC.;
COMCAST OF NORTHERN ILLINOIS, INC.;
COMCAST SOUND COMMUNICATIONS, INC.;
COMCAST OF SOUTH CHICAGO, INC.;
COMCASTIC, INC.;
DOES 1-150,

                Defendants.

---------------------------------------------------------------- :

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**FILED**
CH-802
JUN 0 5 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**08 C H 2 0 3 5 4**

Civil No._____

**CLASS ACTION**

**JURY TRIAL DEMANDED**

<u>**CLASS ACTION COMPLAINT**</u>

     Plaintiff, Roger Lis ("Plaintiff"), on behalf of himself and all others similarly situated,

based on information and belief and investigation of his counsel except for information based on

personal knowledge, hereby alleges:

     1.      Speed and access are key features of high-speed Internet service. Defendant

entities (collectively, "Comcast" or "Defendant"), providers of Internet service to citizens of

Illinois, advertise, market, and sell their high-speed Internet service as providing "the fastest

Internet connection" and "unfettered access to all the content, services, and applications that the

Page 1 of 24                                Case No. _____

Internet has to offer." Comcast specifically represents that it provides the fastest possible access to "web applications" that are the most "data intensive" and that it "does not block access to any web sites or online applications, including peer-to-peer services." These and other similar statements by Comcast are patently false.

2.      Comcast intentionally blocks its customers from using peer-to-peer ("P2P") file-sharing and other Internet applications, or otherwise impedes those applications, and it does so in a deceptive manner – by impersonating the computers of users attempting to share files. Comcast forges what are known as "reset packets," making it appear as if they are coming from one of the computers attempting to file-share. The forged reset packets tell the transmitting computer to stop its transmission. In other words, if file-sharing is analogized to a phone conversation, Comcast is like an operator who breaks in, disguises her or her voice as one of the callers, says "talk to you later," and abruptly disconnects the call.

3.      Comcast's clandestine techniques are similar to those used by totalitarian governments to censor the use of the Internet. No doubt Comcast would characterize the behavior as illegal and malicious hacking if perpetrated by others on Comcast and its customers. Indeed, Comcast's customers would be justified in assuming that Comcast was protecting them from that sort of conduct, rather than subjecting them to it.

4.      Comcast's customers were not told that Comcast would block or otherwise impede P2P file-sharing or any other Internet applications. On the contrary, they were assured by Comcast that they would receive "unfettered access" to the Internet and its applications using the "fastest Internet connection." They never authorized Comcast to engage in practices contrary to these promises.

Case No. _____

5.     As a result of Comcast's actions, Plaintiff and the other members of the

Class paid for a promised service that they did not receive. Comcast's actions constitute

deceptive trade practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act

("Illinois Consumer Fraud Act"), including, but not limited to, the use or employment of any

deception, fraud, false pretense, false promise, misrepresentation, or the concealment,

suppression, or omission of any material fact, with intent that others rely upon the concealment,

suppression, or omission of such material fact, or the use or employment of any practice

described in Section 2 of the Illinois Deceptive Trade Practices Act, in the conduct of any trade

or commerce, all of which actions by statute are deemed unlawful whether any person has in fact

been misled, deceived, or damaged thereby. *See* 815 ILCS 505/2. The Illinois Deceptive Trade

Practices Act provides, among other things, that a person engages in a deceptive trade practice

when that person represents that the goods or services are of a particular standard, quality, or

grade or that goods are a particular style or model if they are of another or advertises goods or

services with intent not to sell them as advertised. *See* 815 ILCS 510/2 (a)(7) and (9),

respectively. As defined in the Illinois Consumer Fraud Act, trade or commerce includes

services such as Internet service. *See* 815 ILCS 505/1. Accordingly, Plaintiff, on behalf of

himself, and those similarly situated, seeks all relief to which he is entitled, including equitable

relief, actual damages, punitive damages, reasonable attorneys fees, filing fees and reasonable

costs of suit. *See* 815 ILCS 505/10a(c).

Case No. _____

## PARTIES TO THE ACTION

6.      Plaintiff, who is a resident of Cook County, Illinois and is a "consumer" within the meaning of 815 ILCS 505/1(e), brings this action on behalf of himself and all those similarly situated.  Plaintiff subscribed to Comcast's high-speed Internet service for a period of approximately eight (8) years beginning in 1999.

7.      Comcast of Chicago, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

8.      Comcast of Illinois I, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

9.      Comcast of Illinois III, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

10.     Comcast of Illinois IV, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.  Defendant's

conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

11.     Comcast of Illinois/Texas, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

12.     Comcast MO Express of Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

13.     Comcast of Northern Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

14.     Comcast Sound Communications, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

Case No. _____

15.    Comcast of South Chicago, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

16.    Comcastic, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

17.    Defendants DOES 1 – 150 are persons or entities whose true names and affiliations are currently unknown to Plaintiff, and who therefore are sued under fictitious names. Plaintiff alleges that each of the fictitiously named Defendants is a domestic Illinois corporation. Plaintiff further alleges that each of the fictitiously named Defendants perpetrated some or all of the wrongful acts alleged herein. Plaintiff will amend this Complaint to state the true names and affiliations of Defendants DOES 1 – 150 as soon as such information is ascertained.

18.    The terms "Comcast" and "Defendants" as used herein, are defined to mean the Defendants named in Paragraphs 7 through 17 above.

19.    The causes of action alleged herein arise out of Comcast's high-speed Internet service, trade practices, and advertising strategies originating and employed in Illinois.

## JURISDICTION AND VENUE

20.    Jurisdiction over Comcast is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), Section 2-209((a)(7) (making or performance of any contract or promise substantially connected with this State), Section 2-209(b)(4) (corporation doing business

Case No. _____

within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the

Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(a)(1), (a)(7),

(b)(4), and (c).

21.    The Court has subject matter jurisdiction over the action pursuant to

815 ILCS 505/2 because, as explained more fully herein, Comcast's actions violate the Illinois

Consumer Fraud Act.

22.    Venue is proper within the County pursuant to 735 ILCS 5/2-101 because

the transaction or some part thereof out of which the cause of action arose occurred within

this County.

## FACTUAL ALLEGATIONS

**A.    Comcast Markets High Speeds and Unfettered Access to the Internet.**

23.    Comcast provides high-speed Internet services to the citizens of Illinois.

24.    Fast download and upload speeds and unfettered access are key features of

Internet service. These features are especially important to consumers who download or upload

large files.

25.    Comcast advertises, markets, and sells its high-speed Internet service on the

express basis that it provides exceptionally fast and unfettered access to the Internet.

26.    Regarding the speed of its Internet access, Comcast represents, among other

things, the following:

- "[W]hen it comes to getting the fastest Internet connection, a lot of different services claim to be the fastest, but Comcast actually delivers."
- "The speed that the digital cable Internet connection can provide blows away the speeds that most competing technologies can attain."
- "Comcast's high speed Internet service provides anywhere from four to six times the speed that DSL based Internet access can provide!"

Case No. _____

- That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing," "Scorching," "Lightning-Fast," and "Way Faster Than DSL."

27.    Comcast represents that it provides the fastest speeds precisely for the applications that need it most – those that require large amounts of data to be uploaded and downloaded:

- "[Comcast] makes it possible for you to download even large files in just a few moments and to get onto sites such as gaming sites or virtual worlds."

- "Comcast's high speed Internet also has the advantage of always being on and ready for use."

- "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. The will be even more true as the Internet becomes an ever growing part of our lives. The need for speed comes from the fact that many of the best Web applications are also the most data intensive. That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web."

- "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!"

28.    Comcast further represents that it does not block or slow any Internet applications, but rather provides "unfettered access to all the . . . applications the Internet has to offer." Comcast states that its service "can be used to open up the Internet, and all the potential that it holds, for your enjoyment. With all of these features from Comcast, you have unbound access to all of the best aspects of the World Wide Web!"

**B.    Contrary to Its Representations, Comcast Blocks, Delays, Slows or Otherwise Impedes Applications That Require Large Data Transfers.**

29.    Contrary to its representations, Comcast blocks, delays, slows, or otherwise impedes Internet access for certain data-intensive Internet applications, such as P2P file sharing using BitTorrent, Gnutella, Lotus Notes, and possibly other applications.

Case No. _____

30.     In early 2007, public interest organizations and consumers alleged that Comcast Corporation and its affiliates throughout the country (collectively, the "Comcast Entities") were engaging in these practices.  The Comcast Entities denied the allegations and stuck to their original representations by claiming that they did not block or otherwise impede access to the Internet for any applications.

31.     Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether users' access to high-speed Internet service was being blocked by the Comcast Entities for certain applications.

32.     The testing led to shocking results.  The Comcast Entities were blocking, delaying, slowing, or otherwise impeding Internet access for certain P2P applications, and were doing so in an outrageously deceptive manner, by impersonating the computers of users involved in file-sharing.  The Comcast Entities were forging what are known as "reset packets," making it appear as if they were coming from one of the computers attempting to file-share.  The reset packet instructed the recipient computer to stop transmitting data, thus causing the computers involved to stop uploading and downloading the shared files.

33.     Even after these results were made public, the Comcast Entities continued to deny their actions by stating on the company's website that "[o]ur customers enjoy unfettered access to all the content, services, and applications that the Internet has to offer."  The Comcast Entities further state that they do not:

> [B]lock access to any Web site or applications, including BitTorrent.  Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOIP applications like Vonage, and thousands of other applications online.

34.     Then, in public comments submitted to the Federal Communications Commission ("FCC") on February 12, 2008, the Comcast Entities finally admitted to "delaying" Internet access for certain P2P applications by generating forged reset packets that interrupted the connection between two computers attempting to share files.  According to the Comcast Entities, their efforts to delay certain file-sharing applications were actually an attempt to prevent service degradation resulting from what they characterized as excessive bandwidth congestion created by these file-sharing applications.  The Comcast Entities admitted that they had established pre-determined "congestion thresholds" that applied to the use of bandwidth in particular neighborhoods.  When a Comcast subscriber in a particular neighborhood attempted to share a file in an area in which he or she had exceeded the "congestion threshold," the Comcast Entities would send a forged reset packet that would terminate the connection between that subscriber and the computer with whom he or she was attempting to share files.

35.     Notwithstanding that the Comcast Entities admitted these facts in their comments to the FCC, they never disclosed to their subscribers or potential subscribers that they blocked, delayed, slowed, or otherwise impeded Internet access.  On the contrary, the Comcast Entities continued to state that they provided unfettered access to the Internet using the fastest possible Internet connection.

36.     During all relevant times, Comcast has engaged and continues to engage in Illinois in the very same practices described in paragraphs 23 through 35 above.

**C.    Plaintiff and the Other Class Members Paid Comcast
for Promised Services They Never Received.**

37.    Plaintiff has lived in Illinois for his entire life (57 years).  Plaintiff previously
subscribed to Comcast's high-speed Internet service for a period of approximately eight (8) years
beginning in 1999.  He used his Internet connection for a wide range of uses.

38.    Plaintiff  has experienced severe speed and content limitations with regard to
various protocols and applications that involve the transfer of large amounts of data.

39.    Plaintiff and the other Class members were part of the target audience to which
Comcast directed the advertisements generally described in Paragraphs 25 through 28 above.
Plaintiff and the other Class members viewed these and other advertisements in various media
(television, print, radio, Internet, etc.) and relied on the representations contained therein to
purchase monthly subscriptions to Comcast's high-speed Internet service.

40.    Plaintiff and the other Class members all subscribed to Comcast's high-speed
Internet service at some point between June 5, 2005 and the present, and have paid all necessary
subscription fees.  Comcast never notified Plaintiff or the other Class members that it would
block, delay, slow, or otherwise impede the P2P file-sharing or other Internet applications.  On
the contrary, both before and after they subscribed, Plaintiff and the other Class members were
assured by Comcast that they would receive the fastest possible unfettered access to the Internet.
Indeed, Plaintiff and the other Class members were inundated by Comcast with repeated
representations that Comcast's high-speed Internet service provided fast and unfettered access to
the Internet.  Plaintiff and the other Class members never authorized Defendant to block, delay,
slow, or otherwise impede their access to the Internet for any applications.

41.    Plaintiff and the other Class members have suffered damage as a result of
Comcast's conduct as described above.

## CLASS ACTION ALLEGATIONS

42.    The action is brought as a class action pursuant to 735 ILCS 5/2-801, *et seq.* and is properly maintainable as a class action as set forth below.

**A.    Class Description**

43.    The "Class" is defined as follows:

> All citizens of Illinois who purchased or maintained high-speed Internet service from Comcast at any time between June 5, 2005 and the date that the Court certifies the class. Specifically excluded from the Class are Comcast and all of its subsidiaries, parents, and other affiliates, all officers, directors, and employees of these entities, and all legal representatives, heirs, and assigns of these entities. Also excluded are any judicial officers who preside over the action and any juror that participates in the lawsuit.

**B.    Impracticability of Joinder**

44.    The Class is composed of thousands of citizens of Illinois who purchased Comcast's high-speed Internet service. Accordingly, under 735 ILCS 5/2-801(1), joinder of all Class members would be impracticable. The disposition of Plaintiff's and the other Class members' claims in a class action will provide substantial benefits to the parties and the Court. The Class is ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon Comcast's uniform conduct as described below.

**C.    Commonality**

45.    Defendant has acted in ways that affect all members of the proposed Class similarly. Questions of fact and law are common to each member of the Class pursuant to 735 ILCS 5/2-801(2). These common questions of law or fact include, but are not limited to, the following:

a)    whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve

large transfers of data, constitute deception, fraud, false pretense, false promise or misrepresentation in connection with the sale of merchandise under the Illinois Consumer Fraud Act;

b) whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a concealment of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act;

c) whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute an omission of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act; and

d) whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a representation that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not or whether the foregoing statements made and disseminated by Comcast also constitute an advertisement of goods or services with intent not to sell them as advertised under the Illinois Consumer Fraud Act.

## D.    Predomination

46.    Questions of law and fact that are common the Plaintiff and the Class

predominate over question affecting only individual members pursuant to 735 ILCS 5/2-801(2).

This action predominately concerns Defendants' actions, namely, Defendants' dissemination of

advertisements that promised that their high-speed Internet services would be fast and unfettered,

and Defendants' acts that undermined those promises.  Defendants' conduct towards Plaintiff

and the Class was the same in this regard.  Further, the impact of Defendants' conduct on

Plaintiff and the Class was also standard, that is, all Class members paid for services that they

did not receive.

## E.    Fair and Adequate Representation

47.    Plaintiff is capable of fairly and adequately protecting the interests of the Class

under 735 ILCS 5/2-801(3) because his claims are common to the Class and proof of those

claims will prove the claims of absent Class members. Plaintiff's interests are in harmony with

the interests of other members of the Class, and none of Plaintiff's interests are adverse to those

of other Class members. Plaintiff intends to pursue this litigation vigorously, and he selected

counsel experienced in complex litigation and class actions.

**F.    Fair and Efficient Method of Adjudication**

48.    This class action is an appropriate method for the fair and efficient adjudication of

this action pursuant to 735 ILCS 5/2-801(4). Adjudication of this action on a class-wide basis

would secure economies of time, effort, and expense. Defendants' actions towards Plaintiff and

the Class members were similar, therefore, adjudication of the claims of each member of the

Class would result in thousands of needlessly repetitive trials. Further, the actual damages of

each member of the Class is so small as to make adjudication of each claim on an individual

basis inefficient.

**COUNT I**
**Misrepresentation of Merchandise**

49.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1

through 48 as though fully restated herein.

50.    Under Section 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an

unlawful trade practice to use  "deception, fraud, false pretense, false promise, or

misrepresentation . . ." in connection with any sale of "merchandise" in Illinois. Under

Section 815 ILCS 505/1 of the Illinois Consumer Fraud Act, "merchandise" includes services

such as Comcast's high-speed Internet service.

51.    As set forth in paragraphs 1 through 48, Comcast repeatedly represented to

Plaintiff and the other Class members that Comcast's high-speed Internet service provides the

fastest and unfettered access to the Internet. Moreover, Comcast repeatedly represented to

Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

52.    The foregoing representations, made and disseminated by Comcast, constitute deception, fraud, false pretense, false promise, and misrepresentation. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

53.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements. Plaintiff and the other Class members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

54.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

55.    As a direct and proximate result of the aforesaid misrepresentation of merchandise, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

56.     Accordingly, Comcast's actions are an unlawful trade practice under Section 56:8-2 of the Illinois Consumer Fraud Act, and  Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

**COUNT II**
**Concealment of a Material Fact**

57.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 56 as though fully restated herein.

58.     Under 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an unlawful trade practice to conceal a material fact in connection with a sale of merchandise, including services, in Illinois.

59.     As set forth in paragraphs 1 through 56, Comcast repeatedly represented in advertisements and other communications to Plaintiff and the other Class members that its high-speed Internet subscribers would receive fast access to the Internet, and that the access would be unfettered.  Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.  Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

60.     The foregoing conduct constitutes concealment of material facts by Comcast. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede

its customers' access to the Internet and to P2P and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities. Comcast did not disclose these facts to Plaintiffs or the Class members.

61.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its concealment of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service.  Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct.  Plaintiff and the other Class members have been damaged as a result of Comcast's conduct.

62.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

63.    As a direct and proximate result of the aforesaid concealment of a material fact, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

64.    Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT III
## Omission of a Material Fact

65.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 64 as though fully restated herein.

Case No. _____

66.    Section 815 ILCS 505/2 of the Illinois Consumer Fraud Act prohibits the omission of any material fact in connection with a sale of merchandise, including services, in Illinois.

67.    As set forth in paragraphs 1 through 64 above, Comcast repeatedly represented in advertisements to Plaintiff and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet.  Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.  Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

68.    The foregoing conduct constitutes omission of material facts by Comcast.  Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.  Comcast did not disclose these facts to Plaintiffs or the Class members.

69.    Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its omission of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service.  Comcast denied Plaintiff and the Class members the full value of the promised

Internet service by this conduct. Plaintiff and the other Class members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

70.    Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

71.    Plaintiff and the other Class members were injured when Comcast omitted these material facts, when in fact Comcast blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

72.    As a direct and proximate result of the aforesaid omissions of material facts, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

73.    Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT IV
### Deceptive Advertising

74.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 73 as though fully restated herein.

75.    The Illinois Consumer Fraud Act prohibits the use or employment of any practice described in Section 2 of the Illinois Deceptive Trade Practices Act. *See* 815 ILCS 505/2. The Illinois Deceptive Trade Practices Act provides, among other things, that a person engages in a deceptive trade practice when that person represents that the goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another or

advertises goods or services with intent not to sell them as advertised. *See* 815 ILCS 510/2 (a)(7) and (9), respectively.

76.     As set forth in paragraphs 1 through 73, Comcast repeatedly represented in advertisements to Plaintiff and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet.  Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data.  Indeed, Comcast represented that it actually increases the speed of its service ("kicks the Internet connection into overdrive") for such transfers.  Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

77.     The foregoing statements, made and disseminated by Comcast, constitute representations that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not.  The foregoing statements made and disseminated by Comcast also constitute advertisements of goods or services with intent not to sell them as advertised.  Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications.  As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

78.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service.  Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements.  Accordingly, Plaintiff and the other Class

members have been damaged and have lost money or property as a result of Comcast's untrue or misleading representations.

79.     This conduct constitutes deceptive advertising because speed and unfettered access to the Internet are the principal selling points of high-speed Internet service. Virtually all of Comcast's advertising addresses these two qualities.

80.     Plaintiff and the other Class Members were injured when Comcast, contrary to its advertisements, blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

81.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

82.     As a direct and proximate result of the aforesaid deceptive advertising, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

83.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT V
### Civil Conspiracy

84.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 83 as though fully restated herein.

85.     Defendants, each of them, conspired or agreed, as agents, each to the other, to engage in a conscious course of conduct to engage in deception, fraud, false pretense, false

promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling and in doing so, chose to commit unlawful acts in violation of the Illinois Consumer Fraud Act, as set forth herein.

86.    Defendants did, in fact, commit such unlawful acts pursuant to the conspiracy and knowingly conspired to continue conduct to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling in violation of the Illinois Consumer Fraud Act, as set forth herein.  Defendants acting as agents, each to the other, engaged in a course of deceitful advertising and promotion so as to continue to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling, while advertising and causing members of the consuming public, including Plaintiff and members of the Class herein, to be lured into a false sense of security believing that they were, among other things, receiving unfettered access to the internet, when Defendants knew or should have known that they were not.  Defendants engaged in a common plan and scheme to conceal this knowledge from the public and to conceal the nature of the product they were selling.  Defendants, together with all other co-defendants herein, were engaged in a joint venture, enterprise or agency for the aforesaid purpose of deceit and by reason of their capacity as joint venturers, each in furtherance of the conspiracy as aforesaid, the heretofore mentioned acts, deeds, knowledge and omissions of said Defendants are imputable to all of the other Defendant joint tortfeasors, both jointly and severally.

87.    As a direct and proximate result of the aforesaid conspiracy, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

Case No. _____

88.    Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself,  and all others similarly situated, and the general public, respectfully requests that the Court:

I.    Certify the Class as defined in the Complaint;

II.    Order Comcast to notify each and every member of the Class of the pendency of the claims in the action in order to give such persons an opportunity to seek relief;

III.    Enjoin Comcast from engaging in conduct that violates the Illinois Consumer Fraud Act as defined in the Complaint;

IV.    Enter a judgment in favor of Plaintiff and the Class on Counts I-V;

V.    Award compensatory damages to Plaintiff and the Class;

VI.    Award Plaintiff and the Class punitive damages;

VII.    Create a common fund comprised of all damages to Plaintiffs and the Class;

VIII.    Award Class counsel attorney's fees pursuant to 815 ILCS 505/10a(c), the Common Fund Doctrine or any other applicable law;

IX.    Award Plaintiff and the Class interest as prescribed by law;

X.    Award Plaintiff and the Class costs of the suit; and

XI.    Award Plaintiff and the Class such other relief as the Court may deem to be just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues in the Complaint triable to the jury.

Dated:  June 5, 2008

Respectfully submitted,

Kenneth J. Brennan, Esq. (Il. Bar #6239037)
John A. Bruegger (Il. Bar #6278821)
SIMMONSCOOPER LLC
707 Berkshire Boulevard
PO Box 521
East Alton, IL  62024
Telephone:      (618) 259-2222
Facsimile:       (618) 259-2251
Email:            kbrennan@simmonscooper.com

August J. Matteis, Jr.
GILBERT RANDOLPH LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Telephone:      (202) 772-1923
Facsimile:       (202) 772-1924
E-Mail:          matteisa@gilbertrandolph.com
*(Application for Admission Pro Hac Vice
to be filed)*

*Attorneys for Plaintiff Roger Lis*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

-------------------------------------------------------------- :
                                        :

Roger Lis, on behalf of himself and
all others similarly situated,

                                Plaintiff,       :

           v.                                     :

COMCAST OF CHICAGO, INC.;           :
COMCAST OF ILLINOIS I, INC.;         :    Civil No._____
COMCAST OF ILLINOIS III, INC.;        :
COMCAST OF ILLINOIS IV, INC.;         :
COMCAST OF ILLINOIS/TEXAS, INC.;     :
COMCAST MO EXPRESS OF ILLINOIS, INC.;   :    **CLASS ACTION**
COMCAST OF NORTHERN ILLINOIS, INC.;    :
COMCAST SOUND COMMUNICATIONS INC.;   :
COMCAST OF SOUTH CHICAGO, INC.;      :
COMCASTIC, INC.;                           :
DOES 1-150,                               :

Serve at:                                    :

        C T Corporation System         :
        208 S. LaSalle Street          :
        Suite 814                        :
        Chicago, IL 60604,            :

                          Defendants.    :

-------------------------------------------------------------- 

## DECLARATION OF DAMAGES PURSUANT TO SUPREME COURT RULE 222(b)

Now comes the Affiant, KENNETH J. BRENNAN, of SIMMONSCOOPER LLC, attorneys for the Plaintiff, and after being first duly sworn on his oath respectfully states that the total money damages sought by the Plaintiff herein does exceed the sum of Fifty Thousand Dollars ($50,000.00).

Case No._____

Further, Affiant sayeth not.

STATE OF ILLINOIS )
                  ) ss
COUNTY OF MADISON )

Kenneth J. Brennan

SUBSCRIBED AND SWORN to before me this ____ day of June, 2008.

**OFFICIAL SEAL**
**Julianne E. Pani Wood**
**Notary Public, State of Illinois**
**My Commission Expires 1/3/2011**

Notary Public

Case No._____

# EXHIBIT 3

**TO DECLARATION OF ALYSON A. FOSTER, AUG. 29, 2008**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | |
|---|---|
| ROGER LIS, | |
| Plaintiff, | |
| v. | No. _____ |
| COMCAST OF CHICAGO, INC.;<br>COMCAST OF ILLINOIS I, INC.;<br>COMCAST OF ILLINOIS III, INC.;<br>COMCAST OF ILLINOIS IV, INC.;<br>COMCAST OF ILLINOIS/TEXAS, INC.;<br>COMCAST MO EXPRESS OF ILLINOIS,<br>INC.; COMCAST OF NORTHERN<br>ILLINOIS,  INC.; COMCAST SOUND<br>COMMUNICATIONS, INC.; COMCAST<br>OF SOUTH CHICAGO, INC.;<br>COMCASTIC, INC.; and DOES 1-150, | |
| Defendants. | |

---

## NOTICE OF REMOVAL

Defendants Comcast of Chicago, Inc., Comcast of Illinois I, Inc., Comcast of Illinois III, Inc., Comcast of Illinois IV, Inc., Comcast of Illinois/Texas, Inc., Comcast MO Express of Illinois, Inc., Comcast of Northern Illinois, Inc., Comcast Sound Communications, Inc., and Comcast of South Chicago, Inc. (collectively, "Comcast"), by and through undersigned counsel and pursuant to 28 U.S.C. §§ 1441, 1446 and 1453, hereby give notice of the removal of this action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois.  In support hereof, Comcast avers as follows.

### JURISDICTIONAL STATEMENT – DIVERSITY JURISDICTION

1.     The Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4

(2005) grants federal courts jurisdiction over class actions in which there is minimal diversity, an aggregate amount in controversy in excess of $5,000,000, and 100 or more class members. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(5)(B), 1332(d)(6). It applies to any class action that is commenced on or after its effective date, i.e., February 18, 2005. *See* 28 U.S.C. § 1332 note.

2.    Plaintiff Roger Lis ("Plaintiff") commenced this action on or about June 5, 2008 by filing a putative class action complaint in the Chancery Division of the Circuit Court of Cook County, Illinois under the caption *Lis v. Comcast of Chicago, Inc., et al.*, No. 08CH20354. *See generally* Pl.'s Compl. (attached hereto as part of Exhibit A). Accordingly, this action was commenced after CAFA's effective date.

3.    Plaintiff brings this putative interstate class action on behalf of himself, a citizen of Illinois, Pl.'s Compl. ¶¶ 6, 37, as well as a putative class that includes "[a]ll citizens of Illinois who purchased or maintained high-speed Internet service from Comcast at any time between June 5, 2005 and the date that the Court certifies the class." *Id.* ¶ 43. That putative class consists of: (a) subscribers who are currently citizens of Illinois; (b) subscribers who were citizens of Illinois when they subscribed to Comcast's service but have since redomiciled in another state; and (c) subscribers who were citizens of Illinois when they subscribed to Comcast's service but redomicile in another state before "the date that the Court certifies the class." *Id.*

4.    With the exception of "Comcastic, Inc.," which upon information and belief is not affiliated with Comcast Corporation or any of its subsidiaries or affiliates, the named Defendants are subsidiaries of Comcast Corporation that are domiciled and organized inside and outside of Illinois.

5.    Comcast of Chicago, Inc., Comcast of Illinois I, Inc., Comcast of Illinois III, Inc., Comcast of Illinois IV, Inc., Comcast of Northern Illinois, Inc., and Comcast of South Chicago, Inc. are subsidiaries of Comcast Corporation that are organized in Illinois.

6.    However, Comcast of Illinois/Texas, Inc. was re-domiciled to Delaware on July 14, 2006, and then merged into Comcast Indiana/Michigan/Texas LP, a Delaware Limited Partnership with corporate offices in Pennsylvania, on July 26, 2006. *See* Certificate of Merger

of Comcast Illinois/Texas Inc. (attached hereto as Exhibit B); Certificate of Merger of Comcast of Plano, LP, *et al.* (attached hereto as Exhibit C).

7.     Similarly, Comcast MO Express of Illinois, Inc. merged into Comcast MO Telecommunications Corp., a Delaware corporation, in 2004.  *See* Certificate of Merger and Ownership of Comcast MO Express of Illinois, Inc. (attached hereto as Exhibit D).

8.     Finally, Comcast Sound Communications, Inc. merged into Comcast Programming Holdings, Inc., a Delaware corporation, in 1999.  *See* Articles of Merger of Comcast Programming Holdings, Inc. (attached hereto as Exhibit E).

9.     Moreover, Comcast Cable Communications Holding, Inc., Comcast Cable Communications, LLC, and Comcast Cable Communications Management, LLC, the national operating entities that are responsible for the nationwide advertising and marketing of Comcast's high-speed Internet service and for developing and implementing network management practices, are organized in Delaware and have principal places of business in Pennsylvania. Because those entities are required parties within the meaning of Federal Rule of Civil Procedure 19, their citizenships must be considered when determining whether minimal diversity exists for purposes of CAFA.  *See Roche v. Country Mut. Ins. Co.*, No. 07-367, 2007 WL 2003092 (S.D. Ill. July 6, 2007).[1]

10.     Accordingly, there is at least minimal diversity for purposes of CAFA.  *See* 28 U.S.C. § 1332(d)(2)(A).

11.     Plaintiff alleges that the putative class consists of "thousands" of people and is so numerous that the joinder of individual members of the putative class is "impracticable."  *See* Pl.'s Compl. ¶ 44.  Plaintiff purports to represent not only current and former subscribers as of the filing of the Complaint, but also new subscribers up to and including "the date that the Court certifies the Class."  *See id.* ¶ 43.

---

[1]     Because Comcast intends to move to compel arbitration of Plaintiff's claims, it is not filing a motion to join these required defendants at this time.  In the event this action proceeds in court instead of arbitration, Comcast will so move at the appropriate time.

12.     Based on the number of people with Illinois billing addresses who received high-speed Internet service from a subsidiary of Comcast Corporation as of June 30, 2008 (which is confidential and non-public), well in excess of 50,000 subscribers fall within the definition of the putative class.  That number would increase substantially if it included subscribers who initiate service in the future and/or subscribers who terminated their service before June 30, 2008.  To the extent Plaintiff's class definition seeks to include businesses as well as residential subscribers, the putative class would be larger still.

13.     Accordingly, there are more than 100 members of the putative class.  *See* 28 U.S.C. § 1332(d)(5)(B).

14.     Plaintiff seeks relief in the form of "compensatory damages" for himself and the members of the putative class.  *See* Pl.'s Compl., Prayer for Relief ¶ V.  For the three most recent fiscal quarters for which revenue data is publicly available (i.e., 3Q07, 4Q07 and 1Q08), Comcast's average monthly revenue per high-speed Internet subscriber was approximately $42.51.  Press Release, Comcast Reports First Quarter 2008 Results at 9 (Oct. 2007), available at http://library.corporate-ir.net/library/11/118/118591/items/291108/1Q08PR.pdf.     Using that figure, which takes into account all of the many variations in the types of plans offered to subscribers, the value of the requested classwide restitution for just the last three (3) months would exceed $5,000,000.

15.     Plaintiff also seeks an award of punitive damages and an award of his attorneys' fees and costs, which could be substantial.  *See* Pl.'s Compl., Prayer for Relief ¶¶ VI, VIII, X.

16.     Plaintiff also seeks relief in the form of an order directing Comcast "to notify each and every member of the Class of the pendency of the claims in this action."  Pl.'s Compl., Prayer for Relief ¶ II.  In light of the total number of high-speed Internet subscribers with Illinois billing addresses as of June 30, 2008 (which is confidential and non-public), the cost of postage alone would be substantial.  Those costs would increase substantially if the cost of generating and coordinating the requested mailing of the notice were included as well.

17.     Plaintiff also seeks broad injunctive relief that would require Comcast to change

the way it currently provides and advertises its high-speed Internet services. *See* Pl.'s Compl., Prayer for Relief ¶ III. Because of the nationwide nature of Comcast's high-speed Internet service and its advertisements, notices, and billing system, the cost to Comcast of complying with the requested equitable relief would be substantial.

18.     Although Comcast denies it has any liability to Plaintiff or the putative class, and denies that any such class could be properly certified under Federal Rule of Civil Procedure 23, the aggregate value of the compensatory, statutory and exemplary damages sought by Plaintiff, as well as the cost to Comcast of complying with the equitable relief sought by Plaintiff, would exceed $5,000,000.[2]

19.     Accordingly, the alleged aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

20.     Because this action commenced after February 18, 2005, there is minimal diversity, more than 100 putative class members and an aggregate amount in controversy in excess of $5,000,000, this Court has original subject matter jurisdiction over this putative class action. *See* 28 U.S.C. § 1332(d)(2)(A).

21.     Because this action states a basis for original subject matter jurisdiction under 28 U.S.C. § 1332, it is removable pursuant to 28 U.S.C. § 1441(a).

### JURISDICTIONAL STATEMENT – FEDERAL QUESTION JURISDICTION

22.     Alternatively, to the extent Plaintiff challenges Comcast's management of its network rather than Comcast's marketing and advertisement of its services, this Court has original jurisdiction over this action because such claims arise under federal law.

---

[2]     By removing an action under CAFA, Comcast does not concede that it has any liability, let alone liability of greater than $5,000,000, to the members of the putative class. *See, e.g., Key v. DSW, Inc.*, No. 06-0459, 2006 WL 2794930, at *7 (S.D. Ohio Sept. 27, 2006).

23.    Congress has declared that "the policy of the United States" is that the Internet, a channel of interstate commerce and communications, should be "unfettered" by state regulation. 47 U.S.C. § 230(b).  By any measure, its decision to free the Internet from state regulation has been a resounding success.  When the Internet first emerged, it was accessible to only a handful of people.  It is now available and affordable to millions of customers, from all parts of the country and all walks of life, through conduits such as dial-up, broadband (cable, DSL and BPL), fixed wireless and even satellite.  In short, it has become a ubiquitous part of every day life.  *See, e.g.*, U.S. Dept. of Commerce, *A Nation Online: Entering The Broadband Age* (Sept. 2004), *available at*  http://www.ntia.doc.gov/reports/anol/NationOnlineBroadband04.pdf.

24.    Any suggestion that state law requires Comcast to manage its interstate network differently flies in the face of Congress's decision to free the Internet from state regulation. Indeed, if Illinois can establish its own rules for what network management methods may or may not be used, then by extension each of the fifty states may do so as well, leading to a morass of inevitably conflicting rules.  Moreover, requiring the degree of "disclosure" sought in this case would enable subscribers to evade Comcast's network management entirely, a result that is functionally indistinguishable from requiring Comcast to cease network management altogether. In short, any attempt to use state law to regulate the manner in which Comcast manages its network is a direct challenge to the federal government's decision to create a uniform deregulatory environment for the Internet by freeing Internet services from state regulation. Such claims are inherently federal in character, making an action raising such claims removable on three separate grounds: (a) the complete preemption doctrine; (b) the substantial federal question doctrine; and (c) the artful pleading doctrine.

25.    Accordingly, to the extent Plaintiff challenges Comcast's management of its network rather than Comcast's marketing and advertisement of its services, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, making this action removable pursuant to 28 U.S.C. § 1441(a).  To the extent this Court determines that this action presents any state law claims, this Court has supplemental jurisdiction over such claims pursuant

to 28 U.S.C. § 1367.

## PROCEDURAL STATEMENT

26.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of Plaintiff's Complaint and all other process, pleadings and orders that Plaintiff purportedly served on Comcast as of the date of this Notice are attached hereto as Exhibit A.

27.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within thirty (30) days of service, as Plaintiff served the Complaint on or after June 26, 2008. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

28.     Pursuant to 28 U.S.C. § 1453(b), it is not necessary to obtain the consent of all Defendants in order to remove this action.  Nevertheless, every served Defendant does consent.

29.     Pursuant to 28 U.S.C. § 1453(b), Comcast may remove this action even if one or more Defendants is a citizen of the state in which this action was brought.

30.     Pursuant to 28 U.S.C. § 1441(a), removal to the Eastern Division of the United States District Court for the Northern District of Illinois is proper because that Division and District embrace the Circuit Court of Cook County, Illinois, where this action is currently pending.  *See* 28 U.S.C. § 93(a).

31.     Pursuant to 28 U.S.C. § 1446(d), Comcast will promptly file a copy of this Notice of Removal in the Circuit Court of Cook County, Illinois, and give written notice of the removal of this action to counsel for Plaintiff.

32.     By removing the action to this Court, Comcast does not waive any defenses, objections or motions available to it under state or federal law.  Comcast expressly reserves the right to require that the claims of Plaintiff and the unnamed members of the putative class be decided through individual binding arbitrations, to move to join required parties as defendants, and to move for the entry of judgment in favor of Comcast and against Plaintiff pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure.

**WHEREFORE**, pursuant to 28 U.S.C. §§ 1441, 1446 and 1453, Comcast respectfully removes to federal court the above-captioned civil action, which is currently pending in the Chancery Division of the Circuit Court of Cook County, Illinois.

Dated:  July 14, 2008

**/s/  Bradley J. Andreozzi**
Bradley J. Andreozzi (ARDC No. 6257334)
Justin O. Kay (ARDC No. 6286557)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
(312) 569-1173 (tel.)
(312) 569-3173 (fax)
Bradley.Andreozzi@dbr.com
Justin.Kay@dbr.com

*Counsel for Defendants*

Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
(215) 988-2700 (tel.)
(215) 988-2757 (fax)
Seamus.Duffy@dbr.com
Michael.McTigue@dbr.com
Michael.Daly@dbr.com

*Of counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I, Justin O. Kay, hereby certify that, on the date set forth below, I caused true and correct copies of the foregoing Notice of Removal to be served via first-class mail, postage prepaid, upon the following:

Kenneth J. Brennan
John A. Bruegger
SIMMONSCOOPER LLC
707 Berkshire Blvd.
P.O. Box 521
East Alton, IL 62024

*Counsel for Plaintiff Roger Lis*

August J. Matteis, Jr.
Brian Wienthal
GILBERT RANDOLPH LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005

*Counsel for Plaintiff Roger Lis*

Dated: July 14, 2008

<u>**/s/ Justin O. Kay**</u>
Justin O. Kay