**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROGER LIS,<br><br>              Plaintiff,<br><br>       v.<br><br>COMCAST OF CHICAGO, INC., et al.,<br><br>              Defendants. | No. 1:08-CV-3984<br>Judge Zagel<br>Magistrate Judge Cox |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Bradley J. Andreozzi (ARDC No. 6257334)
Daniel J. Delaney (ARDC No. 6201067)
Justin O. Kay (ARDC No. 6286557)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
(312) 569-1173 (tel.)
(312) 569-3173 (fax)
Bradley.Andreozzi@dbr.com
Daniel.Delaney@dbr.com
Justin.Kay@dbr.com

*Counsel for Defendants*

Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
(215) 988-2700 (tel.)
(215) 988-2757 (fax)
Seamus.Duffy@dbr.com
Michael.McTigue@dbr.com
Michael.Daly@dbr.com

*Of counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION AND SUMMARY .................................................................... 1

ARGUMENT ........................................................................................................ 4

I.   Minimal Diversity Jurisdiction Exists on the Face of the Complaint. ............................. 4

     A.   The Putative Class Contains Citizens of Other States. ......................................... 4

     B.   At Least Three of the Named Defendants are Minimally Diverse ........................ 8

II.  The Absent But Required Defendants Are Also Citizens of Another State ................... 11

     A.   The Citizenship of Required Defendants Must Be Considered .......................... 11

     B.   The National Operating Entities Are Required Defendants ............................... 16

III. Plaintiff Has Failed to Demonstrate a Proper Basis for Remand Under The "Home State Exception" and "Local Controversy Exception" ................................................... 19

     A.   Plaintiff Has Not Satisfied His Burden of Proof As to The Putative Class Members' Citizenship ........................................................................................... 20

     B.   The "Primary" or "Significant" Defendants Are Not Citizens of Illinois .......... 22

     C.   The Alleged Controversy Is A Nationwide One, Not a Local One .................... 26

     D.   Prior Putative Class Actions Alleging Common Facts Have Been Filed ............ 30

CONCLUSION ................................................................................................... 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ali v. Fed. Bureau of Prisons*,
128 S. Ct. 831 (U.S. 2008)................................................................................5

*Anthony v. Small Tube Mfg. Corp.*,
535 F. Supp. 2d 506 (E.D. Pa. 2007) ..................................................21, 22

*Berry v. Am. Express Publ'g, Corp.*,
381 F. Supp. 2d 1118 (C.D. Cal. 2005) ...................................................11

*In re Bridgestone/Firestone Inc., Tires Prods. Liab. Litig.*,
333 F.3d 763 (7th Cir. 2003) ............................................................... 2-3

*Brook v. United Health Group, Inc.*,
No. 06-12954, 2007 WL 2827808 (S.D.N.Y. Sep. 27, 2007)....................29

*Bush v. Roadway Express, Inc.*,
152 F. Supp. 2d 1123 (S.D. Ind. 2001) ...................................................4

*Caruso v. Allstate Ins. Co.*,
469 F. Supp. 2d 364 (E.D. La. 2007).......................................................26

*Caruso v. Allstate Ins. Co.*,
No. 06-2613, 2007 WL 64162 (E.D. La. Jan. 8, 2007)................... 22, 25-26

*Casey v. Int'l Paper Co.*,
No. 07-421, 2008 U.S. Dist. LEXIS 1298 (N.D. Fla. Jan. 7, 2008) ...............22, 23,26

*Eakins v. Pella Corp.*,
455 F. Supp. 2d 450 (E.D.N.C. 2006).......................................................29

*Escoe v. State Farm Fire & Cas. Co.*,
No. 07-1123, 2007 WL 1207231 (E.D. La. Apr. 23, 2007)...................23, 26

*Evans v. Walter Indus., Inc.*,
449 F.3d 1159 (11th Cir. 2006) ............................................20, 21, 22, 25

*Frazier v. Pioneer Ams. LLC*,
455 F.3d 542 (5th Cir. 2006) ....................................................................20

*Fuller v. Home Depot Servs., LLC*,
No. 07-1268, 2007 U.S. Dist. LEXIS 59770 (N.D. Ga. Aug. 14, 2007) ....................10

*GNB Battery Tech., Inc. v. Gould, Inc.*,
    65 F.3d 615 (7th Cir.1995) ................................................................6

*Gateway Assocs., Inc. v. Essex-Costello, Inc.*,
    380 F. Supp. 1089 (N.D. Ill. 1974) ..........................................17

*Gen. Elec. Capital Corp. v. Sheffield Sys., Inc.*,
    No. 01 C 6342, 2002 WL 1759823 (N.D. Ill. July 29, 2002) ....................19

*Gerstenecker v. Terminix Intern., Inc.*,
    No. 07-0164, 2007 WL 2746847 (S.D. Ill. Sept. 19, 2007).........................20

*Grupo Dataflux v. Atlas Global Group, L.P.*,
    541 U.S. 567 (2004)...............................................................10

*Hangarter v. Paul Revere Life Ins. Co.*,
    No. 05-4558, 2006 WL 213834 (N.D. Cal. Jan. 26, 2006).........................22

*Harmon v. OKI Sys.*,
    115 F.3d 477 (7th Cir. 1997) ................................................4, 13

*Harrington v. Mattel, Inc.*,
    No. 07-5110, 2007 U.S. Dist. LEXIS 95401 (N.D. Cal. Dec. 20, 2007)...............21, 22

*Hart v. FedEx Ground Package Sys. Inc.*
    457 F.3d at 675 (7th Cir. 2006)..................................................20

*Jadair, Inc. v. Walt Keeler Co.*,
    679 F.2d 131 (7th Cir. 1982) ......................................................4

*Kearns v. Ford Motor Co.*
    No. 05-5644, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005) ................23, 26

*Kearns v. Ford Motor Co.*,
    No. 05-5644, 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. Nov. 21, 2005).........11, 21, 29

*Kendrick v. Standard Fire Ins. Co.*,
    No. 06-0141, 2007 WL 1035018 (E.D. Ky. Mar. 31, 2007).........................22

*Kentucky v. U.S. E.P.A.*,
    165 F.3d 26 (table) *No. 96-4274*, 1998 WL 661138 (6th Cir. Sept. 2, 1998)...............6

*Kirkland v. Legion Ins. Co.*,
    343 F.3d 1135 (9th Cir. 2003) ..................................................14

*Kitson v. Bank of Edwardsville,*
    No. 06-528, 2006 U.S. Dist. LEXIS 85285 (S.D. Ill. Nov. 22, 2006) ..........................8

*Lamie v. U.S. Trustee,* 540 U.S. 526 (2004) .......................................................6

*Mattera v. Clear Channel Commc'ns Inc.,*
    239 F.R.D. 70 (S.D.N.Y. 2006) .....................................................23, 26, 29

*Mayer Paving & Asphalt Co. v. Gen. Dynamics Corp.,*
    486 F.2d 763 (7th Cir. 1973) .......................................................................18

*McMorris v. TJX Cos., Inc.,*
    493 F. Supp. 2d 158 (D. Mass. 2007) ......................................................21

*Metropolitan Life Ins. Co. v. Estate of Cammon,*
    929 F.2d 1220 (7th Cir. 1991) ......................................................................9

*Mullaney v. Anderson,*
    342 U.S. 415 (1952)......................................................................................15

*Musgrave v. Aluminum Co. of Am., Inc.,*
    No. 06-0029, 2006 WL 1994840 (S.D. Ind. July 14, 2006) .......................21

*N. Shore Gas Co. v. Salomon Inc.,*
    152 F.3d 642 (7th Cir. 1998) .......................................................................17

*Newman-Green, Inc. v. Alfonzo-Larrain,*
    490 U.S. 826 (1989)...............................................................................15, 16

*Newman-Green, Inc. v. Alfonzo-Larrain R.,*
    854 F.2d 916 (7th Cir. 1988) *rev'd on other grounds,* 490 U.S. 826 (1989) ........14, 15

*Nichols v. Progressive Direct Ins. Co.,*
    No. 06-0146, 2007 WL 1035014 (E.D. Ky. Mar. 31, 2007)........................21

*Phillips v. Severn Trent Envt'l. Servs., Inc.,*
    No. 07-3889, 2007 U.S. Dist. LEXIS 69536 (E.D. La. Sept. 19, 2007)................23, 26

*Preston v. Tenet Healthsystem Mem'l Med. Ctr.,*
    485 F.3d 793 (5th Cir. 2007) .......................................................................21

*Preston v. Tenet Healthsystems Mem'l Med. Ctr.,*
    485 F.3d 804 (5th Cir. 2007) .......................................................................29

*Pritchett v. Office Depot, Inc.,*
    404 F.3d 1232 (10th Cir. 2005) .....................................................................2

*Robinson v. Cheetah Transp.*,
   No. 06-0005, 2006 WL 468820 (W.D. La. Feb. 27, 2006)....................................22, 25

*Robinson v. Cheetah Transp.*,
   No. 06-0005, 2006 WL 3322580 (W.D. La. Nov. 14, 2006).......................................22

*Roche v. Country Mutual Insurance Co.*,
   No. 07-367, 2007 WL 2003092 (S.D. Ill. July 6, 2007) ........................................12, 13

*Sams v. Beech Aircraft Corp.*,
   625 F.2d 273, 277 (9th Cir. 1980) ..............................................................................15

*Schwartz v. Comcast Corp.*,
   No. 05-2340, 2005 WL 1799414 (E.D. Pa. July 28, 2005) ......................................7, 8

*Serrano v. 180 Connect, Inc.*,
   478 F.3d 1018 (9th Cir. 2007) ....................................................................................20

*Springman v. AIG Mktg., Inc.*,
   No. 07-737, 2007 U.S. Dist. LEXIS 84125 (S.D. Ill. Nov. 14, 2007) ........................11

*Sullivan v. State Farm Fire & Cas. Ins. Co.*,
   No. 06-0004, 2006 U.S. Dist. LEXIS 95817 (E.D. La. Apr. 6, 2006).........................22

*U.S. v. Ressam*,
   491 F.3d 997 (9th Cir. 2007) ........................................................................................6

*United States v. Gonzales*,
   520 U.S. 1 (1997)............................................................................................................5

*Wecker v. Nat'l Enameling & Stamping Co.*,
   204 U.S. 176 (1907)......................................................................................................14

*Wisconsin Knife Works v. Nat'l Metal Crafters*,
   781 F.2d 1280 (7th Cir. 1986) .......................................................................................9

## STATE CASES

*Alch v. Superior Court*,
   19 Cal. Rptr. 3d 29 (Cal. App. 2004).............................................................................6

*In re Gwynne P.*,
   830 N.E.2d 508 (Ill. 2005) .............................................................................................6

## DOCKETED CASES

*Aliano v. Comcast of Chicago, Inc. et al.*,
   No. 08-5320 (N.D. Ill.) ................................................................19

*Hart v. Comcast Corp. et al.*,
   No. 07-6350 (N.D. Cal.) ...........................................................1, 19

*Leigh v. Comcast of California II, Inc., et al.*,
   No. 08-4601 (C.D. Cal.)..............................................................19

*Libonati v. Comcast Cablevision of Jersey City, Inc., et al.*,
   No. 08-3518 (D.N.J.) ..................................................................19

*Lis v. Comcast of Chicago Corp. et al.*,
   No. 08-3984 (N.D. Ill.) ...............................................................19

*Sidner v. Comcast of the District LLC*,
   No. 2008-CA-001180-B (D.C. Super. Ct.) ................................19

*Tan v. Comcast Corp.*,
   No. 08-2735 (E.D. Pa.) ...............................................................19

*Topolski v. Comcast Corp.*,
   No. 08-852 (D. Or.).....................................................................19

## STATUTORY AUTHORITIES AND RULES

28 U.S.C. § 1332.......................................................8, 10, 11, 12, 19, 20, 31

28 U.S.C. § 1407...............................................................................3

28 U.S.C. § 1453.............................................................................11

28 U.S.C. § 1653.............................................................................15

Fed. R. Civ. P. 19............................................................................19

Fed. R. Civ. P. 19 1966 Advisory Committee note ....................17, 18

Fed. R. Civ. P. 21............................................................................14

## MISCELLANEOUS

151 Cong. Rec. H721 ..................................................................................24, 28

151 Cong. Rec. S1067 ...........................................................................28

S. Rep. No. 109-14 (1st Sess. 2005) .................................2, 20, 22, 23, 25, 26, 27

## OTHER AUTHORITIES

Celia Milward, *Handbook for Writers* (1980) ....................................................6

Distributed Computing Industry Association, Comment On Petition For
    Rulemaking, No. 07-52, at 8 (Feb. 13, 2008), available at
    http://fjallfoss.fcc.gov/prod/
    ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519841058;............................18

15 James Wm. Moore et al., *Moore's Federal Practice* § 102.54 (3d ed. 1999) ...............9

16 James Wm. Moore et al., *Moore's Federal Practice* § 107.14 (3d ed. 1999) ...............4

Kenneth Wilson, *Columbia Guide to Standard American English* 342 (1993)...................6

Richard Karpinski, Telephony Online, *BitTorrent developers seek traffic-shaping
    route-around* (Feb. 19, 2008) available at http://telephonyonline.com/
    broadband/news/bittorrent-traffic-shaping-0219 ........................................18

Rodney Huddleston & Geoffrey K. Pullum, *Cambridge Grammar of the English
    Language*, Ch. 7, § 7.3 (2002) ......................................................5

Ryan Singel, *Comcast Sued Over BitTorrent Blocking*, Wired (Nov. 14, 2007) ...............1

*Webster's Third New International Dictionary* (3d ed. 1986) ..............................5

William A. Sabin, *Gregg Reference Manual* ¶ 1032 (7th ed. 1995) ..................6

## INTRODUCTION AND SUMMARY

This case is a paradigm for the sort of jurisdictional gaming that CAFA was intended to remedy.  Plaintiff's counsel reviewed the first-filed complaint brought by another firm in *Hart v. Comcast Corp. et al.*, No. 07-6350 (N.D. Cal.) making allegations about Comcast's network management practices and then began soliciting consumers to serve as class representatives in copy cat actions that they hoped could be contrived to avoid federal court and a single forum.[1] They filed their first copy cat case in the District of Columbia and then filed two more in the state courts of Illinois (this case) and New Jersey.  They then filed their fourth case in California, the state where the first-filed case was already being litigated on behalf of the same putative class.

Their complaints made identical nationwide allegations and quoted identical nationwide advertisements, but attributed them to different ***local*** entities that they apparently believed were citizens of the state in which they happened to be filing suit.  Indeed, plaintiff appears to have identified the defendants named in this Complaint not by their connection to any alleged conduct, but by their designation as "domestic" entities on the Illinois Secretary of State website. *See* Search Results for "Comcast," Illinois Secretary of State web site, available at http://www.ilsos.gov/corporatellc (attached hereto as Exhibit B).  When one chooses to search by partial business name and types "Comcast" as the search term, a list of approximately 70 entities is returned.  A review of each of those entities shows that plaintiff named only those entities that were identified on the Illinois Secretary of State's website as "domestic"—that is, organized in

---

[1]     *See* Ryan Singel, *Comcast Sued Over BitTorrent Blocking*, Wired (Nov. 14, 2007) (posting by plaintiff's counsel dated January 28, 2008, following an article about the first-filed *Hart* case, "seeking to bring an action against cable internet providers for exactly this type of consumer fraud" and soliciting clients to "to stand up against this direct infringement of the right to unfettered internet access") (attached hereto as Exhibit A).

Illinois—and ignored every entity that was designated "foreign."  For example, Plaintiff named

Comcast of Illinois I, Inc. and Comcast of Illinois III, Inc., as defendants here, but not Comcast

of Illinois II, Inc. or Comcast of Illinois V, LLC for no other apparent reason than the first two

are organized in Illinois, while the latter two are not.  As explained below, plaintiff's tactic did

not work as three of the named defendants had been reorganized under Delaware law.  But, even

if plaintiff had not named diverse defendants, his tactic left out all Illinois subscribers who

received service from franchises that are owned by entities domiciled outside of Illinois.

Then, after a third firm filed a nationwide class action in federal court under CAFA

naming Comcast Corporation as the defendant, and after the local defendants in the California

action moved to join Comcast Corporation's national operating entities as required defendants,

plaintiff's counsel filed a *fifth* action, this time in federal court in Oregon.  Incredibly, that fifth

complaint affirmatively alleges exactly what they are denying in this court – that Comcast

Corporation's national operating entities are the entities that are responsible for managing

Comcast's network and advertising its services nationally.

By striking out simultaneously in separate state courts at an interstate enterprise on a

subject of significant national interest, plaintiff is employing an age old tactic that is intended to

leverage the threat of inconsistency and chaotic inefficiency that CAFA was adopted to prevent.

*See, e.g., Pritchett v. Office Depot, Inc.*, 404 F.3d 1232, 1238 (10th Cir. 2005); S. Rep. No. 109-

14, at 4 (1st Sess. 2005).  As the Seventh Circuit observed:

> Relitigation can turn even an unlikely outcome into reality. . . .  A
> single positive trumps all the negatives.  Even if just one judge in
> ten believes that a nationwide class is lawful, then if the plaintiffs
> file in ten different states the probability that at least one will
> certify a nationwide class is 65%. . . .  Filing in 20 states produces
> an 88% probability of national class certification. . .  This happens
> whenever plaintiffs can roll the dice as many times as they
> please—when nationwide class certification sticks (because it

> subsumes all other suits) while a no-certification decision has no
> enduring effect.

*In re Bridgestone/Firestone Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 766-67 (7th Cir. 2003).

It is precisely these tactics that CAFA remedied, expanding federal jurisdiction and simplifying

removal procedures to permit the removal of putative class actions concerning nationwide

controversies such as this one.

Plaintiff's motion should be denied, because federal jurisdiction over this case exists

under CAFA, despite his counsel's various tactical ploys to evade its reach.  First, diversity

jurisdiction exists here because plaintiff named at least three minimally diverse defendants, and

because the plain reading of the putative class definition includes citizens of other states, one of

which Comcast has identified.  Second, the citizenship of required defendants may be considered

for purposes of determining whether minimal diversity exists, and it is beyond dispute that the

required defendants – Comcast's national operating entities – are not citizens of Illinois.  Finally,

plaintiff's invocation of CAFA's "home state exception" and "local controversy exception" is

unavailing because plaintiff cannot meet his burden of proving that this quintessentially interstate

controversy falls within either of these local remand provisions.[2]

---

[2]  Defendants have petitioned the Judicial Panel on Multidistrict Litigation to coordinate this and other actions for pretrial proceedings pursuant to 28 U.S.C. § 1407(a) and have moved to stay this action pending the Panel's decision.  In the interest of judicial economy and to avoid duplication of efforts, inconsistent rulings and prejudice to the parties, this case should be stayed and Plaintiff's Motion to Remand should be resolved by the transferee court upon coordination.

**ARGUMENT**

**I.    Minimal Diversity Jurisdiction Exists on the Face of the Complaint.**

Minimal diversity exists here because the class definition includes citizens of states other than Illinois, one of which the defendants have identified, and because at least three named defendants are minimally diverse.

**A.    The Putative Class Contains Citizens of Other States.**

Plaintiff defined the putative class broadly.  As defined in the Complaint, it includes anyone who was a citizen of Illinois and a Comcast subscriber on June 5, 2005 or later, but has since domiciled elsewhere.  Compl. ¶ 43 ("All citizens of Illinois who purchased or maintained high-speed Internet service from Comcast at any time between June 5, 2005 and the date that the Court certifies the class.").  Comcast has identified at least one such person.  Specifically, attached hereto is the declaration Eric J. Dullmeyer, who was a citizen of Illinois and a subscriber to Comcast's high-speed Internet service during the class period, but who had become a citizen of Florida by the time plaintiff filed his Complaint.  *See* Dullmeyer Decl. (attached hereto as Exhibit C).[3]

Plaintiff claims that his putative class was carefully defined to include only subscribers who were Illinois citizens at the moment the Complaint was filed, *i.e.*, so that it did not include people like Mr. Dullmeyer who were Illinois citizens during the class period (dating back to June

---

[3]    Plaintiff suggests that the defendants cannot supplement the evidentiary record to further demonstrate the propriety of removal.  It is well-settled, however, that removing parties may do just that.  *See, e.g.*, *Jadair, Inc. v. Walt Keeler Co.*, 679 F.2d 131, 132 (7th Cir. 1982) (concluding evidence set forth in defendant's memorandum and affidavits in its opposition to remand was properly before the court); *see also Bush v. Roadway Express, Inc.*, 152 F. Supp. 2d 1123, 1126 (S.D. Ind. 2001) (Defendant "could have used evidence discovered *after* removal to establish the jurisdictional amount, so long as the evidence pertained to the jurisdictional amount *at the time of* removal.") (emphasis in original) (*citing Harmon v. OKI Sys.*, 115 F.3d 477, 479-80 (7th Cir.1997)); 16 James Wm. Moore et al., Moore's Federal Practice § 107.14[2][g] (3d ed. 1999).

5, 2005) but who, before the Complaint was filed, relocated to and thus redomiciled in a different state.  Mot. to Remand at 5.  Plaintiff's pleading does not, however, limit the class in that way.

To the contrary, basic rules of grammar dictate that plaintiff's putative class definition includes all past citizens of Illinois who subscribed to Comcast service at the time they were citizens, as the word "all" in the class definition plainly modifies the entire class definition. "All" is defined as a "universal quantifier" which, when placed before the phrase "citizens of Illinois who purchased or received . . . .  service," modifies that entire phrase.  *See* Rodney Huddleston & Geoffrey K. Pullum, *Cambridge Grammar of the English Language*, Ch. 7, § 7.3 at 374-76 (2002); *see also Webster's Third New International Dictionary* 54 (3d ed. 1986) (defining "all" as "each and every one of – used in logic as a verbalized equivalent of the universal modifier.").  In this context, "all" is also a perfect substitute for "any," a word that the United States Supreme Court has noted "[r]ead naturally . . .  has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales,* 520 U.S. 1, 5 (1997) (quoting *Webster's Third New International Dictionary* 97 (1976)); *see also Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 835-37 (U.S. 2008) (discussing broad interpretation of word "any").  Plaintiff unduly limits the meaning of the word "all" by attempting to limit the class to subscribers who were Illinois citizens at the precise moment this case was filed.

Indeed, wholesale textual modifications would be required before plaintiff's class definition could be construed as comprised only of subscribers who were Illinois citizens when the Complaint was filed.  For example, plaintiff could have clarified that he was only representing "all *current* citizens of Illinois" or subscribers who "*are*" Illinois citizens.  Plaintiff also could have set apart the phrase "all citizens of Illinois" with "who *also* purchased or received . . . . service," though it is unclear that even this would have succeeded in creating a

non-diverse class.  Alternatively, plaintiff could have narrowed the class to only present Illinois

citizens if he had used the ***present perfect tense*** verbs "have purchased or received."  This tense

indicates action that "was started in the past and has recently been completed or is continuing up

to the present time."  William A. Sabin, *Gregg Reference Manual* ¶ 1032 (7th ed. 1995); *In re*

*Gwynne P.*, 830 N.E.2d 508, 518-519 (Ill. 2005) ("'Has prevented' is in the present perfect tense,

a verb form used to denote action beginning in the past and continuing to the present.") (citations

omitted); *Alch v. Superior Court*, 19 Cal. Rptr. 3d 29, 45 (Cal. App. 2004) ("In fact, 'have filed'

is the present perfect tense, a tense which indicates either that an action was completed at some

point in the past . . . . or that the action began in the past and continues up to and including the

present.").[4]

      Rather than using any of those other words to limit the scope of the putative class,

plaintiff chose to use the ***past tense*** verbs "purchased or received."  The past tense is, of course,

used to express actions that occurred at ***any time*** in the past.  That would logically include

anyone who subscribed to Comcast's service at any time during the past six years, including

people like Mr. Dullmeyer, who have since redomiciled.  Plaintiff's argument to the contrary

---

[4]     Using the present perfect tense in the class definition would have lent a
contemporaneousness to the phrase "all citizens of Illinois" that it currently lacks.  *See, e.g.,*
*Kentucky v. U.S. E.P.A.*, 165 F.3d 26 (table), No. 96-4274, 1998 WL 661138, at *3 (6th Cir.
Sept. 2, 1998) ("According to standard usage, the present perfect tense denotes past action with
an abiding effect or continuing relevance.") (citing Kenneth Wilson, *Columbia Guide to*
*Standard American English* 342 (1993); Celia Milward, *Handbook for Writers* 17, 463 (1980)).
Plaintiff's class definition contains none of these modifications, and the Court should not read
them into the definition to give it the meaning plaintiff now desires, just as it should not read
extra verbiage into a statute or contract to give it a meaning that was not originally intended.  *See*
*U.S. v. Ressam*, 491 F.3d 997, 1000 (9th Cir. 2007) ("[W]hen interpreting a statute, '[w]ith a
plain, nonabsurd meaning in view,' we should not undertake to add missing words or elements.")
(citing *Lamie v. U.S. Trustee,* 540 U.S. 526, 538 (2004)); *GNB Battery Tech., Inc. v. Gould, Inc.,*
65 F.3d 615, 622 (7th Cir.1995) ("When interpreting a contract, we cannot read terms into the
(continued…)

makes no sense, as it is both under inclusive (as it would exclude thousands of people who received service in Illinois during the class period, and thus have standing under Illinois law, but redomiciled outside of Illinois before the Complaint was filed) and over inclusive (as it would include thousands of people who received service outside of Illinois during the class period, and thus have no standing under Illinois law, but redomiciled in Illinois before the Complaint was filed).  Plaintiffs may be the masters of their complaints, but that mastery has limits.  Here, the plain reading of plaintiff's class definition includes diverse plaintiffs, and any contrary reading would defy both the rules of grammar and common sense.  Plaintiff's attempt to "clarify" his broad class definition now that it has become inconvenient is unavailing.

So, too, is plaintiff's reliance on *Schwartz v. Comcast Corp*., No. 05-2340, 2005 WL 1799414, at *2 (E.D. Pa. July 28, 2005).  In *Schwartz*, Comcast removed a putative class action because the class definition included persons "residing or doing business in the Commonwealth of Pennsylvania who subscribed to Comcast's high-speed internet service." *Id*. at *1.  Seeking remand, the plaintiff filed an amended complaint that included a new class definition that (unlike the one here) made it crystal clear that the new class would include only subscribers who "are" citizens of Pennsylvania, *i.e.*, only subscribers who were citizens of Pennsylvania at the precise instant the amended pleading was filed.  Schwartz Am. Compl. ¶ 1 ("Plaintiff and all Class Members *are* citizens of the Commonwealth of Pennsylvania.") (emphasis added) (attached hereto as Exhibit D); *id.* ¶ 18 ("all persons and entities who *are* citizens of the Commonwealth of Pennsylvania. . . .") (emphasis added).  By contrast, the proposed class definition in this case is

_____

(..continued)
language that are not expressly stated, nor will we ignore terms that are explicitly written therein.") (citations omitted).

*not* defined in terms of when the pleading was filed, but rather in terms of when subscribers such as Mr. Howard received service from Comcast.

Rejecting the plaintiff's post-removal attempts to clarify his class definition, the *Schwartz* court agreed that "[h]ypothetically speaking, there may be numerous members of the proposed class who are citizens of different states but who resided or did business in Pennsylvania and subscribed to Comcast's high-speed internet service during the relevant time period." *Schwartz*, 2005 WL 1799414, at *3. Comcast had identified such a subscriber, and as a result the court concluded that minimal diversity existed and denied the remand motion. As in *Schwartz*, the defendants in this case have identified a diverse member of the putative class, Mr. Dullmeyer, who was not a citizen of Illinois at the time the plaintiff's Complaint was filed, and who, therefore, confirms that minimal diversity exists. As in *Schwartz*, plaintiff's remand motion should be denied.

**B.      At Least Three of the Named Defendants are Minimally Diverse.**

Plaintiff does not dispute that Comcast Indiana/Michigan/Texas LP ("Comcast Indiana"), Comcast MO Telecommunications Corp. ("Comcast MO"), and Comcast Programming Holdings, Inc. ("Comcast Programming") are not organized in Illinois. Rather, citing pre-CAFA case law, he argues that Comcast Indiana's citizenship should be defined by the citizenships of its members. Pl.'s Mot. to Remand at 7. But, Congress explicitly rejected this pre-CAFA law. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see Kitson v. Bank of Edwardsville*, No. 06-528, 2006 U.S. Dist. LEXIS 85285, at *24 n.3 (S.D. Ill. Nov. 22, 2006). To determine a corporation's principal place of business, the Seventh Circuit applies the nerve center test, under which an entity's principal place of business "presumptively is where its executive headquarters are located." 15-102 Moore's Federal Practice

- Civil § 102.54 (citing *Metropolitan Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223

(7th Cir. 1991); *Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280 (7th Cir. 1986)).

Under the nerve center test, Comcast Indiana's principal place of business is in

Pennsylvania. *See* Certificate of Merger of Comcast Illinois/Texas Inc. (attached as Exhibit B to

Notice of Removal) (noting place of business of surviving entity is in Philadelphia,

Pennsylvania); Certificate of Merger of Comcast of Plano, LP, *et al.* (attached as Exhibit C to

Notice of Removal) (same). Similarly, Comcast MO is also diverse, as evidenced by the 2007

Annual Report of Comcast MO Telecommunications Corp. (attached hereto as Exhibit E)

(hereinafter "Comcast MO 2007 Filing"); *see also* Certificate of Merger and Ownership of

Comcast MO Express of Illinois, Inc. (attached as Exhibit D to Remand Motion). That

document, filed with the Delaware Secretary of State, provides that Comcast MO's "Principal

Place of Business," its Vice President, and its Director are all located in Philadelphia,

Pennsylvania. Comcast MO 2007 Filing. Finally, Comcast Programming is also diverse,

because it is organized under Delaware law and does not have its corporate headquarters in

Illinois. *See* Comcast Programming Holding, Inc. 2007 Annual Filing (attached hereto as

Exhibit F) (hereinafter "Comcast Programming 2007 Filing). As the Comcast Programming

2007 Filing shows, its "Principal Place of Business," Officer, and Directors are all located in

Delaware. *Id.* Thus, because these three entities' states of incorporation and principal places of

business are outside of Illinois, diversity jurisdiction is present.

Furthermore, for class actions covered by CAFA, complete diversity of citizenship is no

longer required; rather, CAFA requires only minimal diversity between adverse parties. *See* 28

U.S.C. § 1332(d)(2). The United States Supreme Court has noted that the minimal diversity

requirement may be satisfied where one party has multiple citizenship:

> We understand "minimal diversity" to mean the existence of at least one party who is diverse in citizenship from one party on the other side of the case, even though the extraconstitutional "complete diversity" required by our cases is lacking.  It is possible, though far from clear, that one can have opposing parties in a two-party case who are co-citizens, and yet have minimal Article III jurisdiction because of the multiple citizenship of one of the parties.  Although the Court has previously said that minimal diversity requires "two adverse parties who are no co-citizens," the Court did not have before it a multiple-citizenship situation.

*Grupo Dataflux v. Atlas Global Group*, L.P., 541 U.S. 567, 577 n.6 (2004) (citation omitted).  In fact, at least one federal court to analyze CAFA's minimal diversity requirement in a multiple-citizenship situation found that diversity jurisdiction existed where one of the defendant's states of citizenship was diverse from that of the putative class.  *See Fuller v. Home Depot Servs., LLC*, No. 07-1268, 2007 U.S. Dist. LEXIS 59770, at *7 (N.D. Ga. Aug. 14, 2007).  In *Fuller*, defendant Home Depot was incorporated in Delaware, with a principal place of business in Georgia and was deemed "a citizen of both states," while the putative class was limited to citizens of Georgia.  *Id.*  The court rejected plaintiff's argument that diversity was lacking because both the class and Home Depot were citizens of Georgia.  *Id.*  The court reasoned that

> that does not complete the citizenship analysis.  Home Depot is also a citizen of Delaware because that is its state of incorporation.  Consequently, even assuming that the plaintiff and all potential class members are citizens of only Georgia, the minimal diversity requirement is met here because Home Depot is a citizen of a different state—Delaware.  In other words, although Home Depot is a citizen of Georgia, it is also a citizen of Delaware and, therefore, is diverse from at least one member of the class.  Thus, minimal diversity has been established.

*Id.* at *7-8.

Because Plaintiff does not dispute that Comcast Indiana, Comcast MO, and Comcast Programming are all organized under Delaware law, these entities are minimally diverse from

Plaintiff, who alleges that he is a citizen of Illinois.  *See* 28 U.S.C. § 1332(d)(10); Notice of

Removal ¶¶ 6-8 and Exhibits B-E thereto.  Plaintiff's remand motion should be denied.

## II.      The Absent But Required Defendants Are Also Citizens of Another State.

### A.      The Citizenship of Required Defendants Must Be Considered.

Minimal diversity also exists here because the absent—but required—parties are diverse.

Plaintiff argues that considering the citizenship of absent but required parties for purposes of

establishing minimal diversity jurisdiction under CAFA violates "the well-settled rule" that

diversity is determined at the time of removal.  Pl's. Mot. to Remand at 9.  Plaintiff is mistaken.

Indeed, many previously "well-settled" rules, including the rule against aggregating class

members' damages, the rule that all defendants must consent to removal, the rule that removal

must occur within one year of filing, the rule that the citizenship of unincorporated associations

is analyzed differently than that of corporations, the rule that a defendant may not remove an

action filed in its home state, and the rule that remand orders are not ordinarily appealable, no

longer apply after CAFA.  *See* 28 U.S.C. § 1332(d)(6), 1453(b), 1332(d)(10), 1453(c)(1).  Those

explicit changes have resulted in many implicit changes as well.  *See, e.g.*, *Berry v. Am. Express

Publ'g, Corp.*, 381 F. Supp. 2d 1118, 1123 (C.D. Cal. 2005) (holding that CAFA's explicit

aggregation rule implicitly overruled the former rule that the value of injunctive relief could not

be considered from a defendant's viewpoint); *Kearns v. Ford Motor Co.*, No. 05-5644, 2005

U.S. Dist. LEXIS 41614, at *19 (C.D. Cal. Nov. 21, 2005) (holding that damages sought from all

defendants must be aggregated to determine amount in controversy); *Springman v. AIG Mktg.,

Inc.*, No. 07-737, 2007 U.S. Dist. LEXIS 84125, at *10-11 (S.D. Ill. Nov. 14, 2007) (holding that

CAFA's explicit non-unanimity rule implicitly overruled former "first-served defendant rule").

The most relevant of the pre-CAFA rules to change is the complete diversity requirement,

which was replaced by CAFA's minimal diversity requirement.  *See* 28 U.S.C. § 1332(d)(2)(A).

Before CAFA, the omission of a diverse defendant would not have prompted a party to remove based on "fraudulent non-joinder" because the presence of even one non-diverse defendant prohibited removal.  But CAFA eliminated the complete diversity requirement, and as a result there is no "well-settled" body of law that governs, let alone prohibits, the removal of this case.

To the contrary, the only relevant decision cited by either side is the one cited by the defendants, specifically *Roche v. Country Mutual Insurance Co.*, No. 07-367, 2007 WL 2003092 (S.D. Ill. July 6, 2007), which supports the removal of this case.  In *Roche*, the court explained that, before CAFA, plaintiffs seeking to remain in state court would often take advantage of the traditional complete diversity requirement by naming an unnecessary local defendant whose presence, on the face of the complaint, destroyed complete diversity.  After CAFA, this form of jurisdictional gaming still exists, but has been turned on its head.  Now, plaintiffs seeking to remain in state court are trying to distort the purpose of the ***minimal*** diversity requirement by naming ***only*** unnecessary local defendants whose presence, on the face of the complaint, does not appear to support minimal diversity.

That is exactly what happened in *Roche*.  In *Roche*, the plaintiff chiropractor filed a putative class action against defendant Country Mutual Insurance Company ("Country"), alleging that it discounted her claim for reimbursement in accordance with her agreement with Corvel Corporation, a network administrator of a preferred provider organization.  Roche alleged that Country and Corvel had a "silent PPO" scheme, in which Country accessed Corvel's schedule of discounts and used this access to discount claims by providers like Roche, in turn providing a percentage of the discount back to Corvel.  *Id.* at *1.  Country removed the action under CAFA, arguing that, while it and Roche were citizens of Illinois, minimal diversity existed because Corvel, a citizen of Delaware and California, was "a real party in interest and a person

needed for just adjudication of [the] action within the meaning of Rule 19 of the Federal Rules of Civil Procedure." *Id*. at *2.

The court recognized that, even before CAFA, the rule that a court must generally disregard post-removal events when evaluating the existence of diversity jurisdiction "is subject to the important qualification . . . that a court may consider any post-removal event that sheds light on the existence of federal subject matter jurisdiction when a case was filed or removed." *Id*. (citing *Harmon v. OKI Sys*., 115 F.3d 477, 479-80 (7th Cir. 1997)).  Finding "no principled distinction between, on the one hand, destruction of jurisdiction by the joinder of a mandatory party and, on the other hand, creation of jurisdiction by such joinder," the court concluded that post-removal joinder of a mandatory party to create minimal diversity of citizenship under CAFA "does not violate the rule that the existence of such jurisdiction must be evaluated as of the time of removal." *Id.* at *3.  Although the *Roche* court ultimately decided that Corvel was not in fact a required party, that in no way diminishes its conclusion that the joinder of a mandatory party can establish minimal diversity for purposes of CAFA.  The court's conclusion is not, as plaintiff suggests, dicta.  Nor is there any other reason it should not be followed.

Plaintiff's argument that defendants' "failure" to file a joinder motion distinguishes it from *Roche* is equally unavailing.  First, defendants seeking removal under the fraudulent joinder doctrine generally do not (and certainly are not required to) file motions to dismiss the "sham" defendants in connection with their notices of removal, and thus defendants in situations such as this should not be expected to file a joinder motion, notwithstanding the fact that the defendants in the *Roche* case elected to do so.  Indeed, Federal Rule of Civil Procedure 21 authorizes courts

to join or dismiss a party "at any time," either "[o]n motion or on its own."  Fed. R. Civ. P. 21.[5]

Second, defendants have filed a motion to compel arbitration, and plaintiff no doubt would have

argued that the defendants waived their right to arbitration if they filed a joinder motion before

the arbitration issue had been decided.[6]  Third, had Comcast postponed its removal notice until

after seeking joinder of the necessary defendants in state court, plaintiff would surely have

argued that the time for removal had expired, pointing to *Roche* as providing Comcast with fair

warning that the original complaint was removable under CAFA.

Finding that minimal diversity can be established by virtue of post-removal mandatory

joinder is not inconsistent with "well-settled rules," but is in fact entirely consistent with them,

as courts have been ordering the dismissal of "sham" defendants for over a century, even though

the presence of those parties in the caption meant that federal diversity jurisdiction under Section

1332(a) did not exist on the face of the Complaint.  *See, e.g.*, *Wecker v. Nat'l Enameling &*

*Stamping Co.*, 204 U.S. 176, 186 (1907); *see also Newman-Green, Inc. v. Alfonzo-Larrain R.*,

854 F.2d 916, 924 (7th Cir. 1988), *rev'd on other grounds*, 490 U.S. 826 (1989), ("Rule 21 (or its

predecessors) empowers a district court to dismiss, at any stage of the proceedings, a party

whose presence destroys complete diversity, if such dismissal is necessary to preserve diversity

jurisdiction and would not harm other parties."); *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135,

1142 (9th Cir. 2003) (noting that Rule 21, which allows dismissal and joinder, is "viewed as a

grant of 'discretionary power to the federal court to perfect its diversity jurisdiction by dropping

---

[5]      Contrary to Plaintiff's suggestion, there is nothing about this removal that is inconsistent with the plain language of Rule 19 or 21.  Rule 19 demands the joinder of a required party so long as that joinder will not **deprive** the court of jurisdiction, and the joinder of the national operating entities does not deprive the court of jurisdiction, but instead is one way to establish it.

[6]      Defendants are willing to submit a joinder motion if plaintiff stipulates and the Court agrees that doing so does not evidence a waiver of defendants' arbitration rights.

a non-diverse party provided the nondiverse party is not indispensable to the action under Rule

19'") (quoting *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980)).

Indeed, the Supreme Court has found that purported jurisdictional defects can be cured

not only by "post-removal" events, but also by "post-judgment" and even "post-appeal" events.

For example, in *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826 (1989), the Court held

"that a ***court of appeals*** may grant a motion to dismiss a dispensable party whose presence spoils

statutory diversity jurisdiction." *Id.* at 827 (emphasis added).  Although recognizing that neither

28 U.S.C. § 1653 (allowing trial and appellate courts to amend defective allegations of

jurisdiction), nor Rule 21 (applicable to district courts) empowers appellate courts to dismiss

parties to perfect diversity jurisdiction, the Court concluded that appellate courts, like district

courts, have the authority to dismiss a dispensable nondiverse party to preserve complete

diversity.  *Id.* at 830-33.  The Court's holding was both intended to avoid "impos[ing]

unnecessary and wasteful burdens on the parties, judges, and other litigants awaiting judicial

attention," *id.* at 836, and as a recognition that, "because 'law is an instrument of governance

rather than a hymn to intellectual beauty, some consideration must be given to practicalities,'" *id.*

at 837 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 854 F.2d 916, 925 (7th Cir. 1987)

(Posner, J.)).  Concluding that Bettison was not indispensible to the suit, the Court determined

that only "a waste of time and resources would be engendered by remanding to the District Court

or by forcing these parties to begin anew." *Newman-Green*, 490 U.S. at 838.  *Accord id.* at 833-

34 & n.8 (discussing *Mullaney v. Anderson*, 342 U.S. 415 (1952) (granting union's motion to add

two of its members as parties "to establish the existence of a justiciable case . . . [because] it was

not clear that unions had standing to sue on behalf of their members.")).

The Supreme Court' reasoning is instructive here.  This Court has the authority to – and should – join required parties, the citizenships of which create minimal diversity.  Joining the national operating entities at this stage of the litigation would not prejudice the parties, as the case is in its infancy and doing so would enable the case to move forward fully and efficiently.  Moreover, doing so would avoid "impos[ing the] unnecessary and wasteful burdens on the parties, judges, and other litigants awaiting judicial attention," *id*. at 836, with which the *Newman-Green* Court was so concerned.

In sum, allowing minimal diversity to be decided based on the citizenship of omitted but required defendants is not only consistent with pre-CAFA practice, but also promotes CAFA's purpose of providing a federal forum for class actions that truly involve minimally diverse parties invoking matters of interstate interest, and prevents unnecessary motion practice and games of jurisdictional hot potato.  Just as courts before CAFA resisted the fraudulent joinder of non-diverse parties in order to avoid Section 1332(a)'s complete diversity requirement, so too should courts after CAFA resist the fraudulent ***non***-joinder of ***diverse*** parties in order to avoid Section 1332(d)'s minimal diversity requirement.

**B.     The National Operating Entities Are Required Defendants.**

Although the parties have not fully briefed the joinder issue, it is difficult to understand how plaintiff will resist joinder, as his counsel filed the nearly identical Oregon federal court action naming Comcast's national operating entities as the ***only*** defendants.  The Declaration of Senior Vice President and General Manager of Online Services Mitch Bowling that was filed with the joinder motion in *Leigh* provides ample evidence that here, as in *Leigh*, the national operating entities are required parties.  *See Leigh v. Comcast of California II, et al.*, Declaration of Mitch Bowling in Support of Mot. For Order Joining Comcast Cable Commc'ns Holdings,

Inc., Comcast Cable Commc'ns LLC & Comcast Cable Mgmt. LLC (filed July 14, 2008) (hereinafter "Bowling Declaration") (attached hereto as Exhibit G).

Under Rule 19(a), the national operating entities are considered required parties if (1) the Court cannot accord complete relief to the class in their absence, *or* (2) they assert a legally protected interest in the litigation such that a decision in their absence will (a) impair or impede their ability to protect that interest *or* (b) expose the class or subsidiaries to the risk of multiple or inconsistent obligations by reason of that interest.  Although the Court need only find that one of the Rule 19(a) criteria has been satisfied, *accord N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 648 (7th Cir. 1998), ***both*** are satisfied here.

The purpose of this first prong of Rule 19(a)(1) is to promote finality and judicial efficiency, as it benefits no one to incur the time and costs of litigation if, at its conclusion, the controversy is not actually adjudicated because the named parties are incapable of providing the relief sought.  Rule 19(a) stresses the desirability of joining those persons in whose absence "the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court, and. . . . avoiding repeated lawsuits on essentially the same subject matter." *Gateway Assocs., Inc. v. Essex-Costello, Inc.*, 380 F. Supp. 1089, 1095 (N.D. Ill. 1974) (citing Fed. R. Civ. P. 19(a) 1966 Advisory Committee note to the amended rule).  Here, plaintiff seeks to enjoin certain national advertising and marketing, which he concedes are the sole focus of his claims.  The named defendants are not, however, capable of providing that relief.  *See* Bowling Decl. ¶¶ 9, 11, 14, 15, 16.  Rather, it is the unnamed national operating entities that develop and deliver all national advertisements, communicate with subscribers through other media, and develop the disclosures contained in the Comcast Agreement for Residential Services, the Acceptable Use Policy, and the Answers to Frequently Asked Questions that appear on

Comcast's publicly accessible web sites, www.comcast.com and www.comcast.net.  *Id.* ¶ 10.  In short, an order enjoining advertising or marketing practices is only meaningful if the party enjoined is capable of compliance.  As this case currently stands, the only entities capable of compliance – the national operating entities – have not been named in this action.

Rule 19's second, alternate prong is also met here.  The national operating entities have a protected interest both in their network as well as its management, both of which will be impaired or impeded if any network management practices or disclosures are enjoined.  Under Rule 19(a)(1)(B)(i), a court must decide whether a party's absence "may as a practical matter impair its ability to protect [its] interest."  *Mayer Paving & Asphalt Co. v. Gen. Dynamics Corp.*, 486 F.2d 763, 771 (7th Cir. 1973).  Any decision regarding Comcast's network management practices or policies could affect the integrity of the national operating entities' entire network.  *See* Bowling Decl. ¶ 12, 13.  For example, whether and to what extent additional network management disclosures are mandated will have a profound effect on the national operating entities' ability to maintain the network for all subscribers nationwide.  Because Internet users can develop ways to circumvent network management if given sufficient information, certain disclosures could result in a prohibition of such management altogether.[7]  Given these interests, and the risk of their impairment, the national operating entities should be joined in this litigation and given the opportunity to fully present their position.

---

[7]    *See, e.g.*, Distributed Computing Industry Association, Comment On Petition For Rulemaking, No. 07-52, at 8 (Feb. 13, 2008), available at http://fjallfoss.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519841058; Richard Karpinski, Telephony Online, *BitTorrent developers seek traffic-shaping route-around* (Feb. 19, 2008) (reporting only one week after Comcast filed FCC comments that a group of BitTorrent programmers had used the now-public information to develop a way to "thwart" Comcast's P2P network management), available at http://telephonyonline.com/ broadband/news/bittorrent-traffic-shaping-0219.

Furthermore, adjudication of this case in the national operating entities' absence may result in inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii); *Gen. Elec. Capital Corp. v. Sheffield Sys., Inc.*, No. 01 C 6342, 2002 WL 1759823, at *2 (N.D. Ill. July 29, 2002) (finding that absence of third party in an action could unfairly force it to be the sole obligor to a contract). This case is one of eight putative class actions involving the same allegations. Five,[8] including this case, have been brought against local Comcast subsidiaries and involve virtually identical complaints, while three include claims against Comcast Corporation or its national operating entities.[9] Different rulings against different Comcast entities concerning advertising or marketing practices could result in conflicting judgments, making compliance with such rulings impossible. Joining the proper defendants is the only way to prevent that from happening.

## III. Plaintiff Has Failed to Demonstrate a Proper Basis for Remand Under The "Home State Exception" and "Local Controversy Exception."

Plaintiff alternatively contends that the Court should abstain from exercising jurisdiction pursuant to CAFA's "home state exception" and/or "local controversy exception." Pl's. Mot. to Remand at 14. These are limited remand provisions that do not apply here. First, both of these remand provisions require that more than two-thirds of the putative class are citizens of the state in which the action was filed, *see* 28 U.S.C. §§ 1332(d)(4)(A)-(B), and plaintiff has not satisfied his burden of proving that to be the case. Second, the home-state exception requires that all of the primary defendants be citizens of Illinois, and the local controversy exception requires that at least one significant defendant be a citizen of Illinois, but as a result of plaintiff's jurisdictional

---

[8]    *See Lis v. Comcast of Chicago Corp. et al.*, No. 08-3984 (N.D. Ill.); *Libonati v. Comcast Cablevision of Jersey City, Inc., et al.*, No. 08-3518 (D.N.J.); *Leigh v. Comcast of California II, Inc., et al.*, No. 08-4601 (C.D. Cal.); *Sidner v. Comcast of the District LLC*, No. 2008 CA-001180-B (D.C. Super. Ct.); *Aliano v. Comcast of Chicago, Inc. et al.*, No. 08-5320 (N.D. Ill.).

[9]    *See Hart v. Comcast of Alameda, Inc. et al.*, No. 07-6350 (N.D. Cal.); *Tan v. Comcast Corp.*, No. 08-2735 (E.D. Pa.); *Topolski v. Comcast Corp.*, No. 08-852 (D. Or.).

gaming, none of the named defendants qualifies as a primary or significant defendant.  Third, the

local controversy exception requires that the injuries alleged must have arisen in Illinois rather

than nationwide, and the many complaints filed by plaintiff's counsel clearly demonstrate the

nationwide nature of these claims.  Finally, the local controversy exception requires that no other

class action asserting the same or similar allegations can have been filed against any of the

defendants within three years.  *See* 28 U.S.C. § 1332(d)(4)(A).

### A.   Plaintiff Has Not Satisfied His Burden of Proof As to The Putative Class Members' Citizenship.

Plaintiff has not offered any evidence, let alone persuasive evidence, that the composition

of the putative class brings this action within any of CAFA's so-called "exceptions."  Congress

made it abundantly clear (and every Circuit to examine the issue has held) that a plaintiff seeking

remand bears the burden of proving that the court should decline its jurisdiction pursuant to one

of CAFA's remand provisions.  *See, e.g.*, *Hart v. FedEx Ground Package Sys., Inc.,* 457 F.3d

675, 679 (7th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007);

*Evans v. Walter Indus., Inc.*, 449 F.3d 1159 (11th Cir. 2006); *Frazier v. Pioneer Ams. LLC*, 455

F.3d 542 (5th Cir. 2006); S. Rep. No. 109-14, at 42-44 ("Allocating the burden in this manner is

important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with

***vague class definitions*** or other efforts to obscure the citizenship of class members.") (emphasis

added).  Indeed, plaintiff has not even attempted to prove that more than two-thirds of the

putative class are citizens of Illinois.  As discussed above, the class definition includes citizens of

other states, and plaintiff has offered no evidence to demonstrate what the actual composition of

the class might be.  *See, e.g.*, *Gerstenecker v. Terminix Intern., Inc.*, No. 07-0164, 2007 WL

2746847 at *3 (S.D. Ill. Sept. 19, 2007) (Plaintiff "offers no affidavits, interrogatories, or any

other evidence of citizenship. A plaintiff seeking to establish the local controversy exception

must present evidence in order to meet his burden of proof."); *Musgrave v. Aluminum Co. of Am., Inc.*, No. 06-0029, 2006 WL 1994840, at *2 (S.D. Ind. July 14, 2006) ("Plaintiffs are bound by the class as defined in their complaint.  Without further evidence, the court is unable to determine at this time whether or not two-thirds or more of the members of the class are citizens of the State of Indiana.") (citation omitted); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (finding plaintiff's "bare assertions in its motion as to the citizenship of the putative class" insufficient to meet its burden); *McMorris v. TJX Cos., Inc.*, 493 F. Supp. 2d 158, 164 n.2, 165-66 (D. Mass. 2007) (concluding that plaintiff could not satisfy its burden of proof merely saying it was "clear that at least two-thirds of the members of the putative class are citizens of Massachusetts"); *Nichols v. Progressive Direct Ins. Co.*, No. 06-0146, 2007 WL 1035014, at *3 (E.D. Ky. Mar. 31, 2007) (refusing to invoke remand provisions because plaintiff's argument relied on "sheer speculation" and provisions could not be invoked "without further proof"); *Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 801-02 (5th Cir. 2007) (reasoning "plaintiffs are in the best position to establish citizenship and produce probative evidence" and without it "the district court could not make the requisite credible estimate necessary to remand under the local controversy exception"); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) ("[E]vidence of class citizenship might be difficult to produce in this case.  That difficulty, however, is to a considerable degree a function of the composition of the class designed by plaintiffs.").  This alone dooms plaintiffs' argument that these "exceptions" apply.

### B.     The "Primary" or "Significant" Defendants Are Not Citizens of Illinois.

The "home state exception" only applies when *all* of the primary defendants are citizens of the state in which the action was filed, here, Illinois.  *See, e.g.*, *Anthony,* 535 F. Supp. 2d at 515; *Kearns*, 2005 U.S. Dist. LEXIS 41614, at *9-11; *Harrington v. Mattel, Inc.*, No. 07-5110,

2007 U.S. Dist. LEXIS 95401, at *14 (N.D. Cal. Dec. 20, 2007); *Robinson v. Cheetah Transp.*,

No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006); *Kendrick v. Standard Fire Ins.*

*Co.*, No. 06-0141, 2007 WL 1035018, at *5 (E.D. Ky. Mar. 31, 2007); *Sullivan v. State Farm*

*Fire & Cas. Ins. Co.*, No. 06-0004, 2006 U.S. Dist. LEXIS 95817, at *17 n.5 (E.D. La. Apr. 6,

2006).  Courts have found that the term "primary defendants" should be:

> [i]nterpreted to reach those defendants who are the real "targets" of
> the lawsuit – *i.e.*, the defendants that would be expected to incur
> most of the loss if liability is found.   Thus, the term "primary
> defendants" should include any persons who has substantial
> exposure to significant portions of the proposed class in the action,
> particularly any defendant that is allegedly liable to the vast
> majority of the members of the proposed classes (as opposed to
> simply a few individual class members).

*Harrington*, 2007 U.S. Dist. LEXIS 95401, at *14-15 (quoting S. Rep. No. 109-14, at 43); *see*

*also Hangarter v. Paul Revere Life Ins. Co.*, No. 05-4558, 2006 WL 213834, at *3 (N.D. Cal.

Jan. 26, 2006); *Anthony*, 535 F. Supp. 2d at 515.

Similarly, for purposes of the local controversy exception, most courts have found that a

"significant" defendant is one whose liability to the class—as  a whole—is  "significant" when

compared to that of the other defendants.  *See, e.g.*, *Evans*, 449 F.3d at 1167 (holding that

defendant was not "significant" because there was no evidence as to its "comparative

significance relative to the relief sought from the other 17 named co-defendants" or relative to

the conduct of the other named co-defendants).[10]  That interpretation is consistent with CAFA's

---

[10]     *Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 WL 64162, at *3 (E.D. La. Jan. 8, 2007)
(rejecting CAFA's legislative history but stating that "whether a class seeks 'significant relief'
against a defendant is determined by whether the relief sought against that defendant is
significant relative to the relief sought against the other codefendants."); *Robinson v. Cheetah*
*Trans.,* No. 06-0005*,* 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006) ("[W]hether a putative
class seeks significant relief from an in-state defendant includes not only an assessment of how
many members of the class were harmed by the defendant's actions, but also a comparison of the

(continued…)

legislative history.  *See* S. Rep. No. 109-14, at 40 ("Under the second criterion, there must be at

least one real local defendant.  By that, the Committee intends that the local defendant must be a

primary focus of the plaintiffs' claims—not just a peripheral defendant.  The defendant must be a

target from whom significant relief is sought by the class (as opposed to just a subset of the class

membership), as well as being a defendant whose alleged conduct forms a significant basis for

the claims asserted by the class.  For example, in a consumer fraud case alleging that an

insurance company incorporated and based in another state misrepresented its policies, a local

agent of the company named as a defendant presumably would not fit this criteria.  He or she

probably would have had contact with only some of the purported class members and thus would

not be a person from whom significant relief would be sought by the plaintiff class viewed as a

whole.  Obviously, from a relief standpoint, the real demand of the full class in terms of seeking

significant relief would be on the insurance company itself.  Similarly, the agent presumably

would not be a person whose alleged conduct forms a significant basis for the claims asserted.

---

(..continued)
relief sought between all defendants and each defendant's ability to pay a potential judgment.");
*Kearns v. Ford Motor Co.,* No. 05-5644, 2005 WL 3967998, at *9-11 & n.12 (C.D. Cal. Nov.
21, 2005) (defining "significant" defendants as those defendants against whom the relief is
significant when "measured with respect to that sought by the entire class," not an "isolated role
player" in part of an alleged nationwide scheme); *Escoe v. State Farm Fire & Cas. Co.*, No. 07-
1123, 2007 WL 1207231, at *2 (E.D. La. Apr. 23, 2007) ("The case law concludes that a
putative class seeks 'significant relief' against the defendant when the relief sought against that
defendant is a significant portion of the relief sought by the class.  This involves an assessment
of how many member[s] of the putative class were allegedly harmed by the in-state defendant
and a comparison of the relief sought between all defendants and each defendant's ability to pay
a potential judgment. . . .  There are many State Farm agents.  Thus it is unlikely that all of the
putative class members bought their State Farm homeowners insurance from Glass.  Also,
Glass's ability to pay any potential judgment is much smaller than State Farm's.") (citations
omitted); *Mattera v. Clear Channel Commc'ns Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (finding
that defendant was "significant defendant" because a "significant portion of the relief" sought by
the plaintiff would come from that defendant); *Casey v. Int'l Paper Co.*, No. 07-421, 2008 U.S.

                                                              (continued…)

At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company. In this instance, the real target in this action (both in terms of relief and alleged conduct) is the insurance company, and if that company is not local, this criterion would not be met."); 151 Cong. Rec. H721, 731 ("[T]here must be at least one real local defendant. And by that the drafters meant that the local defendant must be a primary focus of the plaintiffs' claims, not just a retailer or other peripheral defendant. The defendant must be a target from whom significant relief is sought by the class, as opposed to just a subset of the class membership, as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class. For example, in a consumer fraud case, alleging that an insurance company incorporated and based in another State misrepresented is policies, the local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and, thus, would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. And, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.") (Statement of Rep. Sensenbrenner).

Here, plaintiff has not satisfied his burden of proving that ***any*** of the named defendants had ***anything*** to do with the marketing and advertising about which he now complains, let alone demonstrate that the conduct of any of the named local defendants forms a significant basis of the claims he asserts. Because plaintiff purposefully omitted from his Complaint any entity that could comply with the injunction he requests, he has failed to name even one "significant" or

---

(..continued)
Dist. LEXIS 1298, at *13-20 (N.D. Fla. Jan. 7, 2008); *Phillips v. Severn Trent Envt'l. Servs., Inc.*, No. 07-3889, 2007 U.S. Dist. LEXIS 69536, at *8 (E.D. La. Sept. 19, 2007).

"primary" defendant.[11]  Plaintiff points to Comcast's Agreement for Residential Services, which, not inconsequentially, he obtained from the national operating entities' web site, *see* Pls.' Mot. to Remand at 1, as evidence that the named local defendants are "primary" or "significant" defendants.  But, throughout his remand motion, he repeatedly stressed that his claims are based solely on "Comcast's false advertising of its high-speed Internet service," *id*. at 1, and "***not*** the actual methods with which they manage that service."  *Id.* at 12 (emphasis in original).  He offers no explanation as to how the named defendants are responsible for advertising or marketing.  Nor could he; as discussed above and in the Declaration of Mitch Bowling, the local subsidiaries that plaintiff named in his attempt to avoid federal jurisdiction are ***not*** responsible for the disclosures and/or representations made in Comcast's national advertising and marketing, its Comcast Agreement for Residential Services, its Acceptable Use Policy, or its web sites.  *See* Bowling Decl. ¶¶ 9-10.

Moreover, plaintiff has not demonstrated that any one of the named franchise-holding subsidiaries is a defendant "'from whom significant relief would be sought by the plaintiff class ***viewed as a whole***.'"  *Robinson*, 2006 WL 468820, at *3 (emphasis added) (quoting S. Rep. No. 109-14, at 40 (2005); *see also Evans,* 449 F.3d  at 1167; *Caruso*, 2007 WL 64162, at *3; *Kearns*, 2005 WL 3967998, at *9-11 & n.12; *Escoe*, 2007 WL 1207231, at *2 *Mattera*, 239 F.R.D. at 80; *Casey*, 2008 U.S. Dist. LEXIS 1298, at *13-20; *Phillips*, 2007 U.S. Dist. LEXIS 69536, at *8.  Rather, the Agreement for Residential Services cited by plaintiff states that services are provided "by the operating company subsidiary of Comcast Corporation that owns and/or operates the cable television system in your area."  Pl.'s Mot. to Remand Ex. 1.  Plaintiff has not shown that

---

[11]     Assuming for the sake of argument that the named defendants are "primary" defendants, they are not all citizens of Illinois as required by the home state exception, as Plaintiff cannot show that the minimally diverse defendants are any less "primary" than the other defendants.

all members of the putative class received service from one, common named defendant.  Because each of the named defendants purportedly provided service to different areas, each may in theory be liable to a different subset of putative class members, but none of them is a defendant from whom relief is sought by the entire class.  *See Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 368 (E.D. La. 2007) (reasoning that "whether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants").  In other words, none of them is a "significant" defendant for purposes of CAFA's local controversy exception.

> ### C.   The Alleged Controversy Is A Nationwide One, Not a Local One.

The local-controversy exception is also inapplicable because subscribers throughout the country allegedly suffered the same injury.  In other words, the "controversy" is not a local one, even if the plaintiff had limited the class to include only Illinois citizens (which he did not).  The fact that numerous copy cat lawsuits have been filed in different jurisdictions throughout the United States – by plaintiff's counsel and others – demonstrates as much.

The purpose of the local-controversy exception is to "ensure[] that where appropriate, state courts can adjudicate certain class actions that have a truly local focus."  S. Rep. No. 109-14, at 28; *see id.* at 38 ("This provision is intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes.  At the same time, this is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole.  Thus, the Committee wishes to stress that in assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy – a controversy that uniquely affects a particular locality to the

exclusion of all others."); *id.* ("The third criterion is that the principal injuries resulting from the actions of all the defendants must have occurred in the state where the suit was filed. . . . However, if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action."); *id.* at 41 ("[For example, a] class action is brought in Florida against an out-of-state automobile manufacturer and a few in-state dealers, alleging that a certain vehicle model is unsafe because of an allegedly defective transmission.  The vehicle model was sold in all fifty states but the class action is only brought on behalf of Floridians.  This case would not fall within the Local Controversy Exception. . . . [T]he case falls outside the Local Controversy Exception because the 'principal injuries resulting from the alleged conduct,' – *i.e.*, selling a vehicle with a defective transmission – were incurred in all fifty states.  The fact that the suit was brought as a single-state class action does not mean that the principal injuries were local.  In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct – not just where the proposed class members were injured."); 151 Cong. Rec. S1067, 1105 ("Finally, we drafted a new what is called local class action exception. . . .  We did all of this to ensure that truly local class action cases, such as a plant explosion or some other localized event, would be able to stay in State court.");  *see also Preston v. Tenet Healthsystems Mem'l Med. Ctr.*, 485 F.3d 804, 812 (5th Cir. 2007) ("Congress crafted CAFA to exclude only a narrow category of truly localized controversies" that affect "a particular locality to the exclusion of all others."); *Eakins v. Pella Corp.*, 455 F. Supp. 2d 450, 453 (E.D.N.C. 2006) ("Merely because the action was brought as a single state class action does not mean the principal injuries were local. . . .  Based on [the Senate Report], the Court ascertains several factors important to a determination of whether the local

controversy exception warrants remand: (1) whether the product was sold outside of the locality; (2) whether the injury incurred was specific to the locality; (3) whether the class as a whole seeks relief against the local defendant."); *Brook v. United Health Group, Inc.*, No. 06-12954, 2007 WL 2827808, at *4 (S.D.N.Y. Sep. 27, 2007) (citing cases and stating that "Plaintiffs cannot simply evade federal jurisdiction by defining the putative class on a state-by-state basis"); *Kearns,* 2005 U.S. Dist. LEXIS 41614, at *40 (concluding that CAFA's local controversy exception does not apply because the alleged injuries "have been suffered by consumers throughout the country"); *Mattera,* 239 F.R.D. at 80 ("For the local controversy exception to apply, the principal injuries suffered by the class must be limited to a particular state; it does not apply to cases in which the defendants engaged in conduct that 'could be alleged to have injured [persons] throughout the country or broadly throughout several states.'").

Here, the controversy as alleged is not a local one because, as explained above, plaintiff has not limited the definition of the putative class to Illinois citizens.  Even if he had, the eight different complaints that have been filed on the same underlying allegations demonstrate the nationwide nature of the controversy.  Indeed, the five complaints filed by plaintiff's counsel contain identical nationwide allegations and quote identical nationwide advertisements, but attribute those practices to different local entities depending solely on the state in which they happened to be filing suit.  *See* Bowling Decl. ¶¶ 6-7 (discussing *Rea* Compl. ¶¶ 25-27, 29; *Sidner* Compl. ¶¶ 14-16, 19; *Lis* Compl. ¶¶ 26-28, 30; *Libonati* Compl. ¶¶ 21-23, 25).  For example, the first paragraph of those complaints provides:

- "Speed and access are key features of high-speed Internet service.  Defendant entities . . ., providers of Internet service to citizens of Illinois, advertise, market, and sell their high-speed Internet service as providing 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.' Comcast specifically represents that it provides the fastest possible access to 'web applications' that are the most 'data intensive' and that it 'does not block access to any

web sites or online applications, including peer-to-peer services.' These and other similar statements by Comcast are patently false." *Lis* Compl. ¶ 1.

- "Speed and access are key features of high-speed Internet service. Defendant entities . . ., providers of Internet service to citizens of **New Jersey**, advertise, market, and sell their high-speed Internet service as providing 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.' Comcast specifically represents that it provides the fastest possible access to 'web applications' that are the most 'data intensive' and that it 'does not block access to any web sites or online applications, including peer-to-peer services.' These and other similar statements by Comcast are patently false." Compl. ¶ 1 (emphasis added).

- "Speed and access are key features of high-speed Internet service. Defendant entities . . ., providers of Internet service to citizens of **California**, advertise, market, and sell their high-speed Internet service as providing **both** 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.' Comcast specifically represents that it provides the fastest possible access to "web applications" that are the most 'data intensive' and that it 'does not block access to any web sites or online applications, including peer-to-peer services.' These and other similar statements by Comcast are patently false." *Leigh* Am. Compl. ¶ 1 (emphasis added).

- "Speed and access are key features of high-speed Internet service. . . . **Comcast** advertis**ed**, market**ed**, and s**old its** high-speed Internet service as providing 'the fastest Internet connection' and 'unfettered access to all the content, services, and applications that the Internet has to offer.' Comcast specifically represent**ed** that it provides the fastest possible access to 'web applications' that are the most 'data intensive.' **Comcast further represented** that it 'does not block access to any web sites or online applications, including peer-to-peer services.' These and other similar statements by Comcast are patently false." *Topolski* Compl. ¶ 1 (emphasis added).

Plaintiff cannot now claim that different local subsidiaries, acting independently of one another, each engaged in the exact same conduct and made the exact same representations without the participation or direction of a corporate parent responsible for nationwide implementation of corporate policies – especially when plaintiff's counsel is alleging the exact **opposite** thing in a parallel proceeding in order to **invoke** a court's federal jurisdiction under CAFA. *See Topolski* Compl. ¶¶ 7-11. This case is simply not one that the local controversy exception is intended to encompass.

**D.      Prior Putative Class Actions Alleging Common Facts Have Been Filed.**

Finally, the local-controversy exception can only apply if no other putative class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the instant class action.  28 U.S.C. § 1332(d)(4)(A)(ii).  Prior to the filing of this case, at least two putative class actions asserting virtually identical factual allegations have been filed against the Comcast national operating entities and/or their local franchise-holding subsidiaries, including one by plaintiff's counsel. *See Hart v. Comcast Corp., et al.*, Compl. (filed Nov. 13, 2007); *Sidner v. Comcast of the District, LLC*, Am. Compl. (filed March 7, 2008).  While neither *Hart* nor *Sidner* asserts claims against the specific local franchise-holding subsidiaries named here, they do assert identical claims against defendants' affiliates.  The fact that identical defendants have not been named here is indicative only of plaintiff's jurisdictional gamesmanship, not the applicability of CAFA's local-controversy exception.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that plaintiff's Motion to Remand be denied.

Respectfully submitted,

Dated:  September 29, 2008

**/s/ Justin O. Kay**
Bradley J. Andreozzi (ARDC No. 6257334)
Daniel J. Delaney (ARDC No. 6201067)
Justin O. Kay (ARDC No. 6286557)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
(312) 569-1173 (tel.)
(312) 569-3173 (fax)
Bradley.Andreozzi@dbr.com
Daniel.Delaney@dbr.com
Justin.Kay@dbr.com

*Counsel for Defendants*

Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6996
(215) 988-2700 (tel.)
(215) 988-2757 (fax)
Seamus.Duffy@dbr.com
Michael.McTigue@dbr.com
Michael.Daly@dbr.com

*Of counsel for Defendants*